IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, et al.,<br>    Detainees,<br>    Guantanamo Bay Naval Station<br>    Guantanamo Bay, Cuba;<br><br>SAMI MUHMIDEEN,<br>    as the Next Friend of Rashed Al Qamdi<br>    *Petitioners*,<br><br>v.<br><br>GEORGE W. BUSH, et al.,<br>    *Respondents*. | Civil Action No. 05-2386 (RBW) |

**AMENDED MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITIONERS' MOTION FOR THE IMMEDIATE
ISSUANCE OF A WRIT OF *HABEAS CORPUS* PURSUANT TO 28 U.S.C. § 2243
OR, ALTERNATIVELY, TO ISSUE AN ORDER TO SHOW CAUSE**

Petitioner, Rashed Al Qamdi (the "Detained Petitioner"), together with his respective Next Friend as co-Petitioner, Sami Muhmideen, by and through undersigned counsel, rely on the following points and authorities in support of their motion requesting this Court to issue forthwith a writ of habeas corpus, pursuant to 28 U.S.C. § 2243, returnable in three days, in order to proceed to a hearing on the merits of their Petition.

Alternatively, the Petitioners seek forthwith the issuance of an order to show cause why a writ of habeas corpus should not be granted, returnable within three days. In support of their motion, the Petitioners state the following:

    1.    The Detained Petitioners are prisoners at Camp Delta, Gauntanamo Bay Naval Station, Guantanamo Bay, Cuba ("Guantanamo"). On information and belief, they have been imprisoned by the United States for approximately three years. During that entire time, they have been held virtually *incommunicado*.

2. On May 9th, 2006, the undersigned counsel filed a Petition for Writ of *Habeas Corpus* and Complaint for Declaratory and Injunctive Relief (the "Petition") on behalf of each of the Petitioners. The Petition contests both the fact of the Detained Petitioners' incarceration as well as their inhumane treatment, which violates the constitution and laws of the United States, the Uniform Code of Military Justice, specified treaties to which the United States is a party, and various principles of international law, as set forth more fully in the Petition.

3. Pursuant to 28 U.S.C. § 2243, "a court…entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled hereto."

4. There should no longer be any doubt that the Detained Petitioners are entitled to challenge their incarceration; the United States Supreme Court has so determined. *Rasul v. Bush*, No. 03-334, 542 U.S. __, 124 S. Ct. 2686, 2699 (2004). Further, the Government has agreed that "§ 2241 and its companion provisions [including § 2243] provide at least a skeletal outline of the procedure to be afforded a petitioner in federal *habeas* review." *Hamdi v. Rumsfeld*, No. 03-6696, 542 U.S. __, 124 S. Ct. 2633, 2644 (2004). Accordingly, the Petitioners respectfully suggest that this Court is required forthwith either to issue the writ or order the government to show cause why the writ should not be granted.

5. Pursuant to 28 U.S.C. § 2243, the writ or order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed." *See Simpson v. Ortiz,* 995 F.2d 606, 609 (5th Cir.), *cert. denied*, 510 U.S. 983 (1983) (district court complied with the "forthwith" requirement when the show

cause order was issued 21 days after the petition was filed and only eight days after the matter was referred to the magistrate judge).

6.  The Petitioners request that the writ or, alternatively, the order to show cause be returnable within three days. The original petition was filed, and served on the United States Attorney by hand, pursuant to Rule 4(i)(1)(A), on the same date that the Petition was physically filed, on February 4, 2005 (the Petition was not file-stamped until a Related Case form was submitted on February 7, 2005), more than twenty days ago. Service also was effected the same day through certified and registered mail, pursuant to Rule 4(i)(1)(B), on the United States Attorney General. Finally, Trial Attorney Andrew I. Warden of the Federal Programs Branch of the United States Department of Justice's Civil Division, who is coordinating all of the parallel Guantanamo Bay cases for the Respondents, was also sent an electronic PDF copy of the Petition by undersigned counsel on February 4, 2005. Each Defendant was also individually served by U.S. mail. Thus, the Government has already had the twenty-day notice period contemplated under 28 U.S.C. § 2243.

7.  Equally important is that the United States has imprisoned and interrogated the Detained Petitioners already, possibly for three years or more. On information and belief, the government has interrogated the Detained Petitioners on numerous occasions and is well aware of the factual bases that allegedly support the continued imprisonment of the Detained Petitioners. The Government has openly acknowledged the Department of Defense's attempts to hold so-called "military tribunal" hearings at which each Detained Petitioner's "enemy combatant" status and their detention generally, was reviewed. *See U.S. to Release 3 Guantanamo*

*Detainees* (Reuters), Feb. 4, 2005 ("The status hearings before panels of three military officers were finished at Guantanamo before [Judge] Green ruled" on January 31, 2005; Pentagon Spokesman Lt. Cmdr. Daryl Borgquist is quoted as follows: "It's a matter of processing the paperwork now because the tribunals have all occurred.").

