IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| GHANIM-ABDULRAHMAN AL-HARBI, *et al.*, | ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) | Civil Action No. 05-CV-02479 (HHK) |
| GEORGE W. BUSH, President of the United States, *et al.*, | ) ) ) ) ) | |
| Respondents. | ) ) ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO PETITIONERS'
MOTION FOR ENTRY OF AMENDED PROTECTIVE ORDER**

Respondents hereby respectfully submit this memorandum in opposition to petitioners'

motion for entry of amended protective order in this case (dkt. no. 8).[1]

As an initial matter, the Department of Defense has identified petitioner Ravil Mingazov

as the same individual who already has a habeas petition pending in Gamil v. Bush, No. 05-CV-

---

[1] On March 16, 2006, this Court stayed "all action" in the above-captioned case and held in abeyance all pending motions pending resolution by the Supreme Court or the D.C. Circuit of "serious questions concerning whether this court retains jurisdiction to hear the above-captioned cases" after the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 (the "Act"), became law (dkt. no. 7). Because the Court has stayed "all action" in this case, on May 4, 2006, respondents filed a notice indicating that, absent further direction from the Court, respondents did not intend to submit a substantive response to petitioners' motion for entry of the amended protective order. See Respondents' Notice Regarding Petitioner's Motion for Entry of Amended Protective Order (dkt. no. 9). On May 11, 2006, the Court lifted the March 16, 2006 order staying activity in this case with respect to petitioners' motion for entry of the amended protective order, and ordered respondents to respond to petitioners' motion within ten days. See Order issued May 11, 2006 (dkt. no. 10). The Court indicated that "[r]espondents' opposition need only address the merits of petitioners' motion as the court is already aware of respondents' position regarding the issue of the court's subject matter [jurisdiction] over this action." Id. Respondents hereby submit the instant opposition to petitioners' motion pursuant to the Court's May 11, 2006 Order.

2010 (JR), and petitioner Zainulabidin Merozhev as the same individual who already has a

habeas petition pending in Mohammon v. Bush, No. 05-CV-2386 (RBW).  Thus, as reflected in

the Notices of Multiple Petitions Filed by Guantanamo Bay Detainee being concurrently filed,

the instant petition appears to be duplicative of previously filed cases as to petitioners Ravil

Mingazov and Zainulabidin Merozhev.

　　　　Because the Court is already familiar with respondents' position regarding the Detainee

Treatment Act's withdrawal of the habeas jurisdiction of the Court and investment of exclusive

jurisdiction in the Court of Appeals, see Order issued May 11, 2006, respondents will not recite

their position here, except to state that the entry of the Protective Order in this case would be an

assertion of jurisdiction that would be inconsistent with the Act, and respondents' argument in

this regard is in no way immaterial or premature.  See Steel Co. v. Citizens for a Better Env't,

523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see

also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the

law, and when it ceases to exist, the only function remaining to the court is that of announcing

the fact and dismissing the cause.").[2]

---

[2]  Respondents previously intended to file a motion to dismiss this case based upon the
Act's withdrawal of the Court's jurisdiction, see Notice of Supplemental Authority (dkt. no. 2),
but refrained from doing so when they were informed that the sense of the Court was to await
anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding
further in the Guantanamo habeas cases.  During this interim period, respondents have permitted
counsel visits and other privileged access to properly represented detainees in cases where the
Protective Order had already been entered, and its requirements satisfied, pending a decision
from the D.C. Circuit.  Once the Act's withdrawal of the Court's jurisdiction became effective,
however, respondents have consistently opposed entry of the Protective Order in cases where it
had not already been entered.  In any event, respondents' actions in other Guantanamo habeas
cases cannot be construed as a waiver or concession of jurisdiction that permits entry of the
Protective Order in this case.  See Floyd v. District of Columbia, 129 F.3d 152, 155 (D.C. Cir.
1997) (noting that "jurisdiction cannot be waived").

Further, petitioners possess no separate right of access to counsel that warrants the application of the Protective Order to this action notwithstanding the jurisdictional infirmities present in this case. See Pets' Mot. at 4 ("Petitioners' access to their attorneys, is not a matter of government discretion; but rather, is required as a matter of law."). In Al Odah v United States, 346 F. Supp. 2d 1 (D.D.C. 2004), Judge Kollar-Kotelly explained that, despite there being no absolute right to counsel under the habeas statute, the Court, under its discretionary, statutory authority in habeas cases — authority now withdrawn with the Act's withdrawal of district court habeas jurisdiction — may appoint counsel to represent Guantanamo petitioners properly before the Court, if warranted. See id. at 4-5, 7-8. Thus, contrary to petitioner's suggestion, notwithstanding the Act's withdrawal of jurisdiction over this case, Al Odah does not compel the relief requested by petitioners.

