**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AMER MOHAMMON, *et al.*,<br><br>　　　　　　Petitioners/Plaintiffs,<br><br>　　v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>　　　　　　Respondents/Defendants. | :<br>:<br>:<br>:<br>:<br>:　Civil Action No. 05-2386 (RBW)<br>:<br>:<br>:<br>: |

**REPLY MEMORANDUM IN SUPPORT OF PETITIONER MAHER EL FALESTENY'S MOTION TO MODIFY THIS COURT'S JANUARY 11, 2006 STAY TO ALLOW FOR ATTORNEY ACCESS TO CLIENT**

As set forth in Petitioner Maher El Falesteny's opening memorandum, Respondents have no legal or logistical reason to refuse to allow Mr. El Falesteny to meet with his counsel during their August 2-6 trip to Guantanamo to meet with another client. Respondents apparently concede the logistical point and argue instead that this Court should deny Petitioner's motion in light of "multiple jurisdictional and procedural deficiencies inherent in this case." Respondents' Memorandum in Opposition to Motion to Lift January 11, 2006 Stay to Allow for Attorney Access to Detainees ("Opposition Brief") at 1. These purported "deficiencies" are largely irrelevant – what does the fact that the *Mohammon* petition includes multiple petitioners have anything to do with Mr. El Falesteny's right to meet with his counsel? Moreover, Respondents' only substantive legal argument – that this Court lacks jurisdiction to grant Petitioner's motion in light of the Detainee Treatment Act of 2005 ("DTA") – has already been rejected numerous times by this Court including, most recently, in *Nasrullah v. Bush*, No. 05-891 (RBW) (June 12, 2006): "The Court is absolutely not persuaded, absent contrary direction by the District of Columbia Circuit, that the DTA has divested the Court of its authority, recognized in

*Al Odah v. United States*, to appoint counsel to represent Guantanamo detainees." *Id.* at 2 (citations omitted).

## ARGUMENT

I.  THIS COURT HAS JURISDICTION TO GRANT THE RELIEF REQUESTED.

As this Court recently stated in *Nasrullah*, "Until instructed by the Court of Appeals that the DTA has divested this Court of jurisdiction over this and similar Guantanamo cases, the Court concludes that it is not powerless to take any action whatsoever with the case in its current posture." *Nasrullah* at 2. The *Nasrullah* decision follows numerous others cited in Petitioner's Opening Brief, where judges of this Court agreed to enter the Protective Order despite the enactment of the DTA. *See* Petitioner's Opening Brief at 4 n.1. As these decisions demonstrate, the enactment of the DTA did not automatically divest this Court of jurisdiction; rather, this Court continues to have the power to act "absent contrary direction by the District of Columbia Circuit." *Nasrulla* at 3. *See also Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 (1998) (the court continues to have "jurisdiction to determine its own jurisdiction.").

Moreover, there is no good reason to delay a visit by counsel until the D.C. Circuit determines the applicability of the DTA to Petitioner's case. As this Court recognized in *Nasrullah,* even if the D.C. Circuit ultimately determines that the DTA is applicable to Mr. El Falesteny's case and his case is moved from this Court to the Court of Appeals, counsel will continue to represent him and still will need to meet with him as part of that representation. *Nasrullah*, at 5. ("[R]egardless of how the Circuit ultimately rules, it seems inconceivable that it will conclude that the detainees will not have the right to the assistance of counsel."); *Adem v. Bush*, No. 05-0723 (RWR) (AK), Mem. Op. at 22, n.25 (D.D.C. Mar. 21, 2006) ("Forcing [Petitioner] to wait until all such proceedings and appeals are concluded before permitting him to

speak with his lawyer renders his right to counsel meaningless.")  Since Mr. El Falesteny first requested counsel approximately one year ago, there have been significant legal developments – described in detail by Respondents (Opposition Brief at pp. 2-5) – that will directly impact Mr. El Falesteny's challenge to his indefinite detention.  Indeed, by the time of counsel's August visit, there will likely have been significant decisions from the Supreme Court and/or the D.C. Circuit.  That Respondents spend so much time talking about these developments in their Opposition Brief only underscores the need for counsel to discuss those topics with Mr. El Falesteny.  Counsel also needs to meet with Mr. El Falesteney to begin to learn about the facts surrounding his detention[1] and observe his physical and mental condition, particularly in light of the well-publicized deaths of three Guantanamo detainees.

## II. THE PURPORTED "PROCEDURAL DEFICIENCIES INHERENT IN THIS CASE" ARE IRRELEVANT

The remainder of Respondents' Brief is littered with irrelevant arguments, couched as "procedural deficiencies," that Respondents have apparently raised in order to "distinguish" this case from *Nasrullah* (Opposition Brief at 8 n.7), but these arguments barely merit comment.  The fact that Mr. El Falesteny's petition was filed as part of a multi-party petition has absolutely no bearing on his right to meet with counsel.[2]  It is equally irrelevant that Mr. El Falesteny filed his petition just before the enactment of the DTA.  Similarly, the fact that Mr. El Falesteny and other petitioners were named twice or more in this action is immaterial to their right to meet with counsel.  It is ironic that Respondents would make this an issue since any

---

[1] While not directly relevant to the issues currently before the Court, it is worth noting that Mr. El Falesteny is not, under any definition of the term, a 'terrorist.'  Further, he denies having engaged, or intended to engage, in any combat against the United States.  See Exhibit A at 2-4.  His presence in the prison seems to be based on his having earned his keep, for a few days, working in food distribution for hostile forces while he was fleeing hostilities in Afghanistan.

[2] There is a simple solution to Respondents' concern about the administrative burdens associated with this multi-party petition: sever the cases and reassign them through the Court's normal assignment process.

confusion over the identities of those being held at Guantanamo is a result of the Department of Defense's failure to release the names of the prisoners being held at Guantanamo until May 15, 2006. Finally, as Respondents properly concede (Opposition Brief at 8, n.9), Mr. El Falesteny's petition is "properly authorized" and the next friend issues raised by Respondents have no application to his case.

## CONCLUSION

For these reasons, as well as the reasons set forth in Petitioner's Opening Brief, Mr. El Falesteny respectfully requests that this Court modify its January 11, 2006 Stay for the very limited purpose of entering the Protective Order in order to enable counsel to meet with Mr. El Falesteny during their August visit to the base. Alternatively, Mr. El Falesteny requests that this Court permit counsel to meet with him without entry of the Protective Order based on an agreement by Mr. El Falesteny's counsel, who is security cleared and has signed the Memorandum of Understanding and Acknowledgment in other *habeas* cases, to abide by the Protective Order fully and in its entirety in connection with the representation of Mr. El Falesteny.

Dated: June 22, 2006 Respectfully submitted,

 /s/ Charles H. Carpenter
Charles H. Carpenter (DC #432004)
Christopher J. Huber (DC #459525)
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, D.C. 20005-2004
Tel: 202.220.1200
Fax: 202.220.1665

Stephen M. Truitt (DC # 13235)
Hamilton Square, Suite 500
600 Fourteenth Street, N.W.
Washington, D.C. 20005-2004
Tel:  202.220.1452
Fax: 202.220.1665