# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMER MOHAMMON, et al., ) | |
| ) | |
| Petitioners, ) | |
| ) | Civil Action No. 05-2386 (RBW) |
| GEORGE W. BUSH, et al., ) | |
| ) | |
| Respondents. ) | |

## ORDER

Currently before the Court are motions on behalf of several petitioners in this case seeking entry of the protective orders the Court has already issued in other cases in which Guantanamo Bay detainees have sought writs of habeas corpus.[1] See, e.g., Nasrullah v. Bush, Civ. No. 05-891, Order (RBW) (June 12, 2006). The respondents oppose these motions on several grounds.[2] First, the respondents argue that the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA"), deprives this Court of jurisdiction to enter the protective order sought by the petitioners. See Respondents' Memorandum in Opposition to

---

[1] The following motions are pending before the Court: (1) Petitioners Fahd Al-Fawzan's and Sanad Alkaliemi's Motion to Temporarily Lift This Court's January 11, 2006, Stay to Allow for Attorney Access to Clients and for Expedited Consideration ("Al-Fawzan Mot."); (2) Motion on Behalf of Petitioner Maher El Falesteny to Modify This Court's January 11, 2006, Stay to Allow for Attorney Access ("El Falesteny Mot."); (3) Emergency Motion on Behalf of Petitioners Abdal Razak Ali and Abdal Rauf Asibi to Temporarily Lift This Court's January 11, 2006 Stay to Allow for Attorney Access to Clients ("Ali Mot."); and (4) Motion of Petitioners Abdul Ghaffar and Adel Noori for Expedited Entry of the Amended Protective Order ("Ghaffar Mot.").

[2] The respondents have filed an opposition to the entry of the protective order with respect to Petitioners Al-Fawzan, Alkaliemi, El-Falesteny, Ali, and Asibi. See Respondents' Memorandum in Opposition to Motions to Lift January 11, 2006, Stay to Allow for Attorney Access to Detainees ("Resps.' Opp.") at 1.
   The Court notes, however, that the respondents filed their memorandum of points and authorities in opposition more than eleven days after being served with Petitioners Al-Fawzan's and Alkaliemi's motion on June 5, 2006. Although the petitioner's motion is not accompanied by a separate certificate of service, the motion is deemed to have been served upon the respondents when it was filed electronically with the Court on March 21, 2006. LCvR 5.4(d)(1)-(2). Accordingly, the opposition to these petitioners' motion is untimely and the Court will therefore treat petitioners Al-Fawzan's and Alkaliemi's motion as conceded. LCvR 7(b).

Petitioner's Motion for Entry of Protective Order ("Resps.' Opp.") at 5-6. Second, the respondents assert that construing the protective orders to ensure the petitioners access to counsel implicates "grave jurisdictional issues." Resps.' Opp. at 9-10. The respondents raised both of these arguments in opposition to the entry of the protective order in other cases, including Nasrullah. The Court expressly rejected the respondents' arguments in Nasrullah, and it discerns no reason to revisit or depart from the ruling made there. Order, Civ. No. 05-891 (June 12, 2006).

Beyond these arguments, the respondents have offered no further support for their position that the Court lacks the authority to enter protective orders affording the petitioner access to counsel while this case is in its current posture. Moreover, the respondents' own words and actions belie such a conclusion. Their willingness to consent to the entry of the protective orders in similar cases even after the DTA came into effect on December 30, 2005, undermines their contention that the Court cannot or ought not enter an order affording the petitioners access to their attorneys. See, e.g., Wahab v. Bush, Civ. No. 05-886 (EGS) (Jan. 10, 2006) (minute order granting unopposed motion for entry of protective order); Khiali-Gul v. Bush, Civ. No. 05-877 (JR) (Jan. 6, 2006) (minute order granting consented motion for entry of protective orders); see also Mohammad v. Bush, Civ. No. 05-879 (RBW), Petitioner's Motion for Court to Enter Protective Orders at 2 (Jan. 6, 2006) (noting that counsel for the respondents "has no objection to the entry" of the protective orders); Bostan v. Bush, Civ. No. 05-883 (RBW), Petitioner's Motion for Court to Enter Protective Orders (Jan. 6, 2006) (same); Zadran v. Bush, Civ. No. 05-2367

(RWR), Unopposed Motion for Entry of a Protective Order at 2 (Jan. 3, 2006) (indicating that counsel for the respondents did not oppose entry of protective order).[3]

Additionally, the respondents themselves have acknowledged several factors which cut against denying the petitioner access to counsel. When seeking a stay in Nasrullah, the respondents noted that the Guantanamo Bay detainees "are likely unfamiliar with United States law and the American legal system, typically do not speak or write English, and have access to the Court only through mail and not the Court's electronic filing system," Nasrullah, Respondents' Motion to Stay Proceedings Pending Related Appeals and for Coordination at 5-6 (June 3, 2005).[4] This reality has not been changed by the passage of the DTA. Denying access to counsel to prisoners in this situation could therefore undermine the efficacy of the Great Writ of habeas corpus. See Rasul v. Bush, 542 U.S. 466, 483-84 (2004) (holding that the Guantanamo Bay detainees have a right of access to federal district courts under 28 U.S.C. § 2241 (2000)); see also Al Odah v. United States, 346 F. Supp. 2d 1, 11 n.12 (D.D.C. 2004) (observing that the Guantanamo Bay detainees "have been afforded access to the courts, which must necessarily be meaningful, and this meaningful access includes the opportunity to consult with counsel in private"). The Supreme Court "has constantly emphasized the fundamental importance of the

---

[3] In their opposition, the respondents contend that "[o]nce the [DTA's] withdrawal of the Court's jurisdiction became effective, however, respondents have consistently opposed entry of the Protective Order in cases where it had not already been entered." Resps.' Opp. at 3-4 n.7. This contention, however, is directly contradicted by what occurred in the cases noted above.

