IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMER MOHAMMON, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-2386 (RBW) |
| ) | |
| GEORGE W. BUSH, ) | |
| President of the United States, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RESPONDENTS' OPPOSITION TO EMERGENCY MOTION FOR
ACCESS TO COUNSEL AND TO HOLD RESPONDENTS IN CONTEMPT
FILED ON BEHALF OF NAMED PETITIONERS ADEL LNU AND ABDUL RAHMAN**

Respondents hereby oppose the emergency motion for access to counsel and to hold respondents in contempt filed on behalf of petitioners named in the petition as Adel LNU and Abdul Rahman (dkt. no. 84). As explained below, petitioners' counsel have not provided sufficient identifying information with respect to petitioners; accordingly, the Protective Order in this case has not been entered as to petitioners under the terms of the Court's June 27, 2006 Order. Because entry of the Protective Order is a necessary prerequisite to access by counsel to a represented Guantanamo detainee, counsel's motion for access to petitioners must be denied. The issue of petitioners' identity should be addressed in accordance with the Court's June 27 Order, which permits respondents to raise the identification issue by July 26, 2006, with petitioners' counsel being permitted to contest the issue.

**BACKGROUND**

On June 27, 2006, the Court entered the Protective Order[1] with respect to all petitioners in this case except: (1) petitioners who have previously filed petitions pending in other cases, and (2) petitioners whom respondents have been unable to identify. See June 27, 2006 Order at 5 (dkt. no. 66). Entry of the Protective Order with respect to a petitioner, and satisfaction of the Protective Order's requirements are a prerequisite to access to a petitioner at Guantanamo Bay. The Court's June 27, 2006 Order also provided that "respondents shall notify the Court by July 26, 2006, of all petitioners named in this case whom they are unable to identify," and noted that "[a]ny petitioner whom the respondents indicate they are unable to identify shall have the opportunity to challenge the respondents' assertion that he cannot be identified." Id. at 5-6.

As noted in petitioners' motion and explained further below, respondents have not been able to firmly identify the petitioners "Adel LNU" and "Abdul Rahman" on whose behalf this motion is filed. Counsel for petitioners have a visit to Guantanamo Bay scheduled to begin July 24, 2006, for the purpose of meeting with detainees other than petitioners that are the subject of petitioners' motion, and, instead of following the procedure outlined in the Court's June 27, 2006 Order or filing a motion regarding the matter upon being notified by respondents' counsel of the continuing identification problem on July 13, 2006, counsel have filed their emergency motion to compel a visit with the alleged petitioners just two business days before their scheduled visit.

---

[1] In re Guantanamo Detainee Cases, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al. (D.D.C. Nov. 10, 2004).

**ARGUMENT**

I. **PETITIONERS' MOTION SHOULD BE DENIED BECAUSE PETITIONERS COUNSEL PURPORT TO REPRESENT CANNOT BE POSITIVELY IDENTIFIED AS DETAINEES CURRENTLY DETAINED AT GUANTANAMO**.

As noted above, the Court has not entered the Protective Order in this case with respect to petitioners whom respondents cannot identify. As explained below, the petitioners that counsel in this case purport to represent cannot be positively identified by respondents. Because entry of the Protective Order is a necessary prerequisite to access by counsel to a represented Guantanamo detainee, counsel's motion for access to the putative petitioners next week must be denied.

In late 2005, when enactment of Congressional legislation withdrawing the habeas jurisdiction of the federal courts to hear actions brought by or on behalf of aliens detained at Guantanamo Bay became imminent, a surge of petitions for writ of habeas corpus on behalf of Guantanamo detainees were filed in the district court. The above-captioned habeas action, filed on December 13, 2005, is one of these petitions. Unlike the majority of pending Guantanamo detainee habeas cases filed on behalf of only one or a few detainees, however, counsel elected to file this case on behalf of 166 named petitioners, typically unrelated except by virtue of detention at Guantanamo Bay, in an apparent mass effort to seek habeas relief on behalf of those detainees who did not already have a petition pending prior to passage of the Act. Approximately 75 of these petitioners are apparent duplicates of other petitioners in previously-filed Guantanamo cases, or other petitioners in this case. Another approximately 60 petitioners cannot be identified by the Department of Defense ("DoD") as detainees at Guantanamo Bay. Although a handful of the petitioners in this case have directly authorized the filing of a habeas petition on their behalf or seek habeas relief through family members acting as next friends, the vast majority of these

petitioners, including "Abdul Rahman" and "Adel LNU," have cases filed purportedly on their behalf by other detainees seeking to act as their next friends.

