# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMER MOHAMMON, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-CV-2386 (RBW) |
| | ) | |
| GEORGE W. BUSH, | ) | |
| President of the United States, | ) | |
| *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**RESPONDENTS' MEMORANDUM IN OPPOSITION TO EMERGENCY MOTION TO ALLOW ATTORNEY ACCESS TO CLIENT AND MOTION FOR ORDER TO SHOW CAUSE WHY PETITION SHOULD NOT BE DISMISSED FOR LACK OF PROPER "NEXT FRIEND" STANDING**

Respondents hereby oppose petitioners' emergency motion for attorney access to Abdal Razak Ali (dkt. no. 72), a detainee at Guantanamo Bay whose petition for writ of habeas corpus has not been properly authorized and is therefore not properly before this Court. Although the Court has entered the Protective Order with regard to petitioner Abdal Razak Ali, the Protective Order by its terms does not require respondents to permit an attorney visit with a detainee, particularly where, as here, the requirements of the Protective Order have not been satisfied. Thus, in order to require respondents to permit counsel access in this instance, the Court would need to assert authority and jurisdiction independent of the Protective Order, which would be improper given the Detainee Treatment Act's investment of exclusive jurisdiction over this action in the Court of Appeals.

Accordingly, respondents request that the Court provide petitioners the opportunity to demonstrate that the petition for writ of habeas corpus filed on behalf of Abdal Razak Ali has

been properly authorized, which would satisfy the requirements of the Protective Order.  Once

these requirements are satisfied, respondents agree to permit counsel access to this detainee.

Respondents therefore request that the Court order petitioners to show cause why the petition, not

directly authorized by Abdal Razak Ali, the detainee at Guantanamo Bay for whom habeas relief

is sought, but instead brought by another detainee claiming to act as his "next friend," should not

be dismissed for lack of proper next friend standing.[1]  The putative "next friend" detainee in this

case, Omar Deghayes, bears the burden of establishing his next friend status and justifying the

exercise of the Court's jurisdiction over this action.  See Whitmore v. Arkansas, 495 U.S. 149,

163 (1990) ("'Next friend' standing is by no means granted automatically to whomever seeks to

pursue an action on behalf of another.").  To do so, he must satisfy the "two firmly rooted

prerequisites" articulated by the Supreme Court in Whitmore: (1) he must demonstrate that the

detainee on whose behalf he claims to file a petition for writ of habeas corpus cannot challenge

the legality of his detention himself; and (2) he must have a significant relationship with this

detainee in order to demonstrate that he is truly dedicated to the detainee's best interests.  Id. at

163-64.  The petition filed on behalf of petitioner Abdal Razak Ali fails to meet either

requirement.  Petitioners should be provided the opportunity to demonstrate that the petition was

filed by a legitimate next friend, and thereby establish that the petition is properly authorized and

properly before this Court.  If petitioners cannot satisfy the requirements for next friend standing,

the Court cannot exercise jurisdiction over the petition regardless of the Detainee Treatment

Act's withdrawal of the Court's jurisdiction over this action, and the petition must be dismissed.

---

[1]  This motion is without prejudice to respondents' position that the Court lacks
jurisdiction in this case in light of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit.
X, 119 Stat. 2680 ("the Act").  See infra at 3-4 & n.3.

## BACKGROUND

In late 2005, when enactment of Congressional legislation withdrawing the habeas jurisdiction of the federal courts to hear actions brought by or on behalf of aliens detained at Guantanamo Bay became imminent, a surge of petitions for writ of habeas corpus on behalf of Guantanamo detainees were filed in the district court. The above-captioned habeas action, filed on December 13, 2005, is one of these petitions. Unlike the majority of pending Guantanamo detainee habeas cases filed on behalf of only one or a few detainees, however, counsel elected to file this case on behalf of 166 named petitioners, typically unrelated except by virtue of detention at Guantanamo Bay, in an apparent mass effort to seek habeas relief on behalf of those detainees who did not already have a petition pending prior to passage of the Act. Approximately 75 of these petitioners are apparent duplicates of other petitioners in previously-filed Guantanamo cases, or other petitioners in this case. Another approximately 60 petitioners cannot be identified by the Department of Defense ("DoD") as detainees at Guantanamo Bay.[2] Although a handful of the petitioners in this case have directly authorized the filing of a habeas petition on their behalf or seek habeas relief through family members acting as next friends, the vast majority of these petitioners, including Abdal Razak Ali, have cases filed purportedly on their behalf by other detainees seeking to act as their next friends.

