IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMER MOHAMMON, *et al.*,

    Petitioners,

  v.      No. 05-CV-2386 (RBW) (AK)

GEORGE W. BUSH, *et al.*,

    Respondents.

---

**MEMORANDUM OF LAW OF CERTAIN PETITIONERS IN
OPPOSITION TO RESPONDENTS' MOTION FOR APPOINTMENT OF
A "FILTER TEAM" TO EXAMINE PRIVILEGED COMMUNICATIONS**

    Certain petitioners, by and through their undersigned counsel, respectfully submit this memorandum of law in opposition to Respondents' motion for appointment of a Department of Defense "filter team" to examine privileged communications seized without notice or approval, filed July 7, 2006.[1]  Respondents' motion should be denied.

### Introduction

    On December 21, 2005, the Center for Constitutional Rights ("CCR") filed a *habeas corpus* petition on behalf of all petitioners in the above-captioned case.  These petitioners include more than 150 detainees from numerous countries throughout the world, all of whom are imprisoned at the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo").

---

[1] This memorandum is filed on behalf of all petitioners in this case who have not already responded to Respondents' motion through their individual *habeas* counsel, who represent them as co-counsel with the Center for Constitutional Rights.

On June 10, 2006, three detainees died while in Respondents' exclusive care, custody and control, and while subject to the jurisdiction of the federal courts. Although they were detained virtually *incommunicado* for several years, none of these men had ever been charged with an offense or received a fair hearing at which he might challenge the legality of his indefinite detention. Immediately after the deaths of these men, the Naval Criminal Investigative Service ("NCIS") began a criminal investigation apparently to determine the cause and circumstances of the deaths, including whether these detainees or other detainees may have engaged in a suicide "plot" intended as an act of "asymmetrical warfare" or a "good PR move."[2] NCIS unilaterally seized nearly all detainees' attorney-client materials and other materials on or about June 14, 2006. NCIS agents subsequently reviewed materials taken from at least eleven detainees, including three envelopes containing confidential legal materials, without any prior notice to counsel or the Court. These deliberate actions plainly violated the attorney-client privilege.

On July 7, 2006, Respondents filed a motion notifying the Court for the first time that they had seized 1,100 pounds of attorney-client materials and other materials from the detainees. Respondents also sought the creation of a Department of Defense "filter team" to review the seized materials and separate privileged and non-privileged documents. Respondents filed identical motions in every Guantánamo detainee case, except those few cases involving

---

[2] *See* Carol Rosenberg, *Commander: Suicide Plots Continuing*, Miami Herald, June 20, 2006 (Statement of Rear Adm. Harry Harris, Jr.); Catherine Phillip, *US Dismisses Suicides as "Good PR Stunt"*, Times (U.K.), June 12, 2006 (Statement of Senior State Department Official Colleen Graffy).

non-enemy combatant detainees, apparently without regard for whether materials were actually seized from the detainee-petitioners in each case.[3]

Petitioners now oppose Respondents' motion on several grounds. The Court should first deny Respondents' motion because the appointment of a filter team is unnecessary. It does not appear that Petitioners had privileged communications with their attorneys prior to the detainee deaths and Respondents' seizure of detainee materials, which would require a filter team to separate privileged and non-privileged documents. Second, Respondents' motion is also premature. To the extent that Respondents contend that there are petitioners in this case whom they cannot identify or who have previously-filed *habeas* petitions pending in other cases, *see* Response to Order of the Court (dkt. no. 109), and to the extent that those detainees may have had privileged communications with their attorneys in their earlier-filed cases which were seized by Respondents, the Court should not decide the instant motion until those underlying issues have been resolved with respect to these petitioners. Finally, the Court should deny Respondents' motion on the merits for all of the reasons set forth by the petitioners in the *Abdah* and *Al Odah* detainee cases.

## Argument

### I. RESPONDENTS' MOTION SHOULD BE DENIED BECAUSE THE APPOINTMENT OF A FILTER TEAM IS UNNECESSARY IN THIS CASE

Respondents' motion should be denied because it does not appear that Petitioners submitting this opposition had privileged communications with their attorneys prior to the deaths of the three detainees on June 10, 2006, and the seizure of detainee materials on or about June 14, 2006. Indeed, given the great lengths to which Respondents have gone to prevent detainees

---

[3] Respondents have since withdrawn their motion in certain cases where they have determined that no materials were seized from the petitioners. They have not done so here.

from having any meaningful access to the outside world, it is unlikely that Respondents could have seized *any* materials from Petitioners prior to entry of the Amended Protective Order.

After CCR filed the petition in this case in December 2005, Respondents refused to consent to entry of the Amended Protective Order and would not allow Petitioners to meet with their counsel. Nor would Respondents permit Petitioners to communicate with their counsel through the legal mail system until the Amended Protective Order was entered. Petitioners thus filed various motions seeking expedited entry of the Amended Protective Order and access to their counsel.

It was not until approximately two weeks after the detainee deaths and Respondents' unilateral seizure of nearly all detainee materials that this Court entered an order granting in part and denying in part Petitioners' motions for entry of the Amended Protective Order. On June 27, 2006, the Court concluded that the Amended Protective Order should be entered as to all petitioners in this case, except those who already have petitions pending or whom Respondents are unable to identify. The Court further ordered that the Amended Protective Order "shall also apply in this case, effective immediately, to all petitioners as designated above until ordered otherwise by the Court." June 27, 2006 Order (dkt. no. 66), at 5. In addition, the order required Respondents to notify the Court by July 26, 2006, of any petitioners as to whom the Amended Protective Order should not be entered either because they have previously-filed *habeas* petitions pending in other cases or because Respondents are unable to identify them as current detainees.

