IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.*, <br> (ABDAL RAZAK ALI) <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, <br> President of the United States, <br> *et al.*, <br><br> Respondents. | Civil Action No. 05-CV-2386 (RBW) |

**RESPONDENTS' OPPOSITION TO MOTION FOR RULE TO SHOW CAUSE AND RESPONSE TO COURT'S AUGUST 17, 2006 ORDER**

    Respondents hereby oppose petitioner Abdal Razak Ali's Motion For Rule To Show Cause (dkt. no. 129) and respond to the Court's August 17, 2006 Order (dkt. no. 139) directing respondents to explain why they should not be held in contempt of the Court's July 14, 2006 Order (dkt. no. 79).

    Respondents are not in contempt of the Court's July 14 Order. Petitioner's counsel was provided with the opportunity to meet with her purported client, Abdal Razak Ali (ISN 685), during her visit to Guantanamo Bay on July 15-20, 2006, consistent with the terms of the Court's July 14 Order. After learning that the detainee did not speak English, however, petitioner's counsel led Guantanamo personnel to believe that she would not meet with ISN 685. Indeed, petitioner's counsel was informed that arrangements had been made for her to meet with ISN 685, but petitioner's counsel informed Guantanamo personnel that such a meeting would be pointless because counsel did not bring a translator with her to Guantanamo. Consequently, Guantanamo personnel cancelled the scheduled meeting between counsel and ISN 685.

Civil contempt is an extraordinary remedy reserved only for clear and convincing violations of court orders. Respondents are not now and have not been in contempt of the Court's July 14 Order. Contrary to the allegations in petitioner's motion, Guantanamo personnel made ISN 685 available for counsel meetings and undertook diligent efforts to resolve the confusion created by petitioner's counsel regarding the identity of her purported client. For these reasons, as explained more fully below, petitioner's motion should be denied and respondents should not be held in contempt of the Court's July 14, 2006 Order.

## BACKGROUND

**I.    Litigation Leading To Court's July 14, 2006 Order**.

In June 2006 respondents made arrangements for petitioner's counsel to visit the United States Naval Base in Guantanamo Bay, Cuba, from July 15-20 to conduct four days of meetings with a detainee counsel represents in another Guantanamo habeas case, petitioner Abdul Hamid Abdul Salam Al-Ghizzawi (Internment Serial Number or ISN 654) in Al-Ghizzawi v. Bush, 05-CV-2378 (JDB). On June 27, this Court issued an Order (dkt. no. 66) in the above-captioned case entering the Amended Protective Order and Procedures for Counsel Access to Detainees at the United State Naval Base in Guantanamo Bay, Cuba, as well as other supplemental orders, with respect to all petitioners "except (1) those petitioners who have previously filed petitions pending in other cases, and (2) those petitioners named in this case whom the respondents are unable to identify." Immediately following entry of the Court's order, petitioner's counsel sent an e-mail requesting permission to meet with two petitioners in the above-captioned case during her visit to Guantanamo in July. See Exhibit A (June 27, 2006 e-mail from Candace Gorman to Andrew Warden). Petitioner's counsel specifically requested to see her "other two clients Abdel

Razak Ali Abdel Rahman, ISN 685 and Abdul Rauf Omar Mohammed Abu Al Qusin, ISN 709" and asked whether either of these petitioners fell into the exceptions identified in the Court's June 27 Order. Id.

On July 10, 2006, respondents informed petitioner's counsel that access to petitioners would not be permitted. See Exhibit B (July 10, 2006 e-mail from Andrew Warden to Candace Gorman). With respect to petitioner Abdal Razak Ali (ISN 685), respondents informed petitioner's counsel that while this petitioner had been identified as a detainee currently detained at Guantanamo who had not filed a duplicate habeas petition in another case,[1] respondents objected to providing counsel access to this petitioner because of lack of proper "next friend" standing. See id. Petitioner's counsel subsequently filed an emergency motion for access to petitioner Ali (dkt. no. 72), in which counsel sought access to "Petitioner Mr. Abdal Razak Ali AKA Mr. Abdaul Razak Ali-Haj AKA Abdel Razak Abdel Rahman, ISN 685" during her visit to Guantanamo on July 15-20. Respondents opposed petitioner's motion (dkt. no. 76) and the Court held a hearing regarding the motion on July 14, 2006. At the conclusion of the hearing, the Court issued an oral order directing respondents to provide petitioner's counsel with access to petitioner Ali during counsel's upcoming visit to Guantanamo. The Court also issued a written order that day, stating "that H. Candace Gorman, counsel for Petitioner Abdal Razak Ali, shall be permitted to meet with Petitioner Ali at the Guantanamo Bay Naval Base for the sole

