# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, et al. )<br>(ABDAL RAZAK ALI) )<br>   Petitioners/Plaintiffs )<br>v. )<br>)<br>GEORGE W. BUSH, et al. )<br>Respondents/Defendants )<br>) | CIVIL ACTION<br>NO. 05-2386 (RBW) |

Pursuant to 28 U.S.C. §1746, I, Patrick M. McCarthy, hereby declare that to the best of my knowledge, information, and belief, the following is true, accurate, and correct:

1. I am a Commander in the United States Navy with over eighteen (18) years of active duty service. I currently serve as the Staff Judge Advocate, Joint Task Force – Guantanamo, Guantanamo Bay, Cuba (JTF-GTMO). I am responsible for all legal advice and the completion of all legal responsibilities on behalf of JTF-GTMO. I have served in this position since May 2, 2006.

2. My responsibilities include facilitating habeas corpus counsel access to their clients who are detained by JTF-GTMO and compliance by such counsel with JTF-GTMO security procedures and force protection safeguards.

3. On or about August 1, 2006, I was advised by Mr. Andrew Warden from the U.S. Department of Justice that Ms. Candace Gorman was alleging that she had been prevented from meeting with her purported client, detainee ISN 685, during her visit to Guantanamo Bay, Cuba, from July 16 -19, 2006. Upon learning of Ms. Gorman's extremely serious allegations, I ordered an investigation into the matter. The following

declaration is based on my personal knowledge of events and information received by me in the course of my official duties.

4. Ms. Candace Gorman was originally scheduled to see only detainee ISN 654 (a petitioner in Al-Gizzawi v. Bush, 05-CV-2378-JDB), for the four-day period July 16-19, 2006. However, on July 14, 2006, my office received an email from Mr. Warden indicating that we should make arrangements for Ms. Gorman to meet with detainee ISN 685 during her visit. My office took steps to ensure that detainee ISN 685 was available to meet with Ms. Gorman in the morning and afternoon of July 19, 2006.

5. Ms. Gorman arrived at Guantanamo Bay on the evening of July 15, 2006, as planned. Ms. Gorman did not bring an interpreter with her. Ms. Gorman's original client, detainee ISN 654, is a Libyan who speaks English, therefore, she had no need to bring an interpreter with her for that meeting. However, detainee ISN 685 is an Algerian who speaks only Arabic. According to Ms. Gorman, she does not speak Arabic.

6. On July 17, 2006, Ms. Gorman began expressing doubts to the JTF-GTMO personnel who were escorting her about whether detainee ISN 685 was actually her client. The confusion regarding the identity of Ms. Gorman's purported client was first identified when Ms. Gorman began referring to her purported client by the names on legal paperwork, "Amer Mohammon" and "Abdal Razak Ali," while the escort staff was using the ISN for proper identification. Upon Ms. Gorman's request, the escort staff informed Ms. Gorman of the current name used by JTF-GTMO to identify ISN 685, which differed substantially from the names on Ms. Gorman's legal documentation. Further, it was Ms. Gorman's understanding that ISN 685 was a Libyan detainee who spoke English, but Ms. Gorman was informed that, according to the current records of JTF-GTMO, detainee ISN

2

685 was an Algerian detainee who spoke Arabic. Ms. Gorman then began asking the escorts numerous questions about the identity of detainee ISN 685, including his name, aliases, nationality, and the languages he spoke. Questions were forwarded to the Staff Judge Advocate's office in an effort to clarify the identity of detainee ISN 685.

7. During the afternoon of July 17, 2006, a member of the guard staff researched the languages spoken by detainee ISN 685. After considerable time and effort expended by members of my attorney staff, my escort staff, and the Joint Detention Group staff, it was confirmed that detainee ISN 685 was Algerian and spoke only Arabic. Ms. Gorman was advised of her purported client's nationality and language limitations, accordingly. However, Ms. Gorman continued to insist that her client should be a Libyan who spoke English. Incredibly, she suggested to the JTF-GTMO escort staff that perhaps we could research our database for other Libyans in the Camp who spoke English in order to identify the detainee who might be her real client. Ms. Gorman also thought her client was the brother of detainee ISN 654. Although Ms. Gorman continued to express doubts about her purported client's identity, the guard staff and Staff Judge Advocate's office remained confident that ISN 685 was the proper detainee.

8. In response to this rather unprecedented situation, on July 18, 2006, a senior JAG Corps attorney from my office continued to pursue resolution of the issue by sending an email to Mr. Warden explaining the nature of Ms. Gorman's concerns and seeking guidance. Mr. Warden confirmed that detainee ISN 685 was, in fact, Ms. Gorman's purported client. Further, Mr. Warden confirmed that Ms. Gorman had specifically requested to meet with ISN 685 during her visit. This information was relayed through

3

my staff to the escort staff, who in turn advised Ms. Gorman that detainee ISN 685 was, in fact, her purported client.

