# EXHIBIT
# A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMER MOHAMMON, et al. | ) | |
| (ABDAL RAZAK ALI) | ) | |
| | ) | |
| Petitioners/Plaintiffs | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | NO. 05-2386 (RBW) |
| | ) | |
| GEORGE W. BUSH, et al. | ) | |
| | ) | |
| Respondents/Defendants | ) | |
| | ) | |

**AFFIDAVIT OF H. CANDACE GORMAN**

**I, H. Candace Gorman, swear as follows:**

1. That I am counsel for Mr. Abdal Razak Ali, ISN 685 (hereinafter Razak Ali).

2. On July 10, 2006 I filed a renewed emergency motion asking that I be allowed to visit with my client, Mr. Razak Ali, while at Guantánamo during the week beginning July 15, 2006 visiting another client.

3. On July 14th, 2006 this Court held a hearing on Petitioners Motion and entered an Order allowing me to visit with Mr. Razak Ali. The government raised no objection regarding the identity of my client.

4.  I asked for that emergency relief in part so that I could respond to the government's pending Motion and notice (which I filed on August 3rd, 2006) and also so that I could visit with my client in a cost effective way since the other visit was also taking place, as I am a sole practitioner footing all of the costs of the litigation personally.

5.  On July 16th as the government was preparing me for my first meeting with my other client, I informed my escort of this court's order and was told that because it was Sunday nothing could be done but to bring the issue up with officials on Monday.

6.  On Monday July 17th 2006, I told my escort that I had received a court order on Friday allowing me to see my second client during my visit and that I wanted to make whatever arrangements I needed to insure the visit would happen on Wednesday July 19th, 2006, the final day of my visit to the base.  I was told that "judges' orders don't work here, we consider those only *advisory*."  The escort also said that he would look into the matter and I told the escort my client's name, ISN number and the information that he was Libyan.

7.  Later that day, the escort informed me that the name for the detainee was quite different than the name for the detainee with ISN 685 and that it could not be the same person.

8. The escort stated that if he found out any additional information he would tell the escort for the next day.

9. On Tuesday July 18th, 2006 I asked the escort if he knew whether or not the identity of my second client had been cleared up for my visit on Wednesday.  He did not know but he told me we would be seeing the JAG that morning so I could ask him.

10.  I spoke with the JAG the morning of July 18th, 2006 and asked him if he would look into the issue surrounding the identity of my client because I was told that the individual with my client's ISN number had a totally different name and was not Libyan.  He said he would look into it.

11. At the end of the day on Tuesday, I asked the escort if he would contact the JAG so that I could find out if I was going to be able to see my client the next day.  He called the JAG and turned over the telephone to me.  The JAG explained that he had passed the job on to someone else and that he would check with them and call me that evening at my quarters.  I never received a call.

12. On Wednesday, I went to the base with the other attorneys. The escort was surprised to see me and told me that there wasn't a client for me to see.  I asked him if we could look into this issue some more so that I could figure out exactly what the problem was with my client's identity.  I explained to the escort that I had a list provided by the government that

showed my clients name, ISN number and nationality.  He told me that

the list must be incorrect because they had a very different name for my

client and he was not Libyan.  He told me that we would take the other

attorneys to see their clients and then we would work on my issue.

13. After we dropped some of the other attorneys off at the detention center,

the escort attempted to contact the JAG to figure out what to do about my

client identification issue.  We spent about 45 minutes trying to reach

someone who could help sort the issue out, but were unsuccessful. The

escort told me that the JAG was in a meeting and would not be out of the

meeting until that afternoon.  I was told that I would have to take the

11:30 ferry back to the other side of the base.  I asked the escort if he

would please write down the name of the person that they were claiming

was ISN 685, so that when I got back to my office in Chicago I could try to

sort it out.  I gave him a sheet of paper with the three spellings I had for

my client's name.  He told me he would get the name they had, write it on

a piece of paper and send it with one of the other attorneys at the end of

the day.  I was taken to the 11:30 ferry and I headed back to the other side

of the base.

14. That evening I was given an envelope that had been left at the hotel desk

for me.  In the envelope was the same piece of paper I had given my escort

and under the three spellings of my client's name that I had written was a

list of 10 possible names for ISN 685.  The first name on the list was the same name that I had for my client.  (see Ex. 1)

15. It was clear when I received that list Wednesday night with my client's name that there was no identity problem regarding my client, that his name was the same name that I had, yet I was unable to meet with Mr. Razak Ali during my visit.

