UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.*,<br>*(ABDAL RAZAK ALI)*<br><br>        Petitioners,<br><br>  vs.<br><br>GEORGE W. BUSH, *et al*,<br><br>        Respondents. | CIVIL ACTION<br><br>No: 05- 2386 (RBW) |

PETITIONERS' STATUS REPORT

**NOW COMES** the Petitioner, by and through his attorneys, and submits the following status report in preparation for the continued hearing on September 8th, 2006 at 10:00:

1. Following the Court's Order of August, 25, 2006, Counsel for Petitioner was in regular contact with the Department of Justice, attempting to make arrangements to schedule a trip to Guantánamo for interviews with both Petitioner Razak Ali and ABDUL HAMID ABDUL SALAM AL-GHIZZAWI her client in *Al Ghizzawi v. Bush et al*. No. 5-cv-02378.

2. On August 24, 2006, the government suggested that Attorney Gorman fly to Guantánamo on a military airplane carrying members of the press. The flight would depart Andrews Air Force Base on the morning of August 31. Counsel for Petitioner immediately agreed and took measures to procure a translator.

3. On August 25, 2006, the government withdrew this offer saying that the August 31 flight was now "not available" and that Counsel for Respondents would "continue to pursue other options." Counsel for Petitioner asked to be notified of the next available flight.

4. On August 28, 2006, Counsel for Respondents informed Counsel for Petitioner that military flights would not be available to her and that she should consider booking a flight on the commercial air carriers, Air Sunshine and Lynx Air.

5. On September 1st, 2006, after several email exchanges discussing possible dates where Attorney Gorman could visit with both clients, the Department of Justice suggested a visitation itinerary for September 9-13. Attorney Gorman agreed on the condition that she would be allowed to see both clients on that trip. The Respondents agreed and Attorney Gorman spent several hours arranging for the services of a translator and making flight arrangements. The schedule included an interview with Mr. Razak Ali on September 11th and interviews with Mr. Al-Ghizzawi on the 12th and 13th.

6. The Respondents would not finalize the itinerary until both Attorney Gorman and her translator had booked their flights. So, in order to establish a confirmed itinerary, Counsel for Petitioner made the appropriate travel arrangements, booking flights #518 and #612 on Lynx Air and made arrangements for a translator that would already be at the base to stay two extra days and be available for Mr. Razak Ali's interview on September 11th. That translator was scheduled to be leaving on vacation straight from the base on September 10th but agreed to stay over to help Attorney Gorman see her client for a first visit.

7. On September 5th, 2006 Counsel for Petitioners cancelled her flight reservations scheduled for her other client during the period of September 18-20.

8. On the evening of September 5th, 2006, at 8:00 pm, Counsel for Respondents informed Counsel for Petitioner that, despite their arrangements made on September 1, 2006, she would be unable to meet with Mr. Al-Ghizzawi during her visit to Guantánamo on September 12th and 13th. This piece of news was communicated to Counsel a mere four days before her scheduled departure for Guantánamo. Moreover, it was made after Counsel for Petitioner had given very clear indication that she would be able to see both of her clients, and all of the possible dates had been discussed with that arrangement in mind.

9. In the same email, Counsel for Respondents proposed that Counsel for Petitioner make two separate trips to Guantánamo, a four-day trip on September 9th-12th on which she would be able to have only one interview with Mr. Razak Ali, and a three-day trip on September 18-20 for two days of interviews. These new terms would be onerous and costly for Counsel for Petitioner in both time and actual dollars. Attorney Gorman spent valuable time and effort coordinating travel plans with the Department of Justice in order to meet with both of her clients on the same trip and not to spend eight days out of the office for three days of visits.

10. In an email on September 6, 2006, the government proposed an alternative plan in which Counsel for Petitioner would arrive in Guantánamo on the week of September 24. However, this would coincide with the beginning of Ramadan and would be potentially problematic for Attorney Gorman's new client, with whom she has never met. Attorney Gorman does not wish to risk losing her one opportunity to meet with Mr. Razak Ali because the timing of a meeting at the beginning of Ramadan might offend him so much that he might refuse to see her.

11. On September 6th, 2006 Counsel for Petitioner rescheduled her flights for her visit with her client Al-Ghizzawi which had already been approved.

Dated this 7th day of September, 2006.

/s/ H. Candace Gorman
Counsel for Petitioner

Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis  (IL Bar #6285095)
542 S. Dearborn Street -   Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313

## CERTIFICATE OF SERVICE

    I, H. Candace Gorman, certify that I today caused a true and accurate copy of Petitioner's Status Report to be served upon the following persons by virtue of filing the above listed document with the U. S. Department of Justice Litigation Security Section:

>Terry Henry, Esq., Senior Trial Attorney
>Andrew I. Warden, Esq., Trial Attorney
>U.S. Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Ave., NW, Room 7144
>Washington, DC  20530

This 7th day of September, 2006.

                                                       /s/ H. Candace Gorman
                                                          Counsel for Petitioner

Law Office of H. Candace Gorman
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis  (IL Bar #6285095)
542 S. Dearborn Street -   Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313