IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMER MOHAMMON, *et al.*, <br> (ABDAL RAZAK ALI) <br><br> Petitioners, <br><br> v. <br><br> GEORGE W. BUSH, <br> President of the United States, <br> *et al.*, <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | <br><br><br><br><br> Civil Action No. 05-CV-2386 (RBW) |

## **RESPONDENTS' OPPOSITION TO PETITIONER'S MOTION FOR COSTS**

Respondents hereby oppose petitioner Abdal Razak Ali's Motion For Costs (dkt. 174).

As a threshold matter, because at the time relevant to the motion for costs the Detainee Treatment Act of 2005 eliminated court jurisdiction consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, in favor of an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens, the Court lacks jurisdiction to impose compensatory civil contempt sanctions against respondents. Further, sovereign immunity bars the imposition of monetary sanctions against respondents in the context of compensatory civil contempt proceedings and no applicable statutory waiver of that immunity exists. Petitioner's motion also lacks an appropriate factual basis. Petitioner's motion seeks costs associated with attendance at the Court's September 8, 2006 hearing, which the Court scheduled in the event the parties could not agree on arrangements for visit dates to Guantanamo Bay. The parties indeed could not agree on such arrangements, but only because

petitioner's counsel was unwilling to accept any one of the multiple offers presented to her by respondents in their attempts to arrange dates for her travel to Guantanamo Bay. Imposition of compensatory costs attributable to petitioner's counsel's inability or unwillingness to accept respondents good faith attempts to arrange travel dates is neither fair nor appropriate. Additionally, petitioner's counsel attempts to seek costs related to what counsel incorrectly characterizes as the "last-minute cancellation" of her September 9, 2006 visit to Guantanamo Bay. That visit, however, was never authorized or firmly scheduled. While respondents proposed reasonable arrangements for counsel to meet with petitioner Ali during the week of September 9, it was petitioner's counsel who refused to conduct the visit.

For these reasons, as explained more fully below, petitioner's motion for costs should be denied.

## BACKGROUND

In June 2006 respondents made arrangements for petitioner's counsel to visit the United States Naval Base in Guantanamo Bay, Cuba, from July 15-20, 2006, to conduct four days of meetings with a detainee counsel represents in another Guantanamo habeas case, petitioner Abdul Hamid Abdul Salam Al-Ghizzawi (Internment Serial Number or ISN 654) in Al-Ghizzawi v. Bush, 05-CV-2378 (JDB). On June 27, this Court issued an Order (dkt. no. 66) in the above-captioned case entering the Amended Protective Order and Procedures for Counsel Access to Detainees at the United State Naval Base in Guantanamo Bay, Cuba, as well as other supplemental orders, with respect to all petitioners "except (1) those petitioners who have previously filed petitions pending in other cases, and (2) those petitioners named in this case whom the respondents are unable to identify." Immediately following entry of the Court's order,

petitioner's counsel requested permission to meet with one of the petitioners in this case, whom petitioner's counsel identified as Abdel Razak Ali Abdel Rahman, ISN 685 (hereinafter "petitioner Ali").

On July 10, 2006, respondents informed petitioner's counsel that access to petitioner Ali would not be permitted because respondents objected to providing counsel access due to lack of lack of proper "next friend" standing in petitioner's case. Petitioner's counsel subsequently filed an emergency motion for access to petitioner Ali (dkt. no. 72), in which counsel sought access to petitioner Ali during her visit to Guantanamo on July 15-20. Respondents opposed petitioner's motion (dkt. no. 76) and the Court held a hearing regarding the motion on July 14, 2006. At the conclusion of the hearing, the Court issued an oral order directing respondents to provide petitioner's counsel with access to petitioner Ali during counsel's July visit to Guantanamo. The Court also issued a written order that day, stating "that H. Candace Gorman, counsel for Petitioner Abdal Razak Ali, shall be permitted to meet with Petitioner Ali at the Guantanamo Bay Naval Base for the sole purpose of verifying that Petitioner Ali authorized his putative next friend, Omar Deghayes, to bring a petition for habeas corpus on his behalf." See July 14, 2006 Order (dkt. No. 79).

