Cleared for Public Filing

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| AMER MOHAMMON, et al.<br>(ABDAL RAZAK ALI)<br><br>Petitioners/Plaintiffs<br><br>v.<br><br>GEORGE W. BUSH, et al.<br><br>Respondents/Defendants | ) | CIVIL ACTION<br><br>NO. 05-2386 (RBW) |

## <u>REPLY TO MOTION FOR COSTS</u>

Now comes the Petitioner, Abdal Razak Ali and Replies to the Governments Response regarding Petitioner Motion for costs associated with enforcing this Court's July 14, 2006 Order and cancellation of her trip to Guantánamo scheduled for September 9, 2006 as follows:

### I. THERE IS NO EQUITABLE BASIS TO SHIELD THE GOVERNMENT FROM THE CONSEQUENCES OF DISOBEYING THIS COURT'S ORDER

Respondents not only attempt to rewrite the history involved in this case but by their pleadings suggest that they are not bound by the Federal Rules of Civil Procedure. Fortunately, sovereign immunity does not preclude this Court from exercising its authority to order the Government to reimburse Counsel for the costs incurred as a direct result of the Government's refusal to follow this Court's Order. In fact, not only did the Government refuse to follow this Court's Order, they expressed

their clear disregard of the Court's authority in telling Counsel for Petitioner, "judges' orders don't work here, we consider those only *advisory*." This statement, which was made directly to Counsel for Petitioner, has *never been denied* by the Respondents. In fact, Respondents filed a lengthy affidavit from Commander McCarthy who stated under oath that Petitioners' Counsel never really wanted to see her client but instead preferred to go bird watching (and numerous other bold and flagrant lies). McCarthy however, *never denied* that Petitioners' Counsel was told that the government only considers court orders "advisory". This Court stated during the hearing on August 24, 2006 that he gave the affidavit of Commander McCarthy absolutely zero weight.

      Many courts have ordered the government to make monetary payments for litigation misconduct. See, e.g. *United States v. Gavilian Joint Community College,* 849 F.2d. 1246, 1251 (9th Cir. 1988) (imposition of Rule 11 sanction against government not precluded by sovereign immunity); *United States v. Nat'l Med. Enter., Inc..,* 792 F.2dd 906,910-11 (9th circuit 1986) (affirming imposition of monetary sanctions against government; *WAHAD v. Federal Bureau of Investigation,* 813 f. Supp. 224, 228 (S.D.N.Y. 1993) ordering government to reimburse plaintiff for photocopying expenses and attorneys' fees incurred in attempting to obtain sanction or compliance with court order).

      Indeed, even if the government does not engage in willful or contumacious behavior, but is merely negligent, the court may impose sanctions. *See, e.g., Chilcutt v. United States,* 4 F3d, 1313, 1322 (5th Cir. 1993) (" this court has never held that willful or contumacious behavior is a prerequisite to sanctions which are less harsh than a

dismissal or default judgment"); *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F2d 1365, 1370 (9th Cir. 1980) (affirming sanctions where government's failure to comply with court-ordered discovery may have resulted from understaffing); *Adamson v. Bowen,* 855 F2d 668, 672 (10th Cir. 1988) (allowing sanction under EAJA waiver holding that at a minimum, the United States should be held *to the same standards in litigating* as private parties and quoting H.R. Rep. No. 1418, 9t6th Cong., 2d Sess. 19 *reprinted in* 1980 U.S.C.C.A.N. 4984, 4998); *Schanen v. United States Dep't of Justice,* 798 F2d 348, 350 (9th Cir. 1986) (directing district court to order government to reimburse plaintiffs for costs and attorneys' fees incurred through proceedings necessary because of government's lack of diligence).

These cases establish that this Court has the authority to order Respondents to bear the costs occasioned by Respondents' failure to adhere to this Court's Order. This is especially so because the instant motion does not seek punitive sanctions (despite the government's contumacious behavior in stating outright their disregard of Court Orders) but instead simply seeks the reimbursement of the modest expenses incurred by counsel for Petitioner in enforcing this Court's Order.

## II. THE HISTORY IN THE CASE CANNOT BE REWRITTEN BY THE GOVERNMENT BECAUSE IT IS MEMORIALIZED IN EMAILS BETWEEN COUNSEL

The Government presented a selected display of the emails exchanged between Counsel in this case in an attempt to rewrite the history of its failure to both follow

this Court's Order and work with Counsel to set up a new visit between Counsel and Mr. Razak Ali. Counsel for Petitioner attaches the full exchange of email between Counsel on this subject as Exhibit B.  A summary of that exchange follows:

1. Following the Court's Order of August, 25, 2006,  Counsel for Petitioner was in regular contact with the Department of Justice, attempting to make arrangements to schedule a trip to Guantánamo for interviews with both Petitioner Razak Ali and ABDUL HAMID ABDUL SALAM AL-GHIZZAWI her client in *Al Ghizzawi v. Bush et al*. No. 5-cv-02378.

2. After court on August 24, 2006, the government sent an email to counsel and suggested that Attorney Gorman fly to Guantánamo on a military airplane carrying members of the press. The flight would depart Andrews Air Force Base on the morning of August 31. Counsel for Petitioner immediately agreed and took measures to procure a translator.

3. On August 25, 2006, the government withdrew this offer saying that the August 31 flight was now "not available" and that Counsel for Respondents would "continue to pursue other options."  Counsel for Petitioner asked to be notified of the next available flight.

