PREVIOUSLY FILED WITH CSO
AND CLEARED FOR PUBLIC FILING

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.*, ) | |
| ) | |
| *Petitioners/Plaintiffs*, ) | |
| ) | |
| v.                             ) | Civil No. 05-2386 (RBW) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| *Respondents/Defendants*. ) | |

**MOTION TO MODIFY STAY ORDER AND TO PROVIDE
30-DAYS' ADVANCE NOTICE OF ANY INTENDED
REMOVAL OF PETITIONER FROM GUANTANAMO**

Petitioner Maher El Falesteny moves this Court for an order modifying the existing stay and requiring Respondents to provide counsel for Petitioner and the Court with advance notice of any intended removal of Petitioner from Guantánamo Bay Naval Base in Cuba.[1]  On information and belief, Respondents have contemplated or are contemplating removal of Petitioner from Guantánamo to foreign territories for torture or indefinite imprisonment without due process of law.  Petitioner requests advance notice to enable his counsel to contest any such removal from Guantánamo and preserve the jurisdiction of the Court in this matter.

**STATEMENT OF FACTS**

Petitioner Maher El Falesteny, ISN 519, is a Palestinian who is being detained as "enemy combatants" at the Guantánamo Bay Naval Base in Cuba.  As detailed in his habeas petition, he denies being an "enemy combatant" and contends he is being detained in violation of the Constitution, treaties and laws of the United States.  In addition, as a Palestinian, Maher is a

---

[1] Respondents' counsel declined to consent to the relief sought here.

"stateless" person, with no recognized country of origin and no country that claims him as a citizen. He was captured and sold for a bounty in Afghanistan as he attempted to make his way to a United Nations center in Pakistan, where he hoped to gain papers that might allow him to seek asylum. Should he be removed from Guantánamo, without notice, to parts unknown, there will be no government seeking to track him, no one in a position to ensure that he is not tortured, and no one to ensure that he is granted any rights to challenge his imprisonment (or worse).

After his transfer to Guantánamo, Maher was interrogated by an American who called himself "Torture." During an "interrogation" session, Torture threatened Maher with rendition to Israel, saying that all Palestinians, including Maher, would be "returned" to Israel while falsely accusing Maher of belonging to Hamas and directing its intelligence operations. (Declaration of Stephen M. Truitt (October 31, 2006) at ¶ 2 (Ex. 1).) Israel is known to mistreat Palestinian detainees. According to the United States Department of State, "reputable nongovernmental organizations (NGOs) filed numerous credible complaints with the government alleging that [Israeli] security forces tortured and abused Palestinian detainees." Israel and the occupied territories, Country Reports on Human Rights Practices - 2005, Released by the Bureau of Democracy, Human Rights, and Labor (March 8, 2006) (available at http://www.state.gov/g/drl/rls/hrrpt/2005/61690.htm). This torture and abuse occurred notwithstanding Israeli laws that nominally prohibit torture. *Id.* Given Maher's status as a Palestinian, potential rendition to Israel raises grave concerns.

Other such renditions of prisoners in American custody have already occurred. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular

rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects - people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, "Outsourcing Torture," *New Yorker*, Feb. 14, 2005, at 7.

Because of Torture's threat, Maher has more than rationale reason to fear that he will be transferred into the custody of another country for continued illegal detention without due process of law. On information and belief, a number of detainees have been removed to countries - including Pakistan and Kuwait - where they have been imprisoned and denied access to the courts. Moreover, news reports indicate that the United States government has contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries." Dana Priest, "Long-Term Plan Sought For Terror Suspects," *Washington Post*, Jan. 2, 2005, at A1.[2] Although the Government may claim that it has no present plans to transfer Maher, this does not moot the relief requested by Petitioner, which is that Respondents be compelled to notify them should their plans change. The practice of unannounced transfer or

---

[2] Respondents' recent decision to relocate 14 prisoners to Guantanamo does nothing to stop them from also removing prisoners from Guantanamo.

rendition is capable of repetition, would evade review absent our injunction, and the government insists that is within its rights to do so at its pleasure. Because the Government will not commit to maintain the current policy, and will not commit to timely notification of a change in policy, an injunction is required.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651 (a), this Court has the inherent power "to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Here, Maher simply requests a modification of the stay in place in this matter to ensure that he is not removed summarily from this Court's jurisdiction, without notice or opportunity to object.[3]

It is undisputed that this Court has broad discretion to "impose[] a protective condition as an incident of the stay he granted." *Cooks v. Fowler*, 459 F.2d 1269, 1273 (D.C. Cir. 1971). The Court of Appeals for the District of Columbia Circuit has repeatedly agreed that imposing various conditions on stays pending appeal is both appropriate and necessary. *See, e.g., Cooks*, 459 F.2d at 1272-73 & n.27 (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal); *City of Portland, Or. v. Fed. Maritime Comm'n*, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing the proponent of a stay in a case challenging shippers' exclusion of one city's port from service to "be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service

---

[3] In addition to modifying the stay, this Court has the power to enter the order as an injunction. Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Petitioner will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner is likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

among the ports involved pending final review and determination"); *Scott v. Scott*, 382 F.2d 461, 462 (D.C. Cir. 1967) (discussing a stay of execution of judgment conditioned upon support payments); *see also Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on party seeking an expedited appeal).  It is the exercise of this broad power that Petitioner seeks here.

