Approved for Public Filing by the CSO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.*, <br><br> Petitioners, <br><br> *v.* <br><br> GEORGE W. BUSH, *et al.*, <br> Respondents. | ) <br> ) <br> ) <br> ) <br> )     No. 05-CV-2386 (RBW) (AK) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER SHARAF AL SANANI AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioner Sharaf Al Sanani a/k/a Sharaf Ahmad Muhammad Masud (ISN 170) ("Petitioner"),[1] by and through his undersigned counsel, respectfully moves for an order requiring Respondents to provide counsel for Petitioner and the Court with advance notice of any intended removal of Petitioner from Guantánamo Bay Naval Base in Cuba.

## STATEMENT OF FACTS

Petitioner is a citizen of Yemen who is being detained as an "enemy combatant" at the Guantánamo Bay Naval Base in Cuba. As set forth in habeas petition filed on December 21, 2005, he denies being an "enemy combatant" and contends he is being detained in violation of the Constitution, treaties and laws of the United States.

---

[1] On June 27, 2006, this Court ruled that the Amended Protective Order should be entered as to all Petitioners in this case, except those who already had petitioners pending or whom Respondents were unable to identify. *See* Order (dkt. No. 66) at 4-5; *see also* Order, dkt. No. 108 (entered July 26, 2006). On July 26, 2006, Respondents filed a Status Report stating that the Petitioner could not be identified. *See* Status Report, Exhibit A, No. 57 (excerpts attached hereto as Exhibit A. After being presented with compelling evidence that Sharaf Al Sanani was the detainee identified by the government as Sharaf Ahmad Muhammad Masud (ISN 170), Respondents agreed not to challenge Petitioner's identity. *See* E-mail from Andrew Warden to Vinay J. Jolly (October 13, 2006), copy attached as Exhibit B.

Approved for Public Filing by the CSO

Petitioner in the instant case has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times*, and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to a recent article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7. According to the *Washington Post*,

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1. The countries to which detainees may be

Approved for Public Filing by the CSO

brought are known to practice torture.  *See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, 2005, at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba.  During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod."  And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . .  Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, *Outsourcing Torture* at ¶ 54.  The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of torture.  In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent."  Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c).

Petitioner also has reason to fear that he will be transferred into the custody of the government of Yemen or a third country for continued illegal detention without due process of

law.  On information and belief, a number of detainees have been removed to countries –

including Pakistan and Kuwait – where they have been imprisoned and denied access to the

courts.  Moreover, recent news reports indicate that the United States government has

contemplated transferring "large numbers of Afghan, Saudi and Yemeni detainees from the

military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home

countries."  Dana Priest, *Long-Term Plan Sought For Terror Suspects*, Wash. Post, Jan. 2, 2005,

at A1.

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue

injunctions to protect its jurisdiction."  *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291

(D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973).  Petitioner's

request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the

status quo between the parties pending a final determination of the merits of the action."  13

James Wm. Moore, et al., *Moore's Federal Practice* § 65.20 (3d ed. 2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the

requested injunction here:  (1) Petitioner will suffer irreparable harm if the injunction is denied;

(2) no harm will be suffered by Respondents if the injunction is granted; (3) Petitioner are likely

to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the

United States Government from rendering individuals to foreign countries for detention and

torture.  *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v.

Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d

1060, 1066 (D.C. Cir. 1998).

Approved for Public Filing by the CSO

Petitioner stands to suffer immeasurable and irreparable harm – from torture to possible death – at the hands of a foreign government.  Transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioner's right to adjudicate the legality of their detention in this Court.  By contrast, Respondents, who have already held Petitioner for several years, are asked only to provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo.[2]  Respondents can suffer no conceivable harm from complying with such a request.

Petitioner is likely to succeed on the merits of his claims.  Petitioner has properly invoked the jurisdiction of this Court.  *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).  Judge Green has already ruled that detainees in similar circumstances to Petitioner have stated actionable claims under the Due Process Clause and the Geneva Conventions.  For the United States Government to remove Petitioners to countries that would afford no such protections would be to flout Judge Green's ruling and defeat the Court's jurisdiction.  Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioner from the Court's jurisdiction.  No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

---

[2] As of the date of this motion, attorneys from the Atlanta office of Kilpatrick Stockton LLP have not been granted security clearance, despite having submitted their applications in August of 2006.

Approved for Public Filing by the CSO

# CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated:  Atlanta, Georgia
        November 30, 2006

                                  Respectfully submitted,

                                  Counsel for Petitioner:

                                        /s/ Vinay J. Jolly
                                  A. Stephens Clay IV (Pursuant to LCvR 83.2(g))
                                  James F. Bogan III (Pursuant to LCvR 83.2(g))
                                  C. Allen Garrett Jr. (Pursuant to LCvR 83.2(g))
                                  Vinay J. Jolly (Pursuant to LCvR 83.2(g))
                                  Leslie J. Abrams (Pursuant to LCvR 83.2(g))
                                  Miguel M. Duran (Pursuant to LCvR 83.2(g))
                                  KILPATRICK STOCKTON LLP
                                  1100 Peachtree Street, Suite 2800
                                  Atlanta, Georgia 30309-4530
                                  Telephone: (404) 815-6500
                                  Facsimile: (404) 815-6555

                                  Barbara Olshansky (NY-0057)
                                  Gitanjali S. Guiterrez (Pursuant to LCvR 83.2(g))
                                  J. Wells Dixon (Pursuant to LCvR 83.2(g))
                                  CENTER FOR CONSTITUTIONAL RIGHTS
                                  666 Broadway, 7th Floor
                                  New York, New York 10012
                                  Telephone: (212) 614-6439
                                  Facsimile: (212) 614-6499

Approved for Public Filing by the CSO

## CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER SHARAF AL SANANI AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTANAMO** by serving electronically all attorneys of record for each party via the Court's Electronic Case Filing system.

Respectfully submitted,

Counsel for Petitioner:

_____/s/ Vinay J. Jolly_____
A. Stephens Clay IV (Pursuant to LCvR 83.2(g))
James F. Bogan III (Pursuant to LCvR 83.2(g))
C. Allen Garrett Jr. (Pursuant to LCvR 83.2(g))
Vinay J. Jolly (Pursuant to LCvR 83.2(g))
Leslie J. Abrams (Pursuant to LCvR 83.2(g))
Miguel M. Duran (Pursuant to LCvR 83.2(g))
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Barbara Olshansky (NY-0057)
Gitanjali S. Guiterrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Telephone: (212) 614-6439
Facsimile: (212) 614-6499