**Exhibit 2**



AMERICAN FORCES INFORMATION SERVICE
# NEWS ARTICLES

## Reporters Offered Look Inside Combatant Status Review Tribunals

By Kathleen T. Rhem
American Forces Press Service

NAVAL BASE GUANTANAMO BAY, Cuba, Aug. 29, 2004 -- As the world's attention was focused on the first hearings in war-crimes trials against four enemy combatants here this week, another type of proceeding was going on elsewhere on the base that ultimately will involve all 585 detainees held here.

DoD is convening Combatant Status Review Tribunals within the Camp Delta prison complex to determine individually if detainees are properly classified as illegal combatants. Roughly 40 detainees have gone through hearings, and the process is nearly completed for at least 14 of them.

Media visiting Guantanamo Bay this week to witness the first military- commission hearings were offered the chance to witness first-hand one of the combatant-status tribunals. Ground rules for coverage forbid identifying any participants by name.

After being cleared and escorted through several layers of security, visitors arrive at the pre-fabricated building that houses the Office of Administrative Review for Detained Enemy Combatants Forward. OARDEC is a Washington office set up under the purview of Navy Secretary Gordon England to make the combatant- status review process possible.

In an interview room, officials explained, the detainees meet with a personal representative, a military officer assigned to assist them through the process. In the interview room, detainees are shackled, and a guard sits outside the door.

Detainee participation in the process has run the gamut from crumpling up the documents presented to asking animatedly to help prepare their defense. No detainees have been hostile to their personal representative, but some have refused to participate, the officials said.

The room is small, brightly lit, with a light-blue carpet and lightly colored paneled walls. "We wanted (the detainees) to understand that this is a different process," an official said. "This is something new."

The personal representatives are obligated to present any unclassified evidence to the detainee and explain there is no expectation of confidentiality in the process. However, interrogators or intelligence personnel have no access to information obtained in the process, and guards don't enter the room, the officials stressed repeatedly.

Following is a description of an actual hearing as observed by a reporter visiting Guantanamo. The tribunal described here happened on Aug. 25 and was the 36th that has occurred.

The detainee was already in the room when the panel members entered. He showed little emotion and made few movements. The man had a long, dark beard, close- cropped hair and wore a black crocheted skullcap. He wore a bright orange short-sleeved shirt and pants that resembled hospital scrubs. He was

handcuffed and wore leg irons. The leg manacles were secured to a ring in the floor with a padlock.

Also in the room were an interpreter, in casual civilian clothing and seated next to the detainee; a court reporter; a recorder, an Army major; and the detainee's personal representative, an Air Force major. The three panel members filed into the room and took their seats at a table across the front of the room. They included an Air Force colonel, an Air Force lieutenant colonel, and a Navy commander. None of the military members in the room had nametags on their uniforms.

Two media representatives sat just inside the door, about five to six feet from the detainee. Directly behind the panel members was a large one-way mirror. Several OARDEC Forward officials were watching from the next room.

From the hallway, the sound of chains clanking as other detainees were being moved was clearly audible.

The detainee was advised of his rights to testify or present evidence if he chooses and of his right to decline these things. Then he was told of the evidence collected against him.

"(Name omitted) served with the Taliban, trained on the Kalashnikov rifle, and surrendered to General Dostrum's forces in Afghanistan. At that time he was carrying a Kalashnikov rifle," the Air Force colonel said.

The recorder then said there was no further unclassified evidence to submit and requested a closed hearing to present classified evidence. He also explained the detainee had requested three witnesses be brought forward to testify that he was forcibly taken from his family and forced to join the Taliban.

Due to the "limited scope" of the tribunal proceeding, the board president explained, how or why the individual joined the Taliban is not a consideration. "The request for witnesses is denied," he said.

Next the detainee was given a chance to make a statement on his own behalf. He chose to make his statement under oath. He was unable to raise his right hand because of the chains, but swore to Allah to tell the truth.

"They came to my house and took me by force. I joined the Taliban by force, not by my own choice," he said, through the interpreter. "Everybody in Afghanistan knows that if the government asks you, you can't say no."

He explained that the Taliban was collecting people from all over Afghanistan to fight the forces of Gen. Abdul Rashid Dostrum, an ethnic Uzbek rebel commander. The detainee offered to go back to Afghanistan with the tribunal members to find people who would verify his story. He also explained he comes from a very poor area and couldn't leave his home and family to flee from the Taliban.

"I could not leave the area and leave the house and family there," he said. "That's all I'm going to say. I said this under oath; that is the truth."

Through questions asked by the personal representative, the tribunal panel learned the man had no ammunition when he was captured and had been held under guard the whole time he was with the Taliban forces.

Further questioning by the panel members revealed that he underwent four days of military training, that

he never actually fought for the Taliban, and was never assigned any military duties in the month he was held by Taliban forces at a compound in Konduz. The tribunal members also learned the man was married and had six children.

The panel members then explained to the man that he would be notified of the tribunal results. If he is found to not be an enemy combatant, he will be returned to his home country. Should he be found to be correctly classified as an enemy combatant, he will then be eligible to go through an annual review board at a later date to determine if he is still a threat to the United States.

The panel and media observers then left the room. Officials said the panel members immediately would hold a closed hearing to receive the classified evidence and then vote on whether they thought the detainee was an enemy combatant.

The officials explained the detainee's request for witnesses was denied because what they would have testified on -- that he was compelled by force to join the Taliban -- would not be germane to the proceedings. The definition of enemy combatant "does not address consent or intent," an official explained.

Witnesses who could testify that a detainee was forced to join the Taliban could be relevant to the upcoming annual review board, the official said.

He admitted it's hard to watch in cases like this, where the detainee says he was taken from his home and family by force and forced to go with the Taliban. "It's gut-wrenching," the official said. "But our job at this juncture is just to answer this one question. And we want to do it what we call PRF -- proper, right and fair and make fact-based decisions," he said.

Other requests for witnesses are being granted. Another detainee was called as a witness in one instance, and in another instance officials are working to find two witnesses a detainee requested from outside Guantanamo Bay. In other cases, the panel members have called in intelligence experts to explain the significance of a detainee's actions.

After the panel votes, the recorder prepares a record that is reviewed by a legal adviser here and then a legal adviser in Washington before being presented to the convening authority, Navy Rear Adm. James McGarrah, for final approval. Officials don't consider the process closed until the convening authority approves the results.

Of the 36 tribunals held up until the tribunal described above, 24 detainees participated and 12 tribunals were held without the detainee being present. Reports of 26 proceedings had been completed and sent to Washington for further review, and the convening authority has approved 14. All 14 were found to have been properly classified as enemy combatants.

Officials said they plan to begin notifying the individual detainees of these results within the next week. Part of that process will be to also notify the detainees of their rights to begin preparing a case to present to the upcoming annual review boards.

News Archive