PREVIOUSLY FILED WITH CSO ON 11/30/06 AND
APPROVED FOR PUBLIC FILING BY CSO

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANAD ALI YISLAM AL-KAZIMI<br>    Detainee,<br>    Guantánamo Bay Naval Station,<br>    Guantánamo Bay, Cuba.<br><br>Benyam Mohammad,<br>    as Next Friend of<br>    Mr. Sanad Ali Yislam Al-Kazimi<br><br>                        Petitioners,<br><br>    v.<br><br>GEORGE WALKER BUSH, *et al.*,<br><br>                        Respondents. | Civil Action No: 05-2386(RBW) |

## MOTION FOR FACTUAL RETURNS

Petitioner Sanad Ali Yislam Al-Kazimi has been incarcerated by the United States military for about four years. To date, he has not been charged with a crime or offense nor have Respondents afforded him any semblance of even minimally adequate process. In addition, although counsel has represented Mr. Al-Kazimi since April 28, 2006,[1] Respondents have not provided to counsel any justification, basis, or reason for keeping Petitioner locked up in the cages of Guantánamo Bay Naval Station (hereinafter "Guantánamo"). For all counsel knows, Mr. Al-Kazimi has not even been designated an "enemy combatant," the purported basis for holding hundreds of men at Guantánamo. Petitioner could be languishing at Guantánamo, separated against his will from family, home and country, even though he is *not* or is no longer an "enemy combatant." Respondents should be ordered to produce the full Combat Status

---

[1] Counsel filed a notice of appearance on behalf of Mr. Al-Kazimi on April 28, 2006. *See Mohammon, et al., v. Bush*, No. 05-2386 (RBW) (Apr. 28, 2006) (dkt. no. 21).

Review Tribunal record [hereinafter "CSRT"] explaining the purported cause of Petitioner's initial detention as well as the full records of all Administrative Review Board [hereinafter "ARB"] explaining the purported cause of Petitioner's continuing detention.

Production of these records by Respondents does not prejudice, influence, or have any bearing upon the jurisdictional question upon which this Court awaits guidance from the Court of Appeals for the D.C. Circuit, as pending jurisdictional challenges do not deprive this Court of authority. Moreover, these records are critical to the provision of effective representation and fundamental to the determination of Petitioner's current status. The production of these records by Respondents does not in any way undermine this Court's stay. Finally, the burden on Respondents is utterly minimal.

For all the above reasons, Petitioner Al-Kazimi, by and through undersigned counsel, hereby respectfully requests that the Court enter an Order requiring Respondents to produce unredacted and redacted factual returns within 14 days of entry of the Order.[2] A (proposed) Order is attached as Exhibit A.

## PROCEDURAL BACKGROUND

On December 21, 2005, the Center for Constitutional Rights ("CCR") filed a *habeas corpus* petition on behalf of all petitioners in the above-captioned case. These petitioners include more than 150 detainees from numerous countries throughout the world, all of whom are imprisoned at Guantánamo. This case, styled *Mohammon v. Bush*, 1:05-CV-02386, was assigned to Judge Walton. Subsequently, undersigned counsel entered a Notice of Appearance on behalf of Petitioner Al-Kazimi. *See* Notice of Appearance (Apr. 28, 2006) (dkt. no. 9).

---

[2] Petitioner's request for factual returns includes all records of proceedings before the CSRT, all records of proceedings before the ARB and all decisions and/or recommendations made by the CSRT and the ARB. Petitioner's request for redacted returns refers to those portions of the records that are unclassified and unredacted refers to those portions of the records that include classified and unclassified information.

On January 11, 2006, this Court ordered all action in *Mohammon. v. Bush* stayed pending the jurisdictional ruling of the District of Columbia Circuit Court. *See* Order (dkt. no. 6). The District of Columbia Circuit has not yet ruled on jurisdiction.[3] On June 27, 2006, in response to several *Mohammon* Petitioners' motions for access to counsel, including Mr. Al-Kazimi's, this Court ordered entry of the Amended Protective Order[4] as to all identified Petitioners without duplicative filings. *See* Order (June 27, 2006) (dkt. no. 66) at 1.

Pursuant to Local Civil Rule 7(m), counsel conferred with Respondents' counsel regarding the production of Petitioner Al-Kazimi's redacted and unredacted records from any and all proceedings before the CSRT and ARB. Respondents' counsel has declined to consent to production of these records.

