Approved for Public Filing by the CSO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SHARAF AL SANANI, *et al.*,<br>　　Detainee,<br>　　Guantánamo Bay Naval Station,<br>　　Guantánamo Bay, Cuba,<br><br>Sami Muhyedin al Hajj,<br>　　as Next Friend of<br>　　Mr. Sharaf Al Sanani,<br><br>　　　　Petitioners,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>　　　　Respondents. | No. 05-CV-2386 (RBW) (AK) |

## EMERGENCY MOTION OF PETITIONER SHARAF AL SANANI FOR FACTUAL RETURN

Petitioner Sharaf Al Sanani a/k/a Sharaf Ahmad Muhammad Masud (ISN 170) ("Petitioner"), a citizen of Yemen, has been incarcerated by the United States military for five years. Yet, according to the limited, publicly-available information about his incarceration, Petitioner's only "crime" was having been in Afghanistan during the months before and after September 11, 2001; having barely escaped the fighting by traveling to Pakistan; and then being handed over to the Americans by the Pakistani officials whom he had asked to help him get to the Yemeni Embassy. *See* Exhibit A (unclassified CSRT Statement of Evidence); Exhibit B (unclassified "Summarized Detainee Statement" of ISN 170). Indeed, Petitioner is not charged with a ***single act*** of hostility against the United States and its allies. *See id.* To the contrary, Petitioner – who was born in 1978 – appears to have spent the better part of his adult life in Guantánamo Bay simply because he was in the wrong place at the wrong time.

The need for counsel to have some understanding of the basis of Petitioner's detention is particularly acute because, according to an e-mail recently received from the Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC"), information pertinent to Petitioner's 2007 Administrative Review Board ("ARB") proceeding must be received no later than February 23, 2007.  *See* Exhibit C.  Accordingly, Respondents should be ordered to produce immediately, but in any event no later than February 9, 2007, all information pertaining to Petitioner, including all records of Petitioner's proceeding(s) before the Combat Status Review Tribunal ("CSRT "), all records of Petitioner's proceedings before any prior ARB, and all decisions or recommendations made by the CSRT or the ARB about him.[1]

Such a production would not prejudice, influence, or bear upon the jurisdictional questions pending before the Court of Appeals.  To the contrary, as found by numerous judges of this Court, the information requested is essential to the representation of Petitioner in any forum. The burden on Respondents is minimal at best.

Accordingly, Petitioner requests that the Court enter an Order requiring Respondents to produce a factual return to his habeas petition, including his CSRT and ARB information, as quickly as possible but in no event later than February 9, 2007 (two weeks prior to the February

---

[1] In response to the Supreme Court's decisions in *Rasul v. Bush,* 542 U.S. 466 (2004), and *Hamdi v. Rumsfeld,* 542 U.S. 507 (2004), the Department of Defense created the CSRT to review the classification of Guantanamo detainees as so-called "enemy combatants."  *See* Denbeaux, et al., *No-Hearing Hearings, CSRT:  The Modern Habeas Corpus?  An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantanamo* ("Seton Hall Report on CSRTs"), at 4, *available at* http://law.shu.edu/news/final_no_hearing_hearings_report.pdf. CSRT procedures provide that each detainee found to be an enemy combatant must be reviewed annually by the ARB.  *Id.* at 35 n.30.  The purpose of the ARB is to make a recommendation as to whether an enemy combatant should continue to be detained, either because he is a threat to the United States or its allies or because his continued detention is needed for intelligence or other law enforcement purposes.  *See* Revised Implementation of Administrative Review Board Procedures for Enemy Combatants at U.S. Naval Base at Guantanamo Bay, Cuba, at 2, *available at* http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf.

US2000 9716120.2

23 deadline for Petitioner's 2007 ARB submission).  Petitioner further requests that the Court enter an Order granting this emergency motion by February 2, thereby providing Respondents with seven calendar days to produce the return.  For the Court's review and consideration, a proposed Order is attached.

