*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————— x
:
AMER MOHAMMON, *et al.*,                    :    ORAL ARGUMENT REQUESTED
:
Petitioners,                  :
:
v.                          :    No. 05-CV-2386 (RBW)
:
GEORGE W. BUSH, *et al.*,                     :
:
Respondents.                  :
:
———————————————————— x

## MOTION OF PETITIONERS ABDUL GHAFFAR AND
## ADEL NOORI FOR PRODUCTION OF FACTUAL RETURN

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Petitioners Abdul Rahman a/k/a Abdul Ghaffar (ISN 281) and Adel LNU a/k/a Adel Noori (ISN 584) ("Petitioners"), by and through their undersigned counsel, respectfully move for an order compelling Respondents to produce a factual return to their habeas corpus petition.

## PRELIMINARY STATEMENT

Petitioners are citizens of the Xinjiang Autonomous Region, a western province of China also commonly referred to as "Turkistan" or "East Turkistan." They are Uighurs, a Turkic Muslim minority group that has been brutally oppressed by the communist Chinese government. We understand that Petitioners – like all the other Uighur detainees – were cleared for release from the Guantanamo Bay Naval Base in Cuba ("Guantánamo") as early as 2003. Respondents have never disputed this. Nonetheless, since 2002, Respondents have held Petitioners in indefinite detention, virtually *incommunicado*, without charge, and without any fair process by which they can challenge their detention. In addition, although it has been over one year since Petitioners filed their habeas petition, Respondents have refused to produce a factual return to the petition or otherwise supply information justifying the nearly five-year long detention of Petitioners.

Accordingly, Petitioners move the Court for an order compelling Respondents to produce a factual return to their habeas petition. Specifically, Petitioners request production of all classified and unclassified records from their Combatant Status Review Tribunal ("CSRT") and Administrative Review Board ("ARB") proceedings, including, without limitation, any audio recordings, verbatim transcripts and any interim or final decisions of those proceedings.

KL3 2563043.4

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Furthermore, Petitioners request that Respondents be ordered to timely supplement these returns, on an ongoing basis, should the information therein change.

## BACKGROUND

Since 2002, Respondents have held at Guantánamo twenty-two Uighurs from China, most of whom were captured together by Pakistani tribesmen and sold to the United States for a substantial bounty. *See* Neil A. Lewis, *Freedom for Chinese Detainees Hinges on Finding a New Homeland*, N.Y. Times, Nov. 8, 2004, *available at* 2004 WLNR 6564157 (Westlaw) (twenty-two Uighur detainees have been held at Guantánamo); Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) (several Uighurs picked up by Pakistani bounty hunters for U.S. payoffs); Michelle Faul, *Guantanamo Inmates Say They Were Sold to U.S.*, Philadelphia Inquirer, June 1, 2005, *available at* 2005 WLNR 22998072 (Westlaw) (several Uighurs report betrayal by Pakistani tribesmen); Warren Richey, *Innocent, But in Limbo at Guantanamo*, Christian Science Monitor, Feb. 13, 2006, *available at* 2006 WLNR 2456052 (Westlaw) (Uighur detainees say they were sold to U.S. forces for $5,000 each).

The tragic plight of the Uighurs in Guantánamo, including Petitioners, is detailed in the August 2, 2004 report of an agent of the Federal Bureau of Investigation, who was stationed at Guantánamo from early December 2002 to mid-January 2003. The report, which was recently released pursuant to a Freedom of Information Act request by the American Civil Liberties Union, confirms among other things that the Uighurs in Guantánamo are "moderate Muslims" whose "agenda [does] not appear to include Islamic Radicalism." To the contrary, prior to their current detention they were "inspired by Radio Free Asia" and "idolized the United

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

States." In the report, the agent observes that, during the period he was in Guantánamo, "US officials were considering whether to return the Uighurs to the Chinese, possibly to gain support for anticipated US action in the Middle East. The Uighur detainees at GTMO were convinced that they would be immediately executed if they were returned to China." *See* Ex. A (available at http://foia.fbi.gov/guantanamo/detainees.pdf at 211-212).

