IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, et al., ) | |
| Petitioners, ) | |
| v. ) | Civil Action No. 05-CV-2386 (RBW) |
| GEORGE W. BUSH, et al., ) | |
| Respondents. ) | |

**RESPONDENTS' OPPOSITION TO EMERGENCY MOTION FOR RULING ON PETITIONER'S MOTION FOR ENTRY OF PROTECTIVE ORDER AND EMERGENCY MOTION FOR UNREDACTED FACTUAL RETURNS AND MEMORANDUM IN SUPPORT THEREOF**

Respondents hereby oppose petitioner Jabbarov Oybek Jamolivich's Emergency Motion for Ruling on Petitioner's Motion for Entry of Protective Order (dkt. no. 305), which seeks entry of the protective order in this case with respect to petitioner Jamolivich, and Emergency Motion for Unredacted Factual Returns and Memorandum in Support Thereof (dkt. no. 306), which seeks an order compelling respondents to produce a factual return and additional documents by February 9, 2007.

Respondents have opposed petitioner's motion for entry of a protective order on the ground that petitioner Jamolivich has a previously filed petition for habeas corpus pending in Jamolivich v. Bush, No. 05-CV-2112 (RBW), and therefore should be dismissed from this action.[1] Respondents continue to oppose entry of the protective order with respect to petitioner Jamolivich on this basis, as well as the fact that this Court lacks jurisdiction, as explained

---

[1] See Resp'ts' Mem. in Opp'n to Pet'r Jabbarov Oybek Jamolivich's Mot. for Entry of Protective Order (dkt. no. 110).

below.[2]

Petitioner's motion for production of a factual return and other documents disregards the fact that this Court lacks jurisdiction. Furthermore, this case is stayed with respect to all merits-related matters, see Order, No. 05-CV-2386 (RBW) (Jan. 11, 2006) (dkt. no. 6), and there are no circumstances that justify lifting the stay. Finally, because the Court has not entered a protective order with respect to the petitioner, there are not adequate measures in place to control access to classified information that would be contained in a factual return, and, thus, counsel would not be entitled to access to classified information in any factual return that was filed. Petitioner's motion, therefore, is inappropriate and should be denied.

## ARGUMENT

A.  **The Court Should Deny Petitioner's Motion Because the Military Commissions Act of 2006 and the Detainee Treatment Act of 2005 Withdrew this Court's Jurisdiction in Favor of Exclusive Jurisdiction in the Court of Appeals.**

Petitioner's motion should be denied because the Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 ("MCA"), which became law on October 17, 2006, see Notice of Military Commissions Act of 2006, No. 05-CV-2386 (RBW) (dkt. no. 181), and the Detainee Treatment Act of 2005, Pub. L. No. 109-148, tit. X, 119 Stat. 2680 ("the DTA"), vest exclusive jurisdiction over this action in the D.C. Circuit. The MCA amends 28 U.S.C. § 2241 to provide that "no court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States as enemy combatants, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of

---

[2] For the reasons set forth infra pp. 8–10, the upcoming Administrative Review Board (ARB) proceedings also do not provide reason for entry of the protective order in this case.

confinement" of such aliens, except for the exclusive review mechanism in the D.C. Circuit created under the DTA for addressing the validity of the detention of such aliens.[3] See MCA § 7(a). Further, the new amendment to § 2241 takes effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relate to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001." Id. § 7(b); see Hamdan v. Rumsfeld, 2006 WL 3625015 at *9 (D.D.C. 2006).

The review mechanism created by the DTA, in turn, invests the D.C. Circuit with exclusive jurisdiction to address the validity of the detention of aliens as enemy combatants by the United States, including at Guantanamo Bay, and of final decisions of any military commissions.[4] See DTA § 1005(e)(2)–(3), as amended by MCA. Section 1005(e)(2) of the DTA states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review.

---

[3]Petitioner, whom respondents have identified as the detainee with Internment Serial Number ("ISN") 452, has been determined to be an enemy combatant. See Decl. of Karen L. Hecker ¶¶ 2–3 (attached as Exhibit A). (The November 3, 2006, declaration of Ms. Hecker states that three detainees "determined to no longer meet the definition of enemy combatant" remain detained at Guantanamo. However, since the date of the declaration, those three have been released from United States custody.)

[4]The Supreme Court in Hamdan held that the provision of the DTA withdrawing district court jurisdiction to consider habeas petitions and other claims by aliens held as enemy combatants at Guantanamo Bay, see DTA § 1005(e)(1), did not apply to habeas petitions pending prior to the enactment of the DTA. See Hamdan v. Rumsfeld, 548 U.S. --, 126 S. Ct. 2749, 2762-69 (U.S. June 29, 2006). Congress, however, has now addressed the matter through passage of the MCA, which unambiguously withdraws district court jurisdiction in all pending cases such as this, in favor of the exclusive review mechanism available in the Court of Appeals. See MCA § 7.

