PREVIOUSLY FILED WITH THE CSO ON
FEBRUARY 1, 2007 AND APPROVED
FOR PUBLIC FILING BY THE CSO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, et al., | ) |
| | ) |
| (Walid Ibrahim Mustafa Abu Hijazi, | ) |
| a/k/a Assem Matruq Mohammad Al Aasmi, | ) |
| a/k/a Mohammed Al Palestini, ISN 049, | ) |
| | ) |
| and | ) Civil Action No. 05-cv-2386 (RBW) |
| | ) |
| Maasoum Abdah Mouhammad, a/k/a Bilal LNU, | ) |
| ISN 330) | ) |
| | ) |
| *Petitioners*, | ) |
| | ) |
| v. | ) |
| | ) |
| GEORGE W. BUSH, et al., | ) |
| | ) |
| *Respondents*. | ) |

## PETITIONERS' EMERGENCY MOTION FOR PRODUCTION OF
## FACTUAL RETURNS AND MEMORANDUM IN SUPPORT THEREOF

In light of the recent disclosure of a February 23, 2007 deadline for submissions to be considered at Petitioners' 2007 Administrative Review Board ("ARB") hearing, Petitioners Walid Ibrahim Mustafa Abu Hijazi (ISN 049), a/k/a Assem Matruq Mohammad Al Aasmi, a/k/a Mohammed Al Palestini ("Mr. Abu Hizazi") and Maasoum Abdah Mouhammad (ISN 330), a/k/a Bilal LNU ("Mr. Mouhammad") (together, the "Petitioners"), by their undersigned counsel, hereby move for the entry of an order requiring Respondents to immediately produce, no later than February 9, 2007, unredacted factual returns to Petitioners' counsel. Specifically, counsel seeks all classified and unclassified evidence pertaining to Petitioners' initial and continued classification as "enemy combatants", including unredacted hearing transcripts of the Combatant

Status Review Tribunal ("CSRT") and ARB proceedings, including any classified portions, and any exhibits attached to the transcripts. Additionally, counsel seeks all evidence in the possession, custody, or control of Respondents tending to show that Petitioners are *not* "enemy combatants."

Before filing this motion, Petitioners' counsel conferred with Respondents' counsel as required by D.D.C. LCvR 7(m). Respondents' counsel indicated that Respondents oppose this motion and will not consent to providing the relief requested.

<div align="center">

**MEMORANDUM OF POINTS AND AUTHORITIES**

</div>

## I.    STATEMENT OF FACTS

### A.    Background

On December 21, 2005, the Center for Constitutional Rights ("CCR"), co-counsel in this matter, filed a writ for habeas corpus on behalf of Mr. Abu Hijazi, ISN 49, and Mr. Mouhammad, ISN 330, among other petitioners.

On November 7, 2006, after Sachnoff & Weaver, Ltd. was retained as *pro bono* co-counsel to represent Mr. Mouhammad, and Jamal Abdullah Kiyemba, as Next Friend of Mr. Mouhammad, the undersigned attorneys at Sachnoff & Weaver filed Notices of Appearance on those petitioners' behalf. On December 7, 2007, the undersigned counsel filed their Memoranda of Understanding Regarding Access to Classified National Security Information. On December 26, 2006, the same undersigned attorneys at Sachnoff & Weaver filed Notices of Appearance on Mr. Abu Hijazi's behalf.

While Petitioners' counsel at Sachnoff & Weaver have each applied for national security clearance, as of the date of this motion, the United States has not yet approved those security clearances. Accordingly, Petitioners' counsel have not had the opportunity to meet in person with Mr. Mouhammad or Mr. Abu Hijazi. Counsel's only knowledge of the allegations against

