Submitted to CSO on March 12, 2007;
cleared for public filing on March 13, 2007.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SANAD ALI YISLAM AL-KAZIMI<br>     Detainee,<br>     Guantánamo Bay Naval Station,<br>     Guantánamo Bay, Cuba.<br><br>                              Petitioner,<br><br>     v.<br><br>GEORGE WALKER BUSH, *et al*.,<br><br>                              Respondents. | )<br>)<br>)<br>)<br>) Civil Action No: 05-2386(RBW)(AK)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**EMERGENCY MOTION TO COMPEL DISCLOSURE OF CERTAIN RECORDS
TO ENSURE EFFECTIVE COUNSEL ACCESS AS MANDATED BY THE
AMENDED PROTECTIVE ORDER**

Petitioner's treatment at the hands of an overzealous and unrestrained Immediate Reaction Force (hereinafter "IRF") places Petitioner's health, safety and wellbeing in imminent danger, thereby jeopardizing Petitioner's guaranteed right to effective counsel access. Based on this concern, and acting pursuant to specific instructions from Petitioner, undersigned counsel respectfully moves the Court to compel disclosure of the following records: videotape recordings of IRF interventions against Petitioner; records outlining disciplinary measures taken against Petitioner; records outlining disciplinary measures taken against IRF team members for excessive use of force against Petitioner; and Petitioner's medical records for the duration of his detention at Guantánamo Naval Base, Cuba (hereinafter "Guantánamo").

Through this motion, the Court is confronted with an exceptional emergency situation threatening not only the physical and mental wellbeing of Petitioner, but also the very jurisdiction of the Court with regard to the exclusive administration, interpretation and enforcement of the Amended Protective Order and Procedures for Counsel Access (hereinafter "Amended Protective Order," or "Protective Order"), which remains in effect. Mohammon v. Bush, Civ. No. 05-2386 (D.D.C. June 12, 2006) (hereinafter "Mohammon"). Indeed, to the extent that the District Court deemed it proper to assume authority over issues of counsel access as to all Mohammon Petitioners, it has a duty and obligation to ensure that such access is meaningful and effective. Effective and meaningful access to counsel is impossible where Petitioner is psychologically damaged as a result of sustained, systematic beatings or unable to attend or participate in attorney-client meetings due to injury or, in a worst case scenario, death.

Disclosure of the requested records will enable undersigned counsel to confirm the extent of physical abuse to which Petitioner has been and continues to be subjected, and take subsequent action, if needed, in order to guarantee Petitioner's right to effective and meaningful access to counsel under the terms of the Amended Protective Order. The relief requested is an administrative step that does not touch upon the substantive issues of Mohammon, and as such falls outside the ambit of matters that are currently stayed and administratively closed.

## FACTUAL BACKGROUND

On January 14, 2007, Petitioner was subjected to a severe and sustained beating by an IRF team for failing to uncover the lower half of his body before a female guard,

2

while he was seated on the lavatory located in his cell.  See Declaration of Ramzi Kassem dated March 9, 2007, ¶¶ 12-21 (hereinafter "Kassem Declaration" or "Declaration"), attached hereto as Exhibit A.  Petitioner's religious beliefs dictate modesty at all times, but especially before members of the opposite sex.  Id. at ¶¶ 13 , 16.  As such, and in accordance with a common and accepted practice at Guantánamo, Petitioner used his blanket to cover his genitalia while using the lavatory.  Id. at ¶ 14.  Petitioner's upper body, including his arms and head were visible to the patrolling guards at all times.  Id.  Despite this attempt to demonstrate transparency and openness, Petitioner was nonetheless ordered to remove the blanket by the guards, one of whom was female.  Id. at ¶ 15.  Upon his refusal the guards immediately summoned the IRF team.  Id. at ¶¶ 16-17.

The IRF squad entered Petitioner's cell in full riot gear, pinned Petitioner to the ground, and secured his arms, legs and head.  Id. at ¶ 20.  During this time Mr. Al-Kazimi did not resist, yet he was repeatedly punched, kicked and otherwise mercilessly beaten by the team members who used their oversized Plexiglas shield, fists, elbows, knees and boots on his face, arms, torso and back.  Id. at ¶ 21.

Despite the severity of the beating, Mr. Al-Kazimi was denied medical assistance until the following day, January 15, 2007.  Id. at ¶¶ 23, 24.  When such assistance eventually was provided, it proved to be grossly inadequate.  Petitioner was briefly examined by two military officers, neither of whom were doctors.  Id. at ¶ 26.  Unable to speak Arabic, and unaccompanied by an interpreter, the guards measured Petitioner's blood pressure only.  Id.  Petitioner was not provided with any medication that would ease his pain, or reduce the swelling on his body.  Id. at ¶ 28.  He was denied even a simple dose of Motrin.  Id. at ¶¶ 27, 28.

