IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.*,  ) <br> (SANAD ALI YISLAM AL–KAZIMI)  ) <br>   ) <br>   Petitioners,  ) <br>   ) <br>   v.  ) <br>   ) <br> GEORGE W. BUSH, *et al.*,  ) <br>   ) <br>   Respondents.  ) <br> _____) | Civil Action No. 05-2386 (RBW) |

**RESPONDENTS' OPPOSITION TO PETITIONER'S EMERGENCY
MOTION TO COMPEL DISCLOSURE OF CERTAIN RECORDS**

By his emergency motion for discovery ("Pet'r Mot.") (dkt. no. 352), petitioner Sanad Ali Yislam Al-Kazimi (ISN 1453) invites this Court to permit discovery relating to his conditions of confinement. This Court should reject that invitation because, as the Court of Appeals has held, district courts lack jurisdiction to grant relief to aliens, like petitioner, that are detained as enemy combatants at the United States Naval Base in Guantanamo Bay, Cuba ("Guantanamo"), and these aliens do not have constitutional rights. Boumediene v. Bush, 476 F.3d 981, 988-94 (D.C. Cir. 2007), petition for cert. filed, 75 U.S.L.W. 3483 (U.S. March 5, 2007 (No. 06-1195), and petition for cert. filed, Al Odah v. United States, 75 U.S.L.W. 3483 (U.S. March 5, 2007) (No. 06-1196). Specifically, the Court of Appeals confirmed that the Military Commissions Act of 2006[1] ("MCA") withdrew all jurisdiction of the district courts over claims by aliens detained as enemy combatants, and rejected constitutional challenges to the statute. Id. Consequently, the Court lacks jurisdiction to grant petitioner's requested discovery,

---

[1] Pub. L. No. 109-366, 120 Stat. 2600.

even under petitioner's far-fetched and erroneous theory that such discovery is warranted by the terms of the Court's protective order or otherwise.

## ARGUMENT

**I.    This Court Lacks Subject-Matter Jurisdiction to Consider Petitioner's Motion.**

The Court issued an Order on January 31, 2007 (dkt. no. 324) that administratively closed this case until the D.C. Circuit resolved the question of the Court's jurisdiction. As the cases on which petitioner relies note, Pet'r Mot. at 10, 12, an administrative closing places the closed case on the Court's inactive docket. See Mire v. Full Spectrum Lending Inc., 389 F.3d 163, 167 (5th Cir. 2004); Lehman v. Revolution Portfolio LLC, 166 F.3d 389, 391-92 (1st Cir. 1999). These cases stand for the unremarkable proposition that the Court has broad authority to regulate its docket. Consistent with that authority, the Court issued its January 31, 2007 Order, noting that the case would be automatically reopened, as appropriate, "[i]n the event that the District of Columbia Circuit conclud[ed] that this Court retains some degree of jurisdiction over [the case]." Because the Court of Appeals concluded that the Court does not retain any jurisdiction over this case, the Court should (1) reject petitioner's invitation to reopen the case, and (2) deny petitioner's motion.

The MCA, which became law on October 17, 2006, amends the habeas statute, 28 U.S.C. § 2241, to provide that "[n]o court, justice, or judge shall have jurisdiction" to consider either (1) habeas petitions filed by aliens detained by the United States as enemy combatants, or (2) any other action "relating to any aspect of the detention, transfer, treatment, trial, or conditions of confinement" of such aliens, except for the exclusive review mechanism in the D.C. Circuit

created under the Detainee Treatment Act of 2005[2] ("DTA") for addressing the validity of the detention of such aliens.  See MCA § 7.  This new amendment to § 2241 took effect on the date of enactment and applies specifically "to all cases, without exception, pending on or after the date of the enactment of this Act which relates to any aspect of the detention, transfer, treatment, trial, or conditions of detention of an alien detained by the United States since September 11, 2001."  Id.

In Boumediene, 476 F.3d 981, 986-88, the Court of Appeals held that the MCA plainly applies to all cases filed by aliens detained as enemy combatants, including pending habeas petitions such as this one, and withdrew all district court jurisdiction over such cases.  See also id. at 994 ("Federal courts have no jurisdiction in these cases.").  The Court of Appeals also held that the withdrawal of habeas jurisdiction over pending cases did not violate the Suspension Clause because the alien detainees held at Guantanamo have no constitutional rights, and because the constitutional right to seek habeas review does not extend to aliens held at Guantanamo.  Id. at 988-94.  Consequently, the Court of Appeals (1) ordered that the district courts' decisions on appeal be vacated and (2) dismissed the cases on appeal for lack of jurisdiction.  Id. at 994.  Thus, in light of Boumediene, the law of this Circuit is settled:  federal district courts do not have jurisdiction over cases brought by aliens such as petitioner detained as enemy combatants at Guantanamo[3] and, moreover, such alien enemy combatants do not have constitutional rights.  See Ayuda, Inc. v. Thornburgh, 919 F.2d 153, 154 (D.C. Cir. 1990)

---

[2] Pub. L. No. 109-148, Tit. X, 119 Stat. 2680.

