Cleared for public filing
by the CSO, 5/4/2007

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AMER MOHAMMON, ISN # 939,** **Detainee, Guantánamo Bay Naval** **Station,** *et al.,*[1] | ) ) ) ) ) | |
| *Petitioners,* | ) ) | |
| *v.* | ) ) ) | Civil Action No. 05-CV-2386 (RBW) |
| **GEORGE W. BUSH**, *et al.,* | ) ) ) ) | |
| *Respondents.* | ) ) | |

### JOINT OPPOSITION TO RESPONDENTS' MOTION TO DISMISS, JOINT MOTION FOR A STAY-AND-ABEY ORDER, AND JOINT NOTICE OF INTENT TO FILE PETITIONS UNDER THE DETAINEE TREATMENT ACT

All *Mohammon* Petitioners, through counsel, jointly oppose Respondents' Motion to Dismiss and further respectfully request that this Court, in the interests of justice, stay the dismissal of these habeas actions pending Petitioners' exhaustion of their remedies in the Court of Appeals under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, 119 Stat 2680 (2005) ("DTA"), and hold these actions in abeyance pending Petitioners' exhaustion of those remedies and the resolution in the Supreme Court of a renewed petition for certiorari to review the Court of Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), or the Supreme Court's resolution of the same jurisdictional issue as presented in an

---

[1]     This Opposition, Motion and Notice has been filed on behalf of all Petitioners in the case. Undersigned counsel have consulted with counsel for Respondents, who oppose the motion for a stay-and-abey order.

original habeas petition in *In re Ali*, No. 06-1194. Petitioners further hereby notify this Court of their intent to file petitions under the DTA in the District of Columbia Circuit Court of Appeals.

Respondents' Motion is based on an inaccurate reading of the effect of the Court of Appeals' split decision in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), and the split commentary from the Supreme Court Justices on the denial of certiorari in that case, 127 S. Ct. 1478 (2007). As established by the split *Boumediene* opinions and the important questions deferred pending exhaustion, Petitioners' claims to habeas jurisdiction are substantial, especially given that this Court had jurisdiction at the time of filing under *Rasul v. Bush*, 542 U.S. 466 (2004).

At the time Petitioners filed their petitions, this Court had jurisdiction to review the grounds for detention, as the Supreme Court held in *Rasul v. Bush,* 542 U.S. 466 (2004). Since that time, Respondents have claimed that subsequently-enacted statutes have deprived the District Courts of jurisdiction, a position Petitioners contest based on an array of factual and legal arguments. Respondents now request that all orders, such as orders to provide counsel access to Petitioners, protecting Petitioners in this matter should be vacated, and the underlying petitions should be dismissed, without the opportunity to persuade this Court that particular cases are viable and to make a record for appellate and Supreme Court review.

Respondents' position is untenable for six reasons: (1) *Boumediene v. Bush*, 127 S. Ct. 1478 (2007), is not final nor is it dispositive given the statements of Justices Stevens and Kennedy regarding the need to exhaust remedies before the Court will grant certiorari; (2) the procedure for addressing a pending habeas corpus petition while remedies are exhausted is for the district court to stay the proceedings and hold them in abeyance pending exhaustion, *see Rhines v. Weber*, 544 U.S. 269 (2005); (3) While the Supreme Court rules on the jurisdictional

questions, the lower courts have "authority, from the necessity of the case, to make orders preserv[ing] the existing conditions and the subject of the petition," *United States v. United Mine Workers*, 330 U.S. 258, 290-91 (1947); (4) the authority relied upon by Respondents is limited to frivolous jurisdictional claims, not the epic constitutional issues raised by statutes that purport to divest jurisdiction and disenfranchise an easily identifiable group of Muslim detainees from access to the courts; (5) the stay-and-abey procedure is especially appropriate in the context of the need for orders by the District Courts to "ensure that the office and purposes of the writ are not compromised"; and (6) Petitioners are not bound by the record established to date in *Boumediene*.

