IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AMER MOHAMMON, ISN #939,** *et al.,* | ) | |
| | ) | |
| *Petitioners,* | ) | |
| | ) | **Civ. No. 05-CV-2386 (RBW)** |
| *v.* | ) | |
| | ) | |
| **GEORGE W. BUSH,** *et al.,* | ) | |
| | ) | |
| *Respondents.* | ) | |
| | ) | |

## JOINT NOTICE OF RECENT ACTIVITY IN GUANTÁNAMO CASES

Petitioners jointly submit this notice of recent activity in Guantánamo cases in further support of their pending stay-and-abey motions and their oppositions to the government's pending motions to dismiss. Most notably, the D.C. Circuit issued an order in *Al Ginco v. Bush*, D.C. Cir. No. 06-5191, on June 7, 2007, making clear that this Court has jurisdiction to grant Petitioners' stay-and-abey motions and may deny the government's motions to dismiss. Recent activity in other Guantánamo cases offers additional support for this disposition of the motions.

First, a petition is pending in the D.C. Circuit seeking initial *en banc* hearing in *Hamdan v. Gates*. The petition asks the D.C. Circuit to overrule its decision in *Boumediene*. The D.C. Circuit considers the petition sufficiently substantial that it has ordered the government to file a response. Second, petitions are pending in the Supreme Court seeking rehearing of the Court's denial of certiorari in *Boumediene v. Bush*. The Supreme Court considers the rehearing petitions

sufficiently substantial that it invited a response from the Solicitor General. Third, the D.C. Circuit is considering in *Bismullah v. Gates* and *Parhat v. Gates* the scope of judicial review of Combatant Status Review Tribunal (CSRT) decisions and protective order to govern cases brought in the D.C. Circuit under the Detainee Treatment Act of 2005 (DTA), Pub. L. No. 109-148, tit. X, 119 Stat. 2739 (2005).

### A.    Al Ginco

In its *Al Ginco* order, issued on June 7, 2007, the D.C. Circuit (1) denied the government's motion to vacate this Court's orders requiring the government to provide the petitioners' counsel with advance notice of any intended removal of the petitioners from Guantánamo, and (2) denied the government's motion to dismiss the habeas petitions. The Court stated:

> The district court may consider in the first instance respondents' motion to dismiss and petitioners' motions to stay and hold in abeyance, which are currently pending before the district court in the actions underlying these consolidated appeals.

(Ex. 1.)  The D.C. Circuit's order makes clear that this Court retains jurisdiction over this case unless and until this Court dismisses this case, and that this Court need not dismiss this case but may grant Petitioners' stay and abey motion.

### B.    Boumediene, Al Odah, and Paracha

In *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), the D.C. Circuit ruled that the Military Commissions Act of 2006 (MCA), Pub. L. No. 109-366, 120 Stat. 2600 (2006), eliminated the jurisdiction of the federal courts to consider habeas actions by Guantánamo detainees, and that the Guantánamo detainees, as aliens outside the sovereign territory of the United States, lack constitutional rights and therefore lack standing to challenge the elimination of jurisdiction under the Suspension Clause. (*Boumediene* is consolidated with *Al Odah v. United States.*)

On March 5, 2007, the *Boumediene* and *Al Odah* petitioners filed certiorari petitions in the Supreme Court seeking review of the D.C. Circuit's judgment. S. Ct. Nos. 06-1195 & 06-1196. On April 2, 2007, the Supreme Court denied the petitions. 127 S.Ct. 1478 (2007). On April 27, 2007, the petitioners filed rehearing petitions and motions to defer consideration of those petitions pending the petitioners' exhaustion of their remedies under the DTA. On June 4, 2007, the Supreme Court invited the Solicitor General to file a response to the petitioners' motions, a step that required the support of at least five Justices. The Solicitor General filed his response on June 19, 2007. The petitioners filed replies on June 22, 2007. The *Al Odah* petitioners appended to their reply an affidavit of a military intelligence officer who was involved in the CSRT process calling sharply into question the fairness of that process. (Ex. 2.)