8. Because the Government has already evaluated the "enemy combatant" status of these Detained Petitioners and conducted levels of review that presumably included evidence sufficient to justify the Government's determinations, since they continue to be held, there is no basis for the Government to claim that it needs more time to comply with the Supreme Court's directive to allow the Detained Petitioners to test the bases for their detention. Accordingly, there is no reason to delay issuance of the Writ or an Order to Show Cause or the Government's response to it.

9. Through its filings in other, parallel cases, it appears that the Government may be attempting to preempt this Court from hearing the *habeas corpus* petitions filed in cases involving Guantanamo Bay detainees. By implementing the truncated procedures apparently being used in the "military tribunal" –type hearings, and by presenting the arguments it has made in the other, parallel Guantanamo Bay cases in this Court, the Government seeks to perpetuate the existence of a prison beyond the reach of Article III courts, a position that the Supreme Court resoundingly rejected in ruling the United States courts have jurisdiction to hear challenges to the legality of the Detained Petitioners' detention.

10. The facts in this case require that the matter be handled expeditiously. In one remarkable recent account, it was reported that of those currently held at Guantanamo

Bay, the United States military's own "[c]ommanders now estimate that up to 40%of the 549 current detainees probably pose no threat and possess no significant information." *See* Wall Street Journal, January 26, 2005, at A1. Even more stunning, "Military officials at Guantanamo say they have specifically recommended the release of about 100 of those men. But after a year of delay, the Pentagon, which makes the final call, has yet to act." *Id*. This Court should not in good conscience allow this state of affairs to continue. As indicated above, the Detained Petitioners challenge their wrongful imprisonment, which Petitioners submit has been without basis, without charge, without access to counsel and without being afforded any fair process by which they might challenge their designation or detention. That imprisonment has now lasted approximately three years, and it appears quite possible that the majority of such time has been spent in an eight foot by six foot prison cell, twenty-four hours a day.

11. On information and belief, Petitioners also submit that it appears that the Detained Petitioners were taken into custody by the United States in Yemen, a country which is at peace with the United States, or at other locations similarly far removed from the theatre of military operations and battlefields in Afghanistan or Iraq. Each Detained Petitioner was removed from the country of his arrest against his will and brought to the United States in violation of existing extradition treaties. None of the Detained Petitioners has been charged with any crime.

12. Petitioners also challenge the conditions of the Detained Petitioners' incarceration. Based on information obtained from former prisoners at Guantanamo Bay who have been released, there is a strong likelihood that each of the Detained Petitioners has

been subjected to cruel and degrading treatment at the express direction of United States officials for the purpose of obtaining information and confessions, a practice that directly contravenes applicable domestic, military and international law. Recently, the United States military announced it needed to extend by four weeks its investigation into FBI allegations that prisoners were tortured at Guantanamo. That investigation was ordered after the public release of FBI documents describing prisoners shackled in a fetal position on the floor for up to 24 hours and left in their own urine and feces. *See Military Extends Guantanamo Abuse Probe* (Rueters), February 2, 2005. *See also id*. ("Several former prisoners have said they were beaten, threatened with dogs and subjected to freezing temperatures, and the International Committee of the Red Cross has said their treatment was "tantamount to torture."); *Videos Show Guantanamo Prisoner Abuse* (AP), February 1, 2005 "Videotapes of riot squads subduing troublesome terror suspects at the U.S. prison camp at Guantanamo Bay show the guards punching some detainees, tying one to a gurney for questioning, and forcing a dozen to strip from the waist down, according to a secret report").

13. Press reports also reveal that the conditions at Guantanamo Bay, coupled the prospect of indefinite detention, have resulted in numerous suicide attempts by the detainees. *See Guantanamo Suicide Attempts Rise to 31* (AP), August 20, 2003. On information and belief, the health and mental condition of the Detained Petitioners will be placed at risk if their incarceration is allowed to continue without review and remedial measures ordered by this Court. *See, e.g., Detainees Accuse Female Interrogators* (Washington Post), Feb. 10, 2005, at A1 (noting how female interrogators, among

other things, pretended to smear menstrual blood on Muslim men before they intended to pray.

Wherefore, for the above-stated reasons and for any other reason that may become known to the Court, Petitioners respectfully request that this Court issue either a writ of *habeas corpus* or an order to show cause to the defendants, either of which should then be ordered returnable within three days of this Court's issuance.

Dated: June 1, 2006

Respectfully submitted,

/s/Bryan K. Bullock
Bryan K. Bullock (Atty. #: 22812-45)
575 Broadway, Suite 2-C
Gary, Indiana  46402
Phone:    (219) 882-0815
Facsimile: (219) 882-0817

Counsel for Petitioner