Furthermore, as explained below, respondents also oppose petitioners' request for relief because it has not been established that jurisdictional requirements for a habeas petition have been established in this case. Petitioners have not demonstrated why the petition, not brought upon direct authorization from Ghanim-Abdulrahman Al-Harbi, Ravil Mingazov and Zainulabidin Merozhev, the detainees for whom habeas relief is sought, but instead brought by another detainee claiming to act as their "next friend," should not be dismissed for lack of proper next friend standing. The putative "next friend" detainee, Elham Battayav, bears the burden of establishing his next friend status and justifying the exercise of the Court's jurisdiction over this action. See Whitmore v. Arkansas, 495 U.S. 149, 163 (1990) ("'[N]ext friend' standing is by no means granted automatically to whomever seeks to pursue an action on behalf of another."). To do so, he must satisfy the "two firmly rooted prerequisites" articulated by the Supreme Court in

Whitmore: (1) he must demonstrate that the detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge the legality of his detention himself; and (2) he must have a significant relationship with this detainee in order to demonstrate that he is truly dedicated to the detainee's best interests. Id. at 163-64. The petition in this case fails to meet either requirement. Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack of standing.

Furthermore, entry of the Protective Order would be inappropriate to the extent that petitioners' counsel will seek to characterize the Protective Order as guaranteeing counsel access to petitioners regardless of next friend standing or other jurisdictional issues in the case. Recently, Magistrate Judge Kay has interpreted the Protective Order as guaranteeing any counsel who purport to represent a detainee privileged access to the detainee even in the face of respondents' challenge to next friend standing and other jurisdictional challenges in the case. See Adem v. Bush, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), recons. denied, 2006 WL 1193853 (Apr. 28, 2006) (dkt. no. 42); Sadar Doe v. Bush, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006) (dkt. no. 33); Said v. Bush, No. 05-CV-2384 (RWR) (AK) (Memorandum Order dated May 23, 2006) (dkt. no. 23); see also Razakah v. Bush, No. 05-CV-2370 (EGS) (Order dated May 18, 2006) (dkt. no. 23). Respondents have noted the grave jurisdictional issues presented by the Magistrate Judge's interpretation of the Protective Order, as well as the inconsistency of that interpretation with the language, history and context of the Protective Order in the Guantanamo habeas cases, see e.g., Respondents' Motion for Stay and

Reconsideration of Magistrate Judge's Order and Opinion Docketed on March 21, 2006 in <u>Adem v. Bush</u>, No. 05-CV-0723 (RWR) (dkt. nos. 38, 39); Respondents' Motion for Stay and Reconsideration of Magistrate Judge's May 11, 2006 Memorandum Order in <u>Sadar Doe v. Bush</u>, No. 05-CV-1704 (JR) (dkt. nos. 34, 35) (copy attached as Exhibit A). The Magistrate Judge, however, has brushed aside respondents' objections and granted counsel access in such circumstances, characterizing his action merely as enforcement of the terms of the Protective Order. <u>See</u>, <u>e.g.</u>, <u>Adem</u>, 2006 WL 751309, *8-*11. This Court should not enter the Protective Order in this case to the extent it may or will be interpreted in a fashion that will raise the serious jurisdictional and interpretive issues raised by respondents, including that of requiring the government to provide direct, privileged access to wartime detainees in a military detention facility for counsel merely purporting to represent a detainee, without demonstrating satisfaction of the jurisdictional requirements of a habeas case.

I.    **Petitioners' Counsel's Request for Entry of the Protective Order Should Be Denied Because It Has Not Been Established That the Jurisdictional Requirements for a Habeas Petition Have Been Satisfied in this Case.**

It is well-established that "before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue" under Article III of the Constitution. <u>Whitmore</u>, 495 U.S. at 154. The standing doctrine "ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render judicial resolution of it appropriate in a society that takes seriously both the idea of separation of powers and, more fundamentally, the system of democratic self-government that such separation serves." <u>Hamdi v. Rumsfeld</u>, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal

quotations omitted).[3]  "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf."  28 U.S.C. § 2242.  If a petition is brought by someone acting on behalf of the person for whose relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest."  Whitmore, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however.  See id.  Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in Whitmore:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action.  Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next

---

[3]  The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him.  That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004).  See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636.  Of course, neither the fact that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next friend standing in the defective case brought by the public defender and private citizen.

friend" must have some significant relationship with the real party
in interest.

Id. at 163-64 (internal citations omitted).