[4] For these reasons, in both Nasrullah and other similar cases, the respondents have in the past expressed their willingness to allow the detainees access to counsel. See Nasrullah, Resps.' Motion to Stay Proceedings Pending Related Appeals and for Coordination at 5-6 (June 3, 2005) (noting that "recruitment of volunteer counsel for petitioners who desire counsel may be appropriate" and that the stay the respondents sought "would permit any such efforts to go forward"); see also Adem v. Bush, Civ. No. 05-723 (RWR), Respondents' Motion to Stay Proceedings Pending Related Appeals at 2 (Apr. 13, 2005) (indicating that "[i]n seeking a stay . . . [the] respondents do not intend thereby to block counsel access to properly represented petitioners.").

writ of habeas corpus in our constitutional scheme" and "has steadfastly insisted that there is no higher duty than to maintain it unimpaired." Johnson v. Avery, 393 U.S. 483, 485 (1969) (internal quotation marks and citation omitted); see also Abu Ali v. Ashcroft, 350 F. Supp. 2d 28, 39-40 (D.D.C. 2004) (recounting the Supreme Court's many statements affirming the central role of habeas corpus in safeguarding liberty). Absent contrary direction by the District of Columbia Circuit, this Court is unwilling to take action that might conceivably dilute the Great Writ itself or impair its exercise.

While the Court rejects the respondents' challenge to its authority to enter the protective orders in this case, the Court takes notice of two types of procedural defects which the respondents assert relate to a large number of the petitioners named in this case. First, the respondents indicate that approximately 75 of the 166 petitioners in this case have filed multiple petitions for writs of habeas corpus. Resps.' Opp. at 2, 7 n.6. Second, the respondents represent that the Department of Defense is unable to identify approximately 60 of the named petitioners. Resps.' Opp. at 2, 8-9.[5] More generally, the respondents highlight procedural difficulties that could ensue if the protective orders are granted with respect to some of the petitioners in this case but not others. Resps.' Opp. at 6 (asserting that entering the protective orders with respect to

---

[5] The respondents also assert that potentially "dozens" of the petitioners named in this case are represented by individuals who do not satisfy the requirements of next friend status set forth by the Supreme Court in Whitmore v. Arkansas, 495 U.S. 149, 163-64 (1990). The Court need not address this issue, however, because it is not persuaded that entering the protective orders in cases where petitions are brought by representatives who do not satisfy all the criteria of next friend status would require the Court to overstep its jurisdictional bounds where the protective orders are entered simply to enable the petitioners to have access to counsel. Indeed, for the very reasons identified by the respondents, see Nasrullah, Respondents' Motion to Stay Proceedings Pending Related Appeals and for Coordination at 5-6 (June 3, 2005), the petitioners are no less in need of counsel to challenge the respondents' allegation that the petitioners' representatives lack next friend status than they are to pursue their underlying habeas actions. Consequently, the Court sees no reason why the alleged deficiencies in the petitioners' representatives' next friend status requires it to deny them access to counsel.

some detainees but not others could "potentially creat[e] a procedural morass fraught with significant administrative burdens").

Cognizant of both procedural defects that may exist with respect to certain individual petitioners and the administrative difficulty of having the protective orders apply to some but not all of the petitioners, the Court concludes that the protective orders should be entered with respect to all the petitioners in this case except (1) those petitioners who have previously filed petitions pending in other cases, and (2) those petitioners named in this case whom the respondents are unable to identify. Accordingly, it is, this 27th day of June, 2006, hereby

**ORDERED** that the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004, in In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. 2004), the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004, in In re Guantanamo Detainee Cases, and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, in In re Guantanamo Detainee Cases, shall also apply in this case, effective immediately, to all petitioners as designated above until ordered otherwise by the Court. It is further

**ORDERED** that the respondents shall notify the Court by July 26, 2006, of all petitioners in this case as to whom the protective orders should not be entered because they have previously-

filed petitions for a writ of habeas corpus already pending on their behalf in other cases.[6] It is further

**ORDERED** that the respondents shall notify the Court by July 26, 2006, of all petitioners named in this case whom they are unable to identify.[7]

**SO ORDERED.**

REGGIE B. WALTON
United States District Judge

---

[6] Any petitioner whom the respondents identify as having previously filed petitions for a writ of habeas corpus that are pending before the Court shall have the opportunity to challenge the respondents' assertion that he has another pending petition.

[7] Any petitioner whom the respondents indicate they are unable to identify shall have the opportunity to challenge the respondents' assertion that he cannot be identified.