The phenomenon of detainees filing petitions purportedly on behalf of other detainees about whom they have little knowledge presents the practical difficulty of identifying the detainees for whom habeas relief is sought. Given the similar names or aliases of many of the approximately 450 individuals detained at Guantanamo Bay, it is often difficult, if not impossible, to correctly identify detainees based on the minimal information provided in the petitions. Respondents are often left trying to guess at a detainee's identity. Indeed, as mentioned above, respondents have yet to identify approximately 60 purported petitioners as individuals presently detained at Guantanamo Bay. Moreover, there have already been two instances in which respondents incorrectly identified petitioners in the Guantanamo Bay detainee cases; errors which, unfortunately, were not discovered until counsel visited and interviewed these detainees at Guantanamo Bay.[2]

The habeas corpus petitions filed on behalf of "Abdul Rahman" and "Adel LNU" are indicative of the problems discussed above. The petitions were not directly authorized by the detainees for whom habeas relief is sought, but instead brought by another detainee – Usama Hasan Abu Kabir – claiming to act as the petitioners' "next friend." See Petition, Smith

---

[2] In addition, the phenomenon of detainees purporting to act as next friends results in counsel improperly abusing the next friend device in order merely to solicit the Guantanamo detainee population for clients, while in the meantime seeking various forms of relief with respect to anyone a purported next friend detainee can remember having come in contact with. Indeed, petitioners "Abduraham LNU" and "Adel LNU" have filed a motion for preliminary injunction requiring respondents to provide counsel and the court with thirty-days advance notice of any intended removal of petitioners from Guantanamo. See dkt. no. 82.

Declaration, Exhibit 4 (dkt. no. 1).  Consequently, the petition provides scant information about the detainees seeking habeas relief.  "Adel LNU" is simply described as a citizen of Turkestan without any other identifying information.  <u>See</u> Petition For A Writ Of Habeas Corpus ¶¶ 232-33.  Based on this limited information, respondents sought to identify petitioner "Adel LNU" as a detainee at Guantanamo, but discovered that other detainees at Guantanamo meet this same identifying criteria, thus making a positive identification impossible.  In their motion, petitioner's counsel claim that "Adel LNU" is a detainee named Adel Noori, who is identified by the Internment Serial Number (ISN) 584.  Counsel, however, offer no convincing evidence as to the certainty of that guess,[3] and given the similar names and aliases among the detainee population at Guantanamo Bay, respondents are unable to confirm this guess without additional identifying information.  Moreover, counsel's guess appears to be based, in part, on the list of Guantanamo Bay prisoners produced by the government in response to Freedom of Information Act requests.  <u>See</u> Petitioner's Motion, Exhibit B.  But this list reflects at least two detainees named Adel from Turkestan, <u>see id.</u> (ISNs 293 & 584), and petitioners have not offered any convincing explanation for their position that Mr. Kabir, when he purportedly authorized a habeas petition on behalf of "Adel LNU," intended to seek relief for Adel Noori (ISN 584) as opposed to Adel Abdulhehim (ISN 293).

   This identity of petitioner "Abdul Rahman" is even more confused.  Indeed, respondents cannot even identify with certainty the name of the petitioner that counsel purport to represent – let alone whether that petitioner is an actual detainee at Guantanamo.  This problem is due to the

---

[3] On July 13, 2006, respondents asked counsel to provide such an explanation, but counsel refused to respond.  <u>See</u> Petitioner's Motion; Exhibit A.