On December 30, 2005, the Detainee Treatment Act of 2005 became law. The Act, among other things, amends 28 U.S.C. § 2241 to eliminate court jurisdiction to consider *habeas*

---

[2]  For example, DoD has been unable to identify Abdal Rauf Asibi, another petitioner in this case whom counsel for Abdal Razak Ali also claims to represent. Given respondents' inability to identify this petitioner, however, counsel has conceded that the Court has not entered the Protective Order with regard to Abdal Rauf Asibi, and is therefore not seeking access to him at this time. See Pets' Mot. at 1, n.1.

petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, id., §

1005(e)(1), and creates an exclusive review mechanism in the D.C. Circuit to address the validity

of the detention of such aliens and final decisions of any military commissions, id., § 1005(e)(1),

(e)(2), (e)(3).  Section 1005(e)(2) of the Act states that the D.C. Circuit "shall have exclusive

jurisdiction to determine the validity of any final decision of a Combatant Status Review

Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the

scope and intensiveness of that review.[3]

_____

[3]  While the Supreme Court in Hamdan v. Rumsfeld, 548 U.S. —, slip op. at 7-20 (U.S. June 29, 2006), held that § 1005(e)(1) of the Detainee Treatment Act did not apply to *habeas* petitions pending prior to the enactment of the Act, it recognized that the exclusive review provisions of the Act did expressly apply to cases pending prior to enactment.  Although the petitioner in Hamdan escaped the Act because his challenge did not involve a final decision of a military commission within the exclusive jurisdiction of the Court of Appeals under § 1005(e)(3), the Court reserved the question of the effect of the exclusive review provisions of the Act on other cases, stating that "[t]here may be *habeas* cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3).  We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit."  Hamdan, slip op. at 18, n.14.  The above-captioned case is such a case, i.e., challenging petitioner's designation as an enemy combatant through the Combatant Status Review Tribunal.  Given the Act's investment of exclusive review in the Court of Appeals, the District Court lacks jurisdiction over this case for it is well-settled that an exclusive-review scheme, where applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction, including *habeas corpus*.  Cf., e.g., 5 U.S.C. § 703 ("form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for . . . writs of . . . habeas corpus"); Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); FCC v. ITT World Communications, Inc., 466 U.S. 463, 468 (1984) (Hobbs Act) ("The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute."); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was available . . . the district court was not authorized to hear this § 2241 habeas petition.").  See also Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("even where Congress has not expressly stated that statutory jurisdiction is 'exclusive' . . . a

On January 3, 2006, the Court ordered petitioners to show cause why this case should not

be dismissed for lack of jurisdiction.  See January 4, 2006 Order (dkt. no. 3).  Respondents also

notified the Court that they intended to file a motion to dismiss this case in light of the Act's

withdrawal of the Court's habeas jurisdiction.  See Resps' Notice of Supplemental Authority

(dkt. no. 4).  Counsel were subsequently informed that it was the sense of the Court to await

anticipated guidance from the D.C. Circuit regarding the effect of the Act before proceeding

further in the Guantanamo habeas cases, including with respect to entry of the Protective Order in

cases where it had not already been entered as well as with respect to ruling on any motion to

dismiss respondents' anticipated filing.  Respondents, therefore, have refrained from moving to

dismiss this case, and the Court vacated its order to show cause.  See January 6, 2006 Minute

Order.  Consistent with maintenance of the status quo, during this interim period, respondents

have permitted counsel visits and other privileged access to properly represented detainees in

---

statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in
all cases covered by that statute") (footnote omitted); id. at 75, 78-79 (request for relief in district
court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive
review of the Court of Appeals).  The relief requested by petitioners would require an assertion
of jurisdiction and authority in the case inconsistent with the Act's investment of exclusive
jurisdiction in the Court of Appeals, and respondents' argument in this regard is in no way
immaterial or premature.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)
("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle,
74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases
to exist, the only function remaining to the court is that of announcing the fact and dismissing the
cause.").
       Thus, the Supreme Court's decision in Hamdan has not resolved the issue of whether this
Court may exercise jurisdiction in this case in light of the Act.  The effect of the Act was
addressed in supplemental briefing in the Guantanamo detainee appeals pending before the D.C.
Circuit (Boumediene v. Bush, No. 05-5062, and Al Odah v. United States, No. 05-5064), and
respondents have recently requested that the Court of Appeals permit additional briefing on the
effect of the Hamdan decision on this issue.

cases where the Protective Order had already been entered, and its requirements satisfied, pending a decision from the D.C. Circuit.

Further, on January 11, 2006, this Court stayed "all action" in the above-captioned case and denied all pending motions without prejudice pending resolution by the D.C. Circuit of "serious questions concerning whether this Court retains jurisdiction to hear the above-captioned case[]" in light of the Act. <u>See</u> January 11, 2006 Order (dkt. no. 6). Recently, counsel for certain petitioners requested that the Court lift the January 11, 2006 stay in order to obtain entry of the Protective Order to permit counsel privileged access to these petitioners at Guantanamo Bay. <u>See</u>, <u>e.g.</u>, Emergency Motion on Behalf of Petitioners Abdal Razak Ali and Abdal Rauf Asibi to Temporarily Lift This Court's January 11, 2006 Stay to Allow for Attorney Access to Clients (dkt. no. 52). On June 27, 2006, the Court entered the Protective Order[1] with respect to all petitioners in this case except: (1) petitioners who have previously filed petitions pending in other cases, and (2) petitioners whom respondents have been unable to identify. <u>See</u> June 27, 2006 Order at 5 (dkt. no. 66). The Court also determined that it "need not address" the issue of deficient next friend standing in this case because the Court was "not persuaded that entering the Protective Orders in cases where petitions are brought by representatives who do not satisfy all the criteria of next friend status would require the Court to overstep its jurisdictional bounds

---

[1] <u>In re Guantanamo Detainee Cases</u>, 344 F. Supp. 2d 174 (D.D.C. Nov. 8, 2004) ("Protective Order"); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u> (D.D.C. Dec. 13, 2004); Order Addressing Designation Procedures for "Protected Information" in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et al.</u> (D.D.C. Nov. 10, 2004).

where the Protective Orders are entered simply to enable the petitioners to have access to counsel." Id. at 4, n.5.