Accordingly, because Respondents have consistently attempted to – and largely succeeded in – staunching all attorney-client communications and frustrating counsel access to detainees in this case, it does not appear that any of the petitioners here had privileged

communications with their attorneys prior to the detainee deaths and Respondents' seizure of detainee materials. Privileged communications were simply not possible until the Court entered the Amended Protective Order on June 27, 2006.[4] Nor have Respondents offered any basis – and we are aware of none – to suggest that Petitioners have misused (or participated in the misuse by others of) the attorney-client privilege in any way that would merit the invasion and disruption of that privilege by the appointment of a filter team. Unless Respondents seek somehow to interfere with Petitioners' privileged communications since the detainee deaths and their seizure of detainee materials, the appointment of a filter team is wholly unnecessary and the Court should deny Respondents' motion on this basis.

**II.   RESPONDENTS' MOTION IS ALSO PREMATURE
PENDING THE RESOLUTION OF OTHER UNDERLYING ISSUES**

The only conceivable reason why Respondents may have filed their motion for appointment for a filter team in this case is because they believe that some of the petitioners have previously-filed *habeas* petitions pending in other cases, and that those detainees received attorney-client materials from their counsel in their earlier-filed cases which were seized by Respondents on or about June 14, 2006. While Respondents may ultimately be correct that some of the petitioners in this case have duplicate petitions pending in other cases – which we do not concede here – that issue and the attendant issue of whether Respondents have been able to identify various petitioners as current detainees at Guantánamo have not yet been resolved.

This Court should not decide the instant motion for appointment of a filter team until it can determine with certainty (i) whether any of the petitioners in this case actually have previously-filed *habeas* petitions pending in other cases, (ii) whether Respondents seized any

---

[4] Since the Amended Protective Order was entered, Petitioners have been able to communicate with their attorneys through the legal mail system, and some have met with their counsel. However, Respondents continue to oppose nearly all counsel access to detainees in this case.

materials (privileged or otherwise) from those detainees, and (iii) whether those detainees have already responded to Respondents' motion for appointment of a filter team in their other cases. Prior to resolution of these issues, it remains unclear whether or to what extent the Court may resolve Respondents' motion.[5] For instance, if the Court concludes that only a few of the petitioners have filed duplicate petitions, and those petitioners either have not had any privileged communications with their attorneys in either of their cases, or have already responded to Respondents' motion in their earlier-filed cases, it would not be necessary for the Court to rule on Respondents' motion in this case.

Moreover, to the extent that Respondents are able to identify specific petitioners in this case from whom they seized materials, they should do so now in order to help narrow the disputed issues and avoid unnecessary litigation that needlessly expends judicial resources. There is simply no reason why counsel and the Court should be required to guess at the basis for Respondents' motion in this case. If Respondents seized materials from detainees whom they believe are petitioners in this case, they should simply disclose the identities of those petitioners so that counsel and the Court may focus on those detainees and determine without further delay whether it is necessary for the Court to rule on Respondents' instant motion in this case.

### III.   THE COURT SHOULD DENY RESPONDENTS' MOTION ON THE MERITS FOR ALL OF THE REASONS SET FORTH BY THE PETITIONERS IN *ABDAH* AND *AL ODAH*

Finally, Respondents' motion should be denied on the merits for all of the reasons set forth by the petitioners in *Abdah v. Bush*, No. 04 CV 1254 (HHK) (AK) (D.D.C.) (July 18,

---

[5] Petitioners intend to file an initial response to Respondents' July 26, 2006 filing as soon as possible. Among other things, Petitioners seek to narrow the issues that the Court must resolve by noting the duplicate petition assertions by Respondents with which they agree or disagree, and providing additional identification information for some of the petitioners whom Respondents allegedly cannot identify.

2006) (dkt. no. 177), and *Al Odah v. Bush*, No. 02 CV 0828 (CKK) (D.D.C.) (July 21, 2006) (dkt. no. 294). In particular, on July 28, 2006, the Court of Appeals rejected a plan, proposed by the government and approved by the District Court, to create a government filter team to review potentially privileged materials seized by the government pursuant to a search warrant in a criminal investigation of Representative William Jefferson. *See United States v. Rayburn House Office Bld'g, Room 2113, Washington, D.C. 20515*, No. 06-3105, slip. Op. at 1-2 (D.C. Cir. July 28, 2006). Respondents' filter team proposal in this case is virtually identical to the proposal recently rejected by the Court of Appeals, and thus should likewise be rejected here. *See* Notice of Supplemental Authority, *Abdah v. Bush*, No. 04 CV 1254 (HHK) (AK) (D.D.C.) (July 31, 2006) (dkt. no. 184). The detainee materials improperly seized by Respondents should instead be transferred forthwith to the custody of the Court or a Special Master appointed by the Court. In light of Respondents' deliberate actions in violation of the attorney-client privilege, under no circumstances should the Department of Defense be permitted to continue to retain control of the seized materials.

## Conclusion

For all of the foregoing reasons, Respondents' motion should be denied.

Dated:   New York, New York
         August 4, 2006

                              Respectfully submitted,

                              Counsel for Petitioners:

                              /s/ Gitanjali S. Gutierrez
                              Barbara Olshansky (NY-0057)
                              Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
                              CENTER FOR CONSTITUTIONAL RIGHTS
                              666 Broadway, 7th Floor
                              New York, New York 10012
                              Tel: (212) 614-6439
                              Fax: (212) 614-6499