---

[1] With regard to the petitioner listed on the petition as Abdal Rauf Asibi, respondents informed petitioner's counsel that no such detainee could be identified. As noted above, petitioner's counsel has also referred to petitioner Asibi as Abdul Rauf Omar Mohammed Abu Al Qusin, ISN 709, but that detainee already as a habeas corpus petition pending on his behalf in another case. See Exhibit B.

purpose of verifying that Petitioner Ali authorized his putative next friend, Omar Deghayes, to bring a petition for habeas corpus on his behalf." See July 14, 2006 Order (dkt. No. 79).

## II.     Petitioners' Counsel's July 2006 Visit To Guantanamo Bay.

Immediately following entry of the Court's July 14, 2006 Order, respondents began to make arrangements for petitioner's counsel to meet with petitioner Ali (ISN 685) on July 19, 2006. See Declaration of Commander Patrick McCarthy ¶ 4 (attached hereto as Exhibit C) ("McCarthy Decl."). Petitioner's counsel arrived at Guantanamo Bay on the evening of July 15, 2006, as scheduled. Id. ¶ 5. Petitioner's counsel did not bring an interpreter with her to the base. Id. Prior to leaving for Guantanamo, petitioner's counsel requested and received confirmation from respondents' counsel that petitioner's counsel's other purported client, petitioner Al-Ghizzawi (ISN 654), spoke English, among other languages. See Exhibit D (June 9, 2006 e-mail from Andrew Warden to Candace Gorman). However, petitioner's counsel did not seek similar confirmation regarding the language abilities of petitioner Ali (ISN 685) prior to her visit.[2]

On July 17, 2006, during the course of her meetings with petitioner Al-Ghizzawi, petitioner's counsel began expressing doubts to the JTF-Guantanamo personnel who were escorting her about whether detainee ISN 685 was actually her client. See McCarthy Decl. ¶ 6. The confusion regarding the identity of petitioner's counsel's purported client first arose when counsel began referring to her purported client by the name on the petition in this case during a conversation with the escort staff, while the escort staff was using the ISN number for proper

---

[2] At the request of petitioners' counsel in the Guantanamo Bay habeas litigation, respondents' counsel have consistently provided information about petitioners' language abilities so counsel can make arrangements for interpreters, as appropriate, prior to their visits to Guantanamo Bay.

identification. See id. In light of the number of names and aliases among the detainee population at Guantanamo, and as well as difficulties with transliteration of names from Arabic and other languages to English, Guantanamo personnel commonly refer to detainees by their Internment Serial Number (ISN). At petitioner's counsel's request, the escort staff informed counsel of the current name used by JTF-Guantanamo for detainee ISN 685, which differed substantially from the name on counsel's legal papers. Id. Further, petitioner's counsel told the escort staff that it was her understanding that ISN 685 was a Libyan detainee who spoke English, but counsel was informed that, according to the current records of JTF-Guantanamo, detainee ISN 685 was an Algerian detainee who spoke Arabic. Id. Petitioner's counsel then began asking the escorts numerous questions about the identity of detainee ISN 685, including his name, aliases, nationality and the languages he spoke. Id. These questions were forwarded to the Staff Judge Advocate's office, the office at Guantanamo responsible for providing legal advice, in an effort to clarify the identity of petitioner's counsel's purported client. Id.

During the afternoon of July 17, Guantanamo personnel researched the languages spoken by detainee ISN 685. Id. ¶ 7. After considerable time and effort expended by Guantanamo personnel, it was confirmed that detainee ISN 685 was Algerian and spoke Arabic only. Id. Petitioner's counsel was advised of her purported client's nationality and language limitations, accordingly. Id. However, petitioner's counsel continued to insist that her client should be a Libyan who spoke English. Id. Additionally, petitioner's counsel stated that her purported client was the brother of her other client, petitioner Al-Ghizzawi (ISN 654). Id. Although petitioner's counsel continued to express doubts about her purported client's identity, Guantanamo personnel remained confident that ISN 685 was the proper detainee to whom counsel should have access.