9. Still unsatisfied, Ms. Gorman discussed the matter again with the Camp Echo Non-Commissioned Officer in Charge (NCOIC) later in the day on the 18th of July, following her meeting with detainee ISN 654. During the discussion, the NCOIC made it clear to Ms. Gorman that arrangements had been made for her to meet with her purported client, detainee ISN 685 on July 19, 2006. In response, Ms. Gorman stated her concern that detainee ISN 685 did not speak English and she could not speak Arabic. She told the NCOIC that because of the language barrier, such a meeting the next afternoon would be pointless. Instead of meeting with detainee ISN 685, Ms. Gorman informed the NCOIC that she would go bird watching and discussed at some length her special interest in the Cuban woodpecker. Ms. Gorman also inquired about the potential security issues associated with bird watching at Guantanamo Bay. Based on this conversation, the NCOIC understood that Ms. Gorman had no intention of meeting with ISN 685 on July 19, 2006.

10. After Ms. Gorman departed, the Camp Echo NCOIC contacted the Staff Judge Advocate's office NCOIC and indicated that Ms. Gorman had said she would not be visiting detainee ISN 685 the next day, as she would be bird watching instead. Ms. Gorman's decision to cancel the meeting with detainee ISN 685 was then conveyed to the Joint Detention Group officer who is responsible for arranging habeas counsel visits.

11. On July 19, 2006, Ms. Gorman arrived on the Guantanamo Bay Windward side on the 8:00 a.m. ferry. She and several other attorneys were met by the duty escort. This was a different escort from the previous two days. The party was escorted to breakfast

before heading to Camp Echo. The escort noted that Ms. Gorman was not scheduled to see anyone that morning and in discussing that with Ms. Gorman, was told by her that detainee ISN 685 was a "new client" who she was going to try to meet. The escort then contacted a JAG officer from the Staff Judge Advocate's office who relayed the previous day's events; in addition to asking the escort to pass a message to Ms. Gorman confirming that detainee ISN 685 was, in fact, Ms. Gorman's purported client. Ms. Gorman continued to disagree with the identification of detainee ISN 685 as her purported client because the specific name that she had on her court paperwork differed from the name currently used and understood by JTF-GTMO to identify detainee ISN 685.

12. At about 9:15 a.m., Ms. Gorman and the other visiting counsel proceeded to Camp Echo, the area of JTF-GTMO where meetings between attorneys and detainees generally take place. When the other attorneys entered Camp Echo, Ms. Gorman was accompanied back to the Navy Exchange by the escort and they continued to discuss her confusion regarding the identity of her client. She remained convinced that detainee ISN 685 was not her client because the names did not match and he did not speak English. She was hesitant to attempt to meet him, because she did not believe he was her client, and she was unable to communicate with him because of the language barrier. After discussion of these issues, Ms. Gorman left the escort with the impression that she did not want to see detainee ISN 685. Accordingly, efforts were not undertaken to move detainee ISN 685 to Camp Echo on July 19, 2006. A meeting between Ms. Gorman and her purported client, detainee ISN 685, would have been arranged, however, if Ms. Gorman had requested such access.

5

13. Given the confusion regarding the identity of her purported client, Ms. Gorman proposed that JTF-GTMO provide her the principal variations of detainee ISN 685's name so that when she returned to her office she could sort out her client's identity. The escort called an attorney from the Staff Judge Advocate's office and asked if it would be possible to obtain this information. The attorney indicated that obtaining the names would be possible, but it would have to be after lunch. Ms. Gorman indicated that she would return to the Guantanamo Bay Leeward side on the 11:30 a.m. ferry, and asked if the names could be sent back with one of the other habeas counsel. The escort agreed and Ms. Gorman departed the Windward side of the base seemingly satisfied with the course of events.

14. Any assertion that Ms. Gorman was not allowed or otherwise not permitted to meet with her purported client, detainee ISN 685, is not true. Ms. Gorman arrived at Guantanamo Bay completely unprepared to meet with the detainee who is her purported client. Her actions in this regard imposed unnecessary and unreasonable burdens on the dedicated staff of professionals who work to facilitate meetings between detainees and their counsel. Indeed, my staff works diligently to accommodate numerous requests by counsel regarding access to detainees and any claim that steps were taken to thwart Ms. Gorman's access to her purported client, particularly in the face of a court order, is without merit.

15. I declare under penalty of perjury pursuant to the laws of the United States that the foregoing is true and correct, to the best of my knowledge, information, and belief.

Dated: August 21, 2006

Patrick M. McCarthy
Commander, JAGC, U.S. Navy
Staff Judge Advocate, JTF-GTMO