I state the following under penalty of perjury.


/s/ H. Candace Gorman
H. Candace Gorman

# Exhibit 1

Abdal Razak Ali

Abdaal Rajak Ali - Haj

Abd-el Razak Ali - @ Abdel Rahman

685 (ALIAS)
↓

1  ABDELRAHMAN, ABDELRAZAK ALI

2  AL JAZAIRI, ABU USAMA

3  AL JAZAIRI, USAMA

4  AL LIBI, USAMA

5  AL RAZAK, AAB

6  AL RIZAK, ABDUL

7  AZAK, ABDULLAH

8  BAKHKHOOSH, SAID

9  RAZAK, ABDULLAH

10  BAKUSH, SAID BIN BRAHIM BIN UMRAN

Approved For Public Filing By DoD
Protected Information Redacted
August 21, 2006

# EXHIBIT

# B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMER MOHAMMON, et al. | ) | |
| (ABDAL RAZAK ALI) | ) | |
| | ) | |
| Petitioners/Plaintiffs | ) | |
| | ) | CIVIL ACTION |
| v. | ) | |
| | ) | NO. 05-2386 (RBW) |
| | ) | |
| GEORGE W. BUSH, et al. | ) | |
| | ) | |
| Respondents/Defendants | ) | |
| | ) | |

## AFFIDAVIT OF RICHARD G. MURPHY, JR.

| | |
|---|---|
| WASHINGTON | ) |
| | ) SS. |
| DISTRICT OF COLUMBIA | ) |

Richard G. Murphy, Jr., being first duly sworn, deposes and says as follows:

1.    Affiant is counsel for the petitioners in the case of Al-Adahi v. Bush, Case No. 05-CV-280 (GK), now pending in this Court.

2.    On Wednesday, July 19, 2006, Affiant was visiting the United States Naval Base at Guantanamo Bay, Cuba (the "Base") for the purpose of meeting with his clients.

3.    On that morning, Affiant and other habeas counsel, including Ms. Candace Gorman, traveled from the leeward side of the Base to the windward side of the Base on the 8:00 ferry. All of the habeas counsel, except Ms. Gorman, had confirmed that their clients would be available to meet with them on that day.

4.    Ms. Gorman explained to Affiant that she was traveling to the windward side of the Base even though she did not have a meeting arranged because she hoped she could straighten out confusion concerning the identity of one of her two clients and arrange to meet with that client before she was scheduled to leave the Base on Thursday, July 20, 2006.

5.    After arriving on the windward side of the Base, Affiant and Ms. Gorman parted company and Affiant did not see Ms. Gorman again until he returned to the leeward side of the Base at the end of the day. At that time, Ms. Gorman reported that she had not been able to

WO 521056.1

arrange to see her client and that she had been ordered by her escort, Petty Officer ▮▮▮▮ to return to the leeward side of the Base on the 11:30 ferry.

Further affiant sayeth not,

*Richard G. Murphy*

Richard G. Murphy, Jr.

Sworn to and subscribed before me this ⁴⁄ₜₕ day of August, 2006.

*Sandra Kiedrowski*

Notary Public

My commission expires: _____    My Commission Expires April 14, 2009

WO 521056.1

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMER MOHAMMON, et al. (ABDAL RAZAK ALI) | ) ) ) ) | |
| Petitioners/Plaintiffs | ) ) ) | CIVIL ACTION |
| v. | ) ) | NO. 05-2386 (RBW) |
| GEORGE W. BUSH, et al. | ) ) ) | |
| Respondents/Defendants | ) ) | |

DECLARATION OF WESLEY R. POWELL

I, WESLEY R. POWELL, declare as follows:

1.    I am a Partner at Hunton & Williams LLP in New York, New York. I am admitted to practice in the States of New York and California and in a number of federal district courts and courts of appeal around the country, including the Court of Appeals for the District of Columbia. I have permission to practice in this Court pursuant to the Court's Local Rules on *pro bono* representation.

2.    I am counsel to Guantanamo detainees in two *habeas* actions pending in this district: *Al Jafyi v. Bush*, before Judge Walton, and *Khalid v. Bush*, before Judge Leon.

3.    I submit this declaration at the request of Candace Gorman, Esq., lead counsel to Petitioner in the above-referenced action. I base this declaration on my personal knowledge.

4.    I recently visited two of my clients in Guantanamo Bay ("the base"), at the same time Ms. Gorman was visiting certain of her clients there. I arrived at the base the evening of Monday, July 17, 2006 and departed on Wednesday evening, July 19, 2006.