On August 9, 2006, petitioner filed a motion to show cause (dkt. no. 129) why respondents should not be held in contempt of court for failing to provide petitioner's counsel with access to petitioner Ali during counsel's visit to Guantanamo Bay. On August 17, the Court issued an order (dkt. no. 139) directing respondents to explain why they should not be held in contempt of the Court's July 14, 2006 Order. Respondents filed an opposition to petitioner's rule to show cause and response to the Court's order to show cause (dkt. no. 144) on August 21,

2006. Respondents denied being in contempt of the Court's July 14, 2006 Order and explained that petitioner's counsel was provided with the opportunity to meet with petitioner Ali during her visit to Guantanamo Bay, but it was petitioner's counsel, after learning that petitioner Ali did not speak English, who led Guantanamo personnel to believe that she would not meet with petitioner Ali – calling such a meeting pointless because counsel did not bring an interpreter with her to Guantanamo Bay. See id. On August 22, 2006, petitioner filed a motion to strike respondents' opposition brief (dkt. no. 147) and respondents filed an opposition to petitioner's motion the next day (dkt. no. 148).

On August 24, 2006, the Court held a hearing to address the contempt issue and petitioner's motion to strike. Following that hearing, on August 25, 2006, the Court issued an Order holding petitioner's motion to show cause in abeyance and denying petitioner's motion to strike. See dkt no. 149. The Court held petitioner's motion to show cause in abeyance so the parties could discuss arrangements for petitioner's counsel to visit petitioner Ali at Guantanamo Bay. The Court's Order also set a status conference for September 8, 2006, but the Court indicated that the parties need not appear for that conference should the parties resolve the visit date issue. Id.

Following the Court's August 24 hearing, respondents worked diligently to make the necessary logistical arrangements for petitioner's counsel to meet with petitioner Ali at Guantanamo Bay, consistent with the availability of Guantanamo resources for habeas counsel visits in light of other scheduled visits. As explained in respondents' September 7, 2006 status report (dkt no. 155), however, petitioner's counsel refused or was unwilling to accommodate the multiple and wide-ranging offers presented to her regarding potential travel to Guantanamo Bay.

Consequently, the Court held the previously scheduled status conference on September 8, 2006. That same day, following the status conference, petitioner's counsel submitted a proposed order to the Court's chambers via facsimile addressing the terms of petitioner's counsel's proposed travel to Guantanamo Bay in November 2006. On September 12, 2006, respondents filed a response to petitioner's proposed order (dkt. no. 160). While respondents did not object to the portion of the proposed order permitting counsel to meet with petitioner Ali at Guantanamo Bay in November 2006, respondents objected to the proposed language that respondents pay petitioner's counsel's costs associated with (1) enforcing the Court's July 14, 2006 Order, (2) counsel's November 2006 visit to Guantanamo, and (3) purported cancellation of her trip to Guantanamo on September 9, 2006.[1] See id. Instead of a Court order compelling payment of costs prior to any discussion of the matter between the parties, respondents represented a willingness to discuss reimbursement of some appropriate portion of petitioner's counsel's expenses for travel related to a meeting with petitioner Ali, without waiving any legal rights with respect to such issues, and indicated the proper course of action would be for the Court to abstain from deciding the costs issue until the parties discussed the matter in the first instance. See id.

On September 20, 2006, the Court issued an Order stating that petitioner's counsel shall be afforded a one day visit with petitioner Ali in November 2006 and that the government shall not interfere with petitioner's counsel's right to visit with petitioner Ali.[2] See dkt. no. 169. The

---

[1] For example, respondents contested any payment of travel costs associated with petitioner's proposed September 9, 2006 visit to Guantanamo Bay because, for one reason, counsel never had such a trip firmly scheduled, as indicated in respondents' September 7 status report and explained at the September 8 status conference. See dkt. no. 160.