4. On August 28, 2006, Counsel for Respondents informed Counsel for Petitioner that military flights would not be available to her and that she should consider booking a flight on the commercial air carriers, Air Sunshine and Lynx Air. (In discussing this before the Court at the September 8th, 2006 status, this Court asked counsel for Respondents why they couldn't put counsel for petitioner on one of the government planes used for transporting the press.  Counsel for Respondent told the Court that the press was given a briefing on that flight that Habeas Counsel was not allowed to hear.  The Court questioned why the press could be told something that Habeas Counsel could not hear because telling the press was tantamount to telling the world.  Counsel for Respondent only reiterated that it was not allowed to have Habeas Counsel on those flights.)

5. On September 1st, 2006, after several email exchanges discussing possible dates where Attorney Gorman could visit with both clients, the Department of Justice suggested a visitation itinerary for September 9-13. Attorney Gorman agreed on the condition that she would be allowed to see both clients on that trip. The Respondents agreed and Attorney Gorman spent several hours arranging for the services of a translator and making flight

arrangements. The schedule included an interview with Mr. Razak Ali on September 11th and interviews with Mr. Al-Ghizzawi on the 12th and 13th.

6. The Respondents would not finalize the itinerary until both Attorney Gorman and her translator had booked their flights. So, in order to establish a confirmed itinerary, Counsel for Petitioner made the appropriate travel arrangements, booking flights #518 and #612 on Lynx Air and made arrangements for a translator that would already be at the base to stay two extra days and be available for Mr. Razak Ali's interview on September 11th. That translator was scheduled to be leaving on vacation straight from the base on September 10th but agreed to stay over to help Attorney Gorman see her client for a first visit.

7. On September 5th, 2006 counsel for Petitioners cancelled her flight reservations scheduled for her other client during the period of September 18-20.

8. On the evening of September 5th, 2006, at 8:00 pm, Counsel for Respondents informed Counsel for Petitioner that, despite their arrangements made on September 1, 2006, she would be unable to meet with Mr. Al-Ghizzawi during her visit to Guantánamo on September 12th and 13th. This piece of news was communicated to Counsel a mere four days before her scheduled departure for Guantánamo. Moreover, it was made after Counsel for Respondents had given a very clear indication that she would be able to see both of her clients, and all of the possible dates had been discussed with that arrangement in mind.

9. In the same email, Counsel for Respondents proposed that Counsel for Petitioner make **two separate trips** to Guantánamo, a four-day trip on September 9th-12th on which she would be able to have only one interview with Mr. Razak Ali, and a three-day trip on September 18-20 for two days of interviews with her other client. These new terms would be onerous and costly for Counsel for Petitioner in both time and actual dollars. Attorney Gorman spent valuable time and effort coordinating travel plans with the Department of Justice in order to meet with both of her clients on the same trip and not to spend eight days out of the office for three days of visits.

10. In an email on September 6, 2006, the government proposed an alternative plan in which Counsel for Petitioner would arrive in Guantánamo on the week of September 24. However, this would coincide with the beginning of Ramadan and would be potentially problematic for Attorney Gorman's new client, with whom she has never met. Attorney Gorman did not wish to risk losing her one opportunity to meet with Mr. Razak Ali because the timing of

    a meeting at the beginning of Ramadan might offend him so much that he might refuse to see her.

11. On September 6th, 2006 Counsel for Petitioner rescheduled her flights for her visit with her client Al-Ghizzawi for September 18-20, which had already been approved.

12. At the Court Status of September 8th counsel for Petitioner explained to the court the costs in both time and money in spending two weeks in a row visiting the base for a total of three days of visits. This Court agreed that counsel was not obligated to accept such an onerous proposal, questioned the government in depth regarding its' refusal to allow counsel to fly on the government press flights and because no alternative could be ascertained Ordered that the government accommodate counsels visit with Mr. Razak Ali during the course of her visit with counsel's other client during the week of November 13, 2006.

For the reasons stated herein, Petitioner asks this Court to award Petitioner's Counsel costs in the amount of $1,582.29 incurred in her two trips to Washington DC in association with enforcing the Court's July 14, 2006 Order and cancelling her September 9, 2006 trip to Guantánamo, and for such other and further relief as this court deems just.

Dated: November 1, 2006                              Respectfully Submitted,

                                                                          /s/ H. Candace Gorman
                                                                           H. Candace Gorman

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis  (IL Bar #6285095)
542 S. Dearborn Street -   Suite 1060
Chicago, IL 60605
Tel:  (312) 427-2313

**CERTIFICATE OF SERVICE**

I, H. Candace Gorman, certify that I today caused a true and accurate copy of REPLY TO MOTION FOR COSTS to be served upon the following persons through service that automatically occurs by virtue of filing the above listed document with the Court's ECF system.

Terry Henry, Esq., Senior Trial Attorney
Andrew I. Warden, Esq., Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 7144
Washington, DC 20530

This 1ST day of November, 2006.

/s/ H. Candace Gorman
Counsel for Petitioner

LAW OFFICE OF H. CANDACE GORMAN
H. Candace Gorman (IL Bar #6184278)
Elizabeth Popolis (IL Bar #6285095)
542 S. Dearborn Street - Suite 1060
Chicago, IL 60605
Tel: (312) 427-2313