Petitioner stands to suffer immeasurable and irreparable harm - including torture and indefinite imprisonment - at the hands of a foreign government like Egypt, Jordan, or Israel. Transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioner's right to adjudicate the legality of his detention in this Court.  By contrast, Respondents, who have already held Petitioner for an extended period, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantanamo.  Respondents can suffer no conceivable harm from complying with such a request.

Public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioners from the Court's jurisdiction. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant - properly before the Court and represented by counsel - be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

Respondents cannot show <u>any</u> negative consequences from the notice order, much less serious or irreparable consequences.  The order only requires respondents to give 30 day advance notice.  Congress and the courts have found that such notice is proper.  Under Rule 23(a) of the Federal Rules of Appellate Procedure, respondents "must not transfer custody [of the *habeas* petitioner] to another <u>unless a transfer is directed in accordance with this rule</u>."  FED. R.

APP. P. 23(a) (emphasis added). "An understanding of this portion of the rule, in light of *habeas corpus* law generally, shows that it was designed in part to preserve the district judge's power over the physical custody of the petitioner by prohibiting the custodian from transferring custody of the prisoner to another, without the authorization of the 'court, justice or judge . . . .'" *Jago v. U.S. Dist. Ct., N. Dist. of Ohio, E. Div. at Cleveland*, 570 F.2d 618, 626 (6th Cir. 1978); *see also Hudson v. Hardy*, 424 F.2d 854, 856 n.5 (D.C. Cir. 1970) (moving petitioner would be "clear violation" of Fed. R. App. P. 23); *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981) (transfer without district court approval violates the rule). Requiring 30-days notice to undertake a forbidden action cannot, under any legal theory, be construed to cause serious or irreparable consequences. Such notice simply is an added protection against the familiar attempt of the jailer to outrun the writ.

In addition, respondents acknowledge that even after they have decided to move a detainee from Guantánamo it takes a significant amount of time to finalize and move the detainee. Matthew Waxman, Deputy Assistant Director of Defense for Detainee Affairs, stated in his declaration in opposition to another petitioners' motion for preliminary injunction that:

> Once a DoD transfer of a GTMO detainee is proposed, including for possible detention, investigation and/or prosecution, the views of interested United States Government agencies are considered. . . . Therefore, if a transfer is deemed appropriate, a process is undertaken, typically involving the Department of State, in which appropriate assurances regarding the detainee's treatment are sought from the country to whom the transfer of the detainee is proposed. . . .

Declaration of Matthew C. Waxman (March 8, 2005) at ¶ 6 (Ex. 2).

The State Department agrees. Ambassador Pierre-Richard Prosper, Ambassador-at-Large for War Crimes Issues, noted the in-depth discussions the State Department undertakes after the Department of Defense decides to transfer a detainee:

> Once the Department of Defense has approved a transfer from Guantanamo Bay and requests the assistance of the Department of State, my office would initiate transfer discussions with the foreign government concerned. . . .
>
> . . . . Recommendations by the Department of State are decided at senior levels through a process involving Department officials most familiar with international legal standards and obligations and the conditions in the countries concerned. Within the Department of State, my office, together with the Office of the Legal Adviser, the Bureau of Democracy, Human Rights, and Labor, and the relevant regional bureau, normally evaluate foreign government assurances and any need for protection, and, if deemed appropriate, brief the Secretary or other Department Principals before finalizing the position of the Department of State. The views of the Bureau of Democracy, Human Rights, and Labor, which drafts the U.S. Government's annual Human Rights Reports, . . . and of the relevant regional bureau, country desk, or U.S. Embassy are important in evaluating foreign government assurances and any individual persecution or torture claims, because they are knowledgeable about matters such as human rights, prison conditions, and prisoners' access to counsel, in general and as they may apply to a particular case in the foreign country concerned, as well as particular information about the entity or individual that is offering the assurance in any particular case.

Declaration of Pierre-Richard Prosper (March 8, 2005) at ¶¶ 6-7 (Ex. 3). Thus, the government itself extends the process after deciding to make the transfer. Therefore, the notice requirement requested by Petitioner should not delay any transfer (or if there is a delay, it would be minor) and would not result in any serious or irreparable consequences.

## CONCLUSION

For the reasons discussed above, the motion should be granted.

Respectfully submitted,

   /s/ Stephen M. Truitt
Stephen M. Truitt (DC # 13235 )
600 Fourteenth Street, N.W.
Suite 500, Hamilton Square
Washington, DC  20005-2004
Tel: (202) 220-1452
Fax: (202) 220-1665

Barbara Olshansky (NY #0057
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

*Of Counsel for Petitioner*

Charles H. Carpenter (DC #432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W.
Suite 500, Hamilton Square
Washington, DC  20005-2004
Tel: (202) 220-1452
Fax: (202) 220-1665

Christopher J. Huber
Benjamin P. Cooper
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Tel: (215) 981-4000
Fax: (215) 981-4750

Dated:  October 31, 2006

*Counsel for Petitioner*