## ARGUMENT

I. **PENDING JURISDICTIONAL CHALLENGES DO NOT DEPRIVE THIS COURT OF AUTHORITY TO ORDER A FACTUAL RETURN**

Petitioner's request for factual returns should be granted regardless of any objections Respondents may raise to this Court's jurisdiction over this matter.[5] As one Court in this District has recently stated, "[d]espite the lack of finality regarding [the constitutionality of the MCA and

---

[3] On October 18, 2006, the United States Court of Appeals for the District of Columbia Circuit issued orders in *Boumediene v. Bush*, No. 05-5062 (D.C. Cir.) and *Al Odah v. United States*, No. 05-5064 (D.C. Cir.) granting habeas petitioners' motion for leave to file supplemental briefs on the significance of the Military Commissions Act of 2006. The court set the following briefing schedule: Supplemental Briefs for Habaes Petitioners/Appellants: November 1, 2006; Supplemental Briefs for Respondents/Appellees: November 13, 2006; and Supplemental Reply Brief for Habaes Petitioners/Appellants: November 20, 2006.

[4] Amended Protective Order and Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantánamo Bay, Cuba, first issued on November 8, 2004, in *In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004), the Order Addressing Designation Procedures for "Protected Information," first issued on November 10, 2004, in *In re Guantanamo Detainee Cases*, and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, first issued on December 13, 2004, in *In re Guantanamo Detainee Cases*.

5 The constitutional validity of the Military Commissions Act (Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA") and Detainee Treatment Act, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("DTA") is currently being briefed before the District of Columbia Circuit Court of Appeals in the pending appeals, *Boumediene v. Bush*, No. 05-5062 (D.C. Cir.), and *Al Odah v. United States*, No. 05-5064 (D.C. Cir.). *See* Notice of Order Granting Supplemental Briefing to Court of Appeals on Significance of Military Commissions Act of 2006, No. 05-CV-2386 (RBW) (dkt. no. 184).

the DTA] . . . it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the *factual basis of petitioner's detention.*" *Feghoul v. Bush*, No. 06-CV-00618 (RWR), 2006 WL 3096856 (Oct. 31, 2006) at 1 (granting factual return notwithstanding jurisdictional challenge based upon MCA and DTA) (emphasis added). *See also* Order, (June 27, 2006) (dkt. no. 66) at 4 ("Absent contrary direction by the District of Columbia Circuit, this Court is unwilling to take action that might conceivably dilute the Great Writ itself or impair its exercise.").

Indeed, even since the passage of the MCA, Respondents have provided factual returns to other habeas petitioners in Guantánamo, without moving for reconsideration on MCA grounds.[6] Accordingly, in the interests of equal treatment for all Guantánamo detainees with pending habeas petitions, Respondents should be required to provide Petitioners with a factual return. *Cf.* Order, No. 05-CV-2386 (RBW) (dkt. no. 66) at 4-5 (noting potential of "procedural morass fraught with significant administrative burdens" where protective order is applied to some but not all petitioners).

## II. COURTS OF THIS DISTRICT HAVE UNEQUIVOCALLY FOUND THAT COUNSEL ACCESS TO THE INFORMATION CONTAINED IN FACTUAL RETURNS IS CRITICAL TO PROVIDING EFFECTIVE REPRESENTATION

Counsel's provision of meaningful representation to Mr. Al-Kazimi greatly depends upon access to the records that will presumably state some factual basis for taking Mr. Al-Kazimi into United States military custody, transferring him to Guantánamo and continuing his deprivation of freedom indefinitely. Meaningful representation requires information – facts regarding the controversy at issue. District Courts, including this Court, have recognized that the provision of

---

[6] *See, e.g. Rahman v. Bush*, 05-CV-0882 (GK) (Oct. 30, 2006) (dkt. no. 30) (providing factual returns); *Mohammad v. Bush*, 05-CV-0885 (GK) (Oct. 30, 2006) (dkt. no. 34) (providing factual returns); *Al Amin v. Bush*, 05-CV-02336 (PLF) (Oct. 18, 2006) (providing factual returns); *Basardh v. Bush*, 05-CV-00889 (ESH) (Oct. 17, 2006) (dkt. no. 26) (providing factual returns). In each of these cases, the order of the Court requiring Respondents to provide factual returns was issued before the MCA became law.