**STATEMENT OF FACTS**

**I.    THE PAUCITY OF PUBLICLY-AVAILABLE INFORMATION JUSTIFYING PETITIONER'S FIVE-YEAR DETENTION**

Even though these and other detainee cases have been pending for years, virtually no information has been disclosed to justify the detention of the hundreds of men who remain at Guantánamo.  The limited information that the government has been ordered to produce so far confirms that most of the detainees – a full ***55%*** of them, according to a recent comprehensive study – are not even alleged to have taken up arms or engaged in a single hostile act against the United States or its allies.  *See* Denbeaux, et al., *Report on Guantanamo Detainees:  A Profile of 517 Detainees through Analysis of Department of Defense Data* ("Seton Hall Report on Detainees"), at 6-7, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf.

Petitioner is no exception.  As with the summaries of evidence against most of his fellow detainees, the Combat Status Review Tribunal summary of the evidence against Petitioner ***omits entirely*** any entry under paragraph 3(b), the paragraph in which a detainee's purported "hostile acts" against the United States or its coalition partners should be specified.  *See* Exhibit A (*available at* page 265 of http://www.dod.mil/pubs/foi/detainees/index.html); Seton Hall Report on Detainees, at 6.  Petitioner is not even alleged to have been a "Fighter for" or "Member of" al Qaeda, the Taliban, or any other terrorist organization.  *See* Seton Hall Report on Detainees, at 9 (noting that only 38% of the detainees are alleged to have been "Fighters for" or "Members of" a terrorist group, whereas a full 60% of the detainees are alleged merely to have been "associated

US2000 9716120.2

- 3 -

with" a terrorist organization). Instead, as with a full 60% of the detainees, Petitioner is alleged merely to have been "associated with" a terrorist organization (al Qaeda), an incredibly broad designation capable of reaching the most attenuated of relationships. *See id.*

Regarding Petitioner's alleged "association with" al Qaeda, the only specific allegations about that are that he

(a) "left Sana'a, Yemem [sic], and traveled to Kandahar, Afghanistan" in June of 2001;

(b) spent two months in Afghanistan for "religious training";

(c) traveled to Kabul, Afghanistan and Jalalabad, Afghanistan in September of 2001; and

(d) "fled Jalalabad" in December of 2001, where he allegedly "surrendered to the Pakastani [sic] Army."

*See* Exhibit A (page 265 of http://www.dod.mil/pubs/foi/detainees/index.html). In other words, Petitioner is alleged to have been in Afghanistan for several months in 2001;[2] to have "fled" the country in December of 2001; and to have "surrendered" to Pakistani authorities then. Not a single criminal act is alleged, much less any hostile act directed at the United States or its allies.

The "Summarized Detainee Statement" for ISN 170 (copy attached as Exhibit B), which purportedly reflects the statements made on Petitioner's behalf at the CSRT proceeding (counsel has not been able to confirm the validity of the Summarized Detainee Statement), also is publicly available, at pages 14-15 of http://www.dod.mil/pubs/foi/detainees/csrt/Set_39_2629-2646.pdf. According to this document, Petitioner expressly asserted that he is "not associated with" al Qaeda and responded to every one of the "allegations" against him, acknowledging that he

---

[2] As the United States Supreme Court recognized in *Hamdi v. Rumsfeld*, a party's mere presence in a country in which combat operations are taking place is an insufficient basis for concluding that a party was "part of or supporting forces hostile to the United States or coalition partners" and "engaged in an armed conflict against the United States," as required under the judicially-reviewed definition of "enemy combatant." 542 U.S. 507, 526-527 (2004).

US2000 9716120.2

- 4 -

  (a)  went to Kandahar for "religious purposes to visit";

  (b)  spent two months in Kandahar "in one place";

  (c)  went to "Kabul" for the purpose of observing "how they did Islamic practices in different places in Afghanistan," only to leave and go to Jalalabad because "the Afghans were trying to kill Arabs at the market" in Kabul; and

  (d)  traveled with a group to Pakistan, where he "surrendered to the Pakistani forces so they would take me to the Yemeni Embassy in Pakistan."

*See* Exhibit B, at 1.