Indeed, as early as 2003, Respondents determined that they had no further interest in detaining Petitioners and cleared them and all other Uighur detainees for release from Guantánamo.[1] On May 5, 2006, five of those Uighur detainees, three of whom were represented by undersigned counsel, were flown, without notice to counsel or the Court, to a refugee camp in Tirana, Albania. At the time, the three Uighurs whom we represented had habeas corpus petitions pending in *Mamet v. Bush*, No. 05-CV-1886 (EGS) (D.D.C.). The remaining two Uighurs had an appeal pending before the Court of Appeals. In fact, the U.S. Government transferred these men to Albania one business day before the Court of Appeals was scheduled to hear oral arguments in their case. *See Qassim v. Bush,* No. 05-5477 (D.C. Cir. 2006).

---

[1]     *See* Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) ("In late 2003, the Pentagon quietly decided that 15 Chinese Muslims detained at . . . Guantanamo . . . could be released."); Editorial, *Detention Dilemma*, Wash. Post, May 3, 2005, *available at* 2005 WLNR 6902927 (Westlaw) ("[T]he military has determined that about 15 of [the Uighurs at Guantanamo] are not 'enemy combatants.' . . . The Pentagon has, consequently, cleared them for release."); Carol Rosenberg, *Closing Terror Prison Tricky for U.S.*, Miami Herald, June 12, 2005, *available at* 2005 WLNR 23041980 (Westlaw) ("[Uighur detainees in Guantánamo] are no longer classified as 'enemy combatants'"); *see also Qassim v. Bush*, No. 05-CV-497 (JR) (D.D.C.), Transcript of Status Conference, at 10-11 (Aug. 25, 2005) (excerpt of transcript attached as Ex. B) (admission by Respondents that several Uighurs have been classified as no longer enemy combatants); Denbeaux, et al., *Report on Guantanamo Detainees: A Profile of 517 Detainees through Analysis of Department of Defense Data,* at 21, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf ("The Government has now decided that many of the Uighur detainees . . . are not enemy combatants and should no longer be detained.").

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

The remaining seventeen Uighurs, two of whom are Petitioners here, still languish in Guantánamo and are now in their fifth year of indefinite detention.  Undersigned counsel have attempted to obtain basic factual information about Petitioners directly from Respondents, but Respondents have refused to honor our requests and have not produced to us records from Petitioners' CSRT or ARB proceedings.[2]  *See* Correspondence with Department of Justice (attached as Ex. C).  Respondents, moreover, continue to deny Petitioners access to undersigned counsel, asserting that the Court's June 27, 2006 order (entering the Amended Protective Order for all petitioners in this case except for "(1) those petitioners who have previously filed petitions pending in other cases, and (2) those petitioners named in this case whom the respondents are unable to identify" (dkt. no. 66)) does not apply to Petitioners because, Respondents claim, Respondents cannot identify them.  As explained in Petitioners' Renewed Motion for Access to Counsel and Related Relief (filed September 14, 2006 and currently pending before the Court) (dkt. no. 164), Respondents have no basis for this assertion.  *See also* Petitioners' Reply Memorandum (filed October 10, 2006) (dkt. no. 176); Petitioners' Notice of Supplemental Factual Evidence (filed November 21, 2006) (dkt. no. 214).  Petitioners nonetheless remain the only Uighurs from China imprisoned in Guantánamo who have been, and continue to be, blocked by Respondents from accessing counsel.

---

[2]      In response to the U.S. Supreme Court's decisions in *Rasul v. Bush*, 542 U.S. 466 (2004), and *Hamdi v. Rumsfeld*, 542 U.S. 507 (2004), the Department of Defense created the CSRT to review the classification of Guantánamo detainees as enemy combatants.  *See* Denbeaux, et al., *No-Hearing Hearings, CSRT: The Modern Habeas Corpus? An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantánamo* ("Seton Hall Report"), at 4, *available at* http://law.shu.edu/news/final_no_hearing_hearings_report.pdf.  CSRT procedures provide that each detainee found to be an enemy combatant by the CSRT must be reviewed annually by the ARB.  *Id.* at 35 n.30.  The purpose of the ARB is to make a recommendation as to whether an enemy combatant should continue to be detained, either because he is a threat to the United States or its allies or because his continued detention is needed for intelligence or other law enforcement purposes.  *See Said v. Bush*, No. 05-CV-2384, (RWR) (D.D.C.) (dkt. no

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

## ARGUMENT

Pursuant to 28 U.S.C. § 2243 (2006), "[a] court . . . entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." The order to show cause "shall be returned within three days unless for good cause additional time, not exceeding twenty days, is allowed. The person to whom the . . . order is directed shall make a return certifying the true cause of the detention." *Id.* (emphasis added). Over a year has passed since the habeas petition was filed. During this time, Respondents have failed to provide any information regarding the purported basis for holding Petitioners in Guantánamo. Accordingly, the Court should order Respondents to produce a factual return detailing the basis of Petitioners' confinement.[3]

---

10, Ex. A) (Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at Guantanamo), ¶ 1.