Even prior to enactment of the MCA, the DTA invested the Court of Appeals with the same "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," see DTA § 1005(e)(2)–(3), which, standing alone, deprived the District Court of jurisdiction in cases like this, challenging petitioner's detention as an enemy combatant. See, e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Telecomms. Research & Action Ctr. v. FCC, 750 F.2d 70, 75, 78-79 (D.C. Cir. 1984) (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals); cf. id. at 77 ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."). In any event, with the enactment of the MCA, District Court jurisdiction has been unambiguously withdrawn.

Granting the relief petitioner requests would be an assertion of jurisdiction and authority in this case inconsistent with the DTA's investment of exclusive jurisdiction in the Court of Appeals and the MCA's withdrawal of other forms of jurisdiction, and respondents' jurisdictional argument is in no way immaterial or premature. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction [a] court cannot proceed at all in any cause."); see also Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of

announcing the fact and dismissing the cause."). Indeed, petitioner is not entitled to ignore the governing statutes and obtain relief from the Court, i.e., an order requiring the production of a factual return, as if the statutes do not exist. Whatever arguments may be marshaled in favor of the existence of some form of jurisdiction ancillary to that in the Court of Appeals provided by the DTA and MCA, it is clear that such jurisdiction would not reside in the District Court, as opposed to some other court. See Telecomms. Research & Action Ctr., 750 F.2d at 75, 78–79; see also Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." (citation omitted)).

Indeed, the circumstances that existed at the time of the Court's grant of a motion for a factual return in another case, Al-Ghizzawi v. Bush, No. 05-CV-2378 (JDB) (dkt. no. 23), before the passage of the MCA, no longer exist now that the MCA has unambiguously divested this Court of jurisdiction. In Al-Ghizzawi, the Court granted the petitioner's motion after concluding that although the issue of the Court's jurisdiction remained unresolved, petitioner's counsel would eventually have access to factual returns either in this Court or in the Court of Appeals, and factual findings might be necessary to determine whether petitioner's challenge fell within the scope of the Court of Appeals' exclusive jurisdiction under the DTA. Id. at 3–4. After the passage of the MCA, however, this Court's jurisdiction is no longer merely in doubt; rather, the MCA has explicitly and unambiguously withdrawn the district court's jurisdiction over pending habeas cases and vested exclusive jurisdiction in the Court of Appeals. See supra pp. 2–3; MCA § 7(a)–(b). Nor is there any doubt in this case that the petitioner's action falls within the scope of the MCA's provisions divesting the district court of jurisdiction. These provisions, by their

plain terms, apply to any habeas corpus action filed by a petitioner "who has been determined by the United States to have been properly detained as an enemy combatant or is awaiting such determination," as well as "any other action . . . relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of such an alien. MCA § 7(a). Petitioner Jamolivich has been "determined by the United States to have been properly detained as an enemy combatant" through a Combatant Status Review Tribunal. See supra note 3; Decl. of Karen L. Hecker ¶¶ 2–3 (attached as Exhibit A).[5]

Accordingly, petitioner's motion for a factual return should be denied.[6]

**B.    The Court Should Deny Petitioner's Motion Because There Has Been No Change in Circumstances That Warrants Lifting the Stay for Such Purposes.**

Petitioner's motion also should be denied because petitioner has failed to provide a sufficient factual or legal basis to justify departure from the stay in this case for purposes of the requested relief. See Order, No. 05-CV-2386 (RBW) (Jan. 11, 2006) (dkt. no. 6). The Court stayed this case "pending the jurisdictional ruling" of the United States Court of Appeals for the District of Columbia Circuit in In re Guantanamo Detainee Cases, 355 F. Supp. 2d 443 (D.D.C.

---

[5]Furthermore, petitioner's motion seeks relief beyond what the Court granted in Al-Ghizzawi. In addition to records of his Combatant Status Review Tribunal proceedings, petitioner is also seeking additional documents, including records from his Administrative Review Board (ARB) proceedings. As explained infra pp. 8–10 & nn. 8, 9, these requests would be inappropriate even if the Court had jurisdiction.

[6]The issue of the effect of the MCA, which eliminates district court jurisdiction "without exception," see MCA § 7(b), and the DTA, which vests exclusive review in the Court of Appeals, on this Court's jurisdiction over Guantanamo detainee habeas cases, including the instant case, remains pending before the Court of Appeals. Indeed, the MCA was the subject of supplemental briefing in the Court of Appeals that was completed on November 20, 2006. It would not be appropriate for the Court to order petitioner's requested relief during the pendency of the jurisdictional issue, if ever.