Mr. Mouhammad comes from an unclassified and undated CSRT transcript pertaining to Mr. Mouhammad that Respondents produced pursuant to a Freedom of Information Act request made by the Associated Press. (*See* http://www.dod.mil/pubs/foi/detainees/csrt/Set_18_1463-1560.pdf, Set 18, Bates 1494-1503 [attached as Ex. A].) Similarly, counsel's only knowledge of the allegations against Mr. Abu Hijazi stems from the unclassified and undated CSRT and ARB transcripts that Respondents produced pursuant to the Freedom of Information Act, as well as the unclassified summary of factors applied to Mr. Abu Hijazi's ARB determination. (*See* http://www.dod.mil/pubs/foi/detainees/csrt/Set_40_2647-2664.pdf, Set 40, Bates 2647-2654 [attached as Ex. B]; http://www.dod.mil/pubs/foi/detainees/csrt/ARB_Transcript_Set_1_395-584.pdf#20, ARB Set 1, Bates 404-409 [attached as Ex. C]; http://www.dod.mil/pubs/foi/detainees/csrt/ARB_Factors_Set_1_944-1045.pdf, ARB Factors Set 1, Bates 00136-1037 [attached as Ex. D].)

### B.    Allegations Against Mr. Mouhammad

Mr. Mohammad has been detained at Guantánamo for presumably five years, although his length of detention, must less any information justifying his detention, remains completely unknown to his counsel. Mr. Mouhammad's CSRT transcript presents only a cursory overview of the allegations that led Respondents to classify Mr. Mouhammad as an enemy combatant.[1] According to Mr. Mouhammad's CSRT transcript, Respondents allege that (1) Mr. Mouhammad was a member of the Taliban; (2) he is a Syrian who traveled to Afghanistan in 2000; (3) he stayed for more than 12 months at the Wazir Akbar Khan Street safe house located in Kabul, Afghanistan; (4) he operated a safe house where 5-20 personnel armed with AK-47 rifles could be found at any given time; (5) his name was found on a list of Mujahideen trainees for a sniper

---

[1] It is well-documented that in CSRT "hearings," Guantánamo detainees had no rights: (1) to counsel, (2) to call witnesses, or (3) confront witnesses against them, nor could the prisoners call witnesses themselves. Respondents, on the other hand, were able to rely on select classified hearsay not provided to Petitioners and likely obtained under dubious if not outright coercive means. The ARB "hearings" were no different.

3

course; and (6) he confirmed that one of his aliases was on the list for the sniper course. (*See* Ex. A.) The CSRT transcript identifies no evidence in support of any these allegations, nor have Respondents previously produced any evidence to support these allegations.

### C.     Allegations Against Mr. Abu Hijazi

With respect to Mr. Abu Hijazi, there is a similar paucity of evidence supporting Respondents' classification of Mr. Abu Hijazi as an enemy combatant and the decision to continue his detention at Guantánamo. According to the summary of the factors justifying Mr. Abu Hijaz's continued detention, Respondents allege that: (1) Mr. Abu Hijazi admitted he traveled from Palestine to Afghanistan in the summer of 2001; (2) the purpose of his travel to Afghanistan was to participate in the Jihad; (3) he admitted that he was convinced to go to Afghanistan by an individual who might be an al Qaeda recruiter; (4) when he arrived in Afghanistan, he attended the al Farouq training camp, where he learned how to use several weapons; (5) he "admits that" he supports the  actions of Osama bid Laden and others who commit acts of terrorism; (6) he moderately supports the beliefs and actions of the Taliban; and (7) he admitted he has lied on previous interviews with interrogators. (*See* Ex. D.)  Neither Mr. Abu Hijazi's CSRT or ARB transcripts identify any evidence in support of Respondents' allegations against him concerning either his conduct or his beliefs (assuming his beliefs have any relevance to Respondents' continuing detention of him), nor have Respondents previously produced any evidence to support these allegations.

## II.     ARGUMENT

### A.     Factual Returns Should Be Produced Notwithstanding Respondents' Jurisdictional Arguments.

Respondents have argued elsewhere and will surely argue here that the Detainee Treatment Act ("DTA"), Pub. L. No. 109-148, ¶ 1005(e), 119 Stat. 2680 (2005), and the Military Commissions Act ("MCA"), Pub. L. No. 109-366, ¶ 7(e), 120 Stat. 2600 (2006), strip the

jurisdiction of all federal courts to hear petitions for habeas corpus relief filed by Guantánamo detainees. Numerous judges of this Court, however, have rejected this argument and ordered Respondents to produce factual returns, notwithstanding the enactment of the DTA and the MCA. Most recently, in *Razakah v. Bush*, No. 05-2370 (D.D.C. Jan. 23, 2007) (Mem. Op. and Order), Judge Sullivan ordered Respondents to produce factual returns notwithstanding the pendency of appeals before the D.C. Circuit challenging the DTA and the MCA. In his memorandum opinion and order, Judge Sullivan held that the fact that appeals are pending before the D.C. Circuit "is not an adequate reason to deny petitioners' motion because a factual return 'will obviously be needed regardless of the resolution of the jurisdictional question.'" *Razakah*, slip op. at 2. (citations omitted.)