That same day, January 15, 2007, undersigned counsel met with Petitioner at Guantánamo. Upon entering the interview room, counsel plainly and immediately observed severe bruising and swelling on Petitioner's face and neck. Id. at ¶ 6. Upon further examination by counsel, more bruising was discovered on Petitioner's arms and back. Id. at ¶ 7. Additionally, the client complained of an excruciating headache, as well as intense soreness of the jaw and back. Id.

On March 9, 2007, undersigned counsel's office contacted Respondents via telephone in the hope that they would address our concerns regarding Mr. Al-Kazimi's health and safety as well as the need to ensure effective counsel access. Counsel trusted that such an approach would avoid needless litigation of the matter. Unfortunately, Respondents refused to grant our requests thereby prompting the filing of this motion.

Accordingly, counsel for Petitioner has complied with the requirements for Local Rule LCvR7(m), and through concern for Mr. Al-Kazimi's health and right to effective counsel access submits this motion for the Court's consideration as a matter falling under the terms of the Amended Protective Order.

### **RELIEF REQUESTED**

Undersigned counsel respectfully moves to compel disclosure of (1) videotape recordings of IRF interventions involving Petitioner, (2) records of any disciplinary action taken against Petitioner, (3) disciplinary records of IRF team members for excessive use of force against Petitioner, and (4) Petitioner's medical records for the duration of his stay at Guantánamo.

In the alternative, counsel moves for an order compelling Respondents to release such records to the Court for in camera review and subsequent granting of such relief as the Court deems fit under the circumstances.

As a final alternative option, counsel moves for appointment of an independent Master by the Court to review the requested records and make recommendations to the Court as to the particular type of relief that is warranted, with particular emphasis on the need for the Court to ensure effective counsel access under the terms of the Amended Protective Order.

The relief requested here is specifically and deliberately limited to matters covered by Protective Order interpretation and as such is unrelated to the underlying substantive issues that are currently stayed and administratively closed in Mohammon.

## THIS MATTER SHOULD BE REFERRED TO MAGISTRATE JUDGE KAY

The limited relief requested as part of this motion is governed by the Amended Protective Order and as such is independent and unrelated to the jurisdictional issues most likely to be definitively decided by the Supreme Court of the United States in Al-Odah and Boumediene.[1]  Since it is unrelated to those issues, the Court retains the authority to rule on this motion even though the Petitions filed under Mohammon are

---

[1] Whereas the United States Court of Appeals for the District of Columbia Circuit recently held that the Military Commissions Act applies retroactively to pending detainee habeas petitions (Boumediene v. Bush, Civ. No. 05-5062 (D.C. Cir. Feb. 20, 2007)), this determination is by no means final as to Mohammon. The question of District Court jurisdiction over habeas will undoubtedly be resolved by the Supreme Court. Until that time, the District Court is in no different a position post-February 20, 2007, than it was pre-February 20, 2007.  Absent affirmative action by the Court, the Amended Protective Order continues to remain in effect and must govern the Court's consideration of this matter even within the context of a stay, or its functional equivalent, an administrative closing.

5

"administratively closed." Mohammon, Civ. No. 05-2386 (RBW), Order (D.D.C. Jan. 31, 2007).

Further, on the grounds that this motion concerns "client access," we request that this matter be referred to Magistrate Judge Kay as delineated by the Referral Order issued by Judge Kessler in November, 2005.[2]

**ARGUMENT**

**1.   THIS MOTION IS MADE NECESSARY BY AN EMERGENCY SITUATION JEOPARDIZING PETITIONER'S SAFETY AND EFFECTIVE COUNSEL ACCESS**

Undersigned counsel submit this motion and request for relief on the basis that the latest, and threat of future, beatings, as to this particular client, constitute an immediate, fundamental and ongoing infringement on the attorney-client relationship that could cause significant future limitations on the ability of Petitioner to communicate effectively with counsel. The limited relief requested is a necessary first step to confirm the extent of the abuse that Petitioner has suffered to date and may continue to suffer. It is essential to immediately safeguarding and monitoring the health and safety of Petitioner, as well determining the type of future action that should be taken by counsel in order to ensure continued effective access, as delineated by the Amended Protective Order.