[3] See Respondents' Opposition to Petitioners' Motion for Factual Returns (dkt. no. 237) at 2 n.1.

(Henderson, J., concurring) ("Once [an] opinion [is] released it [becomes] the law of this circuit."); see also Hicks v. Bush, 02-CV-299 (D.D.C.) (CKK) (dkt no. 223; Mar. 23, 2007) (holding that the Boumediene decision is law of the circuit and, thus, prevents the district court from exercising jurisdiction to enjoin military commission proceedings).

Petitioner seeks to avoid this conclusion by asserting in a footnote that even though the Court of Appeals has ruled on this Court's jurisdiction, the matter is "by no means final" and "will undoubtably be resolved by the Supreme Court," and therefore the Court is in "no different a position" after Boumediene than it was before Boumediene. Pet'r Mot. at 5 n.1. Obviously, the Court is in a *much different* position after Boumediene because there is now *binding* precedent holding that the Court lacks jurisdiction over this case. See Ayuda, Inc., 919 F.2d at 154; see also Hicks v. Bush, 02-CV-299 (D.D.C.) (CKK) (dkt no. 223; Mar. 23, 2007). Thus, petitioner's awkward view of the federal court system – that the Court may ignore binding precedent simply because the Supreme Court might address the issue – need not detain the Court long.

Independent of the MCA, the review mechanism created by the DTA also divests this Court of jurisdiction. The DTA invests the D.C. Circuit with exclusive jurisdiction to address the validity of the United States' detention of aliens as enemy combatants, including at Guantanamo, and of final decisions of any military commissions. See DTA § 1005(e)(2), (e)(3), as amended by the MCA. Section 1005(e)(2) of the DTA states that the D.C. Circuit "shall have exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," and it further specifies the scope and intensiveness of that review. Thus, even prior to enactment of the MCA,

the DTA invested the Court of Appeals with the same "exclusive jurisdiction to determine the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant," see DTA § 1005(e)(2), (e)(3), which, standing alone, deprives the district court of jurisdiction in cases where, as here, the petitioner challenges his detention as an enemy combatant.  It is well-settled that an exclusive-review scheme, where applicable, precludes the exercise of jurisdiction under more general grants of jurisdiction including habeas corpus.  See, e.g., Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207-09 (1994) ("exclusive" jurisdiction under federal Mine Act precludes assertion of district court jurisdiction); FCC v. ITT World Commc'ns, Inc., 466 U.S. 463, 468 (1984) ("The appropriate procedure for obtaining judicial review of the agency's disposition of these issues was appeal to the Court of Appeals as provided by statute."); Laing v. Ashcroft, 370 F.3d 994, 999-1000 (9th Cir. 2004) ("§ 2241 is ordinarily reserved for instances in which no other judicial remedy is available"); Lopez v. Heinauer, 332 F.3d 507, 511 (8th Cir. 2003) ("Because judicial review was available . . . the district court was not authorized to hear this § 2241 habeas petition."); Telecomm. Research & Action Ctr. v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("By lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power."); id. at 75, 78-79 (request for relief in district court that might affect Court of Appeals' future, exclusive jurisdiction is subject to the exclusive review of the Court of Appeals).

Accordingly, granting the relief requested by petitioner would be an exercise of jurisdiction and authority by the Court that is inconsistent with the ruling of the Court of Appeals, the DTA's investment of exclusive jurisdiction in the Court of Appeals, and the MCA's

withdrawal of other forms of jurisdiction.[4] See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) (" 'Without jurisdiction [a] court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.' " (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506, 514 (1868)).

For these reasons, petitioner's motion should be summarily denied.

## II. Petitioner's Request For Discovery is Not Warranted by the Protective Order or Otherwise.

In addition to the jurisdictional obstacle discussed above, reopening of this case for discovery is neither warranted nor appropriate. Petitioner's assertion that his motion has a legitimate factual predicate is incorrect. Petitioner's motion also should be denied because the requested relief – various forms of discovery – is not compelled by the protective order entered in this case.