1.    **Boumediene Is Not Final Or Binding Because The Denial Of Certiorari Was Based In Part On The Failure To Exhaust Remedies, Which Are Still Available To Those Petitioners And Are Being Exercised By These Petitioners.**

On February 20, 2007, a split panel of the D.C. Circuit Court of Appeals decided combined cases involving non-U.S. nationals detained at Guantánamo, finding that post-*Rasul* statutes deprived courts of jurisdiction. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007). Because the petitioners in that case declined to seek review directly with the Court of Appeals under § 1005(e) of the DTA, that Court found that the "only recourse" was to vacate the District Court decision and dismiss the case for lack of jurisdiction. *Boumediene*, 476 F.3d at 994. The petitioners then petitioned for a writ of certiorari and, on April 2, 2007, the Supreme Court denied certiorari, with both a three-Justice dissent and a statement from two other justices respecting the denial of certiorari. *See Boumediene v. Bush*, 127 S. Ct. 1478 (2007).

The statement of Justices Kennedy and Stevens found that, given "our practice of requiring the exhaustion of available remedies as a precondition to accepting jurisdiction over applications for the writ of habeas corpus," denial of certiorari was appropriate "at this time."

The Justices specifically expressed concern regarding maintenance of the status quo during the litigation: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this court, 'courts of competent jurisdiction,' including this Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" *Id.* (quoting *Padilla v. Hanft*, 547 U.S. 1062 (Kennedy, J., concurring in the denial of certiorari)).

The Respondents' reliance on *Boumediene* is misplaced for several reasons. First, Justices Stevens and Kennedy's explicit adoption of the exhaustion model based on *Ex parte Hawk,* 321 U.S. 114 (1944), supports maintenance of these cases while the DTA remedy is exhausted.  Second, the jurisdictional questions have not been finally resolved because "as always, denial of certiorari does not constitute an expression of any opinion on the merits." *Boumediene*, 127 S. Ct. at 1479 (Stevens and Kennedy, JJ.) (citing *Rasul*, 542 U.S. at 480-81). Third, Justices Stevens and Kennedy's citation to Supreme Court authority regarding the efficacy of the alternative remedies contemplates an underlying habeas corpus case in which the petitioner can present such arguments to the District Court and, if necessary, the Court of Appeals and Supreme Court.

> a.    *Justices Stevens and Kennedy Explicitly And This Court Implicitly Adopted The Exhaustion Of Remedies Model For Habeas Relief.*

*Boumediene* does not control these cases because, unlike the petitioners in that case, Petitioners here are exhausting their remedies under the DTA.  The Court of Appeals opinion expressly predicated its dismissal order on the petitioners' failure to utilize available remedies under the DTA. *Boumediene*, 476 F.3d at 994. Justices Stevens and Kennedy explicitly explained that "[d]espite the obvious importance of the issues," the Court was denying certiorari "at this

time" in light of the Court's practice of requiring exhaustion of available remedies, citing *Ex parte Hawk*.

The citation to *Hawk* is telling.  In that case, the petitioner filed for federal habeas corpus relief under circumstances, as in the present case, in which the effectiveness of state remedies had not been established.  The Supreme Court not only applied the exhaustion rule but held that the adequacy of the available remedy should be decided in the first instance by "the federal district court":

> Where the state courts have considered and adjudicated the merits of his
> contentions, and this Court has either reviewed or declined to review the state
> court's decision, a federal court will not ordinarily reexamine upon writ of habeas
> corpus the questions thus adjudicated.... But where resort to state court remedies
> has failed to afford a full and fair adjudication of the federal contentions raised,
> either because the state affords no remedy... or because in the particular case the
> remedy afforded by state law proves in practice unavailable or seriously
> inadequate..., a federal court should entertain his petition for habeas corpus, else
> he would be remediless.  In such a case he should proceed in the federal district
> court before resorting to this Court by petition for habeas corpus.