On April 11, 2007, the *Boumediene* and *Al Odah* petitioners asked the D.C. Circuit to hold the cases in abeyance and stay the mandate pending the Supreme Court's disposition of their certiorari petitions. On June 20, 2007, the D.C. Circuit denied the motions to hold the case in abeyance and stay the mandate. *Boumediene v. Bush*, D.C. Cir. Nos. 05-5062 & 05-5063; *Al Odah v. United States*, D.C. Cir. No. 05-5064. (Ex. 3.) Under Fed. R. App. P. 41(b), the mandate is set to issue on June 27, 2007.

On April 9, 2007, in another Guantánamo appeal, the D.C. Circuit, citing *Boumediene*, ordered this Court to dismiss Paracha's habeas petition. *Paracha v. Bush*, D.C. Cir. No. 05-5194. On May 24, 2007, Paracha moved to stay the mandate pending his filing of a certiorari petition in the Supreme Court. On June 20, 2007, the D.C. Circuit denied the petitioners' motions to hold the case in abeyance and to stay issuance of the mandate. (Ex. 4.) Paracha's certiorari petition will be filed by July 9, 2007.

### C.    Hamdan

On December 13, 2006, this Court dismissed Hamdan's habeas petition challenging the jurisdiction-stripping and military commission provisions of the MCA. *Hamdan v. Rumsfeld*, 464 F. Supp. 2d 9 (D.D.C. 2006). On February 27, 2007, Hamdan filed a petition for certiorari before judgment in the Supreme Court. *Hamdan v. Gates*, S. Ct. No. 06-1169. On April 30, 2007, the Supreme Court denied the petition. On June 8, 2007, Hamdan moved in the D.C. Circuit for initial *en banc* hearing. On June 13, 2007, the D.C. Circuit *sua sponte* ordered the government to file a response to the petition. *Hamdan v. Gates*, D.C. Cir. No. 07-5042. The government's response is due by June 28, 2007. (Ex. 5.)

### D.    Ali

Also pending in the Supreme Court is an original habeas petition that directly challenges the MCA jurisdictional holding of the Court of Appeals. *In re Ali*, S. Ct. No. 06-1194. The Supreme Court considers the *Ali* petition sufficiently serious that it invited the Solicitor General to respond. In response, the Solicitor General moved to dismiss Ali's petition. On June 25, 2007, the Court granted Ali's motion to file under seal a response to the government's motion.

### E.    Bismullah and Parhat

On May 15, 2007, the D.C. Circuit heard argument in *Bismullah v. Gates*, D.C. Cir. No. 06-1197, and *Parhat v. Gates*, D.C. Cir. No. 06-1397, the first cases brought under the Detainee Treatment Act of 2005. Among other things, the D.C. Circuit will consider the scope of judicial review of CSRT decisions under the DTA and the form of the protective order to govern DTA actions. The D.C. Circuit's decision may be relevant to this Court's consideration of any applications by the government to vacate or modify the protective order that governs these habeas cases.

## CONCLUSION

For the foregoing reasons, and the reasons earlier set forth by Petitioners, this Court should grant Petitioners' stay-and-abey motions and deny the government's motions to dismiss.

Respectfully submitted,
Counsel for Petitioner

_____/s/_____
Martha Rayner (NY-MR-1423)
Ramzi Kassem (RK-NY-3567)
LINCOLN SQUARE LEGAL SERVICES
Fordham University School of Law
33 W. 60th Street, 3rd Floor
New York, NY 10023
Tel: (212) 636-6934
Fax: (212) 636-6923


_____/s/_____
Shayana Kadidal (DC Bar No. 454248)
Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
Tel:  (212) 614-6439
Fax: (212) 614-6499


Dated: New York, New York
        June 27, 2007

# EXHIBIT 1

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**No. 06-5191**                                **September Term, 2006**

05cv001490
05cv00882
05cv00885
05cv00886
05cv00888
05cv00889
05cv00892
05cv01234
05cv01238
05cv01310
05cv01607
05cv01894
05cv02367
05cv02369
05cv02370
05cv02384
05cv02398
05cv02452
05cv02458
05cv02479
06cv00618

**Filed On: June 7, 2007** [1045791]

Abdulrahim Abdul Razak Al Ginco,
      Appellant

     v.