The petition in the above-captioned case does not meet either prong of the Whitmore test.
First, petitioners have failed to demonstrate that the detainees for whom habeas relief is sought
cannot submit petitions on their own behalf.  As explained in the Declaration of Frank Sweigart,
the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to
file a petition for habeas corpus, and has provided each detainee with the address of the United
States District Court in the event that he desires to submit his own petition to the Court.[4]  See
(Second) Sweigart Declaration, ¶¶ 3-5 (attached hereto as Exhibit B).  As a result of these
notifications, 58 pro se petitions for writ of habeas corpus have already been filed with the
Court.[5]  Furthermore, DoD has taken affirmative steps to facilitate legal representation for

---

[4]  Detainees are afforded the opportunity regularly to send and receive mail through the
mail system administered by DoD and through the International Committee for the Red Cross.
Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be
revoked.  See Sweigart Declaration, Ex. D.

[5]  As of September 19, 2005, the date that the Sweigart Declaration was executed, there
were 55 pro se petitions filed with the Court.  See Khiali-Gul v. Bush, No. 05-CV-0877 (JR);
Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW);
Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush,
No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-
CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-
0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK);
Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v.
Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No.
05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-
0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997
(PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999
(RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH);
Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad
v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No.
05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013

detainees who have indicated a desire to challenge the legality of their detention by providing

such detainees with a form to complete and mail to the American Bar Association ("ABA"),

which has agreed to recruit volunteer counsel for detainees desiring representation.  See id., ¶ 7.

In addition, all detainees at Guantanamo Bay have the ability to send and receive mail, allowing

them to contact family and friends, see id., Ex. D; supra, note 4, and they have been informed of

the option of contacting friends and family to have them file habeas petitions on their behalf.

        Given that all detainees have been notified of their right to submit petitions for writ of

habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the

Court; and that the ABA has agreed to offer the detainees assistance in securing legal

representation, it cannot simply be assumed that the detainees for whom habeas relief is sought

cannot submit petitions on their own behalf.  The next friend petition in this case, however, does

just that.  See, e.g., Petition, ¶ 4 ("Because his friend and co-detainee Petitioner al-Harbi has been

denied access to legal counsel and to the courts of the United States, Petitioner Battayav acts as

his Next Friend.").  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24,

2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed

-------

(JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS);
Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah
v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush,
No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-
1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL);
Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al
Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v.
Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush,
No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491
(JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v.
Bush, No. 05-CV-1555 (JR).  Since that date, three additional pro se petitions have been filed.
See Jamolivich v. Bush, No. 05-CV-2112 (RBW); Feghoul v. Bush, No. 06-CV-0618 (RWR);
Rumi v. Bush, No. 06-CV-0619 (RJL).

has been denied access to the courts of the United States. . . . In light of the fact that several <u>pro se</u> petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this court cannot be presumed, but must be established.");[6] <u>Hamlily v. Bush</u>, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially incommunicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.");[7] <u>Ahmed Doe v. Bush</u>, No. 05-1458 (ESH), <u>et al.</u>, (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) ("Petitioners do not explain why the detainees that they purport to represent as next friends are in a materially different position than the detainees who have filed petitions with this Court.").

---

[6]  The issue of next friend standing was raised <u>sua sponte</u> by Judge Roberts in <u>Ahmed v. Bush</u>, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case.  Based on an observation that the petition presented scant facts demonstrating that the <u>Whitmore</u> requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing.  <u>See Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12).  Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the <u>Whitmore</u> test were satisfied.  <u>See Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (dkt. no. 13).  Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, <u>see Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in certain recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

[7]  On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered <i>sua sponte</i> in <u>Hamlily v. Bush</u> based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition.  <u>See</u> Order dated October 31, 2005 in <u>Hamlily v. Bush</u>, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case).  Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause.  <u>See id.</u> at 2.

Absent evidence that the detainees for whom habeas relief is sought cannot submit a petition on their own behalf, petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the petition. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted).

The purported "next friend" in this case has also failed to satisfy the second requirement of the Whitmore test — he has not established that he has a "significant relationship" with the detainees on whose behalf habeas relief is sought such that he is "truly dedicated to [their] best interests." See Whitmore, 495 U.S. at 163-64.[8] The requirement of a "significant relationship"

---

[8] The majority of Circuits that have been confronted with the issue have construed Whitmore to require a "significant relationship" as part of the second prong of the test for next friend standing. See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus most faithfully understood as requiring a would-be next friend to have a significant relationship with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d 1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however, with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court suggested in the Whitmore case, that not just anyone who expresses an interest in the subject matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995) (under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir. 1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some significant relationship with the real party in interest'"). See also Al Odah v. Bush, 321 F.3d 1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating that the family members of Guantanamo detainees who filed habeas petitions on their behalf "demonstrated through affidavits that they are 'truly dedicated to the best interests of these individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing Whitmore, 495 U.S. at 163-64). Although the Eleventh Circuit questioned whether Whitmore established "some significant relationship" as an independent requirement, it nevertheless noted the importance of a relationship in demonstrating whether a putative next friend "can show true dedication to the best interests of the person on whose behalf he seeks to litigate." Sanchez-Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002). See

with the real party in interest is necessary to ensure that a next friend will genuinely pursue the

interests of the person in custody (who at all times remains the real party in interest) and will not

(1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is

in tune with the real party's desires and interests. See id. at 164 (cautioning against "intruders or

uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next

friend standing to close relatives such as parents, siblings, and spouses. See, e.g., Vargas v.

Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father);

Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987)

(brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife). Attorneys who

have previously represented an individual seeking habeas corpus have also been permitted to act

as next friends based on that pre-existing relationship. See Sanchez-Velasco, 287 F.3d at 1026

("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior

proceeding as counsel for the real party in interest and did so with his consent."). Distant

relatives or simple acquaintances generally do not have a sufficient relationship to establish next

friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither

detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited

with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to

act as next friends are typically dismissed for lack of jurisdiction. See, e.g., Hamdi, 294 F.3d at

---

also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is
not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and
she does not have 'some significant relationship with the party in interest.'") (citing Hauser v.
Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

603-07 (dismissing petitions brought by a public defender and private citizen who had no

relationship to the detainee).

In the above-captioned case, the putative next friend petitioner has failed to demonstrate

that he has any sort of "significant relationship" with the detainees for whom habeas relief is

sought. The declaration submitted in support of Elham Battayav's next friend status states

simply that he understands what it means to act as a "next friend," that he "had come to know a

few detainees on a meaningful level," and that these detainees expressed a desire to be

represented by counsel. See Declaration of Thomas R. Johnson, Jr. (attached to Petition), ¶¶ 4-5.

The declaration further provides only names, ISNs and nationalities of the detainees on whose

behalf Elham Battayav claims to act as next friend. See id., ¶ 6. The dearth of basic biographical

and personal information about the detainees on whose behalf habeas relief is sought indicates

that Elham Battayav does not share any meaningful relationship with these detainees and,

therefore, cannot be determined to be acting in their best interests.[9] Because even acquaintances

cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal

information presented in the petition indicates that the purported next friend merely knows of

other detainees or, at best, are mere acquaintances with the detainees on whose behalf he seeks

habeas relief, the purported next friend has failed to demonstrate that he is "truly dedicated to

[these detainees'] best interests." Whitmore, 495 U.S. at 163. Absent proof that evidences a

---

[9] If a detainee were able to act as next friend for another detainee simply based on the
mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to
bring mass habeas corpus petitions simply by being able to list the identities of those detained
alongside them, a situation that is surely inconsistent with standing jurisprudence. See Othman
v. Bush, No. 05-CV-2088 (RWR) (dkt. no. 2) ("The petition's characterization of Al Wahab as
Othman's "companion" is an insufficient showing upon which to make any judgment about Al
Wahab's fitness to serve[] as next friend. The companionship may be by dint of mere fortuity of
co-location in detention with no more substance to the relationship than that.").

significant relationship, petitioners cannot demonstrate proper next friend standing, and the Court

cannot exercise jurisdiction over the petition in the above-captioned case.[10]

In sum, the petition in this case fails to satisfy the standing requirements articulated by the

Supreme Court in Whitmore.  Jurisdiction must be established and this case must be properly

before the Court before any proceedings may commence, including entry of the Protective

Order.[11]  Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if

petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the

Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack

of standing.

---

[10] Approximately 200 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

[11] Even the Protective Order and counsel access procedures typically made applicable in Guantanamo detainee habeas cases provides that "[p]rior to being permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee."  See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004), Ex. A, § III.C.1.  Counsel has yet to provide sufficient evidence of their "authority to represent" the detainees for whom habeas relief is purportedly sought, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter.  The Protective Order thus contemplates counsel access to the detainees (including privileged mail correspondence and visits to Guantanamo Bay) only in cases properly before the Court.

**II.    The Protective Order Should Not Be Entered to the Extent It Will Be Interpreted in a Fashion to Raise Serious Jurisdictional and Interpretive Issues and to Sidestep the Issue of Whether this Case Is Jurisdictionally Proper in Light of the Absence of a Showing of Proper Next Friend Standing.**