fact that the petition in this case lists three different petitioners with nearly identical names: "Abdul Rhman," "Abdul Rahman" and "Abdurahman LNU." Petitioner "Abdul Rhman" is described as citizen of Tajikistan who speaks English. Id. ¶¶ 78-79. Petitioner "Abdul Rahman" is alleged to be a citizen of Yemen who speaks Arabic. Id. ¶¶ 91-92. Petitioner "Abdurahman LNU" is alleged to be a citizen of Turkestan. Id. ¶¶ 230-231. Counsel have entered appearances in this case only on behalf of the allegedly Yemeni petitioner "Abdul Rahman." See dkt. no. 55-57. Consequently, respondents understand that counsel have intentionally chosen to represent the petitioner who is alleged to be an Arabic speaking citizen of Yemen. In their motion, however, petitioner's counsel contend that "Abdul Rahman" meets neither of the identifying criteria listed in the petition. Instead, counsel claim that he is "Abdul Ghaffar" from Turkestan, who is identified by the Internment Serial Number 281. Counsel offer no explanation for their identification, nor do they explain the disparity between the identifying information in the petition (Abdul Rahman, Yemen, Arabic speaking) and the identification in their motion (Abdul Ghaffar, Turkestan). Based on citations in petitioners' motion, it appears that counsel may have filed an appearance on behalf of the wrong petitioner, as the instant motion appears to seek relief on behalf of petitioner "Abdurahman LNU," not "Abdul Rahman." See Petitioner's Motion (citing paragraphs 230-231 of the habeas petition when referencing petitioner).

In any event, respondents have not been able to identify petitioner "Abdul Rahman" as a detainee at Guantanamo. Indeed, there are six detainees from Yemen with the names "Abdul" and "Rahman" on the list of Guantanamo Bay detainees produced by the government. See Petitioner's Motion, Exhibit B. To the extent counsel claim to represent petitioner "Abdurahman LNU," counsel do not explain the discrepancy between the name listed in the

petition and the name counsel now offer as an identification ("Abdul Ghaffar").[4]  The next-friend detainee, who purportedly authorized litigation on petitioner's behalf, also has not provided providing sufficient information about the petitioner to enable respondents to make a definite identification.  Based on the limited information provided by the next-friend in the petition, respondents tentatively identified "Abdurahman LNU" as a detainee named "Abdullah Abdul Qadirakhun (ISN 285), based on an alias, but this detainee has a habeas petition already pending in a previously filed case.  See Kiyemba v. Bush, 05-CV-1509 (RMU) (petitioner Jalaal Doe).

Pursuant to the Court's June 27, 2006 order, the Amended Protective Order (and supplemental orders) is entered with respect to all the petitioners in this case except "(1) those petitioners who have previously filed petitions pending in other cases, and (2) those petitioners named in this case whom the respondents are unable to identify."  See June 27, 2006 Order (dkt. no. 66).  Because respondents have been unable to identify petitioners "Abdul Rahman" and "Adel LNU" as detainees at Guantanamo who have not already filed habeas petitions, the Amended Protective Order is not entered on their behalf.  Consequently, respondents should not be compelled to provide counsel with access to these alleged detainees.

Furthermore, to the extent petitioners' counsel contest respondents' inability to identify petitioners, the proper course is laid out in the Court's June 27, 2006 Order, that is, respondents

---

[4] Counsel state in their motion that they learned petitioner's real name prior to their appearance in the case, but they do not explain the source of this information.  Indeed, it appears that these identifications may be nothing more than counsel's own guesswork from government's list of detainees (which does not necessarily include all relevant information with respect to a detainee, e.g., aliases), as opposed to direct information from the next-friend detainee who purportedly authorized habeas relief on petitioner's behalf.

will, pursuant to the Order, provide the Court a list of petitioners whom they cannot identify, after which, petitioners' counsel can contest the identification issue. Petitioners' counsel should not be permitted to short-circuit that procedure by filing, as they have done here, an emergency motion attempting to resolve the identification issue (though they provide no explanatory information, as noted above) within two business days of a scheduled visit to Guantanamo.