Given that entry of the Protective Order in this case does not compel respondents to permit a counsel visit with a detainee, see infra, § I, respondents oppose counsel's motion for access to Abdal Razak Ali until the requirements of the Protective Order with respect to this petitioner are satisfied. To this end, respondents request that the Court issue an order to show cause why this case should not be dismissed for proper next friend standing, in order to provide counsel for petitioner the opportunity to satisfy the requirements of the Protective Order before a visit to petitioner Abdal Razak Ali may proceed.

## **ARGUMENT**

**I.    The Protective Order Does Not Compel Respondents to Provide Counsel Access to Detainees at Guantanamo Bay.**

Although respondents acknowledge that the Court entered the Protective Order with respect to petitioner Abdal Razak Ali, who is identified as a detainee at Guantanamo Bay and apparently does not have a previously-filed petition pending before the Court, the Protective Order does not order, require, or compel respondents to permit a counsel visit with this detainee. The first two paragraphs of the Protective Order set forth its premises, function, and scope:

> 1.    This case likely involves classified national security information or documents, the storage, handling and control of which require special security precautions, and access to which requires a security clearance and a "need to know." This case may also involve other protected information or documents, the storage, handling and control of which may require special precautions in order to protect the security of United States government personnel and facilities, and other significant government interests.

> 2.    The purpose of this Protective Order is to establish the procedures that must be followed by all petitioners' counsel, their respective petitioner(s), all other counsel involved in this case, translators for the parties, and all other individuals who receive access to classified national security information or documents, or other protected information or documents, in connection with this case, including the privilege team as defined in Exhibit A.

Protective Order, ¶¶ 1, 2.

To serve this overarching function of "prevent[ing] the unauthorized disclosure or dissemination of classified national security information and other protected information," id. at 1, the Protective Order further provides that "*Petitioners' counsel* are bound by the terms and conditions set forth in the 'Revised Procedures for Counsel Access to Detainees At the U.S. Naval Base in Guantanamo Bay, Cuba,' and the procedures for handling mail and documents brought into and out of counsel meetings, attached hereto as Exhibit A."  Id., ¶ 6 (emphasis added).  Moreover, "[t]his Protective Order specifically incorporates by reference all terms and conditions established in the procedures contained in Exhibit A *to the extent they place limitations on petitioners' counsel in their access to and interaction with petitioners or handling of information*."  Id. (emphasis added).

The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for *habeas* counsel's access to properly represented detainees and sets out procedures and requirements for the handling of information obtained from and delivered to detainees.  For example, it requires that visiting counsel obtain a security clearance, see id., Ex. A, § III.A, and must sign an affirmation acknowledging his or her agreement to comply with the counsel access procedures.  See id., Ex. A, § III.B.  Further, it provides that "[p]rior to being

8

permitted access to the detainee," counsel must "provide evidence of his or her authority to represent the detainee." Id., Ex. A, § III.C.1.  In other Guantanamo detainee cases, this evidence has typically taken the form of letters from detainees directly authorizing a challenge to their detention, or affidavits and authorizations of "next friends" who have filed petitions on behalf of detainees.  In a proper "next friend" case, because the detainee "remains the real party in interest," see Whitmore v. Arkansas, 495 U.S. 149, 163 (1990), the access procedures further require a second, subsequent type of authorization, directly from the detainee, once counsel in a proper next friend case is provided access to the detainee.[2]  See Protective Order, Ex. A, § III.C.2. (counsel must "provide evidence of his or her authority to represent the detainee as soon as practicable and in any event no later than ten (10) days after the conclusion of a second visit with a detainee").[3]  Thus, while the Access Procedures certainly operate with the assumption that counsel visits will occur in that they set the terms and procedures applicable to any such

---

[2]  This two-layer requirement regarding counsel's authority to bring and then maintain the lawsuit was appropriately established in light of the fact that the Guantanamo *habeas* cases pending at the time the access procedures were negotiated and established were uniformly "next friend" cases.

[3]  Counsel in this case has yet to provide sufficient evidence of her "authority to represent" Abdal Razak Ali, the detainee for whom habeas relief is purportedly sought, i.e., to demonstrate the satisfaction of the requirements of next friend standing in this matter.  See infra, § II.  The Protective Order contemplates counsel access to detainees (including privileged mail correspondence and visits to Guantanamo Bay) only in cases properly before the Court.

visits, they do not themselves compel respondents to provide such visits[4] on demand of counsel.[5]
Hence, the Court cannot compel respondents to permit a visit by counsel with a detainee by
relying upon enforcement of the terms of the Protective Order and Access Procedures.[6]

---

[4] While the Access Procedures provide that "[r]easonable efforts will be made to
accommodate the counsel's request regarding the scheduling of a meeting," that language is
embedded in a paragraph dealing solely with logistical arrangements as to the date and timing of
otherwise appropriate counsel meetings with represented petitioners. See Access Procedures
§ III.D.1.