Id.

In response to this unprecedented situation, on July 18, 2006, a senior JAG Corps attorney from the Staff Judge Advocate's office continued to pursue resolution of the issue by contacting respondents' counsel and explaining the nature of petitioner's counsel's concerns regarding the identity of her purported client.  Id. ¶ 8.  Respondents' counsel confirmed that detainee ISN 685 was, in fact, Ms. Gorman's purported client.  Id.  Further, respondents' counsel confirmed that petitioner's counsel had specifically requested to meet with ISN 685 during her visit.  Id.  This information was subsequently relayed to petitioner's counsel by Guantanamo personnel.  Id.

Near the end of the day on July 18, petitioner's counsel once again raised the identity issue, this time with the Camp Echo[3] Non-Commissioned Officer in Charge (NCIOC), following her meeting with her other client, petitioner Al-Ghizzawi (ISN 654).  Id. ¶ 9.  During the discussion, the NCIOC made it clear to petitioner's counsel that arrangements had been made for her to meet with ISN 685 on July 19, 2006.  Id.  In response, petitioner's counsel stated her concern that detainee ISN 685 did not speak English and she could not speak Arabic.  Id. Petitioner's counsel told the NCOIC that because of the language barrier, such a meeting would be pointless.  Id.  Instead of meeting with detainee ISN 685, petitioner's counsel informed the NCOIC that she would go bird watching and inquired about the potential security issues associated with bird watching at Guantanamo Bay.  Id.  Based on this conversation, the NCOIC understood that petitioner's counsel was cancelling her meeting with ISN 685 on July 19, 2006.

---

[3] Camp Echo is the area of Guantanamo Bay where meetings between detainees and their counsel generally take place.

After petitioner's counsel departed Camp Echo at the end of the day, Guantanamo personnel took steps to cancel the previously-scheduled meeting with ISN 685. Id. ¶ 10.

On July 19, 2006, petitioner's counsel, along with other visiting counsel, traveled to the Windward side of the base on the 8 a.m. ferry.[4] Id. ¶ 11. The escort who met the group of counsel informed petitioner's counsel that she was not scheduled to meet with any detainees.[5] Id. After being informed by petitioner's counsel that she was attempting to interview a new client, the escort contacted a JAG attorney from Staff Judge Advocate's office, who relayed the previous day's events and requested confirmation from petitioner's counsel that detainee ISN 685 was, in fact, the purported client that she wanted to interview. Id. At approximately 9:15 a.m., the other visiting counsel were dropped off at Camp Echo, and petitioner's counsel was accompanied back to the Navy Exchange[6] by the escort, where they continued to discuss the confusion regarding the identity of her purported client. Id. ¶ 12. During this entire process, petitioner's counsel continued to disagree with the identification of detainee ISN 685 as her purported client because the specific name that she had on her court paperwork differed from the name currently used and understood by JTF-Guantanamo to identify detainee ISN 685. Id. Petitioner's counsel remained convinced that detainee ISN 685 was not her client and she was hesitant to attempt to meet him because of the language barrier. Id. After discussing these

---

[4] Visiting counsel are lodged in the Combined Bachelors Quarters on the Leeward side of Guantanamo Bay and take a ferry across the bay each morning to the Windward side of the base, where Camp Echo is located, to conduct interviews with detainees.

[5] The escort who met counsel on July 19 was a different person from the escort assigned the previous two days. See McCarthy Decl. ¶ 11.

[6] The Navy Exchange is the primary commercial center at Guantanamo that sells a large variety of products and services, including clothes and food.

issues, petitioner's counsel left the escort with the impression that she did not want to meet with detainee ISN 685. Id. Accordingly, efforts were not undertaken to move detainee ISN 685 to Camp Echo on July 19. A meeting between petitioner's counsel and her purported client, detainee ISN 685, would have been arranged, however, if counsel had requested such access. Id.