5.    Based on my conversations with Ms. Gorman during our visit and hearing certain of her conversations with our military escorts at the base, I learned that Ms. Gorman was trying to visit two clients. I understood that she had visited one client on July 17 before I arrived and again on July 18, when we both went to

Camp Echo to meet with our clients. I understood that she was attempting to arrange a visit with her second client for a portion of the 17 and for July 18.

6.    During the day on July 18, it became clear to me that Ms. Gorman was having difficulty establishing the identity and whereabouts of her second client, whom I understand is Libyan. I understood that Ms. Gorman's spelling of the client's name did not match the military's record of the name associated with the ISN number Ms. Gorman had for this client. As a result, Ms. Gorman was unable to visit with this client on July 18 and could not schedule a meeting with him for July 19. Our military escort indicated that he had referred this issue to the military lawyers at the base who handle such matters, and he was awaiting news as to whether they had figured out the discrepancy.

7.    On July 19, Ms. Gorman accompanied me and other counsel to the windward side of the base (where we typically meet our escort to go to Camp Echo for our client meetings) to see if she could resolve the identification of her client. She had no other client meetings scheduled.

8.    Because I was unable to meet with any of my clients on the morning of July 19 (due to some scheduling confusion), I spent the morning with Ms Gorman and our escort and overheard her attempting to work through this identification issue. Ultimately, and in my presence, our military escort informed her that, although this identification issue may be resolved later that day, there was no hope for scheduling a client meeting that day. Accordingly, the escort asked Ms. Gorman to take the 11:30 AM ferry back to the Leeward side to return to our lodging, the "CBQ." Ms. Gorman did so.

9.    Following my client meetings that afternoon, our escort asked me to deliver an envelope to Ms. Gorman when I returned to the CBQ. I understood this envelope to contain information about Ms. Gorman's yet-unidentified client. I gave the envelope to the front-desk manager of the CBQ at around 4:30 PM, and asked him to give it to Ms. Gorman. I then left for the airport.

10.    Ms. Gorman has informed me that Respondents have taken the position in the above-captioned case that Ms. Gorman did not visit her client on July 19 because she elected to go bird watching instead. I am quite confident this is untrue. While Ms. Gorman may have gone bird watching when she returned to the Leeward side that afternoon, that was not the reason she left the base. Based on my observation of events that day, I understand and believe that she did not visit her client that day because the military could not identify the detainee she was trying to visit.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this ___4th___ day of August, 2006
New York, New York

_____
Wesley R. Powell

3

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMER MOHAMMON, et al.                )
(ABDAL RAZAK ALI)                    )        CIVIL ACTION
                                     )
        Petitioners/Plaintiffs       )        No. 05-2386 (RBW)
                                     )
        v.                           )        AFFIDAVIT
                                     )
GEORGE W. BUSH, et al.               )
                                     )
        Respondents/Defendants       )

Scott Tilsen, being first duly sworn states and deposes as follows:

1.    He makes this affidavit in good faith and for the purposes set forth herein.

2.    I am an attorney employed by the Office of the Federal Defenders for the
      District of Minnesota, in the capacity I have been appointed by the District
      Court for the District of Columbia to represent a petitioner from the
      detention facility at Guantanamo Bay on the island of Cuba.

3.    On Monday, July 17, 2006, I traveled to the base at Guantanamo Bay. On
      Tuesday morning, July 18th, I was transported by bus with a group of other
      lawyers, including Candace Gorman, who I had not previously known and
      who I had just met, for the purpose of visiting clients that morning and
      afternoon.

4.    This was my first visit. As a result, the procedure involved my meeting
      with a J.A.G. representative to review the rules and procedures under which
      my visit was to be conducted. That occurred in the morning of the 18th,
      prior to our being transported to the visiting portion of the detention facility.

5.    At the same time I was being given the information by the J.A.G. Officer,
      Ms. Gorman was present for what turned out to be the purpose of
      discussing with that J.A.G. Officer the difficulty she was having because of
      what appeared to be some confusion about the name and ISN number of her
      client. Ms. Gorman was told by the J.A.G. lawyer that he would check on
      the problem and contact her.

6.  The following day, Wednesday, July 19th, Ms. Gorman accompanied the other lawyers on the trip by bus, ferry and bus to continue the client visits at the detention facility. I was aware at that time that the question concerning the correct identity of her client was not yet resolved and she stayed behind while the rest of us were processed through for the purpose of our visits.