[2] Respondents have made logistical arrangements for petitioner's counsel to visit Guantanamo Bay on November 13-17, 2006. Petitioner's counsel is scheduled to meet with

Court also ordered that respondents shall reimburse petitioner's counsel for "all reasonable travel costs" she will incur in relation to meeting with petitioner Ali in November 2006. Id. Further, the Court ordered that "if [petitioner's counsel] "desires to obtain reimbursement for costs associated with enforcing this Court's Order of July 14, 2006 and costs associated with the cancellation of her flight arrangements for September 9, 2006, [petitioner's counsel] shall file with this Court a separate motion with supporting documentation, including but not limited to, a billing summary for such expenses." Id.

On September 29, 2006, petitioner's counsel filed a motion for costs (dkt. no. 174), seeking reimbursement for costs associated with enforcing the Court's July 14, 2006 Order and purported cancellation of petitioner's counsel's trip to Guantanamo Bay on September 9, 2006. The motion requests costs in the amount of $1,582.29 for airfare, hotel, and meal expenses.

As explained below, petitioner's motion for costs should be denied.

## ARGUMENT

**I.    The Court Lacks Jurisdiction To Impose Compensatory Civil Contempt Sanctions.**

Petitioner's motion for costs seeks compensatory civil contempt sanctions against respondents. See In re Magwood, 785 F.2d 1077, 1082-83 (D.C. Cir. 1986) ("Compensatory civil contempt reimburses the injured party for losses and expenses incurred because of the contemptuous conduct.").[3] Specifically, petitioner's counsel requests monetary reimbursement

---

petitioner Ali on November 16.

[3] "Civil contempt divides into two general classes: coercive and compensatory. Both classes benefit the injured litigant, but in different ways. Coercive civil contempt is intended to make the recalcitrant party comply. Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's non-compliance." Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5th Cir. 1976).

for costs incurred in connection with enforcement of the Court's July 14, 2006 Order and purported cancellation of petitioner's counsel's trip to Guantanamo Bay on September 9, 2006.[4] There is no legal basis for such relief because the Court lacked jurisdiction over this case at the time of the conduct that is alleged to warrant compensatory relief.  In United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76 (1988), the Supreme Court held that lack of jurisdiction over the underlying lawsuit is a valid defense to contempt sanctions. See id. (holding that party can "challenge the court's lack of subject-matter jurisdiction in defense of a civil contempt citation, notwithstanding the absence of a final judgment in the underlying action"); see also Coleman v. Espy, 986 F.2d 1184, 1190 (8th Cir. 1993) ("Compensatory civil contempt actions do not survive if the underlying injunction is vacated because it was issued erroneously.").  Here, the Court lacked jurisdiction over this case during the relevant time by virtue of the Detainee Treatment Act of 2005.

On December 30, 2006, the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA"), became law.  The DTA, among other things, amended 28 U.S.C. § 2241 to eliminate court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, id. § 1005(e)(1), and created an exclusive review mechanism in the D.C. Circuit to address the validity of the detention of such aliens and final decisions of any military commissions,  id. § 1005(e)(1), (e)(2), (e)(3).  Section 1005(e)(2) of the DTA states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an

---

[4] The Court's September 20, 2006 Order (dkt. no. 169) did not order reimbursement of these costs.  Instead, the Order invited petitioner's counsel to file a motion should counsel desire to obtain reimbursement of such costs.

enemy combatant," and it further specifies the scope and intensiveness of that review. While the Supreme Court in Hamdan held that § 1005(e)(1) did not apply to habeas petitions pending prior to the enactment of the DTA, it reserved the question of whether the exclusive review provisions of the Act did apply to cases pending prior to enactment. See Hamdan v. Rumsfeld, 548 U.S. ---, 126 S. Ct. 2749, 2762-69 (U.S. June 29, 2006). While the petitioner in Hamdan escaped the Act by virtue of the fact that his challenge did not involve a final decision of a military commission within the exclusive jurisdiction of the Court of Appeals under § 1005(e)(3), the Court stated that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3) [the exclusive review in CTA sections]. We express no view about whether the DTA would require transfer of such an action to the District of Columbia Circuit." Hamdan, 126 S. Ct. at 2769 n.14. The case at bar is just such a case, i.e., a challenge to petitioner's designation as an enemy combatant through a Combatant Status Review Tribunal, and given the Act's investment of exclusive review in the Court of Appeals, the Court lacked jurisdiction over the case at the time of the alleged conduct that forms the basis of the motion for costs.[5] See