4

factual returns is a core prerequisite to effective representation. In *Al-Anazi v Bush*, 05-CV-0345, Judge Bates stated that "the factual returns appear necessary for petitioners' counsel effectively to represent petitioners. Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." (D.D.C. Apr. 21, 2005) (dkt. no. 22) at 20. This Court, relying on the decision of the *Al-Anazi* court, ordered production of a factual return. *See Battayav v. Bush*, No. 05-714, Order (May 19, 2005) (dkt. no. 12); *see also, Tumani v. Bush*, 05-CV-0526 (RMU) (D.D.C. Apr. 19, 2005) (dkt. no. 6) at 2 (holding that "petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients").

### III. RECEIPT OF A FULL FACTUAL RETURN IS CRITICAL TO DETERMINING PETITIONER AL-KAZIMI'S CURRENT DESIGNATION AND STATUS

Factual returns are instrumental in determining whether or not the men detained at Guantánamo have been declared "enemy combatants," the designation created and reflexively used by Respondents to justify indefinite detention without charge.[7] There are men incarcerated

---

[7] The term, "enemy combatant," is not recognized under International Law and, before the indefinite detention of prisoners of war at Guantánamo, it was a generic term without legal definition. *See generally* Peter Jan Honigsberg, *Chasing "Enemy Combatants*,*"* UCLA J. Int'l L. & Foreign Aff., forthcoming, *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=942058 (last visited Nov. 27, 2006). Under International Humanitarian Law (Law of War), the only possible designations are civilians or prisoners of war; there is no mention of enemy combatants. *Id* at 15 n.49. The U.S. Department of Defense first started using the term in February of 2002, soon after the first transfer of detainees to Guantánamo, but it was not until November 30, 2004, that the Department of Defense first defined the term in its *Department of Defense Dictionary of Military and Associated Terms*: "Any person in an armed conflict who could be properly detained under the laws and customs of war. Also called EC." http://www.dtic.mil/doctrine/jel/doddict/data/e/01912.html (last visited Nov. 28, 2006). In *Hamdi*, the Supreme Court defined the term as a person who was "part of or supporting forces hostile to the United States or coalition partners in Afghanistan and who engaged in armed conflict against the United States there." *Hamdi*, 542 U.S. 507, 516 (2004). In *Hamdan*, the Supreme Court applied a portion of the definition used by the Combat Status Review Tribunals: "an individual who was part of or supporting Taliban or al Qaeda forces, or associated forces that are engaged in hostilities against the United States or its coalition partners." *Hamdan v. Rumsfeld*, 126 S. Ct. 2749, 2761 n.1 (2006). Two more definitions of "enemy combatant" have been codified in the Military Commissions Act: a lawful enemy combatant and an unlawful enemy combatant. P.L. No. 109-366, 120 Stat.2600 (2006). A lawful enemy combatant is: "(A) a member of the regular forces of a State party engaged in hostilities against the United States; (B) a member of a militia, volunteer corps or organized resistance movement belonging to a State party engaged in such hostilities, which are under responsible command, wear a fixed distinctive sign recognizable at a distance, carry their arms openly, and abide by the law of war; or (C) a member of a regular armed force who professes allegiance to a government engaged in such hostilities, but not recognized by

at Guantánamo who, by Respondents' designation, are not "enemy combatants." For example, in *Qassim v Bush*, 05-0497 (JR) petitioners' counsel was denied factual returns, but learned through meetings with their clients that the government had declared them noncombatants by CSRT months earlier. Since the production of factual returns by the government would have contained that information, Judge Robertson concluded as follows:

> I'll tell you one thing, Counsel. You've talked me early on into not requiring returns to be filed in the cases. But I'm going to go back to all of my habeas cases this afternoon and change those orders. Because if you're telling me that it's only an order to file a return that will allow you to tell opposing counsel that their clients are no longer enemy combatants, that's a little hard for me to understand.

*Qassim v. Bush*, No. 05-0497 (JR), Hrg. Tr. (Aug. 1, 2005) at 21. Ordering Respondents to come forward with a factual return will, at the very least, bring to light whether Respondents have deemed Mr. Al-Kazimi to fall within Respondents' newly-minted "enemy combatant" category.