  Rather than assisting him in getting to the Yemeni Embassy, however, the Pakistani authorities "put me in jail, then transferred me to the Americans." *See id.* The Seton Hall Report on Detainees confirms that capture in Pakistan – where the government disseminated numerous flyers promising significant bounties in exchange for delivering purported al Qaeda and Taliban members – is another recurring Guantánamo theme. *See* Seton Hall Report, at 14-15 (in those instances in which the detainee captor was identified, 66% of detainees were delivered by Pakistani authorities or captured in Pakistan). Petitioner, who is epileptic, would have been a particularly vulnerable target for an opportunistic bounty hunter, because he lost his passport in the course of crossing the mountains into Pakistan. *See* Exhibit B, at 1 (explaining that he had left his passport and the rest of his belonging behind during the difficult trip across the mountains because "I was weak and could no longer carry my bag because it was really heavy").

  The Statement ended with the following two sentences:

> All the rules in the United States and in the world, the person is innocent until you prove his is guilty not innocent. But, here with Americans, the Detainees are guilty until proven innocent.

*Id.* Given the absence of any allegations even arguably justifying his detention, Petitioner's claim of "guilty until proven innocent" appears a deplorable but apt characterization of his five-

Approved for Public Filing by the CSO

year detention at Guantánamo, a detention apparently predicated on nothing more than the unexplained conclusion that Petitioner was somehow "associated with" al Qaeda.

## II.   THE NEED FOR INFORMATION IN CONNECTION WITH PETITIONER'S UPCOMING 2007 ADMINISTRATIVE REVIEW BOARD PROCEEDING

On December 22, 2006 (the Friday before the Christmas holiday), counsel for Petitioner received an e-mail from LTC David N. Cooper of OARDEC, notifying detainees' counsel of the "opportunity to provide input regarding [Petitioner] for review and consideration by the 2007 Administrative Review Boards." *See* Exhibit C.  The message further stated that any submission must be made "no later than February 23, 2007." *Id.*  The message also included a "Fact Sheet for Habeas Counsel Regarding Administrative Review Boards (ARBs)" (copy attached as Exhibit D), which described the purpose of the ARB procedure:

> The ARBs are an administrative review process to annually assess whether there is reason to believe that an enemy combatant might pose a continuing threat to the United States or its allies in the ongoing conflict against al Qaeda and its affiliates and supporters, and whether there are other factors warranting the enemy combatant's continued detention.

*See* Exhibit D, at 1.  This official guidelines for the ARBs similarly describe their purpose as determining whether to recommend that an enemy combatant continue to be detained, either because he is a threat to the United States or its allies or because his continued detention is needed for intelligence or other law enforcement purposes.  *See* Revised Implementation of ARB Procedures for Enemy Combatants at U.S. Naval Base at Guantanamo Bay, Cuba, at 2, *available at* http://www.defenselink.mil/news/Sep2004/d20040914adminreview.pdf.

The Fact Sheet confirms that Respondents will not allow counsel to appear at the ARB hearings, that the February 23 submission is counsel's only opportunity to submit information for consideration this year, and that any information received after Petitioner's ARB occurs "will be retained for consideration at your client's next annual review." Exhibit D, at 1.  Thus, unless

US2000 9716120.2

- 6 -

counsel is able to review the factual return for Petitioner in advance of the February 23 deadline, then counsel's ability to respond to the purported evidence against Petition and "provide input regarding [Petitioner] for review and consideration by the 2007 Administrative Review Boards" (borrowing the words of LTC David N. Cooper) will be lost.  At a minimum, counsel needs the factual return by February 9, two weeks before the February 23 deadline.

Despite the pressing need for this basic information, counsel for Respondents has refused Petitioner's counsel's request for production of a factual return and for prior ARB documents. *See* E-Mail from Andrew Warden to Vinay Jolly (January 8, 2007), attached hereto as Exhibit E. Accordingly, Petitioner has no choice but to seek emergency relief from this Court.

## ARGUMENT

Pursuant to 28 U.S.C. § 2243 (2006), "[a] court ... entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto."  The order to show cause "***shall be returned within three days*** unless for good cause additional time, not exceeding twenty days, is allowed. The person to whom the . . . order is directed shall make a return certifying the true cause of the detention." *Id.* (emphasis added).