[3]    In January 2006, the Court stayed this action pending a ruling in the Court of Appeals regarding the effect of the jurisdictional provisions of Section 1005(e) of the Detainee Treatment Act of 2005, Pub. L. No. 109-148, § 1005(e), 119 Stat. 2680, 2742. The issuance of the January 2006 stay order does not preclude this Court from entertaining the instant motion. Petitioners' motion does not approach the merits of the habeas petition, *see Al-Ghizzawi*, No. 05-CV-2378, slip op. at 3 (JDB) (D.D.C. Aug. 9, 2006), but simply seeks records similar to those that have been produced in numerous other detainee cases. Indeed, other judges in this district have ordered the production of factual returns despite having entered a stay order. *See, e.g., Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C. Aug. 18, 2006) (ordering returns four months after case was stayed); *Mamet v. Bush*, No. 05-CV-1602 (ESH) (D.D.C. Sept. 30, 2005) (staying case but ordering production of factual returns for Uighur detainee); *Zadran v. Bush*, No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006) (staying case but directing production of factual return); *Alsaaei v. Bush*, No. 05-CV-2369 (RWR) (D.D.C. Aug. 14, 2006) (same); *Al-Ghizzawi*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006) (same); *Kahn v. Bush,* No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006) (same).

KL3 2563043.4

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

I.   **PETITIONERS ARE ENTITLED TO FACTUAL RETURNS NOTWITHSTANDING RESPONDENTS' JURISDICTIONAL OBJECTIONS TO THE PETITION**

A.   **The Detainee Treatment Act does not bar the Court from ordering the requested relief because Petitioners require factual returns even if the Act applies to their case**

Numerous judges in this district have ordered Respondents to produce factual returns, notwithstanding the enactment of the Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, § 1005(e), 119 Stat. 2680, 2742, which Respondents have wrongly argued elsewhere prevents the courts from doing so. *See, e.g., Feghoul v. Bush*, No. 06-CV-618 (RWR) (D.D.C. Oct. 31, 2006); *Al-Asadi v. Bush*, No. 05-CV-2197 (HHK) (D.D.C. Oct. 10, 2006); *Amin v. Bush*, No. 05-CV-2336 (PLF) (order signed by Robertson, J.) (D.D.C. Sept. 18, 2006); *Alsaaei v. Bush*, No. 05-CV-2369 (RWR) (D.D.C. Aug. 14, 2006); *Amin Ullah v. Bush*, No. 05-CV-1237 (ESH) (D.D.C. Aug. 10, 2006); *Kahn v. Bush*, No. 05-CV-1001 (ESH) (D.D.C. Aug. 10, 2006); *Al-Ghizzawi v. Bush*, No. 05-CV-2378 (JDB) (D.D.C. Aug. 9, 2006); *Zadran v. Bush*, No. 05-CV-2367 (RWR) (D.D.C. July 19, 2006); *Rabbani v. Bush*, No. 05-CV-1607 (RMU) (D.D.C. June 16, 2006); *Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C. May 23, 2006); *Almerfedi v. Bush*, No. 05-CV-1645 (PLF) (D.D.C. March 6, 2006); *see also Abdessalam v. Bush*, No. 06-CV-1761 (ESH) (D.D.C. Dec. 12, 2006) (dkt. no. 11) (entering protective order in case filed after enactment of the DTA, over Respondents' jurisdictional arguments under both the DTA and Military Commissions Act). Indeed, two of the at least five other Uighur detainees who have received factual returns in the district have obtained their returns pursuant to court orders issued post-DTA. *See Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C. Aug. 18, 2006) (ordering returns for two Uighur detainees after enactment of DTA); *Mamet v. Bush,* No. 05-CV-1602 (ESH) (D.D.C. Sept. 30, 2005) (pre-DTA order); *Kabir v. Bush*, No. 05-CV-1704 (JR) (D.D.C.

- 7 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Aug. 31, 2005) (pre-DTA order).  In *Thabid* and *Kabir*, Judges Huvelle and Robertson entered *sua sponte* orders directing Respondents to produce factual returns.  These factual returns have included, at a minimum, detainees' unredacted CSRT records.