2005), and Khalid v. Bush, 355 F. Supp. 2d 311 (D.D.C. 2005).[7]  Id. at 5.  Since these appeals have not been resolved, the stay is still in effect, especially with respect to all merits-related matters.  Further, petitioner's counsel make no showing of any circumstances that would in any way warrant lifting the stay in order to require the production of a factual return.

In any event, in the pending appeals, the D.C. Circuit will address significant issues regarding how Guantanamo detainees' challenges to their detention should proceed in this Court, if at all.  As mentioned supra note 6, the D.C. Circuit will consider the significance of the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006.  Further, the Court of Appeals will determine the rights available, if any, to detainees at Guantanamo under the Fifth Amendment and various statutes and treaties.  In light of the potential for the D.C. Circuit's ruling to moot or at least significantly impact the legal bases for and future proceedings on petitioner's habeas petition and the likelihood that any decision by this Court regarding petitioner's motion would have to be relitigated or revisited once the Court of Appeals provides its guidance, this Court should deny petitioner's motion pending resolution of these appeals.

**C.     The Court Should Not Order the Production of a Factual Return in Any Event.**

Aside from the lack of jurisdiction and the stay currently in effect with respect to petitioner's requested relief, the Court also should not require the production and submission of a factual return in this case because such action, should the protective order requested by counsel ultimately be entered, involves the disclosure to counsel of classified information, and the preparation of the return is not an inconsequential task.  As an initial matter, requiring

---

[7]On appeal these cases are titled Al Odah v. United States, No. 05-5064, and Boumediene v. Bush, No. 05-5062.

respondents to provide to counsel a factual return containing classified information, even where counsel receive such disclosures subject to certain handling restrictions, is not without prejudice to respondents where the issue of whether the Court has any authority to require such disclosure is in question. Furthermore, with respect to the logistical burdens involved in producing factual returns, each factual return must be obtained from the Department of Defense ("DoD"), and then reviewed by agencies who provided source information to DoD to ensure that information disclosed to counsel in the returns is in accordance with all applicable statutes, regulations, and Executive Orders. Respondents must then prepare both public and classified versions of the factual returns for submission to the Court and counsel. Because each return can range from dozens to hundreds of pages, depending upon the circumstances, this review and redaction process is a significant and time-consuming undertaking. For these reasons, as well as the outstanding jurisdictional issues and the stay currently in effect, petitioner's motion for an order requiring production of a factual return should be denied.[8]

Furthermore, to the extent petitioner's motion asks the Court to require production of information related to petitioner's Administrative Review Board ("ARB") proceedings, the motion should also be denied because such proceedings are not properly before this Court, nor

---

[8] Although respondents maintain that a factual return should not be required at all, if the Court decides to assert jurisdiction notwithstanding the Detainee Treatment Act of 2005 and the Military Commissions Act of 2006 and order the production of a factual return in this case upon entry of the protective order, respondents request that in light of the logistical burdens involved, they be given at least 90 days to submit the factual return. The review of information in the return described above, that is, to ensure that any information disclosed to counsel is in accordance with all applicable statutes, regulations, and Executive Orders, must be conducted. Furthermore, significant numbers of counsel in other pending Guantanamo cases have moved or are moving for orders requiring the submission of factual returns by respondents. In light of such factors, if the Court determines that the submission of a factual return is appropriate, the Court should grant respondents at least 90 days to produce the factual return in this case.

are they a proper subject for this litigation. ARB proceedings are separate and distinct from proceedings before the Combatant Status Review Tribunals ("CSRTs") that determine whether detainees are properly classified as enemy combatants. ARB proceedings serve purposes unrelated to the issues raised by the habeas petition before the Court. The issue in a habeas corpus action is whether there is adequate legal and factual basis for the petitioner's detention. Even if the Court had jurisdiction over this case, the scope of the litigation would be limited to examining the legality of the petitioner's detention. An Administrative Review Board proceeding, however, is not a mechanism for reviewing the legality of the petitioner's detention as an enemy combatant. Instead, the subject of an ARB proceeding examines whether it is in the interest of the United States to continue to detain an enemy combatant whose detention has already been determined by the Department of Defense to be proper. An ARB decision is based on an exercise of military discretion based on factors such as the threat a detainee is believed to pose to the United States or its allies in the ongoing armed conflicts against al Qaeda and its supporters and the detainee's continuing intelligence value. See Revised Implementation of Administrative Review Procedures for Enemy Combatants Detained at U.S. Naval Base Guantanamo Bay, Cuba (July 14, 2006) (available at <http://www.defenselink.mil/news/Aug2006/d20060809ARBProceduresMemo.pdf>). As a result, the ARB issues and the habeas issues are not the same; indeed, the ARB determination involves a complex weighing of factors and exercise of discretion by the military that is not justiciable.[9] See, e.g., Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Mar.