Numerous other judges of this Court have ordered Respondents to produce factual returns, notwithstanding the enactment of the DTA and MCA. *See, e.g., Abdessalam v. Bush*, No. 06-1761 (ESH) (D.D.C. Dec. 12, 2006) (entering protective order in case filed after the enactment of the DTA, over Respondents' jurisdictional arguments under both the DTA and the Military Commissions Act of 2006); *Feghoul v. Bush*, No. 06-618 (RWR), 2006 WL 3096856 (D.D.C. Oct. 31, 2006) (ordering factual returns two weeks after the MCA was enacted); *Lal v. Bush*, No. 06-1763 (CKK) (D.D.C. Oct. 29, 2006) (*sua sponte* ordering returns post-MCA); *Al-Asadi v. Bush*, No. 05-2197 (HHK) (D.D.C Oct. 10, 2006) (ordering factual return over Respondents' objection that the MCA, which had been passed by Congress but not yet signed by the President, divested the court of jurisdiction); *Amin v. Bush*, No. 05-2336 (PLF) (order requiring factual returns entered by Roberston, J.) (D.D.C. Sept. 18, 2006); *Thabid v. Bush*, No. 05-2398 (ESH) (D.D.C. Aug. 18, 2006); *Alsaaei v. Bush*, No. 05-2369 (RWR) (D.D.C. Aug. 14, 2006); *Amin Ullah v. Bush*, No. 05-1237 (ESH) (D.D.C. Aug. 10, 2006); *Kahn v. Bush*, No. 05-1001 (ESH) (D.D.C. Aug. 10, 2006); *Al-Ghizzawi v. Bush*, No. 05-2378 (JDB) (D.D.C. Aug. 9,

2006); *Zadran v. Bush*, 05-2367 (RWR) (D.D. C. July 19, 2006); *Rabbani v. Bush*, No. 05-1607 (RMU) (D.D.C. June 16, 2006); *Said v. Bush*, No. 05-2384 (RWR) (D.D.C. May 23, 2006); *Almerfedi v. Bush*, No. 05-1645 (PLF) (D.D.C. Mar. 6, 2006).

For example, in *Al-Ghizzawi*, No. 05-2378 (JDB), Judge Bates concluded that the DTA could not justify Respondents' refusal to produce factual returns. In doing so, Judge Bates reasoned that "even if respondents' interpretation of the DTA's exclusive jurisdiction provision is correct . . . completion of any . . . judicial review [in the D.C. Circuit under the provisions of the DTA] would necessitate that petitioner's counsel have access to the CSRT records." *Al-Ghizzawi*, slip op. at 3-4. In fact, in that case, Respondents conceded that they "do not anticipate objecting to production of [the] petitioners' CSRT records for review in the Court of Appeals' proceedings pursuant to [the DTA]." *Id.* at 4.

Similarly, in *Kahn*, No. 05-1001 (ESH), Judge Huvelle rejected Respondents' jurisdictional objection as "an inadequate justification to further delay the relief sought by petitioner." *Kahn*, slip op. at 2. Judge Huvelle further held that factual returns "will obviously be needed regardless of the resolution of the jurisdictional question." *Id.; see also Said*, No. 05-2384 (RWR), slip op. at 4 ("Whatever forum is ultimately held to be the proper one to rule on a pre-DTA habeas petition, it is hardly sensible to withhold what no one disputes petitioners will ultimately be likely to receive."); *Feghoul*, 2006 WL 3096856, at *1 ("Despite the lack of finality regarding the issues on appeal. . .it is hardly sensible to withhold or frustrate something that no one doubts is petitioners' right – a meaningful communication with counsel regarding the factual basis of petitioners' detention.")