Counsel's concerns are clearly justified, for the counsel access guaranteed by the Amended Protective Order is meaningless if Petitioner is unable to meet with his attorney as a result of mental or physical incapacitation, or death. At a minimum, effective and

---

[2] According to the terms of the Referral Order, all motions pertaining to Protective Order construction or interpretation are to be referred to Magistrate Judge Alan Kay under LCvR 72.2(a). Shaaban v. Bush, Civ. No. 05-0892 (CKK), Order (D.D.C. Nov. 2, 2005).

6

meaningful counsel access requires that counsel be able to actually meet with a living client whose mental or physical state has not been compromised by affirmative and deliberately excessive steps taken by the Department of Defense.

The present motion is all the more urgent because Petitioner's January 14, 2007 beating was not an isolated incident. Upon information and belief, Mr. Al-Kazimi has suffered numerous instances of physical abuse by IRF shock troops since his detention at Guantánamo. The latest incident however, was the first time that undersigned counsel had witnessed the immediate and alarmingly apparent consequences of such "intervention." We believe that such ongoing and systematic conduct by IRF teams poses an imminent threat to the health, safety and wellbeing of Mr. Al-Kazimi.

Indeed, that IRF squads may inflict serious and permanent damage upon their targets is evidenced by the beating of United States Soldier Sean Baker during a training exercise. Believing that individual to be a detainee, the IRF team set about "subduing" him. Mr. Baker survived the ordeal, but suffered permanent brain damage as a result. See Baker v. United States, 2006 WL 1635634 (E.D. Ky. 2006). Mr. Baker now suffers from epilepsy with up to twelve (12) seizures a day. See CENTER FOR CONSTITUTIONAL RIGHTS, REPORT ON TORTURE AND CRUEL, INHUMAN AND DEGRADING TREATMENT OF PRISONERS AT GUANTÁNAMO BAY, CUBA 22 (July 2006) (indicating that Mr. Baker's seizures are the result of a traumatic brain injury caused by the actions of an IRF team, such as slamming his head into the concrete floor and grinding his temple into the steel).

Counsel's concerns as to the threat to Petitioner's health are further bolstered by independent reports documenting instances of IRF abuse and use of excessive force against individuals detained at Guantánamo. Most significantly, after viewing a mere

7

twenty (20) hours of an available five hundred (500) hours of video footage of IRF interventions, United States Southern Command issued a report in June, 2004.  See Paisley Dodds, Tapes Show Guantánamo Squads' Tactics, ASSOC. PRESS, Feb. 1, 2005.  Despite the minimal amount of footage viewed, the report indicated that the tapes raised serious questions about abuse and misconduct by IRF teams at the Naval Base.[3]

The extent of the injuries suffered by Mr. Al-Kazimi, as witnessed by undersigned counsel, is inconsistent with striking an identified pressure point necessary to subdue a violent detainee, let alone Petitioner, who offered no resistance to the IRF team and was only acting out of a religious belief in privacy to begin with.  Granting the limited relief requested, therefore, will enable counsel, or indeed this Court, to determine the extent of physical abuse to which Petitioner has been subjected, and the lack of adequate subsequent medical care provided, in order to consider appropriate action as required.

**2.   THE RELIEF REQUESTED IS A MATTER OF CLIENT ACCESS FALLING WITHIN THE SCOPE OF THE AMENDED PROTECTIVE ORDER**

Counsel access under the Protective Order means more than physical access to a client.  It requires, at a minimum, that Respondents not take deliberate steps adversely or fatally impacting such access.  See generally, Al-Joudi v. Bush, 406 F. Supp. 2d 13 (D.D.C. 2005).  Of course, Al-Joudi concerned the forced feeding of detainees who had elected to go on hunger strike as a means of protesting their treatment at the Naval Base, yet the similarities with Petitioner's present situation are striking.  Indeed, in that case, as here, counsel for Petitioners were deeply concerned as to the health and welfare of their

---

[3] According to the report, in one such video, the IRF team punched a prisoner "on an area of his body that would be inconsistent with striking a pressure point."  In another questionable incident, a guard is seen kneeing a detainee in the head, while in another, an IRF team member is seen repeatedly spraying pepper spray on a detainee while taunting him.  See Paisley Dodds, Tapes Show Guantánamo Squads' Tactics, ASSOC. PRESS, Feb. 1, 2005.

clients as well as the corresponding detrimental impact upon effective counsel access. Id. With a view to safeguarding, not only their clients' health but also their right to effective counsel access, counsel for the Al-Joudi Petitioners requested disclosure of medical records in addition to other relief. Id. In granting that particular relief, District Judge Kessler clearly indicated that "in order to properly represent Petitioners, their counsel must have access to them, must be able to communicate with them, and must be made aware if their clients are in such fragile physical condition that their future ability to communicate is in imminent danger." Id. at 21-22. Unsurprisingly, therefore, Respondents were ordered to produce medical records for the period beginning one week prior to the date of the commencement of forced feeding, and then to provide updated records on a weekly basis until termination of such forced feeding. Id. at 23.