As an initial matter, as reflected in the attached declarations, it appears that significant aspects of petitioner's story regarding his alleged mistreatment are either concocted or otherwise subject to doubt. That story certainly does not warrant the relief that petitioner requests. The

---

[4] Notably, the relief sought by petitioner does not fall within the scope of the rights protected by the Suspension Clause in any event because it relates solely to the conditions of petitioner's confinement. The writ of habeas corpus is not a legally appropriate mechanism to challenge conditions of confinement because such challenges extend the writ far beyond it's historical core of challenging the fact or duration of confinement. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973). While the Supreme Court and D.C. Circuit have not squarely addressed the extent to which prisoners may use habeas to challenge their conditions of confinement, see Blair-Bey v. Quick, 151 F.3d 1036, 1042 (D.C. 1998), cases from other jurisdictions have held that conditions of confinement claims that do not seek accelerated release from custody are not within the scope of the writ of habeas corpus. See, e.g., Cochran v. Buss, 381 F.3d 637, 639 (7th Cir. 2004); Carson v. Johnson, 112 F.3d 818, 820-21 (5th Cir.1997); McIntosh v. United States Parole Commission, 115 F.3d 809, 811-12 (10th Cir. 1997); Badea v. Cox, 931 F.2d 573, 574 (9th Cir. 1991).

Initial Response Force (IRF) Team (sometimes incorrectly referred to as an Immediate Reaction Force, including in the March 9, 2007 Declaration of Ramzi Kassem attached as Exhibit A to petitioner's motion) consists of a team of guards who have been trained to enter confined spaces, such as cells, and secure detainees in a safe manner. See Decl. of Colonel Wade F. Dennis dated March 23, 2007 ("Dennis Decl.") ¶¶ 2-3, attached hereto as Exhibit 1. The IRF Team is intended to be used primarily to conduct Forced Cell Extractions ("FCEs") and specializes in the extraction of a detainee from his cell or other location when he is combative or refusing to comply with orders of the guard staff. Id. ¶ 3. The IRF Team is also used to conduct FCEs when there is a reasonable possibility that a detainee possesses a weapon. Id. The IRF Team is used only after unsuccessful attempts have been made to obtain a detainee's compliance without the use of physical force or in the event of an emergency when time does not permit lesser uses of force. Id. The IRF Team wears protective clothing whenever conducting an FCE. Id.

The physical security of GTMO personnel and detainees is of paramount importance to GTMO's operations. Dennis Decl. ¶ 4. Thus, use of the minimum force necessary for mission accomplishment and force protection is required at all times. Id. The use of the IRF Team, when appropriate, is a proportionate level of force used in response to the level of resistance by a detainee or in response to an emergency. Id. The IRF Team is not used as a method of punishment or as an interrogation tool. Id.

Petitioner was not subjected to a FCE on or around January 14, 2007 to remove him from his cell while he was using the toilet or because he was using a sheet or blanket in his cell to maintain privacy while using the toilet, as he alleges. Dennis Decl. ¶ 5. On that date, however, after petitioner failed to follow the guard's order to leave the outside recreation area and return

to his cell when his recreation time was complete, he was removed from the recreational area by the IRF Team. Id. Petitioner did not offer resistance to the IRF Team and he was not subjected to rough treatment by the IRF Team. Id..

Approximately two hours after the FCE, petitioner complained to a medical corpsman of cuts received during the FCE. Dennis Decl. ¶ 6. The corpsman offered Motrin® and lotion, but petitioner refused to accept them. Id. Approximately 3-1/2 hours later, petitioner requested a health examination. Id. A medical corpsman then entered petitioner's cell and conducted a full examination, checking his vital signs and temperature, his hands, neck, head, and stomach. Id. Although petitioner informed the corpsman that he had pain all over after the FCE, the corpsman found no physical injuries during his examination. Id. Furthermore, detainees have the opportunity to request medical attention at any time by notifying the guards that they are in need of such attention, and petitioner has not made any other complaints to GTMO medical staff in connection with this matter. Id.

Moreover, petitioner's counsel was at Guantanamo and visited with him on January 15, 2007. See Decl. of Commander Patrick M. McCarthy dated March 22, 2007 ¶ 2, attached hereto as Exhibit 2. Counsel did not raise any issue with the Staff Judge Advocate's (SJA) Office regarding petitioner's treatment or physical condition at that time or anytime thereafter. Id. ¶ 5. Petitioner's counsel did contact the SJA's Office on January 17, 2007 to raise other concerns, so he is clearly aware of the process for raising concerns through the SJA's Office to JTF-GTMO regarding petitioner's treatment. Id.