321 U.S. at 118 (citations omitted).  The exhaustion model anticipates that the ultimate questions regarding jurisdiction, which may depend in large part on the efficacy of the DTA remedy, will first be considered and decided in the District Court.  The ultimate issues would then be preserved for appellate and Supreme Court review, if necessary.

> b.    *The Supreme Court Has Not Decided Any Questions Regarding The Jurisdiction
> Of This Court Or The Rights That Can Be Enforced Through Habeas Corpus
> Proceedings.*

Respondents' claims regarding *Boumediene* ignore the simple reality that "as always, denial of certiorari does not constitute an expression of any opinion on the merits." 127 S. Ct. at 1479. As the three dissenting Justices opined, and as did Judge Rogers in dissent, the constitutional ramifications of a statute that purports to disenfranchise petitioners in existing

5

habeas corpus petitions are profound and of obvious importance. With the addition of Justices Stevens and Kennedy's statement, the *Mohammon* petitions should be fully considered, after exhaustion, upon each Petitioners' unique facts and legal arguments. The *Boumediene* case does not finally resolve the jurisdictional questions in the *Mohammon* cases.[2]

> c.    *The Jurisdictional Questions Regarding Habeas Corpus Cannot Be Resolved Until the Adequacy of the DTA Remedy Becomes Known.*

Questions regarding the suspension and elimination of the writ of habeas corpus require consideration of whether alternative remedies provide protection coextensive with the Great Writ. *See Swain v. Pressley*, 430 U.S. 372, 381 (1977) ("the substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus."). The *Boumediene* statement on certiorari clearly stated, with citation to *Marino v. Ragen*, 332 U.S. 561 (1947), that, if the DTA remedy is "inadequate," the Court is prepared to address the merits of the habeas corpus claims. *Boumediene*, 127 S. Ct. at 1479 (statement of Stevens & Kennedy, JJ.). Further, the Court stated that, in the interim, the Respondents should take no additional steps "to prejudice the position of petitioners" in seeking review. *Id*. By maintaining the present case in the District Court, the Court is in a position to "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised." *Id.*

The exhaustion model from the *Boumediene* litigation requires that the District Court proceeding remain in place for potential post-exhaustion litigation.

---

[2]    The *Boumediene* case does not even finally decide the questions for the *Boumediene* petitioners, given that the mandate has not issued and the cases are still subject to motions and briefing.

**2.    Because Exhaustion Of Remedies Is Available To The Present Petitioners, The District Courts Have Discretion To Enter Stay-And-Abey Orders.**

Given the need to exhaust remedies under the DTA, the proceedings in this action should be stayed and held in abeyance pending completion of the Petitioners' DTA cases directly in the Court of Appeals. In *Rhines* the Supreme Court explicitly approved the stay-and-abey procedure in the closely analogous context of federal habeas corpus proceedings. 544 U.S. at 278. In *Rhines*, the prisoner filed a mixed habeas petition in federal court, which contained both claims exhausted through the state court system as well as unexhausted claims. Given the major procedural risks entailed by a dismissal order, the Court found that district courts have discretion to stay the federal habeas corpus case and hold it in abeyance for a reasonable time while available state remedies are exhausted.

The *Rhines* court found three preconditions that mandate a stay-and-abey approach. In the absence of intentional dilatory tactics by the petitioner, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss" a petition if the petitioner has good cause for the failure to exhaust and the unexhausted claims are potentially meritorious. *Rhines*, 544 U.S. at 278; *accord Pace v. DiGuglielmo*, 544 U.S. 408, 416-17 (2005). The conditions under which failure to stay-and-abey would constitute an abuse of discretion—no deliberate delay, good cause, and potentially meritorious claims—are abundantly present in this case. Petitioners have not previously filed DTA petitions in the D.C. Circuit Court of Appeals for good reason, believing the DTA to be unconstitutional. Unlike the death penalty cases that caused the Supreme Court concern in *Rhines*, every day of delay prejudices Petitioners.[3]

---

[3]    In *Rhines*, three Justices concurred, stating that stay-and-abey is required in the absence of proof of "intentionally dilatory litigation tactics." 544 U.S. at 279 (Souter, J., concurring, joined by Ginsburg and Breyer, JJ.).