George W. Bush, President of the United States, et
al.,
      Appellees

_____

Consolidated with 06-5196, 06-5197, 06-5198,
06-5205, 06-5235, 06-5236, 06-5265, 06-5284,
06-5285, 06-5286, 06-5287, 06-5320, 06-5325,
06-5326, 06-5328, 06-5329, 06-5330, 06-5384,
06-5385, 06-5420, 07-5046

**BEFORE:**    Randolph, Garland, and Griffith, Circuit Judges

## O R D E R

Upon consideration of the motions to vacate and dismiss in Nos. 06-5191, et al.,
and the notice of additional authority; the motion to vacate and dismiss in Nos. 06-5265
and 07-5046; the consolidated opposition to the motions, the supplements thereto, and
notices of district court filings; and the reply; the motion to sever and to set a separate
briefing schedule in No. 06-5191, the response thereto, and the reply; the motion to

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 06-5191**                                          **September Term, 2006**

sever in No. 06-5384, the response thereto, and the reply; and the motion to sever and to set a separate briefing schedule in No. 06-5385, the response thereto, and the reply, it is

**ORDERED** that the motions to sever and to set a separate briefing schedule in Nos. 06-5191 and 06-5385 be denied. It is

**FURTHER ORDERED** that the government's motions to dismiss its own appeals and the appeal of Abdulrahim Abdul Razak Al Ginco be granted and Nos. 06-5191, et al., be dismissed for lack of subject matter jurisdiction. <u>See Boumediene v. Bush</u>, 476 F.3d 981 (D.C. Cir. 2007). It is

**FURTHER ORDERED** that the motion to sever No. 06-5384 be dismissed as moot. It is

**FURTHER ORDERED** that the government's motions to vacate the notice orders and to dismiss the habeas petitions be denied without prejudice. The district court may consider in the first instance respondents' motion to dismiss and petitioners' motions to stay and hold in abeyance, which are currently pending before the district court in the actions underlying these consolidated appeals.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. <u>See</u> Fed. R. App. P. 41(b); D.C. Cir. Rule 41.

**<u>Per Curiam</u>**

# EXHIBIT 2

i

**Appendix**

## DECLARATION OF STEPHEN ABRAHAM
Lieutenant Colonel, United States Army Reserve

I, Stephen Abraham, hereby declare as follows:

1.      I am a lieutenant colonel in the United States Army Reserve, having been commissioned in 1981 as an officer in Intelligence Corps. I have served as an intelligence officer from 1982 to the present during periods of both reserve and active duty, including mobilization in 1990 ("Operation Desert Storm") and twice again following 9-11. In my civilian occupation, I am an attorney with the law firm Fink & Abraham LLP in Newport Beach, California.

2.      This declaration responds to certain statements in the Declaration of Rear Admiral (Retired) James M. McGarrah ("McGarrah Dec."), filed in *Bismullah v. Gates*, No. 06-1197 (D.C. Cir.). This declaration is limited to unclassified matters specifically related to the procedures employed by Office for the Administrative Review of the Detention of Enemy Combatants ("OARDEC") and the Combatant Status Review Tribunals ("CSRTs") rather than to any specific information gathered or used in a particular case, except as noted herein. The contents of this declaration are based solely on my personal observations and experiences as a member of OARDEC. Nothing in this declaration is intended to reflect or represent the official opinions of the Department of Defense or the Department of the Army.

3.      From September 11, 2004 to March 9, 2005, I was on active duty and assigned to OARDEC. Rear Admiral McGarrah served as the Director of OARDEC during the entirety of my assignment.