The Protective Order should not be entered to the extent it will be interpreted in a fashion to raise serious jurisdictional and interpretive issues and to sidestep the issue of whether this case is jurisdictionally proper in light of the absence of a showing of proper next friend standing.  As noted above, Magistrate Judge Kay has recently begun interpreting the Protective Order and Access Procedures applicable in many of the Guantanamo habeas cases as guaranteeing any counsel who purport to represent a detainee privileged access to the detainee without respect to any showing of whether the jurisdictional standing requirements for bringing a habeas case under 28 U.S.C. § 2242 have been satisfied.  See Adem, 2006 WL 751309; Sadar Doe, No. 05-CV-1704 (JR) (LFO) (AK) (Memorandum Order dated May 11, 2006); Said, No. 05-CV-2384 (RWR) (AK) (Memorandum Order dated May 23, 2006).  Respondents have noted that the Magistrate Judge's interpretation of the Protective Order is erroneous as an interpretive matter and is inconsistent with the history and context of the language of the Protective Order as it was developed in the Guantanamo habeas cases under Senior Judge Joyce Hens Green, cases coordinated pursuant to the order and direction of the Court as a whole, including through a September 15, 2004 Resolution of the Executive Session.[12]  The Protective Order does not require respondents to permit a visit by counsel with any particular petitioner in this case.  While the Revised Procedures for Counsel Access to Detainees annexed to the Protective Order operate under the assumption of counsel visits occurring in that they set certain terms, conditions and

---

[12]  Respondents' objections to the Magistrate Judge's interpretation of the Access Procedures are explained more fully in the motion for reconsideration in Sadar Doe, No. 05-CV-1704 (JR) (LFO) (AK) (attached as Exhibit A), at 20-33.

limitations applicable to any such visits, they do not order respondents to provide a visit on demand of counsel in the first place. Also, another provision of the Protective Order confirms that respondents may decline to schedule a visit with detainees where counsel has not yet provided appropriate evidence of his or her authority to represent the detainees. See Resps' Mot. for Recon. in <u>Sadar Doe</u>, No. 05-CV-1704 (JR) (LFO) (AK), at 20-25. Respondents have also noted that the Magistrate Judge's interpretation of the Protective Order results in the extra-legal assertion of jurisdiction by the Court, inconsistent with the habeas statute, 28 U.S.C. § 2242, and the requirements of <u>Whitmore</u>, as well as raises significant separation of powers issues by requiring respondents to provide direct, privileged access to wartime detainees in a military detention facility by counsel merely purporting to represent a detainee, without any showing by counsel of proof of appropriate authority to represent the detainee directly or through a next friend meeting appropriate standing requirements. See <u>id.</u> at 25-33.

Nonetheless, the Magistrate Judge has brushed aside respondents' objections in cases where the Protective Order has been entered and granted counsel access to detainees at Guantanamo, and he has justified this result by claiming that he is merely enforcing the terms of the Protective Order already entered in the case. See, <u>e.g.</u>, <u>Adem</u>, 2006 WL 751309, *8-*11.

This Court should not create the same situation by entering the Protective Order here. While respondents dispute that the Magistrate Judge's interpretation of the Protective Order is correct, it would not be appropriate for the Court to create circumstances where the Magistrate Judge's interpretation could be foisted upon respondents where respondents have raised jurisdictional issues with respect to the propriety of this suit. Respondents are entitled to have the serious jurisdictional issues related to next friend standing considered and resolved before

they are ordered to provide direct, privileged access to wartime detainees in a military detention

facility, and the Court should not enter the Protective Order where it may be cited as authority to

require such access without regard to respondents' jurisdictional objections.

* * *

For these reasons, petitioners' motion for entry of the amended protective order should be

denied.

Dated: May 25, 2006                          Respectfully submitted,

                                             PETER D. KEISLER
                                             Assistant Attorney General

                                             DOUGLAS N. LETTER
                                             Terrorism Litigation Counsel

                                             _____/s/ Preeya M. Noronha_____
                                             JOSEPH H. HUNT (D.C. Bar No. 431134)
                                             VINCENT M. GARVEY (D.C. Bar No. 127191)
                                             TERRY M. HENRY
                                             JAMES J. SCHWARTZ
                                             PREEYA M. NORONHA
                                             ROBERT J. KATERBERG
                                             NICHOLAS J. PATTERSON
                                             ANDREW I. WARDEN
                                             EDWARD H. WHITE
                                             MARC A. PEREZ
                                             Attorneys
                                             United States Department of Justice
                                             Civil Division, Federal Programs Branch
                                             20 Massachusetts Ave., N.W.
                                             Washington, DC  20530
                                             Tel:  (202) 514-4107
                                             Fax:  (202) 616-8470

                                             Attorneys for Respondents

- 16 -

# EXHIBIT B

## SECOND DECLARATION OF FRANK SWEIGART

I, Frank Sweigart, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

1.  I am the Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants (OARDEC) at U.S. Naval Base Guantanamo Bay, Cuba. I have been in this position since June 2004. In this role I assist OARDEC's Director with all aspects of the mission of OARDEC, which is to conduct Combatant Status Review Tribunals (CSRTs) and Administrative Review Boards (ARBs). The purpose of the CSRTs is to review relevant and reasonably available information in the government's possession and conduct hearings on detainees under the control of the Department of Defense (DoD) at U.S. Naval Base Guantanamo Bay, Cuba, and to determine whether a detainee continues to meet the criteria for designation as an enemy combatant. The purpose of the ARBs is to review all relevant and reasonably available information on enemy combatants, conduct hearings, and make a recommendation to the Designated Civilian Official, currently the Secretary of the Navy, on whether an enemy combatant should continue to be detained because he is a threat to the United States or its allies or there are other factors bearing upon the need for continued detention such as law enforcement interest or intelligence value.