In sum, the petitioners on whose behalf counsel's motion is filed cannot be firmly identified. Under the Court's June 27, 2006 Order, the Protective Order is not entered with respect to those petitioners.[5] Accordingly, petitioners' counsel's motion for access and for contempt must be denied.[6]

---

[5] Even if the Protective Order were entered with respect to petitioners, however, respondents would oppose an order requiring counsel access to petitioners on the same grounds as explained in respondents' July 12, 2006 Motion for Order to Show Cause Why Petition Should Not Be Dismissed for Lack of Proper "Next Friend" Standing and Memorandum in Opposition to Emergency Motion to Allow Attorney Access to Client (dkt. nos. 76, 77), a copy of which is attached hereto as Exhibit 1 and incorporated herein. As explained there, the Protective Order, even where entered, by its terms does not require respondents to facilitate attorney access to detainees; thus, in order to require respondents to permit counsel access in such an instance, the Court would need to assert authority and jurisdiction independent of the Protective Order, which would be improper given the Detainee Treatment Act's investment of exclusive jurisdiction over this action in the Court of Appeals. Further, instead of granting access in such a case, i.e., were the Protective Order entered, the appropriate course would be for the Court to order petitioners' counsel to show cause why the petition, not directly authorized by petitioners, but instead brought by another detainee claiming to act as their "next friend," should not be dismissed for lack of proper next friend standing. Like the putative "next friend" authorization at issue in respondents' July 12, 2006 motion, Mr. Kabir's "next friend" authorization lists some three dozen detainees whom Kabir believes desire to pursue lawsuits. See Petition, Smith Declaration, Exhibit 4. Mr. Kabir, however, offers no explanation as to why the particular detainees at issue in this motion are incapacitated from availing themselves of the opportunities provided by DoD for detainees to contact the Court directly or to contact counsel.

[6] That no factual basis exist for petitioners' request for contempt is explained above. Even if any question remained, however, a finding of contempt would not be appropriate. For more than a century, the law has been well settled that civil contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the

**CONCLUSION**

For the reasons stated, the Court should deny petitioners' counsel's emergency motion.

Dated: July 20, 2006　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　PETER D. KEISLER
　　　　　　　　　　　　　　　　　　　Assistant Attorney General

　　　　　　　　　　　　　　　　　　　DOUGLAS N. LETTER
　　　　　　　　　　　　　　　　　　　Terrorism Litigation Counsel

　　　　　　　　　　　　　　　　　　　　/s/ *Terry M. Henry*
　　　　　　　　　　　　　　　　　　　JOSEPH H. HUNT (D.C. Bar No. 431134)
　　　　　　　　　　　　　　　　　　　VINCENT M. GARVEY (D.C. Bar No. 127191)
　　　　　　　　　　　　　　　　　　　TERRY M. HENRY
　　　　　　　　　　　　　　　　　　　JAMES J. SCHWARTZ
　　　　　　　　　　　　　　　　　　　PREEYA M. NORONHA
　　　　　　　　　　　　　　　　　　　ROBERT J. KATERBERG
　　　　　　　　　　　　　　　　　　　NICHOLAS J. PATTERSON
　　　　　　　　　　　　　　　　　　　ANDREW I. WARDEN
　　　　　　　　　　　　　　　　　　　EDWARD H. WHITE
　　　　　　　　　　　　　　　　　　　MARC A. PEREZ
　　　　　　　　　　　　　　　　　　　Attorneys
　　　　　　　　　　　　　　　　　　　United States Department of Justice
　　　　　　　　　　　　　　　　　　　Civil Division, Federal Programs Branch
　　　　　　　　　　　　　　　　　　　20 Massachusetts Ave., N.W.
　　　　　　　　　　　　　　　　　　　Washington, DC  20530
　　　　　　　　　　　　　　　　　　　Tel:  (202) 514-4107
　　　　　　　　　　　　　　　　　　　Fax:  (202) 616-8470
　　　　　　　　　　　　　　　　　　　Attorneys for Respondents

---

defendant's conduct," California Paving Co. v. Molitor, 113 U.S. 609, 618 (1885), and here, at the very least, "a fair ground of doubt" exist as to the identification issue.  See also Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993) (for contempt, a violation of a court order "must be proved by 'clear and convincing' evidence") (citations omitted); Joshi v. Professional Health Services, Inc., 817 F.2d 877, 879 (D.C. Cir. 1987) (contempt is a severe and extraordinary remedy to be imposed with the greatest of caution).

-9-