[5] The relationship between counsel visits and the access procedures in this case would be
analogous to other cases in which an omnibus protective order is entered at the outset of the case
governing the use and handling of information that will be exchanged between parties in
discovery. The omnibus protective order may set the terms of how information obtained in
discovery is to be treated, shared, or stored, for example, but a party's entitlement to any
particular requested discovery is settled through court process (e.g., a motion to compel) and not
through the protective order. Thus, an omnibus protective order operates with the assumption
that discovery will occur, but typically does not by its own terms obligate the parties to produce
any particular information.

[6] Recently, Magistrate Judge Kay has interpreted the Protective Order as guaranteeing any
counsel who purport to represent a detainee privileged access to the detainee even in the face of
respondents' challenge to next friend standing and other jurisdictional challenges in the case.
See Adem v. Bush, 2006 WL 751309 (Mar. 21, 2006) (dkt. no. 36), recons. denied, 2006 WL
1193853 (Apr. 28, 2006) (dkt. no. 42); Sadar Doe v. Bush, No. 05-CV-1704 (JR) (LFO) (AK)
(Memorandum Order dated May 11, 2006) (dkt. no. 33); Said v. Bush, No. 05-CV-2384 (RWR)
(AK) (Memorandum Order dated May 23, 2006) (dkt. no. 23), recons. denied, Minute Order
dated May 26, 2006; Kiyemba v. Bush, No. 05-CV-1509 (RMU) (AK) (Memorandum Order
dated June 29, 2006) (dkt. no. 60); see also Razakah v. Bush, No. 05-CV-2370 (EGS) (Order
dated May 18, 2006) (dkt. no. 23). Respondents have noted the grave jurisdictional issues
presented by the Magistrate Judge's interpretation of the Protective Order, as well as the
inconsistency of that interpretation with the language, history and context of the Protective Order
in the Guantanamo habeas cases, see e.g., Respondents' Motion for Stay and Reconsideration of
Magistrate Judge's Order and Opinion Docketed on March 21, 2006 in Adem v. Bush, No. 05-
CV-0723 (RWR) (dkt. nos. 38, 39); Respondents' Motion for Stay and Reconsideration of
Magistrate Judge's June 29, 2006 Memorandum Order in Kiyemba v. Bush, No. 05-CV-1509
(RMU) (dkt. nos. 61, 62) (copy without exhibits attached hereto as Exhibit A, and incorporated
herein). The Magistrate Judge, however, has brushed aside respondents' objections and granted
counsel access in such circumstances, characterizing his action merely as enforcement of the
terms of the previously entered Protective Order in the case, which, according to the Magistrate
Judge, is unaffected by jurisdictional considerations. See, e.g., Adem, 2006 WL 751309, *8-*11.

Respondents acknowledge the Court's comments in its June 27, 2006 Order entering the Protective Order with regard to certain petitioners in this case, which apparently contemplate that counsel visits will occur pursuant to the Protective Order despite respondents' assertion of deficient next friend standing, see June 27, 2006 Order at 4, n.5, and respondents do not intend to flout the Court's Order entering the Protective Order.  However, given that the Protective Order by its terms does not compel respondents to permit counsel access to detainees, as well as to avoid any perceived waiver with respect to the issue of counsel access to detainees in cases with deficient "next friend" standing that is pending in a number of other Guantanamo detainee cases, respondents are not in a position voluntarily to permit counsel access to petitioner Abdal Razak Ali merely because the Protective Order has been entered in this case.  At bottom, to award petitioners the relief they are requesting, the Court would be asserting jurisdiction and authority independent of the Protective Order to order a visit or grant access to a detainee.  Such an assertion of jurisdiction would be improper in light of the Detainee Treatment Act's investment of exclusive jurisdiction in the Court of Appeals, as well as the absence of jurisdiction due to the current failure of petitioners to demonstrate adequate next friend standing, as discussed further, infra.  Now that the Court has entered the Protective Order in this case, however, respondents are willing to permit counsel access to petitioner Abdal Razak Ali if the requirements of the Protective Order can be satisfied with respect to this detainee.  Thus, respondents request that the Court deny counsel's request for access to Abdal Razak Ali at this time and provide petitioners

---

This Court should not interpret the Protective Order in this case in a fashion that will raise or purport to sidestep the serious jurisdictional issues related to the Detainee Treatment Act, next friend standing and other matters, and the interpretive issues raised by respondents.  See Steel Co., 523 U.S. at 94 ("Without jurisdiction [a] court cannot proceed at all in any cause.").

an opportunity to comply with the requirements of the Protective Order, i.e., resolve the next

friend standing issue.  See infra, § II.  If petitioners are able to demonstrate satisfaction of the

requirements of the Protective Order, respondents will provide counsel access to Abdal Razak

Ali during a future visit to Guantanamo Bay.

## II.    Petitioners Should Be Required To Establish Proper "Next Friend" Standing and Satisfy the Requirements of the Protective Order.

Notwithstanding the Act's investment of exclusive jurisdiction over this action in the

Court of Appeals, given that respondents agree to permit counsel access to petitioner Abdal

Razak Ali if the requirements of the Protective Order are satisfied, respondents request that the

Court order petitioners to demonstrate that the petition filed on behalf of Abdal Razak Ali has

been filed through a next friend meeting standing requirements articulated by the Supreme Court.