## ARGUMENT

### I.    The Civil Contempt Power.

Courts have inherent power to enforce compliance with their lawful orders through civil contempt. Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993). For more than a century, however, the law has been well-settled that civil contempt "is a severe remedy, and should not be resorted to where there is fair ground of doubt as to the wrongfulness of the defendant's conduct." California Paving Co. v. Molitor, 113 U.S. 609, 618 (1885). "In light of the [contempt] remedy's extraordinary nature, courts rightly impose it with caution." Joshi v. Professional Health Services, Inc., 817 F.2d 877, 879 n.2 (D.C. Cir. 1987). As the Supreme Court has held, "the very amplitude of the power is a warning to use it with discretion, and a command never to exert it where it is not necessary or proper." Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 451 (1911). Indeed, in order to prevent abuses of the contempt power and to protect those on whom the potent authority may be visited, Congress has long regulated the exercise of the contempt power by statute. See 18 U.S.C. § 401 (providing that a court of the United States shall have the power to punish only certain acts as contempt, including "[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command"); In re McConnell, 370 U.S. 230, 233-34 (1962); Nye v. United States, 313 U.S. 33, 44-48 (1941); In re Brown, 454 F.2d 999, 1002 (D.C. Cir. 1971).

Accordingly, civil "contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous . . . and the violation must be proved by 'clear and convincing' evidence." Armstrong, 1 F.3d at 1289 (citations omitted); see SEC v. Showalter, 227 F. Supp. 2d 110, 120-21 (D.D.C. 2002) (Urbina, J.).  As the Supreme Court has explained:

> The judicial contempt power is a potent weapon.  When it is founded upon a decree too vague to be understood, it can be a deadly one.  Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid.

International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 76 (1967) (discussing Fed. R. Civ. P. 65(d) regarding injunctions).

Civil contempt is a remedial device used to achieve compliance with an order of the court that is being violated, see Showalter, 227 F. Supp. 2d at 120-21, and contempt sanctions can be avoided by prompt compliance with the order, see Petties v. District of Columbia, 888 F. Supp. 165, 169 (D.D.C. 1995) (Friedman, J.).  Defenses to civil contempt can include impossibility of compliance with the order.  See, e.g., SEC v. Ormont Drug & Chem. Co., 739 F.2d 654, 656-57 (D.C. Cir. 1984).  Further, the Supreme Court has suggested that civil contempt proceedings may be inappropriate in cases involving out-of-court disobedience to complex injunctions.  See Int'l Union, United Mine Workers v. Bagwell, 512 U.S. 821, 833-34 (1994).[7]

---

[7] In addition, courts have held that civil contempt fines are not available against the United States and its officials under the doctrine of sovereign immunity.  See United States v. Horn, 29 F.3d 754, 763, 765 n.13, 767 (1st Cir. 1994) (citing cases); United States v. Waksberg, 881 F. Supp. 36, 39–41 (D.D.C. 1995) (June Green, J.), vacated and remanded on other grounds,112 F.3d 1225 (D.C. Cir. 1997).  But see Am. Rivers v. U.S. Army Corps of Eng'rs, 274 F. Supp. 2d 62, 69 (D.D.C. 2003) (Kessler, J.) (rejecting assertion of sovereign immunity with respect to coercive, as opposed to compensatory, contempt fines).

**II.    Respondents Are Not In Contempt Of The Court's July 14, 2006 Order.**

Respondents are not now and have not been in contempt of the Court's July 14, 2006 Order. That order directed respondents to provide petitioner's counsel with access to petitioner Abdah Razak Ali, who petitioner's counsel has identified at all events in this litigation as detainee ISN 685. As explained in the declaration of the Staff Judge Advocate, JTF-Guantanamo, submitted herewith, respondents made the necessary arrangements for petitioner's counsel to meet with detainee ISN 685 on July 19, 2006, but petitioner's counsel during her visit led JTF-Guantanamo to believe she would not meet with the detainee. Petitioner's counsel informed Guantanamo guard force personnel on July 18 that such a meeting would be pointless because the detainee did not speak English and counsel did not bring a translator with her to Guantanamo. Consequently, Guantanamo personnel cancelled the scheduled meeting between petitioner's counsel and ISN 685. Further, petitioner's counsel reaffirmed her resistance to meeting with ISN 685 in her discussions with her military escort on July 19. A meeting between petitioner's counsel and her purported client, detainee ISN 685, was arranged and would have gone forward but for petitioner's counsel's resistance to meeting with ISN 685.