7.  Ms. Gorman was not present when we ended the morning visits near noon, and I did not see her until that evening.

8.  That evening we learned from her that she had been transported back on the 11:30 a.m. ferry to our quarters and had been told that there was no one for her to see.

9.  I am also aware that another one of the lawyers had brought with him a written communication from one of the people in charge to give to Ms. Gorman, but I did not learn or do not recall what that communication was.

10. I was certain that throughout the day on Tuesday and Wednesday it was Ms. Gorman's expressed intention for being present was to visit with her clients and to take whatever steps necessary with the authorities so that she could do so.

Further affiant sayeth not.

Scott F. Tilsen

Sworn to before me this
9th day of August , 2006

Notary Public

SANDRA K. ARCAND
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

# EXHIBIT E

From: Bradford, David J
Sent: Wednesday, July 26, 2006 5:55 PM
To: 'Terry Marcus Henry (Terry.Henry@usdoj.gov)'; 'Andrew.Warden@usdoj.gov';
'Preeya Noronha (Preeya.Noronha@usdoj.gov)'
Cc: Bronte, Patricia A; Thomson, Wade A; Mackowski, Martin J; Colman, Jeffrey D
Subject: Visit with Salim Sulamin Al Harbi


Dear Terry, Andrew and Preeya,

As you know, Judge Walton issued an Order today which granted our emergency motion
for access to the above referenced detainee, Mr. Harbi (ISN #57), during our scheduled
visit to Guantanamo on August 1 and August 2, 2006.

I am informed that after Judge Walton entered a similar order with respect to Mr. Ali, his
counsel encountered problems attempting to meet with Mr. Ali, as authorized by the
Order.  I am advised that the Escort and SJA indicated that they were unaware of the
Order and when informed of the Order, the Escort allegedly stated that they regarded
Judge Walton's Order as merely advisory.  I am also advised that they disputed
the accuracy of the ISN, although the ISN presented was correct.   I am
informed that the consequence was that the meeting did not take place as authorized by
the Court.

I would appreciate your prompt cooperation in ensuring that the Court's Order is
complied with and that both Ms. Bronte and I are permitted to meet with Mr. Harbi on
August 1 and August 2, for the purpose identified in the Court's Order.  The Order was
specifically entered to facilitate and authorize that scheduled visit.  We are confident that
none of us wants to be back before Judge Walton on a further motion seeking other relief
for violation of his Order. We are also confident that you do not
regard the Order as merely advisory.   To that end, I would appreciate
your confirmation that you will communicate with all necesssary individuals responsible
for facilitating our meeting with Salim Sulamin Al Harbi (#57) on August 1 and August
2, that Ms. Bronte and I are authorized by Court Order to meet with him on those dates
and that the Government, including all persons involved with our visit,  should comply
fully with that Order by ensuring that I am able to meet with him on August 1 and Ms.
Bronte and I are able to meet with him on August 2.
If we can accomplish the purpose of our visit in less time, we will use the balance of that
scheduled time to meet with other detainees as previously identified.

If you anticipate any problem complying with this request, please notify me and Ms.
Bronte immediately.  If, you have any questions or concerns,
please don't hesitate to contact me or Ms. Bronte.   Thank you in
advance for your cooperation, David.
---------------------------------------------------------

David J. Bradford
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Tel (312) 923-2975
Fax (312) 840-7375
dbradford@jenner.com
www.jenner.com


-----Original Message-----

From: Andrew.Warden@usdoj.gov [mailto:Andrew.Warden@usdoj.gov]
Sent: Thursday, July 27, 2006 3:33 PM
To: Bradford, David J; Terry.Henry@usdoj.gov; Preeya.Noronha@usdoj.gov
Cc: Colman, Jeffrey D; Mackowski, Martin J; Thomson, Wade A; Bronte, Patricia A
Subject: RE: Visit with Salim Sulamin Al Harbi