---

[5] The Court continues to lack jurisdiction over this case, not only under the DTA, but under the Military Commissions Act of 2006 ("MCA), which was enacted into law on October 17, 2006. See Notice Of Military Commissions Act of 2006 (dkt. no. 181). The MCA, among other things, amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions "filed by or on behalf of an alien detained by the United States who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," or (2) "any other action against the United States or its agents relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement of an alien who is or was detained by the United States" as an enemy combatant, except as provided in section 1005(e)(2) and (e)(3) of the DTA. See MCA § 7(a). Further, the new amendment to § 2241 takes effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relate to any aspect of the detention, transfer, treatment, trial, or conditions of

Telecommunications Research and Action Center v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power.").

In light of the DTA's investment of exclusive jurisdiction in the Court of Appeals at the time of the complained of conduct, the Court lacks jurisdiction to grant petitioner's motion for costs. The Supreme Court has held that lack of jurisdiction is a valid defense to the imposition of civil contempt sanctions. See Catholic Conference, 487 U.S. at 76. Further, the DTA unquestionably was in effect at the time of the alleged conduct giving rise to petitioner's motion for costs. Consequently, respondents' jurisdictional argument must be addressed before the Court has authority to impose costs against respondents. See Bancoult v. McNamara, 445 F.3d 427 (D.C. Cir. 2006) ("The first and fundamental question that we are bound to ask and answer is whether the court has jurisdiction to decide the case.").

At a minimum, because the effect of the DTA on cases such as this, i.e., the extent to which the vesting of exclusive review in the Court of Appeals deprives this Court of jurisdiction to proceed, was, and remains, pending before the Court of Appeals in the Guantanamo detainee appeals, Boumediene v. Bush, No. 05-5062 (D.C. Cir.), and Al Odah v. United States, No. 05-5064 (D.C. Cir.), the Court should stay consideration of petitioner's motion for costs pending resolution of that issue.

---

detention of an alien detained by the United States since September 11, 2001." Id. § 7(b).

**II.     Sovereign Immunity Bars Imposition Of Compensatory Civil Contempt Sanctions**.

In addition to lacking jurisdiction, petitioner's motion should be denied because the principle of sovereign immunity bars imposition of monetary sanctions against the federal government in compensatory civil contempt proceedings. The doctrine of sovereign immunity dictates "that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." United States v. Mitchell, 463 U.S. 206, 212 (1983). A district court lacks jurisdiction over claims against the United States unless the United States' sovereign immunity has been explicitly waived. Dep't of the Army v. Fed. Labor Relations Auth., 56 F.3d 273, 275 (D.C. Cir. 1995) (citing United States v. Sherwood, 312 U.S. 584, 586 (1941)). Only Congress may waive the sovereign immunity of the United States, and to do so, Congress must "unequivocally express its desire to do so" on the face of a statute. Id. at 277 (internal citations omitted). See also Tri-State Hospital Supply Corp. v. United States, 341 F.3d 571, 575 (D.C. Cir. 2003) ("waiver of sovereign immunity must be unequivocally expressed in the statutory text and strictly construed, in terms of its scope, in favor of the sovereign") (internal quotation marks and citation omitted).

In this case petitioner's counsel seeks compensatory monetary sanctions against respondents, various high-ranking United States government officials acting in their official capacities. See Petition For A Writ Of Habeas Corpus (dkt. no. 1) ¶¶ 331-34; see also Clark v. Library of Congress, 750 F.2d 89 (D.C. Cir. 1984) (sovereign immunity bars "suits for money damages against officials in their official capacity absent a specific waiver by the government"). Consequently, any compensatory monetary relief ordered in petitioner's counsel favor would require payment directly from the public treasury. See Galvan v. Federal Prison Industries, Inc.,

199 F.3d 461, 463 (D.C. Cir. 1999).  Sovereign immunity, however, bars such monetary relief, and petitioner has not identified any applicable statutory waiver to the contrary.