## IV. THE CURRENT STAY DOES NOT PRECLUDE THIS COURT FROM GRANTING PETITIONER'S REQUEST FOR FACTUAL RETURNS

The stay imposed by Order of this Court on January 22, 2006 does not affect the urgent need for counsel to begin gathering evidence and otherwise preparing for the eventuality of a hearing. "Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties." *Rabbani v. Bush*, No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006) (dkt. no. 19) at 2, *citing Landis v. N. Am Co.*, 299 U.S. 248, 256 (1936) and *Clinton v. Jones*, 520 U.S. 682, 707 (1977). In order to balance the hardship imposed on Petitioner, courts in this district have ordered factual returns with stays in place.[8]

---

the United States." *Id.* § 948a(2). An unlawful enemy combatant is defined as: "(i) a person who has engaged in hostilities or who has purposely and materially supported hostilities against the United States or its co-belligerents who is not a lawful enemy combatant (including a person who is part of the Taliban, al Qaeda, or associated forces); (ii) a person who, before, on, or after the date of the enactment of the Military Commissions Act of 2006, has been determined to be an unlawful enemy combatant by a Combatant Status Review Tribunal or another competent tribunal established under the authority of the President or the Secretary of Defense." *Id.* at § 948a(1).
[8]*Kahn v. Bush*, No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006) (dkt. no. 20); *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006) (dkt. no. 23); *Zadran v. Bush*, No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006) (dkt.

The Court in *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006) (dkt. no. 23), also took notice of pending appeals in related cases, and ordered production of factual returns, finding that:

> [T]he outcome sought by petitioner through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question, and because this motion does not approach the merits of petitioner's challenge to the legality of his detention, the Court will rule on the motion without resolving respondents' jurisdictional challenge. To do otherwise could unnecessarily prejudice petitioner's ability to timely and meaningfully communicate with counsel and advance his claims, given the logistical difficulties and limitations associated with attorney-client communications in this unique detention setting.

*Id.* at 3. Ongoing preparation is necessary because memories fade; witnesses move, die or change jobs; and documentary evidence disappears. As time passes, Petitioner faces increased prejudice by his counsel's inability to adequately interview him and others in a focused and informed manner.

Staying legal proceedings does not mean that investigative measures should be curtailed in the interim. To avoid being prejudiced by the stay, counsel must "begin preparing their defense well in advance of any ruling by the Court of Appeals." *Al-Adahi v. Bush*, 05 CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt. no. 35) at 2 n.1; *see also Al-Subaiy et. al. v. Bush*, No. 05-1453 (RMU) (D.D.C. Sept. 9, 2005) (dkt. no. 14) at 3. Timely production of factual returns is critical "to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz v. Bush*, 04-CV-1135 (ESH), (D.D.C. Apr. 12, 2005) (dkt. no. 96) at 2. Because Petitioner's request does not approach the merits of his legal challenge, this Court should order production of factual returns.

---

no. 36); *Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C. May 23, 2006) (dkt. no. 24); *Almerfedi v. Bush*, No. 05-CV-1645 (PLF) (D.D.C. Mar. 6, 2006) (dkt. no. 15); *Zaid v. Bush*, No. 05-CV-1646 (JDB) (D.D.C. Oct. 25, 2006) (dkt. no. 12).

### V. THE BURDEN IMPOSED ON RESPONDENTS IS MINIMAL AND DOES NOT OUTWEIGH PETITIONER SANAD ALI YISLAM AL-KAZIMI'S INTEREST IN THE INVESTIGATION AND PREPARATION OF HIS CASE

Providing factual returns would not present a logistical burden. Respondents have provided factual returns in numerous Guantánamo habeas cases, and have been able to comply with court orders within days. *See Errachidi v. Bush,* 05-CV-0640 (D.D.C. Apr. 21, 2005) (docket entry requiring Respondents to show cause in seven (7) days' time; Respondents filed factual returns on April 26); *Abdullah v. Bush*, 05-CV-0023 (D.D.C. Apr. 8, 2005) (requiring Respondents to file factual returns by April 14, 2005; Respondents filed on time). Most of the judges of this Court have rejected Respondents' claim of burden. *See Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt. no. 18); *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (dkt. no. 16); *Kurnaz v. Bush*, 04-CV-1135 (ESH), 1005 WL 839542 (D.D.C. Apr. 12, 2005); *Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (no. 35); *Al-Anazi v. Bush*, 05-CV-0034 (JDB) (D.D.C. Apr. 21, 2005) (dkt. no. 22); *Al-Shamri v. Bush*, 05-CV-0551 (RWR) (D.D.C. May 10, 2005) (dkt. no. 10).