More than one year has passed since the habeas petition was filed.  During this time, Respondents have failed to provide any information regarding the purported basis for holding Petitioner at Guantanamo.  Accordingly, the Court should order Respondents to satisfy their legal obligation to produce a factual return detailing the basis of Petitioner's confinement on or before February 9, 2007, so that the information can be reviewed by counsel in advance of the government-imposed February 23, 2007 ARB submission deadline.

## I. RESPONDENTS SHOULD BE ORDERED TO PRODUCE PETITIONER'S FACTUAL RETURN DESPITE RESPONDENTS' JURISDICTIONAL OBJECTIONS

Numerous judges of this Court have ordered Respondents to produce factual returns, notwithstanding the enactment of the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, § 1005(e), 119 Stat. 2680, 2742, which Respondents have wrongly argued elsewhere prevents the courts from so doing.[3] In *Al-Ghizzawi,* No. 05-CV-2378 (JDB), for example, Judge Bates concluded that the DTA could not justify the government's refusal to produce factual returns. In doing so, Judge Bates reasoned that "even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct ... completion of any ... judicial review [in the D.C. Circuit under the provisions of the DTA] would necessitate that petitioner's counsel have access to the CSRT records." *Al-Ghizzawi* slip op., at 3-4. In that case, Respondents conceded that they "do not anticipate objecting to production of [the] petitioners' CSRT records for review in Court of Appeals' proceedings pursuant to [the DTA]." *Al-Ghizzawi* (dkt no. 22), at 2. Similarly, in *Kahn,* No. 05-CV-1001 (ESH), Judge Huvelle rejected Respondents' jurisdictional objection as "an inadequate justification to further delay the relief sought by petitioner." *See Kahn* slip op., at 2 ("[Factual returns] will obviously be needed regardless of the resolution of the jurisdictional question"); *see also Said*, No. 05-CV-2384 (RWR)*,* slip op. at 4 ("Whatever forum is ultimately held to be the proper one to rule on a pre-DTA habeas petition, it is hardly sensible to withhold

---

[3] *See, e.g., Feghoul v. Bush,* No. 06-CV-618 (RWR), 2006 WL 3096856 (D.D.C. Oct. 31, 2006); *Al-Asadi v. Bush,* No. 05-CV-2197 (HIIK) (D.D.C. Oct. 10, 2006); *Amin v. Bush,* No. 05-CV-2336 (PLF) (order requiring factual returns entered by Robertson, J.) (D.D.C. Sept. 18, 2006); *Thabid v. Bush,* No. 05-CV-2398 (ESH) (D.D.C. Aug. 18, 2006); *Alsaaei v. Bush,* No. 05-CV-2369 (RWR) (D.D.C. Aug. 14, 2006); *Amin Ullah v. Bush,* No. 05-CV-1237 (ESH) (D.D.C. Aug. 10, 2006); *Kahn v. Bush,* No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006); *Al-Ghizzawi v. Bush,* No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006); *Zadran v. Bush,* No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006); *Rabbani v. Bush,* No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006); *Said v. Bush,* No. 05-CV-2384 (RWR) (D.D.C. May 23, 2006); *Almerfedi v. Bush,* No. 05-CV-1645 (PLF) (D.D.C. Mar. 6, 2006)

what no one disputes petitioners will ultimately be likely to receive."); *Feghoul,* No. 06-CV-618 (RWR), slip op. at 2-3 ("Despite the lack of finality regarding the issues on appeal ... it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention.").

In accordance with these other decisions, this Court should grant Petitioner's motion. Even under the review process prescribed by the DTA (which Respondent contends applies here), Petitioner would be entitled to the information contained in the requested factual returns. *See Al-Ghizzawi,* slip op. at 3 ("[T]he outcome sought by petitioners through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question").[4]

## II. RESPONDENTS' REFUSAL TO PROVIDE FACTUAL RETURNS DENIES PETITIONER MEANINGFUL ACCESS TO AND REPRESENTATION BY COUNSEL, PARTICULARLY AS TO THE UPCOMING ARB PROCEEDINGS

Respondents' refusal to produce factual returns severely prejudices Petitioner's ability to meaningfully communicate with counsel. *See Al-Ghizzawi,* slip op. at *3; Al-Anazi v. Bush,* 370 F. Supp. 2d 188, 200 (D.D.C. 2005) ("[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners. ... even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *Kahn,* slip op. at