In *Al-Ghizzawi*, Judge Bates concluded that the DTA could not justify the government's refusal to produce factual returns.  In doing so, Judge Bates reasoned that "even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct . . . completion of any . . . judicial review [in the D.C. Circuit under the provisions of the DTA] would necessitate that petitioner's counsel have access to the CSRT records." *Al-Ghizzawi*, slip op. at 3-4.  In fact, Respondents conceded that they "do not anticipate objecting to production of [the] petitioners' CSRT records for review in Court of Appeals' proceedings pursuant to [the DTA]." *Al-Ghizzawi*, (dkt no. 22), at 2.  Similarly, in *Kahn*, Judge Huvelle rejected Respondents' jurisdictional objection as "an inadequate justification to further delay the relief sought by petitioner." *See Kahn*, slip op. at 2 ("[Factual returns] will obviously be needed regardless of the resolution of the jurisdictional question"); *see also Said*, slip op. at 4 ("Whatever forum is ultimately held to be the proper one to rule on a pre-DTA habeas petition, it is hardly sensible to withhold what no one disputes petitioners will ultimately be likely to receive."); *Feghoul*, slip op. at 2-3 ("Despite the lack of finality regarding the issues on appeal … it is hardly sensible to withhold or frustrate something that no one doubts is petitioner's right – a meaningful communication with counsel regarding the factual basis of petitioner's detention.").

The Court should thus order the relief sought by Petitioners' motion because even under the review process prescribed by the DTA – which Respondents contend is applicable here

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

– Petitioners would be entitled to the information contained in the requested factual returns.  *See*

*Al-Ghizzawi*, slip op. at 3 ("[T]he outcome sought by petitioners through the present motion

would ultimately be achieved regardless of the disposition of the jurisdictional question").

Accordingly, Respondents' jurisdictional challenge to this petition, based, as it is, on the habeas-

stripping provisions of the DTA, should not preclude the Court from ordering the requested

relief.[4]

**B.    Petitioners require a factual return in order to effectively challenge Respondents' assertion that they are "enemy combatants" subject to the DTA and MCA**

Petitioners are entitled to a factual return for the additional reason that they should

be permitted to know whether they have been determined – at any point – to be non-enemy

combatants by a CSRT, and thus not subject to the provisions of the DTA and MCA that

Respondents argue prevent this Court from entertaining their habeas petition.[5]    Undersigned

---

[4]    Similarly, the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, 120 Stat. 2600, does not preclude the limited form of relief sought in the instant motion.  Indeed, Judges Roberts and Kollar-Kotelly entered orders two weeks after the MCA was enacted directing Respondents to produce factual returns.  *See Feghoul v. Bush*, No. 06-CV-618 (RWR) (D.D.C. Oct. 31, 2006); *Lal v. Bush*, No. 06-CV-1763 (CKK) (D.D.C. Oct. 29, 2006) (*sua sponte* ordering returns post-MCA); *see also Al-Asadi v. Bush*, No. 05-CV-2197, slip op. (HHK) (D.D.C. Oct. 10, 2006) (ordering factual return over Respondents' objection, *see id.* dkt. no. 39, at 3 n.1, that the MCA, which at the time was passed by Congress but awaiting Presidential sign-off, divested the court of jurisdiction over the case).  In addition, Respondents have produced factual returns for Uighur detainees post-MCA in compliance with a pre-MCA order directing the submission of such returns.  *See Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C.) (dkt. nos. 27, 28), at 1 n.1 (noting their objection that the MCA divests the district court of jurisdiction over the habeas petition but simultaneously submitting factual returns on October 17, 2006); *see also Amin v. Bush*, No. 05-CV-2336 (PLF) (D.D.C.) (dkt. no. 29) (submitting returns on October 18, 2006); *Al-Asadi v. Bush*, No. 05-CV-2197 (HHK) (D.D.C.) (dkt. no. 42) (submitting returns on October 20, 2006).