---

[9] Accordingly, petitioner's request for information related to ARB proceedings is, in essence, an improper request for discovery. "A habeas petitioner, [however,] unlike the usual

(continued...)

Admin., 215 F.3d 37, 42 (D.C. Cir. 2000) (finding that the Executive's "judgments on questions of foreign policy and national interest . . . are not subjects fit for judicial involvement").

The military's notice that petitioner's counsel may submit information for use in the ARB proceedings reflects no more than that the military believes that habeas counsel might have or might wish to submit information relevant to the factors to be considered in the proceedings. It does not in any way render the ARB proceedings ancillary to the habeas litigation or grant habeas counsel a right to obtain information pertaining to or for use in ARB proceedings. Granting petitioner's request would put respondents in the absurd situation of potentially having to provide factual returns for all detainees who are represented by counsel and have upcoming ARB proceedings, even though the ARB proceedings are unrelated to the habeas proceedings and the Court lacks jurisdiction over the habeas proceedings.[10]

---

[9](...continued)
civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997); see also Harris v. Nelson, 394 U.S. 286, 297 (1969) (discovery in habeas proceedings is not automatic and cannot be "activated on [the petitioner's] own initiative."); cf. Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts (codifying Harris v. Nelson by allowing discovery only "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise" and requiring submission of the proposed discovery to the court for approval); id. Rule 1(b) (application of § 2254 Rules in non-§ 2254 cases is within court's discretion). In any event, for the reasons discussed in the text, any such discovery would be inappropriate.

[10] Furthermore, while petitioner's motion is labeled as one for "Factual Returns," petitioner's request in fact wildly exceeds the scope of any "factual return" previously produced in any prior Guantanamo detainee habeas case and should be rejected. Petitioner seeks not just production of a factual return, but also seeks such a return without redaction, as well as additional production of "evidence in the possession, custody or control of Respondents tending to show that Petitioner is not an enemy combatant." See Emergency Mot. for Unredacted Factual Returns and Mem. in Supp. Thereof (dkt. no. 306) at 1 & Proposed Order. Of course, as argued above, jurisdiction is lacking to grant such extraordinary relief. Further, petitioner's latter request for relief is nothing more than an improper and unsupported request for discovery
(continued...)

For all of these reasons, petitioner has not established a sufficient factual or legal basis to justify departure from the stay in order to obtain the production of a factual return.

## CONCLUSION

For the foregoing reasons, the Emergency Motion for Ruling on Petitioner's Motion for Entry of Protective Order and Emergency Motion for Unredacted Factual Returns and Memorandum in Support Thereof should be denied.

---

[10](...continued)
and should be rejected. See supra note 9. This is especially the case given that the CSRT record submitted as a factual return would include record information bearing on the enemy combatant status, or not, of a detainee. Petitioner's former request for relief, seeking to prevent any redactions in the factual return, improperly seeks to override and usurp ab initio respondents' duty and responsibility to ensure that information disclosed to counsel in any factual return is in accordance with all applicable statutes, regulations, and Executive Orders. See id. at 8; cf., e.g., Dep't of the Navy v. Egan, 484 U.S. 518, 529 (1988) ("For reasons . . . too obvious to call for enlarged discussion, the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it.") (citation omitted) (internal quotation marks omitted). Further, the very issue of redactions in factual returns in other Guantanamo habeas cases has been briefed and is pending on appeal before the Court of Appeals. See Al Odah v. United States, Nos. 05-5117 - 05-5127 (D.C. Cir.). The Court should not move forward on this issue and grant petitioner's requested relief while the issue, which implicates grave separation of powers concerns, remains pending before the Court of Appeals. Accordingly, even if the Court were to enter the protective order with respect to petitioner and order a factual return in this case, petitioner's requests for additional and improper relief should be rejected.

Dated: January 25, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel


 /s/ JAMES C. LUH
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
EDWARD H. WHITE
JAMES J. SCHWARTZ
ROBERT J. KATERBERG
ANDREW I. WARDEN
NICHOLAS J. PATTERSON
JAMES C. LUH
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel: (202) 514-4938
Fax: (202) 616-8460
E-mail: James.Luh@usdoj.gov

Attorneys for Respondents