In accord with these numerous other decisions, this Court should grant Petitioners' motion because even under the review process prescribed by the DTA, Petitioners would be entitled to the information contained in the requested factual returns. *See Al-Ghizzawi,* slip op. at

6

3 ("[T]he outcome sought by petitioners through the present motion would ultimately be achieved regardless of the disposition of the jurisdictional question.")

###    B.    The Production of Factual Returns Is Critical to Counsel's Effective Representation of Petitioners.

The requested factual returns are absolutely necessary to counsel's representation of Petitioners. Although Petitioners have been detained at Guantánamo for many years, counsel has virtually no information concerning the charges against Petitioners and their continued detention at Guantánamo. The unclassified CSRT transcripts that are available are disjointed and incomplete (and include no dates), leaving counsel to guess the basis for Respondents' *initial* determination that Petitioners are "enemy combatants."[2]    Moreover, the unclassified and redacted CSRT summaries of the evidence against Petitioners omit entirely any discussion of what, if any, purported "hostile acts" either Mr. Abu Hijazi or Mr. Mouhammad committed against the United States or its allies.

For similar reasons, Petitioners are entitled to factual returns so they can learn whether they have been determined, at any point, to be *non*-enemy combatants by a CSRT or ARB panel (or "no longer enemy combatants in the rubric of Respondents that is designed to deny any possibility of error by the Executive Branch), and thus not subject to the provisions of the DTA and MCA that Respondents will argue prevent this Court from entertaining their habeas petition.[3]

---

[2] Petitioners do not concede that "enemy combatant" is a status recognized by law that would if proven justify their endless detention.  Respondents have not charged either of Petitioners with any crimes nor declared them prisoners of war.

[3] Respondents have elsewhere acknowledged that if Petitioners have been designated as non-enemy combatants, they are not subject to the provisions of the DTA (and now the MCA).  *See* Reply Brief for Appellants and Brief for Cross-Appellees at 6, *Kiyemba v. Bush*, Nos. 05-5487 through 05-5492, 06-5042, (D.C. Cir. Aug. 2, 2006) ("Because [two of the detainees] have been determined by a CSRT not to be enemy combatants, they do no challenge any final CSRT decisions.  As a result, this Court's 'exclusive' jurisdiction under [the DTA] is inapplicable to their cases. The district courts, therefore, may continue to exercise jurisdiction over their habeas cases."); *see also Zakirjan v. Bush*, No. 05-2053 (HHK) (D.D.C. Aug. 18, 2006) (vacating stay where the detainee, by the government's own concession, was determined not to be an enemy combatant).

Respondents have previously concealed determinations by the CSRT that detainees were not enemy combatants. *See Qassim v. Bush*, 407 F. Supp. 2d 198, 199 (D.D.C. 2005) ("The government . . . knew about the CSRT determination [that petitioners were not enemy combatants] but advised nobody").

Respondents' refusal to produce Petitioners' factual returns also severely prejudices Petitioners' ability to meaningfully communicate with their counsel. *See Al-Ghizzawi*, slip op. at 3; *Al-Anazi v. Bush*, 370 F. Supp. 2d 188, 200 (D.D.C 2005) ("[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners . . . even initial conversations by counsel with their clients may be very difficult without access to that basic factual information"); *Kahn*, slip op. at 2 ("Without access to the information contained within a factual return, petitioner's counsel cannot offer anything approaching effective representation in these proceedings."); *Rabbani*, slip op. at 2-3 ("[P]etitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients."); *Al-Shabany v. Bush*, No. Civ.A. 05-2029 (JDB), 2005 WL 3211407, at *3 (D.D.C. Nov. 17, 2005) ("As the Court has noted in other cases, the factual return appears to be necessary in order to enable counsel effectively to represent the petitioner."). This prejudice is only enhanced given the already severe limitations associated with attorney-client communications in Guantánamo. *See Al-Ghizzawi*, slip op. at 3.

In sum, counsel simply cannot represent Petitioners effectively without access to basic information regarding the United States' purported legal and factual justification for Petitioners' detention, as well as any mitigating evidence of that purported justification.