In a similar vein, counsel for Mr. Al-Kazimi, concerned that Petitioner's future ability to communicate with counsel is in imminent danger as a result of excessive beatings at the hands of IRF teams, seek to guarantee continued effective counsel access by compelling Respondents to produce records that would indicate excessive mistreatment through a process colloquially known as "IRFing."

In many ways, the urgency of this situation is even more acute than in Al-Joudi. Forced feeding is a short-term and finite measure, the enactment of which can be predicted, and which is not intended to inflict pain or suffering upon the patient. IRF beatings and excessive use of force, on the other hand, are intentionally designed to inflict such pain and suffering upon the victim. Further, they are an unpredictable and constant threat to which Petitioner will be subjected for the duration of his detention at Guantánamo, given that any minor infraction, such as covering one's genitals out of a

9

need for a modicum of privacy while seated on the lavatory, can trigger an IRF intervention.

Since, as mandated by District Judge Kessler, a request for records pertaining to the evaluation of a detainee's health is linked to the question of counsel access, resolution of this matter must inevitably take place under the authority of the Amended Protective Order (Exhibit A to that Order incorporates the "Revised Procedures for Counsel Access to Detainees at the US Naval Base in Guantánamo, Cuba"). In entering the Protective Order as to <u>Mohammon</u> on June 12, 2006, therefore, the Court assumed exclusive authority over the enforcement and applicability of matters falling within the ambit of the Order.

The intricate and complex system of assuring access is meaningless where counsel cannot effectively interact with the client as a result of the latter's mental or physical incapacitation or death. To the extent that all <u>Mohammon</u> counsel abide by the terms of the Order, Respondents have an obligation to not take systematic and affirmative action undermining counsel access where it is judicially guaranteed. To do otherwise would be an affront to the jurisdiction and authority of this Court to enforce the terms of the Protective Order.

**3.   AN ADMINISTRATIVE CLOSING IS NO DIFFERENT THAN A STAY AND IS IRRELEVANT AS TO THE ENFORCEMENT OF THE AMENDED PROTECTIVE ORDER**

The Fifth Circuit has noted that the administrative closing of a matter is the functional equivalent of a stay. <u>Mire v. Full Spectrum Lending Inc.</u>, 389 F.3d 163, 167 (5th Cir. 2004). Where there exists no substantive difference between a stay of

proceedings and an administrative closing, the specific subset of issues over which this Court has retained authority in the context of a stay, continues to remain within the jurisdiction of the Court after an administrative closing.  Here, this subset of issues pertains to the application and interpretation of the Amended Protective Order and the relief requested falls squarely within these confines.

Indeed, Respondents themselves have previously acknowledged the importance and continued authority of the District Court to rule on issues of client access even where the underlying substantive matter would be held in abeyance (the practical effect of both a stay and an administrative closing): "[i]n seeking a stay . . . respondents do not intend thereby to block counsel access . . . . To that end, respondents do not object to entry in these cases of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access." Adem v. Bush, Civ. No. 05-723 (RWR), Respondents' Motion to Stay Proceedings Pending Related Proceedings Pending Related Appeals at 2 (D.D.C. Apr. 13, 2005) (emphasis added).  More importantly, this Court has stated that a stay of proceedings "by no means preclude[s] this Court from granting the limited relief" of entry and subsequent enforcement of a protective order.  Nasrullah v. Bush, Civ. No. 05-0891 (RBW), Order (June 12, 2006).

Accordingly, issues of client access, to which this motion relates, are independent from the still unresolved question of the Court's jurisdiction to rule on detainee Habeas cases.  See Al Salami, Civ. No 05-2452 (PLF) (D.D.C. Apr. 13, 2006).  In this procedural posture, both a stay and an administrative closing must have the same preclusive effect upon the relief requested by this particular motion, which is to say, none at all.