Petitioner's attempt to cast his motion as merely an attempt to enforce the terms of the Amended Protective Order and Procedures for Counsel Access to Detainees at Guantanamo

("Protective Order") is also without merit. Petitioner's motion does not cite any provision of the Protective Order that would entitle him to the discovery he seeks.[5] Moreover, petitioner fails to establish that respondents' violated any provision of the Protective Order that would entitle him to such relief. Petitioner's motion, thus, should be viewed for what it really is: an improper attempt to compel discovery in a habeas case regarding petitioner's conditions of confinement.[6]

A petitioner in a habeas case is not entitled to discovery as a matter of right, but rather must first demonstrate good cause to conduct discovery and obtain court permission. See, e.g.,

---

[5] The Protective Order, inter alia, establishes a regime for the protection, handling, and control of classified and otherwise protected information in light of the unique circumstances of these Guantanamo habeas cases, which involve individuals detained as enemy combatants in an overseas military detention facility during wartime. The Revised Procedures for Counsel Access to Detainees at the U.S. Naval Base in Guantanamo Bay, Cuba, which are annexed to the Protective Order as Exhibit A, in turn, set certain terms, conditions, and limitations for habeas counsel's access to properly represented detainees, including procedures and requirements with respect to information and papers delivered by counsel to detainees, as well as obtained by counsel from detainees. Thus, the Protective Order is analogous to other cases in which an omnibus protective order is entered at the outset of the case governing the use and handling of information that will be exchanged between parties in discovery. The omnibus protective order may set the terms of how information obtained in discovery is to be treated, shared, or stored, for example, but a party's entitlement to any particular requested discovery is settled through court process (e.g., a motion to compel) and not through the protective order. Consequently, an omnibus protective order operates with the assumption that discovery will occur, but typically does not by its own terms obligate the parties to produce any particular information. Similarly, here, the Protective Order certainly operates with the assumption that information may be available to the parties in that it sets the terms and procedures applicable to the handling and treatment of such information, but it does not itself compel respondents to provide petitioner's counsel with discovery on demand.

[6] For these reasons, the Court should reject petitioner's argument that this motion should be referred to Magistrate Judge Alan Kay, pursuant to the November 25, 2005 Order issued by the Calendar and Case Management Committee in many other Guantanamo Bay habeas cases. See, e.g., Al Jayfi v. Bush, 05-CV-2104 (RBW) (dkt. no. 3). The Case Management Committee's Order, which has not been entered in this case, referred to Judge Kay a narrow set of issues involving "interpretation or construction" of the Protective Order as well as "disputes pertaining to logistical issues" associated with counsel access to Guantanamo. Id. No such issues are involved in petitioner's motion.

Rich v. Calderon, 187 F.3d 1064, 1068 (9th Cir. 1999) (explaining that "[a] habeas petitioner does not enjoy the presumptive entitlement to discovery of a traditional civil litigant," and that "discovery is available only in the discretion of the court and for good cause shown."); Al Odah v. United States, 329 F. Supp. 2d 106, 107-08 (D.D.C. 2004) (finding that Guantanamo detainee habeas petitioners must first seek leave of court before conducting discovery and denying leave to conduct discovery). Petitioner has not requested leave of court to take discovery, and the Court should not permit him to evade this requirement by erroneously characterizing his motion as one to enforce the terms of the Protective Order. Further, petitioner's requested discovery can serve no other purpose than to facilitate second-guessing of the judgment of the military officials at Guantanamo with respect to petitioner's conditions of confinement and medical care. Indeed, petitioner candidly admits that the current motion is merely a "first step" towards "subsequent action" in the form of further litigation regarding petitioner's conditions of confinement and medical care. See Pet'r Mot. at 2, 6. Even assuming the Court had jurisdiction over this case, conditions of confinement claims are not cognizable in habeas proceedings, see supra note 4; see also Nelson v. Campbell, 541 U.S. 637, 643 (2004) (conditions of confinement claims fall outside of the core of habeas corpus), and the Court should not countenance discovery related to such claims.[7]

Petitioner's motion also erroneously contends that the discovery sought is necessary to ensure meaningful counsel access. This argument is without merit for several reasons. First, respondents have not denied petitioner access to his counsel. As petitioner's counsel's declaration makes evident, counsel met with petitioner at Guantanamo in January 2007 and,

---

[7] Petitioner's motion concedes that the relief sought is "unrelated to the substantive issues" involved in his habeas petition. See Pet'r Mot. at 5.