There is also good cause for the failure to exhaust until now: the potential remedy did not exist until after the habeas corpus petitions in this action were filed and did not purport to provide the habeas relief to which Petitioners were entitled at the time this habeas action was filed. In *Pace*, the Supreme Court noted that potential confusion regarding state remedies required equitable protections. 544 U.S. at 416. Guantánamo detainees face even greater complexities. The questions left open in the Supreme Court's decision in *Rasul*, which established a right to proceed under 28 U.S.C. § 2241 at the time Petitioners filed this action and the subsequent DTA and Military Commissions Act of 2006, Pub. L. No. 109-366, 120 Stat. 2600 (Oct. 17, 2006) ("MCA"), created substantial uncertainties. Petitioners did not even have the potential DTA remedy prior to October 2006, because, as the Supreme Court held, the DTA did not apply retrospectively to habeas corpus petitions filed prior to the effective date of the statute. *Hamdan v. Rumsfeld*, 126 S.Ct. 2749, 2762-69 (2006).

Respondents attempt to distinguish *Rhines* fails. The exhaustion required by *Hawk* operates as does the exhaustion required by the statute in *Rhines*. Further, the procedural obstacles that dismissal would create under 28 U.S.C. § 2254 are no different—although perhaps more profound—than those facing detainees in Guantánamo, cut off from contact with their lawyers. *Rhines* is controlling authority regarding stay-and-abey procedures while remedies are being exhausted.

3.      **The Court Has Authority To Preserve The Status Quo While Jurisdictional Questions Are Litigated.**

In the statement accompanying the *Boumediene* order denying certiorari, Justices Stevens and Kennedy stated: "Were the Government to take additional steps to prejudice the position of petitioners in seeking review in this Court, 'courts of competent jurisdiction,' including this

Court, 'should act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised.'" 127 S. Ct. at 1479 (Justices Stevens and Kennedy, statement respecting the denial of certiorari). The Justices' language echoes the long-established principle that, even if there is no jurisdiction, that ultimate question is for the Supreme Court, and that while a question is under consideration, the courts have "authority from the necessity of the case to make orders to preserve the existing conditions and subject of the petition." *United Mine Workers*, 330 U.S. at 291 (quoting *United States v. Shipp*, 203 U.S. 563, 573 (1906) (Holmes, J.)). The Court of Appeals has not hesitated to apply these principles:

> Of course, whether or not there was jurisdiction to decide the merits, until the question of jurisdiction is determined, there was "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition . . . ." . . . Clearly there was "power to preserve existing conditions while . . . determining (the) authority to grant injunctive relief."

*In re President and Directors of Georgetown College*, 331 F.2d 1000, 1005 (D.C. Cir. 1964) (quoting *United Mine Workers*). This Court should carefully protect the status quo by maintaining the orders entered to date to assure Petitioners are not prejudiced in their ability to litigate their DTA actions, to preserve potential remedies before this Court, and to protect Petitioners' safety and lives.

The denial of certiorari in *Boumediene* leaves unanswered predicate questions necessary to deciding issues in each Petitioner's case, including the following: Does the DTA provide a forum for resolving issues regarding unlawful detention coextensive with traditional habeas corpus? If not, has the writ been unconstitutionally suspended or eliminated? Are the MCA and the DTA inapplicable given Petitioners' jurisdictional arguments regarding the absence of initial military jurisdiction, which would foreclose a Combatant Status Review Tribunal from constituting a competent tribunal to render any decision regarding Petitioners? Is the government

taking "additional steps to prejudice the position of petitioners in seeking review of this Court" and, if so, should this Court "act promptly to ensure that the office and purposes of the writ of habeas corpus are not compromised"? (*See Boumediene,* 127 S. Ct. at 1479).