4.      While assigned to OARDEC, in addition to other duties, I worked as an agency liaison, responsible for coordinating with government agencies, including certain Department of Defense ("DoD") and non-DoD organizations, to gather or

ii

validate information relating to detainees for use in CSRTs. I also served as a member of a CSRT, and had the opportunity to observe and participate in the operation of the CSRT process.

5.    As stated in the McGarrah Dec., the information comprising the Government Information and the Government Evidence was not compiled personally by the CSRT Recorder, but by other individuals in OARDEC. The vast majority of the personnel assigned to OARDEC were reserve officers from the different branches of service (Army, Navy, Air Force, Marines) of varying grades and levels of general military experience. Few had any experience or training in the legal or intelligence fields.

6.    The Recorders of the tribunals were typically relatively junior officers with little training or experience in matters relating to the collection, processing, analyzing, and/or dissemination of intelligence material. In no instances known to me did any of the Recorders have any significant personal experience in the field of military intelligence. Similarly, I was unaware of any Recorder having any significant or relevant experience dealing with the agencies providing information to be used as a part of the CSRT process.

7.    The Recorders exercised little control over the process of accumulating information to be presented to the CSRT board members. Rather, the information was typically aggregated by individuals identified as case writers who, in most instances, had the same limited degree of knowledge and experience relating to the intelligence community and intelligence products. The case writers, and not the Recorders, were primarily responsible for accumulating documents, including assembling documents to be used in the drafting of an unclassified summary of the factual basis for the detainee's designation as an enemy combatant.

8.    The information used to prepare the files to be used by the Recorders frequently consisted of finished intelligence

iii

products of a generalized nature - often outdated, often "ge-
neric," rarely specifically relating to the individual subjects
of the CSRTs or to the circumstances related to those indi-
viduals' status.

9.      Beyond "generic" information, the case writer would
frequently rely upon information contained within the Joint
Detainee Information Management System ("JDIMS"). The
subset of that system available to the case writers was limited
in terms of the scope of information, typically excluding in-
formation that was characterized as highly sensitive law en-
forcement information, highly classified information, or in-
formation not voluntarily released by the originating agency.
In that regard, JDIMS did not constitute a complete reposi-
tory, although this limitation was frequently not understood
by individuals with access to or who relied upon the system
as a source of information. Other databases available to the
case writer were similarly deficient. The case writers and
Recorders did not have access to numerous information
sources generally available within the intelligence commu-
nity.

10.     As one of only a few intelligence-trained and suitably
cleared officers, I served as a liaison while assigned to
OARDEC, acting as a go-between for OARDEC and various
intelligence organizations. In that capacity, I was tasked to
review and/or obtain information relating to individual sub-
jects of the CSRTs. More specifically, I was asked to con-
firm and represent in a statement to be relied upon by the
CSRT board members that the organizations did not possess
"exculpatory information" relating to the subject of the
CSRT.

11.     During my trips to the participating organizations, I
was allowed only limited access to information, typically
prescreened and filtered. I was not permitted to see any in-
formation other than that specifically prepared in advance of
my visit. I was not permitted to request that further searches

iv

be performed. I was given no assurances that the information provided for my examination represented a complete compilation of information or that any summary of information constituted an accurate distillation of the body of available information relating to the subject.

12.    I was specifically told on a number of occasions that the information provided to me was all that I would be shown, but I was never told that the information that was provided constituted all available information. On those occasions when I asked that a representative of the organization provide a written statement that there was no exculpatory evidence, the requests were summarily denied.

13.    At one point, following a review of information, I asked the Office of General Counsel of the intelligence organization that I was visiting for a statement that no exculpatory information had been withheld. I explained that I was tasked to review all available materials and to reach a conclusion regarding the non-existence of exculpatory information, and that I could not do so without knowing that I had seen all information.

14.    The request was denied, coupled with a refusal even to acknowledge whether there existed additional information that I was not permitted to review. In short, based upon the selective review that I was permitted, I was left to "infer" from the absence of exculpatory information in the materials I was allowed to review that no such information existed in materials I was not allowed to review.