2.  This declaration is provided to update the status of the steps taken by the Department of Defense (DoD) to notify the detainees at U.S. Naval Base Guantanamo Bay, Cuba, of their right to challenge the legality of their detention by filing *habeas corpus* petitions in federal court, as described in the First Declaration of Frank Sweigart, executed on August 31, 2005. I make these statements based upon my personal knowledge and upon information made available to me in the performance of my official duties.

3. In December 2004, DoD began, on a rolling basis, to notify detainees who had been confirmed to be enemy combatants through the CSRT process that: the CSRT confirmed them to be enemy combatants; they were now eligible for consideration by an ARB to determine if they still pose a threat to the United States or its allies; and they could file a petition for writ of *habeas corpus* in federal court if they wanted to challenge the lawfulness of their detention. The notification tells the detainees that they have the option of asking a friend, family member, or lawyer to file a petition on their behalf. They are also provided with the address of the United States District Court for the District of Columbia in the event that they choose to submit a *pro se habeas* petition. *See* Exhibit A. CSRT proceedings concluded in March 2005. Every detainee confirmed to be an enemy combatant through the CSRT process and who is eligible for consideration by an ARB has received the notice described above.

4. There are presently 14 detainees not eligible for consideration by an ARB because the President of the United States ordered them triable by Military Commission under the Military Order of November 13, 2001. Each of the 14 detainees has been informed that the CSRT determined him to be an enemy combatant and that he can challenge the lawfulness of his detention by filing a petition for a writ of *habeas corpus* in federal court if he wants to do so. These detainees likewise have been provided with the address of the United States District Court for the District of Columbia. *See* Exhibit B.

5. DoD has also notified each detainee whom the CSRT has determined to no longer be an enemy combatant that he can file a petition for writ of *habeas corpus* in federal court if he wants to challenge the lawfulness of his detention. These detainees likewise have been provided with the address of the United States District Court for the District of Columbia. *See* Exhibit C.

2

6. DoD is aware of 55 *pro se* petitions written by detainees or, in the case of illiterate detainees, dictated by detainees to an Assisting Military Officer involved in the ARB process. All of these *pro se* petitions were processed pursuant to the military's standard review procedures for outgoing detainee mail, *see* Declaration of 1LT Wade M. Brown, executed March 17, 2005 (attached hereto as Exhibit D), and were mailed to the District Court.

7. As a result of discussions between DoD and the American Bar Association (ABA), the ABA has agreed to recruit volunteer counsel for *pro se* petitioners and other detainees who may desire representation. DoD has delivered to all *pro se* petitioners who are not already represented by counsel a notification which advises them that the ABA is willing to find them a lawyer to assist them with a petition for writ of *habeas corpus*. The notification provides the detainees with the address of the ABA and a form requesting representation that they may complete and mail directly to the ABA in the event that they choose to seek the assistance of counsel. *See* Exhibit E. Each notification was translated into a language that the detainee can understand and delivered to that detainee as mail through the mail delivery system at Guantanamo Bay. If a detainee indicates that he is unable to read the notification, a guard (if the notification is in English) or translator (if the notification is not in English) will read the notification to that detainee. DoD will continue to deliver this notification in this manner, on an ongoing basis, to all *pro se* petitioners who are not already represented by counsel, and to other detainees who request the assistance of counsel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *19 Sep 05* .

FRANK SWEIGART
Deputy Director, OARDEC

3

## NOTIFICATIONS

1. A Combatant Status Review Tribunal (CSRT) has determined that you are an enemy combatant. Because you are an enemy combatant, the United States may continue to detain you.

2. An Administrative Review Board (ARB) will now be held to determine whether you still pose a threat to the United States or its allies. The ARB will consider all relevant and reasonably available information. If the ARB decides you no longer pose a threat, you may be released from detention.

3. You may attend the ARB proceeding and present information about yourself to ARB members. If you believe you do not pose a threat to the United States or its allies, we recommend you immediately gather any information that you believe will prove that you are no longer a threat and why you should be released from detention.

4. The ARB will consider written statements from family members or other persons who can explain why you are no longer a threat. You may also present a written or oral statement at the ARB. Unlike the CSRT, witnesses are not allowed to testify during the ARB. An American officer (called an Assisting Military Officer) will help you prepare your case if you want him to. You do not have to attend the ARB, and you do not have to say anything if you do attend. The ARB will be conducted whether or not you choose to attend.