It is well-established that "before a federal court can consider the merits of a legal claim,

the person seeking to invoke the jurisdiction of the court must establish the requisite standing to

sue" under Article III of the Constitution.  Whitmore, 495 U.S. at 154.  The standing doctrine

"ensure[s] that the plaintiff has a sufficient personal stake in the outcome of a dispute to render

judicial resolution of it appropriate in a society that takes seriously both the idea of separation of

powers and, more fundamentally, the system of democratic self-government that such separation

serves."  Hamdi v. Rumsfeld, 294 F.3d 598, 602-03 (4th Cir. 2002) (citation and internal

quotations omitted).[7]  "In essence, the question of standing is whether the litigant is entitled to

---

[7]    The cited 2002 decision of the Fourth Circuit in Hamdi ordered dismissal of a habeas case that a public defender and private citizen brought as purported next friends of Hamdi despite having no relationship with him.  That deficiency was cured when Hamdi's father filed a legitimate next-friend petition bearing the same style, which eventually culminated in the 2004 decision of the Supreme Court in Hamdi v. Rumsfeld, 124 S. Ct. 2633 (2004).  See Hamdi, 294 F.3d at 600 n.1, 606-07 & n.4; see also Hamdi, 124 S. Ct. at 2636.  Of course, neither the fact

12

have the court decide the merits of the dispute or of particular issues." <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975). A habeas petitioner has proper standing only if the petition is "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." 28 U.S.C. § 2242. If a petition is brought by someone acting on behalf of the person for whose relief the petition is intended, this "next friend" does not become a party to the action, but "simply pursues the cause on behalf of the detained person, who remains the real party in interest." <u>Whitmore</u>, 495 U.S. at 163.

Next friend standing is not automatically granted to anyone who seeks to pursue an action on behalf of another person, however. <u>See id.</u> Rather, consistent with the constitutional limits established by Article III, a litigant who asserts next friend standing bears the burden of satisfying the "two firmly rooted prerequisites" for next friend status articulated by the Supreme Court in <u>Whitmore</u>:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest.

<u>Id.</u> at 163-64 (internal citations omitted).

The petition filed on behalf of Abdal Razak Ali in the above-captioned case does not meet either prong of the <u>Whitmore</u> test. First, petitioners have failed to demonstrate that the

---

that the defect was cured, nor the Supreme Court's ultimate decision in the properly filed habeas case, undermines or casts doubt on the Fourth Circuit's holdings concerning next friend standing in the defective case brought by the public defender and private citizen.

detainee for whom habeas relief is sought cannot submit a petition on his own behalf.  As explained in the Declaration of Frank Sweigart, the Department of Defense ("DoD") has notified each detainee at Guantanamo Bay of his right to file a petition for habeas corpus, and has provided each detainee with the address of the United States District Court in the event that he desires to submit his own petition to the Court.[8]  See (Second) Sweigart Declaration, ¶¶ 3-5 (attached hereto as Exhibit B).  As a result of these notifications, 58 pro se petitions for writ of habeas corpus have already been filed with the Court.[9]  Furthermore, DoD has taken affirmative

---

[8]  Detainees are afforded the opportunity regularly to send and receive mail through the mail system administered by DoD and through the International Committee for the Red Cross. Detainees are supplied pens, paper and envelopes regularly, and mail privileges cannot be revoked.  See Sweigart Declaration, Ex. D.