Petitioner's counsel's motion attempts to hold Guantanamo authorities responsible, via contempt, for the confusion regarding the identity of petitioner's counsel's purported client, even though it was petitioner's counsel who created the confusion. Petitioner's counsel has at all times in this litigation identified her purported client as the detainee with ISN 685. See Exhibit A (June 27, 2006 e-mail from Candace Gorman to Andrew Warden); Petitioner's Emergency Motion for Access to Abdal Razak Ali (dkt. no. 72). Nevertheless, after arriving at Guantanamo, petitioner's counsel for the first time began expressing doubts that ISN 685 was her purported

client. Without ever explaining the source or basis for her information, petitioner's counsel informed Guantanamo personnel that ISN 685 was apparently an English-speaking Libyan who is the brother of petitioner Al-Ghizzawi (ISN 654), another Guantanamo detainee represented by counsel. Petitioner's counsel could have sought to confirm this information with respondents prior to arriving at Guantanamo, as counsel did with her other client, but she did not. See Exhibit B (July 10, 2006 e-mail from Andrew Warden to Candace Gorman confirming language ability of petitioner Al-Ghizzawi). Instead, petitioner's counsel arrived at Guantanamo without an interpreter and, based on apparent misinformation, insisted that her purported client speaks English, even though extensive research by Guantanamo personnel confirmed that ISN 685 speaks Arabic only. Notwithstanding the confusion regarding ISN 685's language ability, however, petitioner's counsel's meeting with ISN 685 was arranged and could have gone forward had not counsel indicated she would not meet with ISN 685, causing Guantanamo personnel to cancel the meeting.

Petitioner's counsel also complains that Guantanamo personnel did not permit her to meet with her purported client because counsel did not refer to ISN 685 as having the same name used by Guantanamo. This allegation is unfounded, as Guantanamo personnel offered petitioner's counsel the opportunity to meet with the detainee, ISN 685, counsel has identified as her client throughout this litigation. Moreover, because such discrepancies regarding the names of many Guantanamo detainees are common, particularly given aliases and difficulties with transliteration of names, Guantanamo personnel routinely refer to detainees by their ISN to avoid confusion about the identity of a particular detainee. Thus, it was petitioner's counsel who created problems concerning petitioner's identity by insisting that Guantanamo personnel

somehow had the "wrong name" for her client, even though Guantanamo was prepared to make ISN 685 available to petitioner's counsel. In any event, the question of ISN 685's proper name is not material to the question of whether respondents should be held in contempt of the Court's July 14 Order. Civil contempt is an extraordinary remedy reserved only for clear and convincing violations of court orders. Respondents are not in violation the Court's July 14 Order because Guantanamo personnel made ISN 685 available for counsel during her visit to Guantanamo.[8]

### CONCLUSION

For the reasons explained above, petitioner's motion should be denied and respondents should not be held in contempt of the Court's July 14, 2006 Order.


Dated: August 21, 2006                          Respectfully submitted,

                                                PETER D. KEISLER
                                                Assistant Attorney General

                                                DOUGLAS N. LETTER
                                                Terrorism Litigation Counsel

                                                  /s/ Andrew I. Warden
                                                JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                TERRY M. HENRY
                                                JAMES J. SCHWARTZ
                                                PREEYA M. NORONHA
                                                ROBERT J. KATERBERG

---

[8] With respect to the scheduling of any future visit to Guantanamo, ISN 685 can be made available for meetings with petitioner's counsel, but if it is counsel's position that the petitioner in this case – "Abdal Razak Ali" – is not ISN 685, and the petitioner is instead an English speaking Libyan who is the brother of counsel's other Guantanamo client, respondents are not aware at this time of any detainee at Guantanamo that meets these identifying criteria. Accordingly, respondents would not be in a position to arrange for counsel access to that detainee.

        ANDREW I. WARDEN (IN Bar No. 23840-49)
        NICHOLAS J. PATTERSON
        EDWARD H. WHITE
        MARC A. PEREZ
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Ave., N.W.
        Washington, DC  20530
        Tel:  (202) 514-4107
        Fax:  (202) 616-8470

        Attorneys for Respondents