David,

We are aware of Judge Walton's order and we have notified our clients accordingly.
Putting aside the issue of the circumstances of Ms.
Gorman's visit with petitioner Ali (we understand she did, indeed, meet with the detainee
that she identified to the Court as her client, but now she apparently disputes that
identification), we are in the process of making arrangements for you to meet with Mr.
Harbi on Aug. 1, both for the purpose of facilitating the logistics of your previously-
approved visit schedule, which now adds Mr. Harbi, and consistent with the purpose of
Judge Walton's order.  As you know, Judge Walton's order states that counsel shall have
access to petitioner Harbi (ISN 057) "for the sole purpose of verifying that the petitioner
authorized Omar Deghayes, acting as a next friend on his behalf, to bring a petition for
habeas corpus in this Court."  We believe that verification of the next-friend authorization
can be accomplished in a minimal amount of time, and certainly requires no more than
one full day of access to the detainee.  As may also know, interview schedules with
habeas petitioners are necessarily limited by various logistical and operational
constraints, including refusals by detainees to meet with counsel.  Consequently, the
precise timing of your access to petitioner Al Harbi may not coincide with your requested
schedule.  In the event you have questions or problems regarding your visit schedule, you
may raise that issue with the Staff Judge Advocate's Office in Guantanamo or you may
call me in Washington.

I'll send your country and theater clearances for your visit tomorrow.

Best regards,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

-----Original Message-----
From: dbradford@jenner.com [mailto:dbradford@jenner.com]
Sent: Thursday, July 27, 2006 3:46 PM
To: Henry, Terry (CIV); Noronha, Preeya (CIV); Warden, Andrew (CIV);
dbradford@jenner.com
Cc: PBronte@jenner.com; WThomson@jenner.com; MMackowski@jenner.com;
JColman@jenner.com
Subject: RE: Visit with Salim Sulamin Al Harbi
Importance: High

Dear Terry, Andrew and Preeya,

I know you have a great deal going on.  I would greatly appreciate your response to my
email below, at your very first opportunity.  As you know, there is only one business day
available before we need to leave on this trip, and I would like to be sure that we avoid
any problems
that would otherwise require us to disturb Judge Walton.   Thanks for
your prompt response and cooperation, David

_____

From: Bradford, David J
Sent: Wednesday, July 26, 2006 5:55 PM
To: 'Terry Marcus Henry (Terry.Henry@usdoj.gov)'; 'Andrew.Warden@usdoj.gov';
'Preeya Noronha (Preeya.Noronha@usdoj.gov)'
Cc: Bronte, Patricia A; Thomson, Wade A; Mackowski, Martin J; Colman, Jeffrey D
Subject: Visit with Salim Sulamin Al Harbi

Dear Terry, Andrew and Preeya,

As you know, Judge Walton issued an Order today which granted our emergency motion
for access to the above referenced detainee, Mr. Harbi (ISN #57), during our scheduled
visit to Guantanamo on August 1 and August 2, 2006.

I am informed that after Judge Walton entered a similar order with respect to Mr. Ali, his
counsel encountered problems attempting to meet with Mr. Ali, as authorized by the

Order.  I am advised that the Escort and SJA indicated that they were unaware of the
Order and when informed of the Order, the Escort allegedly stated that they regarded
Judge Walton's Order as merely advisory.  I am also advised that they disputed
the accuracy of the ISN, although the ISN presented was correct.   I am
informed that the consequence was that the meeting did not take place as authorized by
the Court.

I would appreciate your prompt cooperation in ensuring that the Court's Order is
complied with and that both Ms. Bronte and I are permitted to meet with Mr. Harbi on
August 1 and August 2, for the purpose identified in the Court's Order.  The Order was
specifically entered to facilitate and authorize that scheduled visit.  We are confident that
none of us wants to be back before Judge Walton on a further motion seeking other relief
for violation of his Order. We are also confident that you do not
regard the Order as merely advisory.   To that end, I would appreciate
your confirmation that you will communicate with all necesssary individuals responsible
for facilitating our meeting with Salim Sulamin Al Harbi (#57) on August 1 and August
2, that Ms. Bronte and I are authorized by Court Order to meet with him on those dates
and that the Government, including all persons involved with our visit,  should comply
fully with that Order by ensuring that I am able to meet with him on August 1 and Ms.
Bronte and I are able to meet with him on August 2.
If we can accomplish the purpose of our visit in less time, we will use the balance of that
scheduled time to meet with other detainees as previously identified.

If you anticipate any problem complying with this request, please notify me and Ms.
Bronte immediately.  If, you have any questions or concerns,
please don't hesitate to contact me or Ms. Bronte.   Thank you in
advance for your cooperation, David.
---------------------------------------------------------

David J. Bradford
Jenner & Block LLP
One IBM Plaza
Chicago, IL 60611-7603
Tel (312) 923-2975
Fax (312) 840-7375
dbradford@jenner.com
www.jenner.com

CONFIDENTIALITY WARNING: This email may contain privileged or confidential
information and is for the sole use of the intended recipient(s). Any unauthorized use or
disclosure of this communication is prohibited. If you believe that you have received this
email in error, please notify the sender immediately and delete it from your system.