In the context of civil contempt proceedings, courts have concluded that the doctrine of sovereign immunity applies to prevent a court from imposing monetary sanctions on the government.  See Coleman v. Espy, 986 F.2d 1184, 1192 (8th Cir. 1993); Barry v. Bowen, 884 F.2d 442, 443-44 (9th Cir. 1989); United States v. Horn, 29 F.3d 754, 756 n.13, 763, 767 (1st Cir. 1994); United States v. Waksberg, 881 F. Supp. 36, 39–41 (D.D.C. 1995) (June Green, J.), vacated and remanded on other grounds,112 F.3d 1225 (D.C. Cir. 1997).  While some courts have found that the imposition of monetary sanctions in coercive civil contempt proceedings do not infringe on sovereign immunity concerns, even those courts have recognized the sovereign immunity concerns associated with the imposition of compensatory civil contempt sanctions.  See American Rivers v. United States Army Corps of Engineers, 274 F. Supp. 2d 62, 69 (D.D.C. 2003) (Kessler, J.) ("While it is true that courts have ruled that the government has not waived its sovereign immunity with regard to compensatory fines for contempt . . . .  Plaintiffs in this case are seeking coercive, rather than compensatory, fines."); Armstrong v. Executive Office of President, 821 F. Supp. 761, 772-73 (D.D.C. 1993) (Richey, J.) (imposing monetary sanctions in coercive contempt case and noting sovereign immunity concerns with such relief in compensatory contempt proceedings), reversed as to civil contempt finding, 1 F.3d 1274 (D.C. Cir. 1993).  Moreover, the courts that have squarely addressed the sovereign immunity issue in the context of compensatory civil contempt proceedings have concluded there is no such "waiver of federal sovereign immunity for civil compensatory contempt actions" in the statute defining federal courts' contempt powers, 18 U.S.C. § 401, or otherwise.  Colman, 986 F.2d at 1192; see

McBride v. Coleman, 955 F.2d 571, 576-77 (8th Cir. 1992).

Accordingly, because no statutory waiver of sovereign immunity exists with respect to compensatory civil contempt sanctions, petitioner's motion, which seeks compensatory sanctions, should be denied.

### III.    Petitioner's Motion For Costs Lacks An Appropriate Factual Basis.

In addition to the legal objections discussed above, petitioner's motion for costs seeks monetary sanctions that are not factually warranted. First, petitioner's counsel seeks various costs associated with attendance at the Court's September 8, 2006 hearing, see Petr's Motion, Declaration of Candace Gorman ¶¶ 4-7 ($890), but, as explained above, there was no need for that hearing as it was petitioner's counsel who refused or was unwilling to accommodate respondents' multiple, reasonable attempts to arrange travel dates to Guantanamo Bay for her.

On August 25, 2006, the Court issued an Order (dkt. no. 149) holding petitioner's motion to show cause in abeyance pending discussions by the parties regarding arrangements for petitioner's counsel to meet with petitioner Ali at Guantanamo Bay. The Court's Order also set a status conference for September 8, 2006, but the Court indicated that the parties need not appear for that conference should the parties resolve the visit date issue. Id. Following issuance of that order, respondents worked assiduously to offer petitioner's counsel various proposals within the scope of Guantanamo's operational constraints that would enable counsel to travel to Guantanamo Bay in order to meet with petitioner Ali, but counsel rebuffed every such attempt. In sum:

- Petitioner's counsel was scheduled to visit Guantanamo Bay on September 17-20 in order to conduct two days of interviews with a detainee counsel represents in another Guantanamo habeas case, petitioner Abdul Hamid Abdul Salam Al-Ghizzawi (ISN 654) in Al-Ghizzawi v. Bush, 05-CV-2378 (JDB). Respondents