Pursuant to Respondents' own policies, factual returns were required to be compiled within three days of CSRT decisions, and all such decisions were to be completed by March 2005. Memorandum re: Order Establishing Combatant Status Review Tribunal (July 7, 2004), *available at* http://www.defenselink.mil/news/Jul2004/d20040707/review.pdf; *see also* Update to Annex One of the Second Periodic Report of the United States of America to the Committee Against Torture (Oct. 21, 2005) ("As of March 29, 2005, the CSRT Director had taken final action in all 558 cases."), *available at* http://www.state.gov/g/drl/rls/55712.htm.

In addition to the record of proceedings before the CSRT, Petitioner requests that the transcript and findings of the ARB be included as part of the factual returns. The ARB is a

8

review process conducted annually to determine whether each detainee should be released, transferred or further detained. On February 9, 2006, the U.S. Department of Defense ("DOD") announced the completion of the first round of ARBs. *Id.* DOD is conducting the second round of ARBs and, as of November 20, 2006, has completed this process for 311 of the 330 "eligible" detainees. ARB Summary, *available at* http://www.defenselink.mil/news/arb2.pdf. According to DOD's records, Petitioner Al-Kazimi has likely attended two ARB proceedings. To the extent that the findings of both the ARB and CSRT pertain directly to the matter of Petitioner's detention – the purported reason for his initial detention as well as the purported justification for his continued detention – both sets of documents fall squarely within the scope of factual returns, and this Court should require Respondents to provide both CSRT and ARB records.

Since, according to the Respondents' own reports, the CSRT and ARB records exist, there is little, if any, need for Respondents to draft extensive documents. Respondents merely have to photocopy the previously prepared documents and put them through the routine classification process. Respondents' concerns about the dissemination of classified information were addressed by the court in *Rabbani v. Bush*, No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006), which affirmed that "the protective order entered in this case will guard against any inadvertent disclosures." (dkt. no. 19) at 3. Furthermore, the minimal burden to Respondents does not outweigh Petitioner Al-Kazimi's considerable interest in ensuring a thorough investigation and preparation of his case. Unredacted factual returns can surely be produced within 14 days without unreasonable burden. Because Respondents refuse to provide all members of Petitioner's legal team with security clearance, it seems reasonable to require Respondents to produce redacted factual returns within 14 days as well.[9]

---

[9] Petitioner is represented by the Fordham International Law Justice Clinic. The U.S. Department of Justice's policy prohibits application by law students for security clearance notwithstanding the language of the Protective Order

## CONCLUSION

For the reasons stated above, Petitioner's Motion for Factual Returns should be granted and redacted and unredacted returns ordered within 14 days.

Dated: November 30, 2006

        Respectfully submitted,

        Counsel for Petitioners:

          /s/ Martha Rayner
        Martha Rayner (NY-MR-1423)
        Ramzi Kassem (NY-RK-3567)
        James A. Cohen (NY-JC-3836)

        LINCOLN SQUARE LEGAL SERVICES
        Fordham University School of Law
        33 W. 60th Street, 3rd Floor
        New York, NY 10023
        Telephone: (212) 636-6934
        Fax: (212) 636-6923

---

which provides that "'counsel' also includes co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation."

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SANAD ALI YISLAM AL-KAZIMI<br>     Detainee,<br>     Guantánamo Bay Naval Station,<br>     Guantánamo Bay, Cuba.<br><br>Benyam Mohammad,<br>     as Next Friend of<br>     Mr. Sanad Ali Yislam Al-Kazimi<br><br>                    Petitioners,<br><br>        v.<br><br>GEORGE WALKER BUSH, *et al*.,<br><br>                    Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No: 05-2386(RBW)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## **(PROPOSED) ORDER**

**ORDERED** that petitioners' motion for factual returns is **GRANTED** and respondents shall provide petitioner Sanad Ali Yislam Al-Kazimi's redacted and unredacted factual returns to petitioner's counsel and the Court within 14 days of the date of entry of the Order.

Dated: _____, 2006

                                        REGGIE B. WALTON
                                        United States District Judge