---

[4] Similarly, the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, does not preclude the limited form of relief sought in the instant motion. Indeed, two weeks after the MCA was enacted, Judges Roberts and Kollar-Kotelly entered orders directing Respondents to produce factual returns. *See Feghoul v. Bush,* No. 06-CV-618, 2006 WL 3096856 (RWR) (D.D.C. Oct. 31, 2006); *Lal v. Bush,* No. 06-CV-1763 (CKK) (D.D.C. Oct. 29, 2006) *(sua sponte* ordering returns post-MCA); *see also Al-Asadi v. Bush,* No. 05-CV-2197, slip op. (HHK) (D.D.C. Oct. 10, 2006) (ordering factual return over Respondents' objection, *see* dkt. no. 39, at 3 n.l, that the MCA, which had been passed by Congress but not yet signed by the President, divested the court of jurisdiction). In addition, Respondents have produced factual returns post-MCA in compliance with a pre-MCA order directing the submission of such returns. *See Thabid v. Bush,* No. 05-CV-2398 (ESH) (D.D.C.) (dkt. nos. 27, 28), at I n.1 (noting their objection that the MCA divests the district court of jurisdiction over the habeas petition but simultaneously submitting factual returns on October 17, 2006); *see also Amin v. Bush,* No. 05-CV-2336 (PLP) (D.D.C.) (dkt. no. 29) (submitting returns on October 18, 2006).

2 ("Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *Rabbani,* slip op. at 2-3 ("[P]etitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients."). This prejudice is particularly grave in the present circumstances given the already-stringent limitations associated with attorney-client communications at Guantanamo. *See Al-Ghizzawi,* slip op. at 3.

      Petitioner's counsel seek basic information regarding the legal justification for his detention. Without this information, counsel cannot intelligently interview family members, investigate the facts of this case, or effectively interview, consult with, advise, or otherwise assist Petitioner in connection with any future proceedings (under the DTA or otherwise). In short, and as recognized on numerous other occasions by this Court, the information is vital to the effective representation of Petitioner.

      Respondent's non-production of information, if not remedied, will soon have a very tangible and direct impact on Petitioner, because submissions for the 2007 ARB proceeding must be received by the government by February 23, 2007. As noted above, the ARB is a review process conducted annually to determine whether a detainee should be released, transferred, or further detained. It is stating the obvious to say that preparation of a meaningful submission requires an understanding of the evidence presented at Petitioner's CSRT proceeding (to justify his initial detention) as well as the evidence (if any) presented at Petitioner's prior ARB proceedings (to justify his continued detention). Without reviewing this evidence, Petitioner's counsel cannot possibly be expected to develop and prepare responsive materials for submission in connection with Petitioner's 2007 ARB proceeding. Accordingly, Respondents should be ordered to provide a factual return no later than February 9, two weeks before the deadline.

Approved for Public Filing by the CSO

### III. RESPONDENTS SHOULD NOT BE ALLOWED TO RESIST PRODUCTION OF FACTUAL RETURNS ON GROUNDS OF BURDENSOMENESS OR BECAUSE THE RETURNS MAY CONTAIN CLASSIFIED INFORMATION

In other detainee cases, Respondents have objected to the production of factual returns on the grounds that the submission of these returns burdens the government's resources and risks the inadvertent disclosure of classified information. Courts have appropriately rejected these objections. *See, e.g., Rabbani v. Bush,* No. 05-CV-1607 (RMU), at 3 (D.D.C. June 16, 2006).

Respondents have provided factual returns in many other detainee cases, and they have produced thousands of pages of tribunal transcripts to the media as a result of FOIA litigation. If Respondents can make factual returns readily available to the press – and allow members of the press to attend those hearings – they can certainly provide returns to habeas counsel. *See, e.g.,* Kathleen T. Rhem, *Reporters Offered Look Inside Combatant Status Review Tribunals,* Aug. 29, 2004, *available at* http://www.defenselink.mil/news/Aug2004/n08292004_2004082902.html (describing opportunities for media to observe a CSRT first-hand). In fact, audio recordings of certain detainee hearings were recently broadcast on National Public Radio. *See* Jackie Northam, *Listening in on Detainee Hearings,* National Public Radio, Dec. 2, 2006, *available at* http://www.npr.org/templates/story/story.php?storyid=6520816; Jackie Northam, *Tapes Provide First Glimpse of Secret Gitmo Panels,* Dec. 2, 2006, National Public Radio, *available at* http://www.npr.org/templates/story/story.php?storyId=6514923.