[5]    Respondents have elsewhere acknowledged that if Petitioners have been designated as non-enemy combatants, they are not subject to the provisions of the DTA (and now the MCA). *See* Reply Brief for Appellants and Brief for Cross-Appellees, *Kiyemba v. Bush*, Nos. 05-5487 through 05-5492, 06-5042, (D.C. Cir.), at 6 ("Because [two of the detainees] have been determined by a CSRT not to be enemy combatants, they do not challenge any final CSRT decisions.  As a result, this Court's 'exclusive' jurisdiction under [the DTA] is inapplicable to

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

counsel has yet to be provided with the most rudimentary information in this regard. It is our understanding that all twenty-two of the Uighur detainees from China – including Petitioners – were initially classified as non-enemy combatants; some, however, had additional CSRTs which determined that they were enemy combatants. *See Kiyemba v. Bush*, Nos. 05-5487, 05-5488, Declaration of Sabin Willett, Sept. 1, 2006 ("Willett Decl.") ¶ 18, filed as Supplement to Appellees/Cross-Appellants' Emergency Motion to Supplement Record on Appeal (D.C. Cir. Sept. 6, 2006) (CSRT proceeding was held one year after a Uighur detainee was advised of his innocence). We believe that this may be the case for all the Uighurs who remain in Guantánamo.

It appears that Petitioners have not been interrogated in years. In the past, interrogators have advised Uighur detainees that they were innocent, their interrogations were over, and they would soon be leaving Guantánamo. More than two, sometimes three years went by without release. *See* Willett Decl. ¶¶ 15, 18, 23; *see also Qassim v. Bush*, 407 F. Supp. 2d 198, 199 (JR) (D.D.C. 2005) (two Uighurs remained in Guantánamo for at least nine months after CSRT determined that they "should [not] be classified as enemy combatants"); Robin Wright, *Chinese Detainees Trapped in Limbo at Guantanamo*, Wash. Post, Aug. 24, 2005, *available at* 2005 WLNR 13274237 (Westlaw) (fifteen Uighurs have been *twice* cleared for release but "still languish at Guantanamo Bay"). One Uighur detainee who was advised of his innocence by an interrogator asked why he was previously designated as an enemy combatant. The interrogator appeared surprised and, after paging through some documents, shrugged his shoulders and said "Oops." Willett Decl. ¶ 23; *see also* Denbeaux, et al., *Report on Guantanamo*

---

their cases. The district courts, therefore, may continue to exercise jurisdiction over their habeas cases."); *see also Zakirjan v. Bush*, No. 05-CV-2053 (HHK) (D.D.C. Aug. 18, 2006) (vacating stay where the detainee, by the government's own concession, was determined not to be an enemy combatant).

- 10 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

*Detainees*: *A Profile of 517 Detainees through Analysis of Department of Defense Data,* at 21, *available at* http://law.shu.edu/news/guantanamo_report_final_2_08_06.pdf ("The Government has publicly conceded that many of the Uigh[u]rs were wrongly found to be enemy combatants.").

Department of Defense data reveals that some detainees have been unanimously designated as non-enemy combatants by the CSRT but were later subjected to one or more re-hearings until they were found to be enemy combatants. In November 2006, Seton Hall University School of Law completed a study of the CSRT proceedings based on the records produced by the U.S. Government for 393 of the 558 detainees. *See* Denbeaux, et al., *No-Hearing Hearings, CSRT: The Modern Habeas Corpus? An Analysis of the Proceedings of the Government's Combatant Status Review Tribunals at Guantánamo* ("Seton Hall Report"), at 4, *available at* http://law.shu.edu/news/final_no_hearing_hearings_report.pdf. These records were released by the Department of Defense in response to (1) orders by district court judges in habeas cases and (2) FOIA requests. *Id.* at 4, 7. The records show that at least three detainees – one of whom is a Uighur (*see Thabid v. Bush*, No. 05-CV-2398 (ESH) (D.D.C.) (dkt no. 27, Ex. A) (factual return for Hassan Anvar), at 3-4, 7-14 (excerpt of return attached as Ex. D)) – were initially found not to be enemy combatants (but never informed of the favorable decision) and then subjected to one or more re-hearings before reconstituted panels until they were found to be enemy combatants. Seton Hall Report, at 6, 37-39; *see also Lawyers Argue for Chinese at Guantanamo*, Assoc. Press, Dec. 5, 2006, *available at* http://www.washingtonpost.com/wp-dyn/content/article/2006/12/05/AR2006120500941.html (Navy spokesman confirming that

Uighurs had "multiple" enemy combatant reviews).[6]  It appears that the Uighur detainees, in

particular, may have been subject to repeated hearings:  A recent New York Times article, in

confirming that "the Pentagon office in charge of the reviews ordered the repetition of some

C.S.R.T. reviews that recommended the release of detainees," reported that "[t]he largest number

of repeated hearings appears to have involved some of the 22 Muslim detainees from western

China who were part of the Uighur . . . ethnic minority."  Tim Golden, *For Guantanamo Review

Boards, Limits Abound*, N.Y. Times, December 31, 2005, available at 2006 WLNR 22746502

(Westlaw).