### C.    Production of Factual Returns Would Neither Be Burdensome to Assemble Nor a Threat to National Security.

Judges of this Court have repeatedly rejected Respondents' arguments made in other cases that the alleged burden of producing factual returns weighs against requiring the prompt

production of factual returns. In *Hatim v. Bush*, No. 05-1429(RMU) (D.D.C. Aug. 22, 2005),

Judge Urbina both rejected Respondents' arguments that a factual return should not be ordered

because of pending appeals, and that requiring Respondents to provide factual returns would be

burdensome:

> The fact that the D.C. Circuit has not yet issued its decision in related appeals (or
> that this case is stayed pending the D.C. Circuit's decisions on those appeals) does
> not prevent the government from processing returns. On the contrary, the court
> determines that petitioners' counsel should be able to review the returns now so
> that they can develop their case and prepare for any consultation with their clients
> . . . . *Finally, the government's generic references to the expenditure of its
> resources and a 'logistical burden' does not persuade the court to delay ordering
> the returns; the court is confident that the government can handle this task.*

*Id.* at 3 (internal citations omitted) (emphasis supplied). *See also Said v. Bush*, No. 05-2384

(D.D.C. May 23, 2006) (requiring respondents to produce four separate factual returns within ten

days); *Errachidi v. Bush*, No. 05-CV-0640 (EGS) (D.D.C. April 21, 2005) (requiring

respondents to produce factual returns within seven day time frame); *Abdullah v. Bush*, No. 05-

0023 (D.D.C. Apr. 8. 2005) (ordering production of factual returns within thirty days after the

entry of the protective order).

Given that all CSRT proceedings were completed over one year ago, Respondents are

well-aware of the purported bases of Petitioners' confinement. Respondents can comply with the

requested order in Petitioners' motion by simply photocopying and delivering readily available

documents. Certainly, the minimal time or effort it would take Respondents to produce these

documents is far outweighed by Petitioners' compelling interest in learning the legal and factual

basis of their continued, indefinite detention. Indeed, even reporters have been permitted to

witness CSRT proceedings for many prisoners. *See* Kathleen T. Rhem, *Reporters Offered Look

Inside Combatant Status Review Tribunals,* AMERICAN FORCES INFORMATION SERVICE, Aug. 29,

2004, http://www.defenselink.mil/news/Aug2004/n08292004_2004082902.html (media offered

the chance to observe a CSRT first-hand).  If Respondents can allow members of the media to
attend CSRT hearings, they can certainly provide factual returns to habeas counsel.

In addition, the Amended Protective Order in place in this case ensures that Respondents'
production of classified materials will not pose a national security risk.  *See e.g., Rabbani,* Mem.
Op. at 3 (ordering factual returns and rejecting government's concerns regarding classified
information where protective order entered in case "will guard against any inadvertent
disclosures").  Counsel for Petitioners have carefully reviewed the Amended Protective Order
and have executed the Memorandum of Understanding that controls the handling of classified
information.  While Petitioners' undersigned counsel at Sachnoff & Weaver have not yet
received their security clearance approvals and thus cannot view classified materials until
granted the requisite security clearances, that process is well-underway.   Since CCR serves as
co-counsel for both Petitioners and does have the requisite security clearance to review
classified, unredacted material, factual returns can be produced now to CCR, and redacted
returns can be produced to counsel at Sachnoff & Weaver while their security clearance
applications remain pending.

**D.    The Immediate Production of Factual Returns is Critically Important So
That Petitioners Can Include Relevant Information in Their 2007 ARB
Submission.**

On December 22, 2006, the undersigned counsel received an email message from LTC
David N. Cooper of the Office for the Administrative Review of the Detention of Enemy
Combatants ("OARDEC"), informing counsel of their "opportunity to provide input regarding
your client for review and consideration by the 2007 Administrative Review Boards." (*See*
attached as Ex. E.)[4]  The email message further stated that any submission must be made "no

---

[4] This is the first opportunity that Petitioners' counsel has ever had to assist Petitioners in connection with
the ARB hearings.    Prior to Mr. Cooper's email of December 22, 2006, Respondents have never
previously contacted counsel for Petitioners (either counsel at Sachnoff & Weaver or co-counsel at CCR)
regarding the ARB hearings.

later than February 23, 2007" and stated that "the OARDEC Legal Advisor. . . will not be able to answer any substantive or procedural questions about your client's ARB of prior years or this year." *Id.* The message also included a "Fact Sheet for Habeas Counsel Regarding Administrative Review Boards (ARBs)," which described the purpose of the ARB procedure:

> The ARBs are an administrative review process to annually assess whether there is reason to believe that an enemy combatant might pose a continuing threat to the United States or its allies in the ongoing conflict against al Qaeda and its affiliates and supporters, and whether there are other factors warranting the enemy combatant's continued detention.