## 4.      THE DISTRICT COURT RETAINS JURISDICTION OVER THE ADMINISTRATION OF ITS PROTECTIVE ORDER

Even assuming that an administrative closing is sufficiently different from a stay as to warrant different treatment of matters collaterally related to Petitioners' Habeas Petitions, yet falling outside the scope of the Amended Protective Order, matters specifically pertaining to the construction and enforcement of that Protective Order must continue to be addressed and resolved by the Court.  Indeed, "a protective order, like any ongoing injunction, is <u>always</u> subject to the inherent power of the district court." Poliquin v. Garden Way Inc., 989 F.2d 527, 535 (1st Cir. 1993) (emphasis added).  More specifically, "the court's supervisory power [over a protective order] does not disappear because jurisdiction over the relevant controversy has been lost."  Gamble v. Deutsche Bank AG, 377 F.3d 133, 141 (2d Cir. 2004).

To the extent that a court retains the power to modify a Protective Order that remains in effect even after a final determination of an underlying substantive matter, this Court most certainly retains the authority to interpret the scope and applicability of an effective order where no ultimate determination has been made.[4]

Moreover, as to Mohammon, undersigned counsel point out that the Court has not "lost" jurisdiction of the larger matter as a result of the administrative closing.  Far from it, "[a]dministrative closings comprise a familiar, albeit essentially ad hoc, way in which courts remove cases from their active files without making any final adjudication." Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 392 (1st Cir. 1999).

As such, it is indisputable that the Court retains the authority to hear, and Petitioner retains the authority to file, motions seeking interpretation, enforcement or

---

[4] Such ultimate determination undoubtedly will be made by the Supreme Court.

even modification of a protective order where the larger controversy has been stayed or administratively closed. Certainly, as Magistrate Judge Kay has asserted with regard to the procedural significance of a stay, "[i]t would be untenable for the District Court to be put in a position where it would be powerless to enforce its own protective order, presently in effect and over which it has continuing control." Adem v. Bush, Civ. No. 05-0723 (RWR) (AK), Order (Mar. 21, 2006). For the foregoing reasons, the same holds true in the context of an administrative closing.

### 5. THE PROTECTIVE ORDER REMAINS IN EFFECT

The Protective Order remains in effect as to other detainee Habeas cases pending before the District Court that are currently stayed. See Adem v. Bush Civ. No. 05-0723 (RWR) (AK), Order (Mar. 21, 2006). This assertion must hold equally true for Mohammon, given that an administrative closing is no different than a simple stay. To hold otherwise, absent an explicit amendment or termination of the Protective Order as to this particular case, would defeat the purpose of ensuring the orderly, uniform, efficient and consistent administration, interpretation and enforcement of a protective order that has been entered as to various Habeas Petitions pending before the United States District Court.

It is not insignificant that both Respondents and Mohammon counsel continue to abide by the requirements of the Amended Protective Order. Certainly, even in the post-February 20, 2007 context, it would be untenable to posit that the Department of Defense would allow counsel access to their clients outside the parameters of that Order. On the contrary, incoming counsel remain obligated to provide notification of representation

13

under Section III of the Protective Order.  See, e.g., Mohammon, Civ. No. 05-2386, Notice of Appearance (D.D.C. Feb. 20, 2007).  Incoming counsel equally remain obligated to sign memoranda of understanding as to the terms of the Protective Order.  See, e.g., Mohammon, Civ. No. 05-2386, Memorandum of Understanding (D.D.C. Feb. 12, 2007).

Indeed, in determining that the Amended Protective Order was in effect during a stay of proceedings, Magistrate Judge Kay deemed it conclusive that Habeas counsel continued to visit their clients according to the Procedures for Client Visitation, that the Department of Defense Privilege Review Team continued to conduct classification reviews of detainee mail and attorney notes as required by the Amended Protective Order, and that counsel remained subject to the Court's contempt power under Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993).  See Adem v. Bush, Civ. No. 05-0723 (RWR), (AK), Memorandum Opinion (D.D.C. Mar. 12, 2006).  These procedures continue to be complied with and enforced as of the date of filing of this Motion.  Accordingly, and consistent with Magistrate Judge Kay's determination, these factors lend themselves to the conclusion that the Amended Protective Order remains in effect as to all Mohammon Petitioners.

## CONCLUSION

For the foregoing reasons, this Court should grant one of the forms of relief alternatively requested herein, or any other relief it deems appropriate under the circumstances.  See Proposed Order attached hereto as Exhibit B.

Dated: New York, New York
March 12, 2007

        Respectfully submitted,

        Counsel for Petitioner:

        _____/s/_____
        Ramzi Kassem (Pursuant to LCvR 83.20(g)
        (NY-RK-3567))

        Martha Rayner (NY-MR-1423)
        James A. Cohen (NY-JC-3836)
        Lincoln Square Legal Services
        Fordham University School of Law
        33 West 60th Street, 3d Floor
        New York, NY 10023
        Telephone: (212) 636-6934
        Fax: (212) 636-6923