moreover, it is respondents' counsel's understanding that petitioner's counsel visited Guantanamo as recently as several weeks ago and met with other represented detainees.[8] Second, petitioner's motion engages in highly speculative musing that the alleged IRF incident will impair petitioner's ability to communicate meaningfully with his counsel. Notably, petitioner's counsel's declaration does not provide any facts to support this claim, nor has counsel put forth any evidence to suggest that his communication with petitioner has been impaired because of the alleged IRF incident, which happened over two months ago.[9] Such speculation cannot provide the basis for the extraordinary discovery sought here, particularly given that the Court lacks jurisdiction over this case. Cf. City of Los Angeles v. Lyons, 461 U.S. 95, 105, 110 (1982) (reliance on allegations regarding past conduct and speculative threat of future harm does not establish an entitlement to forward-looking relief).

Moreover, the fact that the Protective Order has not yet been vacated following the Boumediene decision does not entitle petitioner to discovery. As discussed above, Boumediene leaves no doubt that the Court lacks jurisdiction over this case. Jurisdictional statutes like the MCA "speak to the power of the court rather than to the rights or obligations of the parties." Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994). Therefore, now that the Court of Appeals has held that the MCA withdraws district court jurisdiction over cases such as this one, this Court no longer has any power to order further relief in this case.[10] See Ex parte McCardle,

---

[8] Since that visit, petitioner's counsel has not brought any issues related to counsel access to respondents' counsel's attention.

[9] Indeed, petitioner's counsel claims to be acting on the "specific instructions" of petitioner communicated to counsel *after* the alleged IRF incident. Pet'r Mot. 1.

[10] Petitioner's reliance on Al Joudi v. Bush, 406 F. Supp. 2d 13 (D.D.C. 2005) is similarly misplaced. The order requiring production of medical records in Al Joudi was entered prior to

74 U.S. (7 Wall.) 506, 514 (1869) ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). In any event, the cases cited by petitioner to support the argument that, notwithstanding the Boumediene decision, the Court retains jurisdiction to enforce the terms of the extant Protective Order are distinguishable from the present context. Those cases involved court's authority to enforce protective orders specifically prohibiting public disclosure of confidential discovery information following the conclusion of a case.[11] In contrast to exercising its authority to wind-up previously exercised jurisdiction (such as in the oversight of the disposition of documents obtained through court-sanctioned discovery), what petitioner seeks here is to have the Court impose entirely new discovery obligations on respondents that are not contemplated by the Protective Order and that would be imposed in anticipation of further proceedings on a conditions of confinement claim. Ordering such new relief when the Court lacks jurisdiction is improper. Indeed, even those courts that have exercised residual jurisdiction to enforce protective orders following the termination of a case have recognized that once jurisdiction ceases to exist, the court lacks "power to impose any new, affirmative requirements on the parties." United Nuclear Corp. v. Cranford Ins. Co., 905 F.2d 1424, 1428 (10th Cir. 1990). Consequently, the discovery order that petitioner seeks – whether improperly

---

the passage of the MCA and, in any event, arose in a completely different context involving an ongoing hunger strike, not a single, allegedly abusive IRF incident.

[11] See Gambale v. Deutsche Bank, AG, 377 F.3d 133, 139 (2d Cir. 2004) (concluding that court has power "to dispose of material in its files as it thinks appropriate or to modify or vacate its own protective orders with respect to" confidential documents after conclusion of case); Poliquin v. Garden Way, Inc., 989 F.2d 527, 535 (1st Cir. 1993) ("Where the district court does protect material during discovery, it is common to provide . . . for post-trial protection including the return or destruction of protected material.")

characterized as an interpretation of the Protective Order or otherwise – would improperly assert jurisdiction over this case and move it forward in the face of a contrary Act of Congress and Court of Appeals decision. Petitioner's motion, therefore, should be denied.

## Conclusion

For the foregoing reasons, the Court should deny petitioner's motion.

Dated: March 23, 2007

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DOUGLAS N. LETTER
Terrorism Litigation Counsel

  /s/ Andrew I. Warden

  /s/ Nicholas A. Oldham
JOSEPH H. HUNT (D.C. Bar No. 431134)
VINCENT M. GARVEY (D.C. Bar No. 127191)
JUDRY L. SUBAR (D.C. Bar No. 347518)
TERRY M. HENRY
JAMES J. SCHWARTZ
ROBERT J. KATERBERG
NICHOLAS J. PATTERSON
ANDREW I. WARDEN
EDWARD H. WHITE
NICHOLAS A. OLDHAM
Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC  20530
Tel:  (202) 514-2000
Fax:  (202) 616-8470

Attorneys for Respondents