The motion to dismiss should be denied because the Court has insufficient information to answer a number of questions that the DTA proceedings will answer. Further, if this Court eventually reaches the jurisdictional and constitutional questions, and rules adversely to Petitioners, there must be an adequate record for the Court of Appeals appellate review and, if necessary, for the Supreme Court to decide whether to grant a writ of certiorari, all of which requires that these actions remain in place until after Petitioners have exhausted their DTA procedures. During that process, Respondents should be foreclosed from prejudicing Petitioners' ability to litigate these questions in this Court and the Court of Appeals.[4]

    **4.**    **Respondents' Main Case On Jurisdiction Only Applies To Frivolous Claims, Not The Substantial Issues Addressed In The Present Case.**

Respondents place primary reliance on *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998), for the unremarkable proposition that jurisdiction is a threshold question. Respondents ignore the preceding language in *Steel Co.* that supports this Court's jurisdiction to

---

[4]    Moreover, the Court of Appeal's *Boumediene* decision does not impair the power of this court to preserve the status quo. The government erroneously cites to *Ayuda v. Thornburg*, 919 F.2d 153 (D.C. Cir. 1990), for the proposition that a Court of Appeals opinion immediately becomes the law of the circuit, depriving the courts of the power to stay and hold in abeyance. In fact, the majority ruled in *Ayuda* that a stay was appropriate. The government cited a concurring opinion only, and, in that opinion, the concurring Judge ultimately agreed with the majority, which rejected the proposition that the court lacked power to enter a stay. *See Ayuda*, 919 F.2d at 153. The other concurring and dissenting opinion correctly articulated the applicable law that, until the Supreme Court speaks on jurisdiction, the District Court has the power to determine its own jurisdiction including "minimally, the power to maintain the status quo." *Ayuda*, 919 F.3d at 155_56 (Wald, C.J., concurring and dissenting).

maintain the action as long as a legitimate controversy exists that has not been resolved on the merits by the Supreme Court.

The starting point of *Steel Co.* is that "the district court has jurisdiction if 'the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another.'...unless the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous.'" 523 U.S. at 90 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, 685 (1946)).  Only when the Supreme Court has made an adverse ruling on the merits is dismissal for want of subject matter jurisdiction appropriate: "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, *foreclosed by prior decisions of this Court*, or otherwise completely devoid of merit as not to involve a federal controversy." *Id*. at 90 (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974)) (emphasis added).  The *Boumediene* denial of certiorari is emphatically not a ruling on the merits.

The jurisdictional issues are obviously not frivolous. The courts have been split on the constitutional issues at each level of the litigation: the District Courts split, leading to the two-to-one *Boumediene* opinion, resulting in the three-way fracture in the *Boumediene* denial of certiorari.  Seldom has this country faced weightier issues about the meaning of our Constitution. The main case upon which Respondents rely establishes that the Motion to Dismiss should be denied while remedies are exhausted.

Ironically, Respondents' own Motion recognizes the Court's continuing jurisdiction while the merits are exhausted, litigated, and appealed.  In footnote 15, Respondents point out

that the protective order should survive dismissal, citing to the case upon which Petitioners rely –

*United States v. United Mine Workers*, 330 U.S. 258 (1947) (Motion at 8-9 n.15). As argued

*supra* at 9, *United Mine Workers* establishes that the District Court has the authority throughout

the litigation to maintain the status quo by enforcing the protective order and otherwise ensuring

that "the office and purposes of the writ of habeas corpus are not compromised."