15.    Following that exchange, I communicated to Rear Admiral McGarrah and the OARDEC Deputy Director the fundamental limitations imposed upon my review of the organization's files and my inability to state conclusively that no exculpatory information existed relating to the CSRT subjects. It was not possible for me to certify or validate the non-existence of exculpatory evidence as related to any individual undergoing the CSRT process.

v

16.    The content of intelligence products, including databases, made available to case writers, Recorders, or liaison officers, was often left entirely to the discretion of the organizations providing the information. What information was not included in the bodies of intelligence products was typically unknown to the case writers and Recorders, as was the basis for limiting the information. In other words, the person preparing materials for use by the CSRT board members did not know whether they had examined all available information or even why they possessed some pieces of information but not others.

17.    Although OARDEC personnel often received large amounts of information, they often had no context for determining whether the information was relevant or probative and no basis for determining what additional information would be necessary to establish a basis for determining the reasonableness of any matter to be offered to the CSRT board members. Often, information that was gathered was discarded by the case writer or the Recorder because it was considered to be ambiguous, confusing, or poorly written. Such a determination was frequently the result of the case writer or Recorder's lack of training or experience with the types of information provided. In my observation, the case writer or Recorder, without proper experience or a basis for giving context to information, often rejected some information arbitrarily while accepting other information without any articulable rationale.

18.    The case writer's summaries were reviewed for quality assurance, a process that principally focused on format and grammar. The quality assurance review would not ordinarily check the accuracy of the information underlying the case writer's unclassified summary for the reason that the quality assurance reviewer typically had little more experience than the case writer and, again, no relevant or meaningful intelligence or legal experience, and therefore had no

vi

skills by which to critically assess the substantive portions of the summaries.

19.    Following the quality assurance process, the unclassified summary and the information assembled by the case writer in support of the summary would then be forwarded to the Recorder. It was very rare that a Recorder or a personal representative would seek additional information beyond that information provided by the case writer.

20.    It was not apparent to me how assignments to CSRT panels were made, nor was I personally involved in that process. Nevertheless, I discerned the determinations of who would be assigned to any particular position, whether as a member of a CSRT or to some other position, to be largely the product of ad hoc decisions by a relatively small group of individuals. All CSRT panel members were assigned to OARDEC and reported ultimately to Rear Admiral McGarrah. It was well known by the officers in OARDEC that any time a CSRT panel determined that a detainee was not properly classified as an enemy combatant, the panel members would have to explain their finding to the OARDEC Deputy Director. There would be intensive scrutiny of the finding by Rear Admiral McGarrah who would, in turn, have to explain the finding to his superiors, including the Under Secretary of the Navy.

21.    On one occasion, I was assigned to a CSRT panel with two other officers, an Air Force colonel and an Air Force major, the latter understood by me to be a judge advocate. We reviewed evidence presented to us regarding the recommended status of a detainee. All of us found the information presented to lack substance.

22.    What were purported to be specific statements of fact lacked even the most fundamental earmarks of objectively credible evidence. Statements allegedly made by percipient witnesses lacked detail. Reports presented generalized statements in indirect and passive forms without stating the

vii

source of the information or providing a basis for establish-
ing the reliability or the credibility of the source. Statements
of interrogators presented to the panel offered inferences
from which we were expected to draw conclusions favoring a
finding of "enemy combatant" but that, upon even limited
questioning from the panel, yielded the response from the
Recorder, "We'll have to get back to you." The personal rep-
resentative did not participate in any meaningful way.