5. In addition, you have been notified that you may challenge your detention in a United States court. The following procedures are available if you want to challenge your detention in a U.S. court.

6. You may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for a writ of habeas corpus*. You may ask a friend or family member or a lawyer to file such a petition with the court. If you do not have a lawyer or a family member or friend who could file this petition for you, you may file your own petition. According to prior court rulings, petitions may be sent to:

United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

If you do not wish to file a petition, you do not have to do so. However, a court will only consider your case if you file a petition.

7. Please talk to your Assisting Military Officer if you have any questions about this notification. Your assigned Assisting Military Officer will meet with you later.

Detainee ISN: _____    Date: _____

Signature of Officer Serving Notice: _____

Printed Name of Officer Serving Notice: _____

# EXHIBIT A

## NOTIFICATIONS

1. A Combatant Status Review Tribunal (CSRT) has determined that you are an enemy combatant. Because you are an enemy combatant, the United States may continue to detain you.

2. In addition, you have been notified that you may challenge the lawfulness of your detention in a United States court. The following procedures are available if you want to challenge your detention in a U.S. court.

3. You may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for a writ of habeas corpus*. You may ask a friend or family member or a lawyer to file such a petition with the court. If you do not have a lawyer or a family member or friend who could file this petition for you, you may file your own petition. According to prior court rulings, petitions should be sent to:

<div align="center">

United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC 20001

</div>

If you do not wish to file a petition, you do not have to do so. However, a court will only consider your case if you file a petition.

Detainee ISN: _____    Date: _____

Signature of Officer Serving Notice: _____

Printed Name of Officer Serving Notice: _____

# EXHIBIT B

NOTIFICATION

1.  You have been notified previously that you may challenge your detention in a United States court.  The following procedures are available if you want to challenge your detention in a U.S. court.

2.  You may ask a civilian judge to look at the lawfulness of your detention through a process called a *petition for a writ of habeas corpus*.  You may ask a friend or family member or a lawyer to file such a petition with the court.  If you do not have a lawyer or a family member or friend who could file this petition for you, you may file your own petition.  According to prior court rulings, petitions should be sent to:

<div style="text-align:center">

United States District Court for the District of Columbia
333 Constitution Avenue, N.W.
Washington, DC  20001

</div>

If you do not wish to file a petition, you do not have to do so.  However, a court will only consider your case if you file a petition or if one is filed by a lawyer, friend or family member on your behalf.

Detainee ISN: _____     Date: _____

Signature of Officer Serving Notice: _____

Printed Name of Officer Serving Notice: _____

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOES 1-570,                             )
     Unidentified Detainees              )
     Guantanamo Bay Naval Station       )
     Guantanamo Bay, Cuba,              )
                            )
          Petitioners,                  )
                            )
     v.                                     )    Civil Action No. 05-CV-0313 (CKK)
                            )
GEORGE W. BUSH,                              )
     President of the United States, *et al.,* )
                            )
          Respondents.                  )
_____)

## DECLARATION OF 1LT WADE M. BROWN

I, Wade M. Brown, pursuant to 28 U.S.C. § 1746, hereby declare and say as follows:

    1.  I am a First Lieutenant in the New Jersey Army National Guard and am currently serving as the Officer in Charge (OIC) of the S-2 Section within the Joint Detention Operations Group at Guantanamo Bay, Cuba.  I have held this position since October 2004. Prior to becoming OIC, I was the Assistant OIC from July 2004 through September 2004.   In both of these positions, part of my responsibilities are to report directly to the JTF and JDOG Commanders on all issues related to Detainee Mail operations, to include the proper handling and processing of mail sent to and from detainees, processing times, force protection screening and redaction.  I oversee the 15 individuals in the screening and processing units and work in the same building as such.  The following statements provide a general overview of the mail privileges available to these detainees at Guantanamo Bay.  I make these statements based upon

# EXHIBIT D

my personal knowledge and upon information made available to me in the performance of my official duties.

2. Each individual detained by the Department of Defense at Guantanamo Bay is given the opportunity to send and receive mail. Detainees cannot lose mail privileges for any reason, including as part of disciplinary action or interrogation. However, some detainees have affirmatively refused to send or receive any mail. Also, in rare cases, pens are temporarily removed from some detainees when appropriate members of the detainee medical care staff determine the detainee may use the pen to inflict self-harm.

3. In the six-month period from September 2004 through February 2005, the mail processing unit processed approximately 14,000 pieces of mail sent to or by detainees at Guantanamo Bay.

4. There are two methods for detainees to send and receive mail — through the mail delivery and collection system administered by the United States Military, or through the International Committee for the Red Cross ("ICRC"). Legal mail between habeas counsel and the detainees is not processed through either of these two methods, instead that mail is handled under the procedures set forth in the federal court order that covers the habeas cases.