[9]  As of September 19, 2005, the date that the Sweigart Declaration was executed, there were 55 pro se petitions filed with the Court.  See Khiali-Gul v. Bush, No. 05-CV-0877 (JR); Rahmattulah v. Bush, No. 05-CV-0878 (CKK); Mohammad v. Bush, No. 05-CV-0879 (RBW); Nasrat v. Bush, No. 05-CV-0880 (ESH); Slahi v. Bush, No. 05-CV-0881 (JR); Rahman v. Bush, No. 05-CV-0882 (GK); Bostan v. Bush, No. 05-CV-0883 (RBW); Muhibullah v. Bush, No. 05-CV-0884 (RMC); Mohammad v. Bush, No. 05-CV-0885 (GK); Wahab v. Bush, No. 05-CV-0886 (EGS); Chaman v. Bush, No. 05-CV-0887 (RWR); Gul v. Bush, No. 05-CV-0888 (CKK); Basardh v. Bush, No. 05-CV-0889 (ESH); Khan v. Bush, No. 05-CV-0890 (RMC); Nasrullah v. Bush, No. 05-CV-0891 (RBW); Shaaban v. Bush, No. 05-CV-0892 (CKK); Sohail v. Bush, No. 05-CV-0993 (RMU); Tohirjanovich v. Bush, No. 05-CV-0994 (JDB); Slahi v. Bush, No. 05-CV-0995 (JR); Mohammad v. Bush, No. 05-CV-0996 (JR); Khudaidad v. Bush, No. 05-CV-0997 (PLF); Al Karim v. Bush, No. 05-CV-0998 (RMU); Al-Khalaqi v. Bush, No. 05-CV-0999 (RBW); Sarajuddin v. Bush, No. 05-CV-1000 (PLF); Kahn v. Bush, No. 05-CV-1001 (ESH); Mohammed v. Bush, No. 05-CV-1002 (EGS); Mangut v. Bush, No. 05-CV-1008 (JDB); Hamad v. Bush, No. 05-CV-1009 (JDB); Khan v. Bush, No. 05-CV-1010 (RJL); Zuhoor v. Bush, No. 05-CV-1011 (JR); Ali Shah v. Bush, No. 05-CV-1012 (ESH); Salaam v. Bush, No. 05-CV-1013 (JDB); Mammar v. Bush, No. 05-CV-1233 (RCL); Ahmed v. Bush, No. 05-CV-1234 (EGS); Baqi v. Bush, No. 05-CV-1235 (PLF); Abdulzaher v. Bush, No. 05-CV-1236 (RWR); Aminullah v. Bush, No. 05-CV-1237 (ESH); Ghalib v. Bush, No. 05-CV-1238 (CKK); Al Khaiy v. Bush, No. 05-CV-1239 (RJL); Altaiy v. Bush, No. 05-CV-1240 (RCL); Bukhari v. Bush, No. 05-CV-1241 (RMC); Pirzai v. Bush, No. 05-CV-1242 (RCL); Peerzai v. Bush, No. 05-CV-1243 (RCL); Alsawam v. Bush, No. 05-CV-1244 (CKK); Mohammadi v. Bush, No. 05-CV-1246 (RWR); Al Ginco v. Bush, No. 05-CV-1310 (RJL); Ullah v. Bush, No. 05-CV-1311 (RCL); Al Bihani v. Bush, No. 05-CV-1312 (RJL); Sadkhan v. Bush, No. 05-CV-1487 (RMC); Faizullah v. Bush,

steps to facilitate legal representation for detainees who have indicated a desire to challenge the legality of their detention by providing such detainees with a form to complete and mail to the American Bar Association ("ABA"), which has agreed to recruit volunteer counsel for detainees desiring representation.  See id., ¶ 7.  In addition, all detainees at Guantanamo Bay have the ability to send and receive mail, allowing them to contact family and friends, see id., Ex. D; supra, note 8, and they have been informed of the option of contacting friends and family to have them file habeas petitions on their behalf.

Given that all detainees have been notified of their right to submit petitions for writ of habeas corpus; that they have the ongoing opportunity to send mail to family, friends, and the Court; and that the ABA has agreed to offer the detainees assistance in securing legal representation, it cannot simply be assumed that the detainee for whom habeas relief is sought cannot submit petitions on their own behalf.  The next friend petition in this case, however, does just that.  See, e.g., Petition, ¶ 289 ("Because his friend and co-detainee Ali has been denied access to legal counsel and to the courts of the United States, Omar Deghayes acts as his Next Friend.").  See also Ahmed v. Bush, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12) ("The petition presumes, rather than demonstrates through facts, that Ahmed has been denied access to the courts of the United States. . . . In light of the fact that several pro se petitions have been filed recently by Guantanamo Bay detainees, Ahmed's lack of access to this

---

No. 05-CV-1489 (RMU); Faraj v. Bush, No. 05-CV-1490 (PLF); Khan v. Bush, No. 05-CV-1491 (JR); Ahmad v. Bush, No. 05-CV-1492 (RCL); Amon v. Bush, No. 05-CV-1493 (RBW); Idris v. Bush, No. 05-CV-1555 (JR).  Since that date, three additional pro se petitions have been filed. See Jamolivich v. Bush, No. 05-CV-2112 (RBW); Feghoul v. Bush, No. 06-CV-0618 (RWR); Rumi v. Bush, No. 06-CV-0619 (RJL).

court cannot be presumed, but must be established.");[10] <u>Hamlily v. Bush</u>, No. 05-CV-0763 (JDB) (Order dated October 3, 2005) (dkt. no. 16) ("[The petition] states only that [Hamlily] is 'being held essentially incommunicado' and that 'his family members have not been able to contact U.S. counsel to file a petition on his behalf.' . . . There is a serious question as to whether this alone is sufficient to establish Hamlily's inability to prosecute this action on his own behalf.");[11] <u>Ahmed Doe v. Bush</u>, No. 05-1458 (ESH), <u>et al.</u>, (Order dated November 4, 2005) (dkt. no. 10) (Oberdorfer, J.) ("Petitioners do not explain why the detainees that they purport to represent as next friends are in a materially different position than the detainees who have filed petitions with this Court.").

---

[10]  The issue of next friend standing was raised <u>sua sponte</u> by Judge Roberts in <u>Ahmed v. Bush</u>, No. 05-CV-0665 (RWR), another Guantanamo Bay detainee case.  Based on an observation that the petition presented scant facts demonstrating that the <u>Whitmore</u> requirements were satisfied, Judge Roberts ordered petitioners to file a memorandum and supporting materials tending to demonstrate that the detainee who purported to act as next friend in that case should be granted next friend standing.  <u>See Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (Order dated May 24, 2005) (dkt. no. 12).  Petitioners filed a memorandum in response to the Court's Order, in an attempt to demonstrate that both prongs of the <u>Whitmore</u> test were satisfied.  <u>See Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (dkt. no. 13).  Although respondents filed a response to petitioners' memorandum indicating that they took no position on petitioners' memorandum at that time, <u>see Ahmed v. Bush</u>, No. 05-CV-0665 (RWR) (dkt. no. 14), and the Court in that case did not issue any subsequent ruling on the issue, respondents now seek to challenge next friend standing in certain recently-filed Guantanamo Bay detainee cases in which the appropriate next friend standing requirements have not been satisfied.