---------------------------------------------------------

Approved For Public Filing By DoD
Protected Information Redacted
August 21, 2006

# EXHIBIT
# F

From: Candace Gorman [mailto:hcgorman@igc.org]
Sent: Tuesday, August 01, 2006 12:04 PM
To: 'Andrew.Warden@usdoj.gov'; 'terry.henry@usdoj.gov'
Subject: Visit to the base


Good day Andrew and Terry,

As you no doubt learned I was not able to visit with my second client when I
went to the base last month.  I was told by Petty Officer ▓▓▓▓▓▓ that the name
that they had for ISN 685 was totally different than the name I had and that he
was Algerian not Libyan.  I then spoke with the JAG who told me he would look
into it, but he never did get back to me.  On my last day (the day I was
supposed to see my client) Petty Officer ▓▓▓▓▓ told me again that the name they
had was not even close to the name I had.  I asked him if he could write down
the name that he had for the individual with ISN 685 so that I could try to
figure out what was going on.  I gave him a sheet of paper with all three
spellings of my clients name written by me.  He told me he would write down the
name that he had for my client and send it back to the combined quarters with
one of the other attorneys at the end of the day.  I am attaching a PDF of the
sheet of paper that I gave to ▓▓▓▓▓ (with the three spellings of my clients
name on top written by me) and then below that the 10 spellings of my clients
name written by either Petty Officer ▓▓▓▓▓ or someone from the military.  As you
can see the names are not that different for the most part and it is
incomprehensible to me how I could be told that this person was not my client.

As you know Judge Walton Ordered that I be allowed to see Mr. Razak Ali on my
trip so that it could be cost effective for me since I was going to see Mr. AL-
Ghizzawi.  I don't understand why I was repeatedly told that ISN 685 was not Mr.
Razak Ali when the military's own notes eventually showed that it was the same
person.  I would like to head down to the base again during the week of
September 11, 2006.  I am going to bring this matter to the attention of Judge
Walton but I want to first make sure that you will accommodate my visit during
the week of the 11th.


Best regards,


Candace


H. Candace Gorman, Esq.
542 S. Dearborn
Suite 1060
Chicago Il. 60605
312-427-2313


From: hcgorman@igc.org [mailto:hcgorman@igc.org]
Sent: Thursday, August 03, 2006 6:04 PM
To: Henry, Terry (CIV); Warden, Andrew (CIV)
Subject: FW: Visit to the base


Good afternoon,

I haven't heard anything in response and I will have to file tomorrow if I don't
hear from you.

Best regards,
Candace
Sent: Thursday, August 03, 2006 5:24 PM
To: hcgorman@igc.org (Receipt Notification Requested) (IPM Return
Requested)
Cc: Andrew.Warden@usdoj.gov (Receipt Notification Requested) (IPM Return
Requested)
Subject: RE: Visit to the base

Attachments: image001.gif
Scanned By ClamWin: 1634


H. Candace Gorman, Esq.
542 S. Dearborn
Suite 1060
Chicago Il. 60605
312-427-2313

Dear Candance,

I believe you already did raise the issue with J.Walton in your filing today.
In any event, our understanding of the situation involving your visit is quite
different from yours.  Our understanding is that you were in fact offered the
opportunity to meet with detainee ISN 685, whom you had previously identified as
being your client.  You declined the opportunity to meet with him, however, and
went bird-watching instead.  Respondents, therefore, did not disregard the
Court's order.

We are happy to address this matter with the Court, and plan to do so in reply
to the filing you made today.


Regards,


Terry M. Henry
Senior Trial Counsel
Civil Division, Federal Programs Branch
U.S. Department of Justice
Tel. 202.514.4107


--------

From: hcgorman@igc.org [mailto:hcgorman@igc.org]
Sent: Thursday, August 03, 2006 6:04 PM
To: Henry, Terry (CIV); Warden, Andrew (CIV)
Subject: FW: Visit to the base

Approved For Public Filing By DoD
Protected Information Redacted
August 21, 2006

Good afternoon,

I haven't heard anything in response and I will have to file tomorrow if I don't hear from you.

Best regards,

Candace


H. Candace Gorman, Esq.

542 S. Dearborn

Suite 1060

Chicago Il. 60605

312-427-2313