-12-

- offered to extend petitioner's counsel's visit so she could conduct interviews with petitioner Ali during the same trip, but petitioner's counsel refused. Respondents also offered to allocate time during petitioner's counsel's two-day visit with petitioner Al-Ghizzawi so counsel could meet with petitioner Ali, but petitioner's counsel refused.[6]

- Respondents offered petitioner's counsel to arrange for a visit to Guantanamo during the month of October, but counsel refused, citing other work-related commitments.[7]

- Respondents offered petitioner's counsel the opportunity to travel to Guantanamo to meet with petitioner Ali on September 29, but petitioner's counsel refused because the earliest available commercial departure flight from Guantanamo was on October 1 and counsel stated she has a family engagement on that day.[8]

- Due to a cancellation of a previously scheduled visit to Guantanamo by another counsel team, respondents offered to make arrangements for petitioners counsel to meet with petitioner Ali during the week of September 24, but petitioner's counsel refused that offer, indicating for the first time that she would not be willing to conduct her initial meeting with petitioner Ali during the Ramadan holiday, which lasts from September 24 to October 26, despite the fact that visits by other counsel are scheduled during that time.[9]

- Respondents offered to arrange a meeting between counsel and petitioner Ali on September 11, but petitioner's counsel refused that offer on the grounds that petitioner's counsel was unwilling to travel to Guantanamo Bay unless she could also meet with her other client, petitioner Al-Ghizzawi, on September 12 and 13. Guantanamo personnel were prepared to make arrangements for meetings with Ali on September 11, but meetings with petitioner Al-Ghizzawi could not be accommodated because of previously-scheduled visits by other groups of habeas

---

[6] See Petitioner's Response To Government's Status Report (dkt. no. 158), Exhibit A, (attached hereto as Exhibit A), Aug. 24, 2006 (4:27 p.m.) e-mail from Andrew Warden to Candace Gorman; Aug. 25, 2006 (10:25 a.m.) e-mail from Candace Gorman to Andrew Warden.

[7] See id., Aug. 30, 2006 (4:40 p.m.) e-mail from Andrew Warden to Candace Gorman; Aug. 30, 2006 (4:47 p.m.) e-mail from Candace Gorman to Andrew Warden.

[8] See id., Aug. 30, 2006 (4:26 p.m.) e-mail from Andrew Warden to Candace Gorman; Aug. 30, 2006 (5:30 p.m.) e-mail from Candace Gorman to Andrew Warden; Aug. 31, 2006 (4:17 e-mail) from Candace Gorman to Andrew Warden.

[9] See id., Sept. 6, 2006 (10:52 a.m.) e-mail from Andrew Warden to Candace Gorman; Sept. 6, 2006 (12:32 p.m.) e-mail from Candace Gorman to Andrew Warden.

counsel on September 12 and 13.[10]

See Respondents' Status Report Regarding Efforts To Provide Petitioner's Counsel With Access To Petitioner Ali At The United States Naval Base At Guantanamo Bay, Cuba (dkt no. 155).

Thus, respondents attempted to facilitate a visit with petitioner Ali and made multiple reasonable offers to petitioner's counsel regarding potential travel to Guantanamo Bay – each of which was not accepted. Accordingly, there is no basis for the Court to award monetary costs associated with the September 8, 2006 hearing. Any conclusion to the contrary would improperly impose compensatory civil contempt sanctions against respondents simply because petitioner's counsel's was unwilling or unable to travel to Guantanamo on particular dates that either conflicted with her other plans or were not to her liking for other reasons. No basis exists for such extraordinary unfair relief in favor of petitioner's counsel, and the Court should deny awarding any costs associated with the September 8, 2006 hearing.

Additionally, petitioner's counsel's attempt to seek costs for her "cancelled" trip to Guantanamo on September, 9, 2006, should be denied. See Petr's Motion, Declaration of Candace Gorman ¶¶ 6 ($75). Petitioner's counsel's misleadingly and incorrectly characterizes preliminary discussions with respondent's counsel as a "last minute cancellation" of a scheduled trip. In fact, no such trip was firmly scheduled or approved.