The information sought is already in Respondents' possession, the CSRT hearings have all been completed, and all Respondents need to do is disclose copies of the returns. *See Said v. Bush,* No. 05-CV-2384 (RWR) (D.D.C.) (dkt. no 10, Ex. A) (Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at Guantanamo) ¶ 3 ("CSRT proceedings concluded in March 2005."); Update to Annex One of the Second Periodic Report of the United States of America to the

US2000 9716120.2

Committee Against Torture § II.C (Oct. 21, 2005) ("As of March 29, 2005, the CSRT Director had taken final action in all 558 cases."), *available at* http://www.state.gov/g/drl/rls/55712.htm. Respondents are well aware of the basis of Petitioner's confinement and can easily and expeditiously produce the information, as evidenced by their prompt release of tribunal transcripts to the media.

Respondents have had almost five years to interrogate Petitioner, to review the evidence relating to his continued detention, and to evaluate his status as an alleged "enemy combatant." Respondents merely have to photocopy the previously-prepared documents and put them through the routine classification process. This marginal effort does not remotely offset Petitioner's compelling interest in knowing the legal and factual basis of his indefinite detention.

Any purported concern by Respondents about the inadvertent disclosure of classified material is without merit. As recently explained by another judge of this Court, classified materials will only be provided to counsel who have obtained the required security clearances and who are subject to a comprehensive protective order, which "will guard against any inadvertent disclosures." *Rabbani v. Bush,* No. 05-CV-1607, Order, at 3 (RMU) (D.D.C. June 16, 2006). As stated in a related case, "the Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States,* 346 F. Supp. 2d 1, 14 (D.D.C. 2004).

Accordingly, Respondents have no meaningful basis for objecting to the production of a complete set of factual returns, including but not limited to the full evidentiary record explaining the basis for Petitioner's initial confinement (such as the CSRT record) and the basis for his continued detention at Guantánamo (such as the records from prior ARB proceedings), as well as any information tending to show that Petitioner is ***not*** an enemy combatant.

US2000 9716120.2

- 12 -

IV.  **RESPONDENTS SHOULD BE ORDERED TO PROVIDE THE FACTUAL RETURN IMMEDIATELY, BUT IN ANY EVENT NO LATER THAN FEBRUARY 9, 2007 (TEN BUSINESS DAYS BEFORE THE GOVERNMENT'S FEBRUARY 23, 2007 DEADLINE FOR SUBMISSIONS IN CONNECTION WITH PETITIONER'S 2007 ARB PROCEEDING)**

Respondents repeatedly have pointed to the military-run CSRT and ARB procedures as providing a Constitutionally-viable *habeas* alternative. Although Petitioner vigorously disagrees with this contention (because of, *inter alia*, the infirmities discussed in the Seton Hall Report on CSRTs, *see supra* n.1), basic due process mandates that Respondents provide a copy of the evidence against Petitioner so that his counsel can prepare a responsive ARB submission.

The essential requirement of due process is "the right to notice and an opportunity to be heard." *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Here, as shown by the CSRT Summary of Evidence and the Summarized Detainee Statement, Petitioner has never been given notice of **any** evidence supporting **any** incarceration, much less a five-year detention in Guantánamo. Indeed, and even assuming the truth of the statements in the Summary of Evidence, Respondents have failed to state a claim that Petitioner constitutes an "enemy combatant." Given the Kafkaesque predicament of being detained based on allegations of perfectly legal activities, it is not surprising that Petitioner acknowledged many of the facts alleged but then implored the tribunal for an explanation as to how such acts possibly justified detention. Respondents should be ordered to explain Petitioner's detention to Petitioner, to counsel, and to the Court immediately.