Furthermore, Respondents have previously *concealed* determinations by the

CSRT that Uighur detainees were not enemy combatants.  In *Qassim v. Bush*, 407 F. Supp. 2d

198, 199 (D.D.C. 2005), Respondents led the district court and habeas counsel to believe that

two Uighur detainees were enemy combatants when the CSRT determined many months earlier

that the Uighurs should not be classified as enemy combatants.  *See Qassim,* No. 05-CV-497

(JR), Transcript of Oral Argument, at 2-3, 20-21 (August 1, 2005) (excerpt of transcript attached

as Ex. E) (Judge Robertson accusing Respondents of implying that the Uighur petitioners were

enemy combatants when they were not).  Respondents kept the Uighurs' status a secret from the

court and counsel, even after habeas counsel twice sought information from the government

about the Uighurs' CSRT proceedings. *Qassim*, 407 F. Supp. 2d at 199 ("The government . . .

knew about the CSRT determination [that the Uighur petitioners were not enemy combatants]

but advised nobody").  Judge Robertson found that the Uighurs' continued imprisonment for the

---

[6]     One detainee who was unanimously determined not to be an enemy combatant was
subjected to a second tribunal which also unanimously determined that he should not be
classified as an enemy combatant and then subjected to a *third*, newly constituted, tribunal,
which determined that he was an enemy combatant. *Id.* at 6, 37-39.

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

nine months after the CSRT found them to be non-enemy combatants was unlawful, holding that the government does not have "wind up" authority to indefinitely detain non-U.S. citizens who are determined not to be enemy combatants. *Id.* at 200-01.

Accordingly, the submission of a factual return is especially crucial in the present case given the unique circumstances of the Uighurs at Guantánamo. Without an order directing Respondents to produce factual returns, counsel and the Court have no assurance of ever receiving confirmation that Petitioners are not, and never were, enemy combatants and thus not subject to the DTA and MCA.

## II.    RESPONDENTS' REFUSAL TO PROVIDE FACTUAL RETURNS DENIES PETITIONERS MEANINGFUL ACCESS TO AND REPRESENTATION BY COUNSEL

Respondents' refusal to produce Petitioners' factual returns severely prejudices Petitioners' ability to meaningfully communicate with habeas counsel. *See Al-Ghizzawi*, slip op. at 3; *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 200 (D.D.C. 2005) ("[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners. . . . even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *Kahn*, slip op. at 2 ("Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *Rabbani*, slip op. at 2-3 ("[P]etitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients."). This prejudice is particularly grave in the present circumstances given the already-stringent limitations associated with attorney-client communications in Guantánamo. *See Al-Ghizzawi*, slip op. at 3. Petitioners' counsel seek basic information regarding the legal

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

justification for Petitioners' detention.   The absence of this information precludes us from thoroughly investigating and preparing our case, interviewing family members, and effectively representing our clients, including consulting with, advising, and assisting Petitioners in preparation for any future hearings.   If our client meetings are to be productive, counsel must have an opportunity to review and consider the factual returns.   Counsel cannot effectively litigate the legitimacy of Petitioners' detention without knowing the basis for that detention.

### III.    RESPONDENTS SHOULD NOT BE ALLOWED TO RESIST PRODUCTION OF FACTUAL RETURNS ON THE GROUND THAT THE RETURNS MAY CONTAIN CLASSIFIED INFORMATION OR WOULD BE BURDENSOME TO ASSEMBLE