(*see* attached as Ex. F.)  The Fact Sheet confirms that Respondents will *not* allow counsel to appear at the ARB hearings, and that the February 23, 2007 submission is counsel's *only* opportunity to submit information for consideration this year.[5]  The Fact Sheet further states "If your client's ARB occurs before the Privilege Review Team receives your submission, the information will be retained for consideration at your client's next annual review if he remains in detention." *Id.*  The Fact Sheet also confirms that Respondents will not provide any information to counsel "on the scheduling or outcomes of the ARBs." *Id.*

The Court should reject Respondents' likely claim made in other cases, that Petitioners are not entitled to complete factual returns, including records of previous ARB proceedings, since ARB proceedings are not justiciable.  Respondents, however, concede that the purpose of the ARB process is to determine whether Respondents continue to have valid bases for detaining Petitioners at Guantánamo. (*See id.*)    Indeed, for the first time, Respondents have invited Petitioners' counsel "to participate" in the ARB process, albeit in a manner that is in no way consistent with due process.  Yet, if counsel for Petitioners is unable to obtain the requested factual returns prior to the February 23, 2007 deadline (including past ARB transcripts), counsel

---

[5] Petitioners' do not concede that the ARB is a sufficient substitute proceeding "in lieu" of habeas. *See I.N.S. v. St. Cyr*, 533 U.S. 289, 305, 121 S. Ct. 2271, 2282 (2001). Nevertheless, Petitioners' seek to take advantage of the de minimis opportunity offered to them to make an argument to someone about why each of their detentions is unlawful.

for Petitioners will be unable to include any relevant information in Petitioners' 2007 ARB Submissions.

## III. <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant Petitioners' Emergency Motion for Factual Returns. Respondents should be ordered to produce complete, unredacted factual returns by February 9, 2007 (ten working days before the government's deadline for submissions in connection with Petitioners' 2007 ARB Proceedings). In the alternative, the Court should order the production of factual returns within ten days of the Court's order. In either event, such factual returns should be supplemented by Respondents should the information therein change.

Dated:  January 31, 2007

<div style="margin-left:40%">

Respectfully submitted,

Counsel for Petitioner:

<u>/s/  *Adam R. Chiss*</u>
Lowell E. Sachnoff  (Illinois Bar No. 02438062)
Matthew J. O'Hara  (Illinois Bar No. 6237795)
Adam R. Chiss  (Illinois Bar No. 6272056)
*Each Pursuant to LCvR 83.2(g)*
**SACHNOFF & WEAVER, LTD.**
10 South Wacker Drive, 40th Floor
Chicago, Illinois  60606
Tel:     (312) 207-1000
Fax:     (312) 207-6400

Of counsel:
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2 (g))
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012

</div>

## CERTIFICATE OF SERVICE

This certifies that on February 2, 2007, we filed the foregoing **Petitioners' Emergency Motion for Production of Factual Returns and Memorandum in Support** with the Clerk of the Court using the Court's Electronic Case-Filing System, which will send notification of such filings to all counsel of record in this matter who are registered ECF users. Petitioners' Emergency Motion was first delivered to the Court Security Office on February 1, 2007 and has since been approved for public filing by the Court Security Office.

/s/ Adam R. Chiss
Lowell E. Sachnoff
Matthew J. O'Hara
Adam R. Chiss
*Each Pursuant to LCvR 83.2(g))*
**SACHNOFF & WEAVER, LTD.**
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel:    (312) 207-1000
Fax:    (312) 207-6400

Of counsel:
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
J. Wells Dixon (Pursuant to LCvR 83.2 (g))
**CENTER FOR CONSTITUTIONAL RIGHTS**
666 Broadway, 7th Floor
New York, NY 10012

13