This Court retains the power to decide its own jurisdiction in the first instance. *See*

*Kircher*, 126 S. Ct. at 2155; *United States v. Ruiz*, 536 U.S. 622, 628 (2002).  While the efficacy

of the DTA remedies are determined, it is premature for this Court to determine the dispositive

questions.  Meanwhile, this Court should follow the stay-and-abey norm established in *Rhines*;

then, if the case is not mooted by the DTA proceedings, it should provide Petitioners the

opportunity to make their records, present their claims, and receive decisions based on the facts

and law of their individual cases.

**5.    The Protective and other Procedural Orders Are Necessary To Assure That "The Office And Purpose Of The Writ Of Habeas Corpus Are Not Compromised."**

The dismissal of the District Court proceedings, with its protective orders and ruling on

the filter team, would constitute exactly the type of prejudice to Petitioners' ability to litigate that

Justices Kennedy and Stevens instructed that the courts should guard against. This Court

properly addressed issues preliminary to ultimate disposition throughout this litigation. This

Court's orders on access to counsel and the filter team should remain intact pending exhaustion

of DTA remedies.

The government has complained that the protective order it agreed to is onerous, and now

suggests it should be renegotiated and replaced in the Court of Appeals**.** (Motion at 9-11)

However, the District Court has been supervising the protective order for almost two years.  If

difficulties arose beyond the powers of the parties to work out, the protective order included powerful mechanisms for Respondents to exhaust, up to and including contempt and criminal prosecution.  Respondents' failure to exhaust the available remedies should foreclose action based on Respondents' complaints.  Respondents' desire to substitute protective orders is not a reason to dismiss these actions instead of following the Supreme Court approved stay-and-abey procedure.

The government argues that the stay-and-abey relief requested here "contemplates that various orders of the Court, including the protective order imposing a counsel access regime and any orders requiring advance notice of any transfer of detainees from Guantanamo, would remain extant and enforceable, effectively imposing Court-ordered obligations where the Court has no jurisdiction to act."  (Motion at 7-8 (footnotes omitted).)  The government disputes that possibility, contending that, as a result of the District of Columbia Circuit's decision in *Boumediene*, this Court must promptly dismiss these cases and that "prompt dismissal of these cases … would bring this Court's counsel access regime to an end." *Id*. at 10.

Contrary to the government's contention, dismissal of this case would not result automatically in the dissolution of the protective and injunctive orders entered by the Court.  As the Court recognized in *Adem v. Bush*, 425 F. Supp. 2d 7, 20 (D.D.C. 2006), the "Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba,"[5] first entered in 2004 and like all protective orders directed to future events, survives dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court.  *See Gambale v. Deutsche Bank AG*, 377 F.3d 133, 140-41 (2d Cir. 2004); *Poliquin v. Garden Way, Inc*., 989 F.2d 527, 535 (1st Cir. 1993); *United Nuclear*

---

[5]        *See In re Guantanamo Detainee Cases*, 344 F. Supp. 2d 174 (D.D.C. 2004).

*Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990); *Public Citizen v. Liggett Group*, 858 F.2d 775, 780-82 (1st Cir. 1988); *Marshall v. Planz*, 347 F. Supp. 2d, 1198, 1201 (M.D. Ala. 2004); *Tucker v. Ohtsu Tire & Rubber Co., Ltd.*, 191 F.R.D. 495, 499 (D. Md. 2000). Indeed, this Court expressly "retain[ed] continuing jurisdiction to enforce or modify the terms of [the Amended Protective] Order."[6]

Similarly, injunctive decrees directed to future events, such as the orders entered by the Court requiring preservation of government records and counsel papers, survive dismissal of this case and may be modified, enforced, or dissolved only by separate order of the Court.  *See United States v. Swift & Co.*, 286 U.S. 106, 114 (1932); *Cobell v. Norton*, 392 F.3d 461, 467 (D.C. Cir. 2004); *Gilmore v. People of the State of  California*, 220 F. 3d 987, 1007 (9th Cir. 2000); *Dahlen v. Kramer Machine & Engineering Products Co.*, 303 F.2d 293, 295 (10th Cir. 1961); *State Police for Automatic Retirement v. Difava*, 164 F. Supp. 2d 141, 156 (D. Mass. 2001);  *EEOC v. Local 40, Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers*, 855 F. Supp. 488, 491-92 (S.D.N.Y. 1994).