23.     On the basis of the paucity and weakness of the in-
formation provided both during and after the CSRT hearing,
we determined that there was no factual basis for concluding
that the individual should be classified as an enemy combat-
ant. Rear Admiral McGarrah and the Deputy Director im-
mediately questioned the validity of our findings. They di-
rected us to write out the specific questions that we had
raised concerning the evidence to allow the Recorder an op-
portunity to provide further responses. We were then ordered
to reopen the hearing to allow the Recorder to present further
argument as to why the detainee should be classified as an
enemy combatant. Ultimately, in the absence of any substan-
tive response to the questions and no basis for concluding
that additional information would be forthcoming, we did not
change our determination that the detainee was not properly
classified as an enemy combatant. OARDEC's response to
the outcome was consistent with the few other instances in
which a finding of "Not an Enemy Combatant" (NEC) had
been reached by CSRT boards. In each of the meetings that I
attended with OARDEC leadership following a finding of
NEC, the focus of inquiry on the part of the leadership was
"what went wrong."

24.     I was not assigned to another CSRT panel.

        I hereby declare under the penalties of perjury based
on my personal knowledge that the foregoing is true and ac-
curate.

viii

Stephen Abraham

Dated: June 15, 2007

# EXHIBIT 3

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 05-5062**                               **September Term, 2006**

**04cv01142**
**04cv01166**

**Filed On: June 20, 2007** [1048360]

Lakhdar Boumediene, Detainee, Camp Delta, et al.,
      Appellants

      v.

George W. Bush, President of the United States, et al.,
      Appellees

———————————

Consolidated with 05-5063

———

05-5064                               02cv00299,
     02cv00828, 02cv01130,
     04cv01135, 04cv01136, 04cv01137,
     04cv01144, 04cv01164, 04cv01194,
     04cv01227, 04cv01254

Khaled A. F. Al Odah, Next Friend of Fawzi Khalid
Abdullah Fahad Al Odah, et al.,
      Appellants

      v.

United States of America, et al.,
      Appellees

———————————

Consolidated with 05-5095, 05-5096, 05-5097,
05-5098, 05-5099, 05-5100, 05-5101, 05-5102,
05-5103, 05-5104, 05-5105, 05-5106, 05-5107,
05-5108, 05-5109, 05-5110, 05-5111, 05-5112,
05-5113, 05-5114, 05-5115, 05-5116

**BEFORE:**   Sentelle, Randolph, and Rogers, Circuit Judges

## O R D E R

Upon consideration of the motions to hold case in abeyance and to stay issuance of the mandate, the oppositions thereto, and the replies; and the motion to govern, and the opposition thereto, it is

**ORDERED** that the motions to hold case in abeyance and to stay issuance of the mandate be denied.  It is

**FURTHER ORDERED** that the motion to govern be denied as moot.

**Per Curiam**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:

Michael C. McGrail
Deputy Clerk

# EXHIBIT 4

# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

**No. 05-5194**                                            **September Term, 2006**

**04cv02022**

**Filed On: June 20, 2007** [1048438]

Saifullah Paracha, Detainee, Guantanamo Bay Naval
Station and Farhat Paracha, Next Friend,
      Appellants

     v.

George W. Bush, Jr., et al.,
      Appellees

—————————————————————

Consolidated with 05-5333

**BEFORE:**   Ginsburg, Chief Judge, Randolph, Circuit Judge, and Edwards,
            Senior Circuit Judge

### O R D E R

    Upon consideration of appellants' motion to stay the mandate, the opposition
thereto, and the reply, it is

    **ORDERED** that the motion be denied.

#### Per Curiam

                         **FOR THE COURT:**
                         Mark J. Langer, Clerk

               BY:

                         Michael C. McGrail
                         Deputy Clerk

# EXHIBIT 5

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔔𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

**No. 07-5042**               **September Term, 2006**

**04cv01519**

**Filed On: June 13, 2007** [1046545]

Salim Ahmed Hamdan,
     Appellant

    v.

Robert M. Gates,
     Appellee

## O R D E R

It is **ORDERED**, on the court's own motion, that appellee file, within fifteen (15) days of the date of this order, a response to the petition for initial hearing en banc, not to exceed fifteen (15) pages. Absent further order of the court, the court will not accept a reply to the response.

                         **FOR THE COURT:**
                         Mark J. Langer, Clerk

          BY:

                         Deputy Clerk/LD