5. The Military provides each detainee with two sheets of stationery, four postcards, and six envelopes per month. See Exhibit A. Each detainee is also provided with a soft pen, although certain detainees are not permitted to keep the pens in their cells for security reasons. These detainees are provided with pens only during the times when they are writing letters. Military officers collect and deliver mail from the detainees approximately six times per month. After mail is collected from the detainees, it is taken to a processing unit. At the processing unit,

2

**EXHIBIT D**

each piece of mail is translated into English if necessary, screened for inappropriate materials and redacted accordingly, and placed in a U.S. Postal Service receptacle affixed with the required postage. This entire process takes approximately fourteen days on average. The processing unit clears approximately 75 pieces of mail each day. Mail that is sent to a detainee must also be cleared through the processing unit and stamped "Approved by U.S. Forces" before it can be delivered to the detainee to whom it is addressed. Incoming mail is also typically processed within fourteen days on average.

6. The ICRC also facilitates the delivery of detainee mail to and from Guantanamo Bay. The ICRC pays approximately four visits each year to the detainees for approximately 5-6 weeks per visit. The ICRC provides its own stationery and envelopes to the detainees (although detainees are still required to use Military-issued pens), collects the mail from the detainees, and delivers it to the processing unit. After the mail is cleared by the processing unit, it is returned to the ICRC, who delivers it to the intended recipients. The ICRC also collects mail from outside Guantanamo Bay and delivers the mail directly to the detainees after it is cleared through the processing unit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 17, 2005.

**WADE M. BROWN**
**First Lieutenant, NJARNG**

3

**EXHIBIT D**

# EXHIBIT A

EXHIBIT D

SENDER:

Name (*Last, first MI*) ____________________

Internment Serial Number ____________________

Date and Place of Birth ____________________

Name of Camp ____________________

Country where posted ____________________

*(Fold on this line)*

MAIL LETTER

Language ____________________

To ____________________

Street ____________________

City ____________________

Country ____________________

Province or Department ____________________

*(Fold on this line)*

**DO NOT WRITE HERE**

*(Fold on this line)*

**DA FORM 2667-R, May 82** EDITION OF 1 JUL 63 IS OBSOLETE. For use of this form, see ...; the proponent agency is DCSPER.

EXHIBIT D

DO NOT WRITE BEYOND HEAVY LINES

Reverse of DA FORM 2667-R, May 82

EXHIBIT D

DETAINEE _____
CAMP DELTA
Washington, DC 20353
USA

| SENDER | TO: |
|---|---|
| NAME (Last, first, MI) | |
| INTERNMENT SERAL NUMBER | STREET |
| DATE AND PLACE OF BIRTH | CITY |
| NAME OF CAMP | COUNTRY |
| | PROVINCE OR DEPARTMENT |
| COUNTRY WHERE POSTED | |

DA FORM 2668, JAN 2004    Replaces DA Form 2668-R, May 1982, which is    APD V1.01

| POST CARD | DATE |
|---|---|
| For use of this form, see AR 190-8; the proponent agency is PMG. | |
| LANGUAGE | POWER SERVED |

*WRITE BETWEEN LINES AND AS LEGIBLY AS POSSIBLE*

DA FORM 2668, JAN 2004    APD V1.01

EXHIBIT D

DETAINEE
CAMP DELTA
Washington, DC 20353
USA

EXHIBIT D

<u>NOTIFICATION</u>

1.      You have been notified previously that you may challenge your detention in a United States court by asking a civilian judge to look at the lawfulness of your detention through a process called a *petition for writ of habeas corpus*.  You were told that such a petition could be filed for you, or you could ask a family member, friend, or lawyer to file one for you.

2.      Should you desire the assistance of a lawyer in filing a petition or in helping with a petition you have already sent on your own to the court, the American Bar Association, the world's largest association of lawyers, will find an experienced, independent civilian lawyer to help you without any fee or payment.  The lawyer they find will represent your interests and will zealously assert your case before the civilian court.

3.      If you would like the assistance of such a lawyer, you can fill out the attached form and send it to the following address:

<div align="center">

Robert D. Evans, Esquire
American Bar Association
740 15th Street, N.W.
Washington, D.C. 20005

</div>

Arrangements will then be made for the lawyer to consult with you and represent your interests in the civilian court.  The lawyer's job will be to assist you.  The lawyer will not work for the military or the government.

4.      If you are unable to write, you will receive assistance in filling out the form.  Your words will be put on the form.

# EXHIBIT E

I, _____, wish to
(write name)

have a civilian lawyer represent me and assist me with a Petition for

Writ of Habeas Corpus in the civilian courts of the United States.  I

request that the American Bar Association find a lawyer who will

represent my best interests.


I am a citizen of the country of _____.


I speak the following language(s): _____

_____.


Signed: _____
(sign name)

Date: _____


# EXHIBIT E