[11]  On October 31, 2005, Judge Bates discharged the order to show cause regarding next friend standing that he entered <u>sua sponte</u> in <u>Hamlily v. Bush</u> based on counsel's showing that the detainee in that case directly requested legal representation and authorized counsel's filing of the petition.  <u>See</u> Order dated October 31, 2005 in <u>Hamlily v. Bush</u>, No. 05-CV-0763 (JDB) (dkt. no. 19) (discharging order to show cause and dismissing next friend petitioner in the case). Judge Bates noted, however, that "counsel's filing fail[ed] to address several of the serious deficiencies in next friend standing" raised in the Court's order to show cause.  <u>See id.</u> at 2.

Absent evidence that Abdal Razak Ali cannot submit a petition on his own behalf,

petitioners cannot demonstrate proper next friend standing, and the Court cannot exercise

jurisdiction over the petition.  See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("It

is a long-settled principle that standing cannot be 'inferred argumentatively from averments in

the pleadings,' but rather 'must affirmatively appear in the record.'") (citations omitted).

The purported "next friend" in this case has also failed to satisfy the second requirement

of the Whitmore test — he has not established that he has a "significant relationship" with the

detainee on whose behalf habeas relief is sought such that he is "truly dedicated to [his] best

interests."  See Whitmore, 495 U.S. at 163-64.[12]  The requirement of a "significant relationship"

---

[12]  The majority of Circuits that have been confronted with the issue have construed
Whitmore to require a "significant relationship" as part of the second prong of the test for next
friend standing.  See Hamdi v. Rumsfeld, 294 F.3d 598, 604 (4th Cir. 2002) ("Whitmore is thus
most faithfully understood as requiring a would-be next friend to have a significant relationship
with the real party in interest."); Coalition of Clergy, Lawyers, and Professors v. Bush, 310 F.3d
1153, 1162 (9th Cir. 2002) ("Combining the 'significant relationship' requirement, however,
with the 'dedicated to best interests' consideration . . . meets the concerns the Whitmore Court
addressed."); T.W. v. Brophy, 124 F.3d 893, 897 (7th Cir. 1997) ("It follows, as the Court
suggested in the Whitmore case, that not just anyone who expresses an interest in the subject
matter of a suit is eligible to be the plaintiff's next friend – that he 'must have some significant
relationship with the real party in interest'"); Amerson v. Iowa, 59 F.3d 92, 93 n.3 (8th Cir. 1995)
(under Whitmore, the "next friend has [the] burden to establish . . . that she has some "significant
relationship with [the] real party in interest"); Zettlemoyer v. Horn, 53 F.3d 24, 27 n.4 (3d Cir.
1995) (observing that "[t]he Whitmore Court also . . . suggested that the party 'must have some
significant relationship with the real party in interest'").  See also Al Odah v. Bush, 321 F.3d
1134, 1138 (D.C. Cir. 2003), rev'd on other grounds, Rasul v. Bush, 542 U.S. 466 (2004) (stating
that the family members of Guantanamo detainees who filed habeas petitions on their behalf
"demonstrated through affidavits that they are 'truly dedicated to the best interests of these
individuals,' [and] that they have a 'significant relationship' with the detainees . . .") (citing
Whitmore, 495 U.S. at 163-64).  Although the Eleventh Circuit questioned whether Whitmore
established "some significant relationship" as an independent requirement, it nevertheless noted
the importance of a relationship in demonstrating whether a putative next friend "can show true
dedication to the best interests of the person on whose behalf he seeks to litigate."  Sanchez-
Velasco v. Secretary of the Dep't of Corrections, 287 F.3d 1015, 1026-27 (11th Cir. 2002).  See
also Centobie v. Campbell, 407 F.3d 1149, 1151 (11th Cir. 2005) ("We conclude that Puzone is

with the real party in interest is necessary to ensure that a next friend will genuinely pursue the interests of the person in custody (who at all times remains the real party in interest) and will not (1) merely use the litigation as a vehicle for advancing his own agenda or (2) assume he or she is in tune with the real party's desires and interests.  See id. at 164 (cautioning against "intruders or uninvited meddlers" filing lawsuits on behalf of unwitting strangers).