As discussed above, following the August 24, 2006 status conference in this case, respondents' counsel initiated discussions with petitioner's counsel regarding potential travel to Guantanamo Bay. See Declaration of Andrew Warden ¶ 3 (attached as Exhibit B). Throughout

---

[10] See id., Sept. 5, 2006 (8:07 p.m.) e-mail from Andrew Warden to Candace Gorman; Sept. 5, 2006 (10:47 p.m.) e-mail from Candace Gorman to Andrew Warden.

that process, petitioner's counsel was informed that visit requests are subject to logistical approval and authorization by military authorities at Guantanamo Bay, as counsel had been informed in connection with her prior visit to Guantanamo, and as is the case with respect to all visit requests by all habeas counsel in the Guantanamo cases. See id. ¶¶ 2-3. On August 31, 2006, petitioner's counsel informed respondents' counsel that she was available to visit Guantanamo Bay during the week of September 11, 2006, but she stated that was not able to travel that week because commercial flights to and from Guantanamo Bay were sold out. See id. ¶ 4. Respondents' counsel investigated the matter for petitioner's counsel by searching the web sites of the commercial airlines that fly to Guantanamo and informed counsel that flights were, in fact, available during the week of September 11. Id. Further, respondents' counsel provided petitioner's counsel the names of other habeas lawyers and interpreters traveling to Guantanamo Bay that week so petitioner's counsel could perhaps conveniently obtain the services of an Arabic interpreter already scheduled to visit the base and potentially share the costs of the interpreter with other counsel. See id. Respondents' counsel also confirmed with petitioner's counsel the precise itinerary that she was proposing and undertook efforts to check on the logistics of her request with personnel at Guantanamo Bay. Id. ¶ 5. At all times, petitioner's counsel visit request was contingent on logistical approval from personnel at Guantanamo Bay. Id. After conferring with personnel at Guantanamo Bay, respondents' counsel informed petitioner's counsel on September 5 that Guantanamo could accommodate meetings with petitioner Ali on September 11, as counsel had requested. Id. ¶ 6. However, due previously scheduled visits by other groups of lawyers representing habeas petitioners, Guantanamo could not arrange meetings between petitioner's counsel and another detainee, petitioner Al-Ghizzawi

in Al-Ghizzawi v. Bush, 05-CV-2378 (JDB). Id. Petitioner's counsel refused to accept this arrangement, however, insisting that she would agree to travel to Guantanamo during the week of September 11 only if she could meet with both petitioners Ali and Al-Ghizzawi during the same trip.[11] Id.

Contrary to petitioner's counsel's claims, respondents never approved to a trip to Guantanamo on September 9-13, 2006, involving meetings with both petitioners Ali and Al-Ghizzawi. Petitioner's counsel argues that respondents required her to buy plane tickets before logistical arrangements for the proposed trip could be finalized. See Petitioner's Status Report (dkt. no. 156). There is no support for this claim in the e-mail exchanges between respondents' counsel and petitioner's counsel, however. As the e-mails make clear, respondents' simply requested confirmation that petitioner's counsel and her translator could find available flights to and from Guantanamo Bay. See Petitioner's Response To Government's Status Report (dkt. no.

---

[11] Respondents repeatedly requested an explanation from petitioner's counsel why she would not agree to travel to Guantanamo Bay to meet with petitioner Ali according to the schedule that respondents could accommodate: arrive September 9, conduct interviews on September 11, and depart September 12. See Petitioner's Response To Government's Status Report (dkt. no. 158), Exhibit A, Sept. 6, 2006 (10:52 a.m.) e-mail from Andrew Warden to Candace Gorman. To the extent money was the obstacle, respondents consistently informed petitioner's counsel of respondents' willingness to discuss options regarding reimbursement of such a trip, but petitioner's counsel did not engage in such discussions. See id.; Sept. 26, 2006 (12:32 p.m.) e-mail from Andrew Warden to Candace Gorman. To the extent petitioner's counsel objected to a four day visit to Guantanamo Bay, such arrangements are not uncommon given the unique travel and logistical hurdles associated with such travel. Habeas counsel typically arrive one day prior to their scheduled visit and depart the day after the conclusion of their interviews, given the commercial flight schedules and the need to get settled at the base (e.g., obtain security credentials, check-in at lodging facilities, etc.). The arrangement presented to petitioner's counsel required her to spend an additional day at the base (Sunday, September 10). While not what she would have preferred, this arrangement was not unreasonable and it was the only feasible option given commercial flight schedules and the limitations on petitioner's counsel's schedule.