Accordingly, Petitioner requests that the factual return be provided no later than February 9, ten working days before the government's deadline for submissions in connection with Petitioner's 2007 ARB proceeding. Judges in this district routinely have set short deadlines for the production of factual returns. *See, e.g., Hatim v. Bush,* No. 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (ordering production of returns within seven days); *Errachidi v. Bush,* No. 05-

US2000 9716120.2

- 13 -

CV-640 (EGS) (D.D.C. Apr. 21, 2005) (five days); *Abdullah v. Bush,* No. 05-CV-23 (RWR) (D.D.C. Apr. 8, 2005) (eight days); *Said v. Bush,* No. 05-CV-2384 (RWR) (D.D.C. May 26, 2006) (ordering submission of four classified returns within one week); *Errachidi v. Bush,* 05-CV-0640 (D.D.C. Apr. 21, 2005) (factual returns produced five days after docket entry requiring Respondents to show cause); *Abdullah v. Bush,* 05-CV-0023 (D.D.C. Apr. 8, 2005) (requiring factual returns within six days of order).  Given Respondents' failure to provide any explanation for Petitioner's five-year detention, and given the extremely abbreviated period for counsel to prepare submissions in connection with the 2007 ARB proceedings, requiring immediate production of a factual return is both reasonable and appropriate.

Consistent with the normal one-week period for Respondents to provide a factual return, Petitioner respectfully requests that this Court enter an Order granting this motion for factual return no later than February 2, 2007, five business days (seven calendar days) before February 9, 2007.

Approved for Public Filing by the CSO

# **CONCLUSION**

For the foregoing reasons, Petitioner's Motion for Factual Returns should be granted, and Respondents should be ordered to produce a complete factual return no later than February 9, 2007, to be supplemented should the information therein change.

Dated: Atlanta, Georgia
January 19, 2007

                        Respectfully submitted,

                        Counsel for Petitioner:

                        ____/s/ Vinay J. Jolly____
                        A. Stephens Clay IV (Pursuant to LCvR 83.2(g))
                        James F. Bogan III (Pursuant to LCvR 83.2(g))
                        C. Allen Garrett Jr. (Pursuant to LCvR 83.2(g))
                        Vinay J. Jolly (Pursuant to LCvR 83.2(g))
                        Leslie J. Abrams (Pursuant to LCvR 83.2(g))
                        Miguel M. Duran (Pursuant to LCvR 83.2(g))
                        KILPATRICK STOCKTON LLP
                        1100 Peachtree Street, Suite 2800
                        Atlanta, Georgia 30309-4530
                        Telephone: (404) 815-6500
                        Facsimile: (404) 815-6555

                        Gitanjali S. Guiterrez (Pursuant to LCvR 83.2(g))
                        CENTER FOR CONSTITUTIONAL RIGHTS
                        666 Broadway, 7th Floor
                        New York, New York 10012
                        Telephone: (212) 614-6439
                        Facsimile: (212) 614-6499

                        Zachary Katznelson (Pursuant to LCvR 83.2(g))
                        REPRIEVE
                        P.O. Box 52742
                        London EC4P 4WS
                        United Kingdom
                        Telephone: (020) 7353 4640
                        Facsimile: (020) 7353 4641

Approved for Public Filing by the CSO

# CERTIFICATE OF SERVICE

This is to certify that I have this day served the foregoing **EMERGENCY MOTION OF PETITIONER SHARAF AL SANANI FOR FACTUAL RETURN** by serving electronically all attorneys of record for each party via the Court's Electronic Case Filing system.

Respectfully submitted,

Counsel for Petitioner:

    /s/ Vinay J. Jolly
A. Stephens Clay IV (Pursuant to LCvR 83.2(g))
James F. Bogan III (Pursuant to LCvR 83.2(g))
C. Allen Garrett Jr. (Pursuant to LCvR 83.2(g))
Vinay J. Jolly (Pursuant to LCvR 83.2(g))
Leslie J. Abrams (Pursuant to LCvR 83.2(g))
Miguel M. Duran (Pursuant to LCvR 83.2(g))
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
Telephone: (404) 815-6500
Facsimile: (404) 815-6555

Barbara Olshansky (NY-0057)
Gitanjali S. Guiterrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Telephone: (212) 614-6439
Facsimile: (212) 614-6499