In numerous other detainee cases, Respondents have objected to the production of factual returns on the grounds that the submission of these returns burdens the government's resources and risks the inadvertent disclosure of classified information.   Courts have rejected these objections. *See, e.g., Rabbani v. Bush*, No. 05-CV-1607 (RMU), slip op. at 3 (D.D.C. June 16, 2006).   Respondents have provided factual returns in many other detainee cases and produced thousands of pages of tribunal transcripts to the media as a result of FOIA litigation.   If Respondents can make factual returns readily available to the press – and allow members of the press to attend those hearings – they can certainly provide returns to habeas counsel. *See also* Kathleen T. Rhem, *Reporters Offered Look Inside Combatant Status Review Tribunals*, Aug. 29, 2004, *available at* http://www.defenselink.mil/news/Aug2004/n08292004_2004082902.html (media was offered the chance to observe a CSRT first-hand).   In fact, audio recordings of certain detainee hearings were recently broadcast on National Public Radio. *See* Jackie Northam, *Listening in on Detainee Hearings*, National Public Radio, Dec. 2, 2006, *available at* http://www.npr.org/templates/story/story.php?storyId=6520816; Jackie Northam*, Tapes Provide*

- 14 -

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

*First Glimpse of Secret Gitmo Panels*, Dec. 2, 2006, National Public Radio, *available at* http://www.npr.org/templates/story/story.php?storyId=6514923.

The information we seek is already in Respondents' possession. The CSRT hearings have all been completed and Respondents have simply to produce the returns. *See Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C.) (dkt. no 10, Ex. A) (Second Declaration of Frank Sweigart, Deputy Director of the Office for the Administrative Review of the Detention of Enemy Combatants at Guantanamo), ¶ 3 ("CSRT proceedings concluded in March 2005. Every detainee confirmed to be an enemy combatant through the CSRT process and who is eligible for consideration by an ARB has received [such] notice . . . ."); DoD News Briefing with Secretary Rumsfeld and General Pace (June 14, 2005), *available at* http://www.defenselink.mil/transcripts/2005/tr20050614-secdef3042.html ("Every detainee currently at Guantanamo has received [a CSRT] hearing."). Given that all CSRT proceedings were completed over one year ago, Respondents are well aware of the basis of Petitioners' confinement. That Respondents can produce such information expeditiously is evidenced by their prompt release of tribunal transcripts to the media. Respondents have had almost five years to interrogate Petitioners, review the evidence relating to their continued detention at Guantánamo, and evaluate their status as "enemy" or "non-enemy" or "no longer enemy" combatants. Any additional time or effort expended in organizing and photocopying documents is, to say the least, secondary to Petitioners' compelling interest in knowing the legal and factual basis of their indefinite detention.

Furthermore, Respondents' claimed concern, expressed in other cases, about the inadvertent disclosure of classified material is without merit. Classified materials will only be

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

provided to counsel who have obtained the requisite security clearances, and undersigned counsel are legally bound by a comprehensive protective order which "will guard against any inadvertent disclosures." *Rabbani*, slip op. at 3.  "[T]he Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance." *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004).  Accordingly, Respondents have no meaningful basis for objecting to the production of a complete set of factual returns detailing the basis of Petitioners' confinement.

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant in its entirety the instant motion for production of factual returns.  Given that the Uighur Petitioners continue to suffer in their fifth year of indefinite detention despite the Pentagon's determination that they can be released, and given that their habeas petition has been pending for over a year without any certification of the true basis for their detention, Petitioners respectfully request that the Court direct Respondents to produce a factual return to their habeas petition within ten days of the Court's order.  Indeed, judges in this district have set stricter timelines on the submission of returns.  *See, e.g., Hatim v. Bush*, No. 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (ordering production of returns within seven days); *Errachidi v. Bush*, No. 05-CV-640 (EGS) (D.D.C. Apr. 21, 2005) (five days); *Abdullah v. Bush*, No. 05-CV-23 (RWR) (D.D.C. Apr. 8, 2005) (eight days); *Said v. Bush*, No. 05-CV-2384 (RWR) (D.D.C. May 26, 2006) (ordering submission of four classified returns within one week).  Respondents should not be permitted to delay any longer in producing these essential records.

Dated:     New York, New York
           January 22, 2007

KL3 2563043.4

Respectfully submitted,

Counsel for Petitioners:

/s/ Paul Schoeman

Paul Schoeman (Pursuant to LCvR 83.2(g))
Michael J. Sternhell (Pursuant to LCvR 83.2(g))
Darren LaVerne (Pursuant to LCvR 83.2(g))
Seema Saifee (Pursuant to LCvR 83.2(g))
KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Tel:  (212) 715-9100
Fax:  (212) 715-8000

Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel:  (212) 614-6464
Fax:  (212) 614-6499

Alison Sclater (Pursuant to LCvR 83.2(g))
245 East 80th Street, #9J
New York, New York  10021
Tel:  (212) 717-2736

- 17 -