Although the government is aware of at least some of these precedents, it mistakenly interprets them to mean that only "certain requirements of this Court's Protective Order, *i.e.*, requirements pertaining to the handling of classified and 'protected' information appropriately, retain vitality beyond the required dismissal of these cases."  (Motion at 8-9 n.15.)  In other words, the government contends that only those portions of the Court's protective and injunctive orders that it likes, because they constrain the detainees' counsel, survive dismissal, but those portions it does not like, because they constrain the government, do not.  The government cites no authority, and Petitioners are aware of none, that supports such cherry-picking by the

---

[6]      344 F. Supp. 2d at 176.

government.  *Cf. SRS Technologies, Inc. v. Physitron, Inc.*, 216 F.R.D. 525, 526 (N.D. Ala. 2003) (rejecting plaintiff's assertion that, under protective order in effect after settlement of underlying lawsuit, plaintiff "should now be allowed virtually unrestricted access to and use of confidential documents produced by the Defendants, but that the protective order should remain in full force to protect Plaintiff's documents").  The cases cited above show that the protective and injunctive orders entered by the Court survive dismissal in their entirety, unless and until they are modified or dissolved by separate order of the Court.

Moreover, equitable principles dictate that the Court may not dissolve the protective and injunctive orders entered in this case without first holding an evidentiary hearing at which the government and Petitioner are heard.  *See Hodge v. Dep't of Housing and Urban Development,* 862 F.2d 859, 861 (11th Cir. 1989).  The government would bear the burden of why the orders, or portions of them, should be dissolved.  *See SRS Technologies Inc.*, 216 F.R.D. at 529-31; *Lee Shuknecht & Sons v. P. Vigneri & Sons, Inc.*, 927 F. Supp. 610, 614-616 (W.D.N.Y. 1996); *Grundberg v. Upjohn Co.*, 140 F.R.D. 459 (D. Utah 1991); *SEC v. Samuel H. Sloan & Co.*, Nos. 71 Civ. 2695 (RJW), 74 Civ. 5729 (RJW), 1991 WL 173730 (S.D.N.Y. Aug. 29, 1991).  This is so even where, as here, intervening legislation has affected the Court's jurisdiction.  *See Miller v. French*, 530 U.S. 327, 345-348 (2000). The government has not moved to dissolve the protective and injunctive orders entered in this case, and the Court has not held an evidentiary hearing on this issue.  Therefore, to the extent the government seeks by its motion to dismiss to dissolve the protective and injunctive orders, the motion should be denied as premature.

Access between Petitioners and counsel is critical in all these cases. The protective order should remain intact, especially given that the Court of Appeals should have the option of continuing to administer the DTA litigation under the auspices of this Court's orders.

6. **Boumediene Does Not Establish The Record To Which These Petitioners Should Be Bound Because They Are Exhausting Available Remedies, And Other Legal Theories May Be Available On The Facts Of Their Cases.**

Respondents' request for dismissal of these cases fails to recognize the unique factual settings and resulting legal issues faced by Petitioners. The *Boumediene* cases involve certain allegations and legal theories; those cases do not control all the potential issues to be raised by Petitioners in this action. See *Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("Constitutional rights are not defined by inferences from opinions which did not address the question at issue."); *see also United States v. Booker*, 543 U.S. 220, 239-242 (2005) (limiting stare decisis effect of cases where constitutional issue was not raised or resolved). The most basic distinction from *Boumediene* is that the scope and efficacy of the DTA remedy is being tested and will provide this Court necessary information that will only be known once the exhaustion of remedies is completed. Until then, the factual predicate for evaluation of the legal issues is lacking, rendering the cases unripe for the fully developed review anticipated by Justices Kennedy and Stevens in the *Boumediene* statement accompanying the denial of certiorari.