Thus, under the "significant relationship" requirement, courts have generally limited next friend standing to close relatives such as parents, siblings, and spouses.  See, e.g., Vargas v. Lambert, 159 F.3d 1161, 1168 (9th Cir. 1998) (mother); Hamdi, 294 F.3d at 600 n.1 (father); Smith ex rel. Missouri Pub. Defender Comm'n v. Armontrout, 812 F.2d 1050 (8th Cir. 1987) (brother); In re Ferrens, No. 4746, 8 F. Cas. 1158, 1159 (S.D.N.Y. 1869) (wife).  Attorneys who have previously represented an individual seeking habeas corpus have also been permitted to act as next friends based on that pre-existing relationship.  See Sanchez-Velasco, 287 F.3d at 1026 ("'[S]ome significant relationship' does exist when the would-be next friend has served in a prior proceeding as counsel for the real party in interest and did so with his consent.").  Distant relatives or simple acquaintances generally do not have a sufficient relationship to establish next friend standing, see, e.g., Davis v. Austin, 492 F. Supp. 273, 274-76 (N.D. Ga. 1980) (neither detainee's first cousin nor a minister who had counseled detainee could sue as next friend) (cited with approval in Whitmore, 495 U.S. at 164), and petitions filed by total strangers purporting to act as next friends are typically dismissed for lack of jurisdiction.  See, e.g., Hamdi, 294 F.3d at

---

not 'truly dedicated to the best interests of the person on whose behalf [s]he seeks to litigate,' and she does not have 'some significant relationship with the party in interest.'") (citing Hauser v. Moore, 223 F.3d 1316, 1322 (11th Cir. 2000)).

603-07 (dismissing petitions brought by a public defender and private citizen who had no relationship to the detainee).

In the above-captioned case, the putative next friend petitioner has failed to demonstrate that he has any sort of "significant relationship" with Abdal Razak Ali, the detainee for whom habeas relief is sought.  The "authorization" submitted in support of Omar Deghayes's next friend status states simply that he is acting as a "close friend" to a list of nearly two dozen detainees.  See Declaration of Clive Stafford Smith (attached to Petition), Ex. 8.  The authorization further provides only names, nationalities, and camp locations where these individuals were purportedly detained at one time.  See id.  The dearth of basic biographical and personal information about the detainees on whose behalf habeas relief is sought indicates that Omar Deghayes does not share any meaningful relationship with these detainees and, therefore, cannot be determined to be acting in their best interests.[13]  Because even acquaintances cannot satisfy the requirement of a significant relationship under Whitmore, and the minimal information presented in the petition indicates that the purported next friend merely knows of Abdal Razak Ali or, at best, is mere acquaintances with him, Omar Deghayes has failed to demonstrate that he is "truly dedicated to [Abdal Razak Ali's] best interests."  Whitmore, 495 U.S. at 163.  Absent proof that evidences a significant relationship, petitioners cannot

---

[13]  If a detainee were able to act as next friend for another detainee simply based on the mere fact that they are both detained at Guantanamo, detainees or prisoners could purport to bring mass habeas corpus petitions simply by being able to list the identities of those detained alongside them, a situation that is surely inconsistent with standing jurisprudence.  See Othman v. Bush, No. 05-CV-2088 (RWR) (dkt. no. 2) ("The petition's characterization of Al Wahab as Othman's "companion" is an insufficient showing upon which to make any judgment about Al Wahab's fitness to serve[] as next friend.  The companionship may be by dint of mere fortuity of co-location in detention with no more substance to the relationship than that.").

demonstrate proper next friend standing, and the Court cannot exercise jurisdiction over the

petition filed on behalf of Abdal Razak Ali in the above-captioned case.[14]

In sum, the petition filed on behalf of Abdal Razak Ali in this case fails to satisfy the

standing requirements articulated by the Supreme Court in Whitmore.  Jurisdiction must be

established and the petition must be properly before the Court before any proceedings may

commence.  Notwithstanding the Act's withdrawal of the Court's jurisdiction over this case, if

petitioners are unable to demonstrate that the petition was filed by a legitimate next friend, the

Court cannot exercise jurisdiction over the petition, and the petition must be dismissed for lack

of standing.

## **CONCLUSION**

For the reasons stated, the Court should deny petitioners' emergency motion for attorney

access to petitioner Abdal Razak Ali at this time.  Petitioners should be ordered to satisfy the

requirements of the Protective Order prior to being granted access to Abdal Razak Ali.  Thus, the

Court should order petitioners to show cause why the petition filed on behalf of Abdal Razak Ali

should not be dismissed for lack of proper next friend standing.

Dated:  July 12, 2006                                Respectfully submitted,

                                                     PETER D. KEISLER
                                                     Assistant Attorney General

---

[14]  Approximately 200 detainees at Guantanamo Bay have filed petitions for writ of habeas corpus through family members who arguably meet the "significant relationship" requirement.  See, e.g., Hatim v. Bush, No. 05-CV-1429 (RMU) (filed on behalf of two detainees by their siblings, Fatima Nasser Yahia Abdullah Kussrof and Ali Mohammed Saleh Al-Salahi); Rabbani v. Bush, No. 05-CV-1607 (JR) (filed on behalf of two detainees by their wives, Malika and Fouzia Ahmmed); Sadkhan v. Bush, No. 05-CV-1679 (RJL) (filed on behalf of detainee by his father, Jabbar Sadkhan Al-Sahlani).

DOUGLAS N. LETTER
Terrorism Litigation Counsel


_____/s/ Preeya M. Noronha_____
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
TERRY M. HENRY
JAMES J. SCHWARTZ
PREEYA M. NORONHA
EDWARD H. WHITE
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
MARC A. PEREZ
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-4107
Fax:  (202) 616-8470

Attorneys for Respondents