158), Exhibit A, Sept. 1, 2006 (10:50 a.m.) e-mail from Andrew Warden to Candace Gorman; Sept. 1, 2006 (11:05 a.m.) e-mail from Andrew Warden to Candace Gorman.  Absent available flights and an interpreter, which respondents' counsel found for petitioner's counsel, there would have been no reason to pursue logistical coordination of the requested visit with personnel at Guantanamo Bay.  Thus, it was entirely reasonable to ask petitioner's counsel to "double check" on the flight situation before respondents undertook efforts to arrange petitioner's counsel's requested trip.  See id.  Petitioner's counsel's subsequent decision to buy those tickets, absent confirmation and approval from respondents regarding the logistics of the proposed visit, was petitioner's counsel's decision alone.

     In light of the fact that visit arrangements for petitioner's counsel proposed September trip had not been finalized or approved by personnel at Guantanamo Bay, there is no basis for the Court to award petitioner's counsel any costs associated with this proposed visit.  Further, respondents were prepared to make petitioner Ali available to petitioner's counsel on September 11, precisely as she requested, but counsel refused to accept this accommodation.  While it may have been more convenient for petitioner's counsel to meet with all her detainee-clients during the same trip to Guantanamo, the dispute in this case centers only on counsel's access to petitioner Ali.  Respondents did not oppose access to petitioner Ali during the week of September 11 and went to great lengths to investigate various logistical arrangements for such access, including offering to discuss reimbursement of appropriate travel expenses related to such a trip.  Thus, the upshot of petitioner's motion is that respondents should be subject to compensatory civil contempt sanctions merely for not arranging for counsel to meet with a detainee in an entirely separate case.  No factual or legal basis exists for such relief.  Petitioner's

counsel should not be permitted to leverage the fact that Guantanamo could not arrange meetings with petitioner Al-Ghizzawi, due to previously-scheduled detainee meetings by other habeas lawyers, into a sanctions motion predicated on the erroneous allegation that respondents would not permit or arrange for a meeting with petitioner Ali.  Because petitioner's counsel's proposed September 2006 visit was never firmly scheduled or authorized and, in any event, petitioner's counsel refused to accept respondents' proposed arrangements for access to petitioner Ali, the Court should deny costs associated with that proposed visit.  Accordingly, petitioner's motion for costs lacks an appropriate factual basis.

## **CONCLUSION**

For the reasons explained above, petitioner's motion for costs should be denied.


Dated: October 20, 2006                              Respectfully submitted,

                                                     PETER D. KEISLER
                                                     Assistant Attorney General

                                                     DOUGLAS N. LETTER
                                                     Terrorism Litigation Counsel

                                                        /s/ Andrew I. Warden
                                                     JOSEPH H. HUNT (D.C. Bar No. 431134)
                                                     VINCENT M. GARVEY (D.C. Bar No. 127191)
                                                     TERRY M. HENRY
                                                     JAMES J. SCHWARTZ
                                                     PREEYA M. NORONHA
                                                     ROBERT J. KATERBERG
                                                     ANDREW I. WARDEN (IN Bar No. 23840-49)
                                                     NICHOLAS J. PATTERSON
                                                     EDWARD H. WHITE
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     20 Massachusetts Ave., N.W.
                                                     Washington, DC  20530

       Tel:  (202) 514-4107
       Fax:  (202) 616-8470

Attorneys for Respondents