The *Boumediene* cases did not resolve all potential legal issues regarding the purported statutory disenfranchisement of the jurisdiction that existed at the filing of the habeas petitions under *Rasul*. The post-exhaustion litigation, if not mooted by relief granted under the DTA, should involve legal approaches that the *Boumediene* majority did not address and resolve. If *Rasul* means anything, the constitutional validity of the DTA must be determined in light of the post-DTA litigation about to ensue and address these Petitioners' unique claims, including

16

challenges under the bill of attainder, equal protection, due process, habeas corpus, and ex post facto clauses of the Constitution.

## CONCLUSION

Petitioners' habeas corpus rights are far from finally decided: the Supreme Court has yet to speak on the merits as to the effect of the DTA and MCA, and Petitioners have not had their individual facts and legal arguments heard. Under governing Supreme Court precedent, the status quo should be preserved while the cases are litigated: under *United Mine Workers*, the Court has "authority from the necessity of the case to make orders to preserve the existing conditions and the subject of the petition," and under *Rhines*, the mechanism for permitting exhaustion of remedies without prejudice to habeas corpus rights is to stay this action and hold it in abeyance for a reasonable time for the DTA actions to be litigated.

For the foregoing reasons, this Court should deny Respondents' motion to dismiss, pending Petitioners' exhaustion of their DTA remedies in the Court of Appeals, and hold this action in abeyance pending Petitioners' exhaustion of those remedies and resolution by the Supreme Court of the jurisdictional issue in *Ali* of whether the MCA constitutionally stripped Guantanamo prisoners of their habeas rights, or resolution by the Supreme Court of a petition seeking review of *Boumediene*.

Dated: May 3, 2007                  Respectfully submitted,

/s/ Shayana Kadidal

Shayana Kadidal [D.C. Bar No. 454248]

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6438
Fax: (212) 614-6499

*on behalf of all Petitioners*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| **AMER MOHAMMON, ISN # 939,** | ) | |
| **Detainee, Guantánamo Bay Naval** | ) | |
| **Station,** *et al.* | ) | |
| | ) | |
| *Petitioners,* | ) | |
| | ) | |
| *v.* | ) | Civil Action No. 05-CV-2386 (RBW) |
| | ) | |
| | ) | |
| | ) | |
| **GEORGE W. BUSH**, *et al.,* | ) | |
| | ) | |
| *Respondents.* | ) | |

---

**[PROPOSED] ORDER**

The Court having considered Petitioners' Motion for Stay-and-Abey Order,

IT IS HEREBY ORDERED that the Motion is granted; it is further

ORDERED that this action shall be stayed and held in abeyance pending Petitioners' exhaustion

of those remedies, and the filing in the Supreme Court of a petition to review the Court of

Appeals' jurisdictional holding in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007)

("*Boumediene I*") or the Supreme Court's resolution on the merits of the same jurisdictional

issue as presented in a pending original habeas petition in *In re Ali*, No. 06-1194.

Dated: _____                    _____
                                           Reggie B. Walton
                                           United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2007, I filed and served the foregoing Joint Opposition to Respondents' Motion to Dismiss, Joint Motion for a Stay-and-Abey Order, and Joint Notice of Intent to File Petitions under the Detainee Treatment Act, together with the Proposed Order, by causing an original (bearing ECF signature only) and two copies to be delivered to the Privilege Review Team, with one such copy to be forwarded to the following:

> Peter D. Keisler, Assistant Attorney General
> Douglas N. Letter, Terrorism Litigation Counsel
> Civil Division, Room 7268
> U.S. Department of Justice
> 950 Pennsylvania Ave., N.W.
> Washington, D.C.  20530-0001

> _____/s/_____
> Shayana Kadidal