

ـــمه العسكرية الدائمة بتونس
عدد 12101

نسخة حكم مجردة

# حكــــم جنــائــي

الحمد لله

أصدرت المحكمة العسكرية الدائمة بتونس عند إنتصابها للقضاء في المـــادة الجنائية بجلستها العمومية المنعقدة بتاريخ الإربعاء 30 جانفي 2002 .

برئاسة السيد : البشير زركوّنة .

وعضوية السادة : – الرائد رؤوف بوشوشة .

– الرائد المنجي برام .

– النقيب مجمد التريكي .

– النقيب هندة الحبوبي .

وبمحضر ممثّل النيابة العمومية : النقيب ظافر الشتيوي .

وبمساعدة كاتب المحكمة : العريف أول فتحي المرداسي .

الحكم الآتي بيانه بين الحق العام

من جهة

والمظنون فيهم :

1 ) البشير بن حسن بن البشير زابن وابن زهرة بنت أحمـد الذيـب المولـود في 06 جوان 1967 بالنفيضة والقاطن بأولاد عبد الله معتمديـــة النفيضـة ولايـــة سوسة .

2 ) منير بن محمد بن عثمان غيث وابن نفيسة نقرة المولود في 01 جانفي 1971 بالقيروان والقاطن بنهج علي الزواوي عدد 4 القيروان متزوج له أبناء .

3 ) عبد الباسط بن عبد العزيز بن علي الدالي وابن شـريفة الدمنـي المولـود في 04 جانفي 1969 والقاطن بوادي المرج بشاطر طريق بنزرت أعزب .

4 ) سيف الله بن عمر بن محمد بن حسين وابن صافية بـن حسـين المولـود في 04 نوفمبر 1965 والقاطن 06 نهج ليبيا حمام الإنف بن عروس .

5 ) سامي بن خميس بـن صالـح الصيد وابن بية السعيداني المولـود في 10 فيفري 1968 بمنزل جميل والقاطن بالحي العسكري العوينة عـدد 260 تونس .

6 ) الأسعد بن محمد بن الفرجاني ساسي وابن شلبية ساسي المولـود في 10 ديسمبر 1969 بتونس والقاطن بنهج أسد ابن الفرات عدد 17 الياسمينات قرطاج .

7 ) عبد الوهاب بن جلول بن مصطفى حميد وابن حوة بنت محمد المولـود في 14 ديسمبر 1964 بعوسجة والقاطن بعوسجة غار الملح بنزرت .

8 ) زياد بن عبد الله بـن عمـر الريابي وابـن حوريـة التـابعي المولـود في 09 أفريل 1970 بتونس والقاطن بالزارع بلفي عدد 24 الوردية تونس .

9 ) زهير بن عبد الله بن عمـر الريابي وابن حورية التـابعي والمولـود في 26 سبتمبر 1971 والقاطن بنهج الطيري عدد 12 سليمان نابل .

١٠ ) سحنر بن محمد بن مختـــار بوشوشـــة وابـــن هاديـــة بنــور المولـــود في 13 أكتوبر 1969 بتونس والقاطن بحي الزياتين عدد 06 العمران تونس .

11 ) يوسف بن عبد الباقي بن يوسف العبداوي وابن فاطمة العبداوي المولـــود في 04 سبتمبر 1966 بجبل الريحان القيروان و القاطن بجبل الريحان القيروان .

12 ) فتحي بن البشير بن الهويمل المسعودي وابن الزازيــة عمار والمولــود في 16 فيفري 1968 والقطن 22 نهج 1117 حي التضامن أريانة .

13 ) الحبيب بن علي بن سعيد الوذاني وابن العايشــة بنــت محمــد المولـــود في 01 جوان 1970 والقاطن بنهج 3033 عدد 09 حي هلال تونس .

14 ) الحبيب بن محمد بن محمـــود قنـــاوة وابـــن ســالمة المثلوثــي المولـــود في 26 ديسمبر 1960 والقاطن باولاد عبد الله النفيضة .

15 ) رضا بن صالح بن مبروك اليازيدي وابـن فاطمـة بـن محمـد المولـــود في24 جانفي 1965 والقاطن بحي التحرير النفيضة سوسة .

16 ) طارق بن البشير بن عمارة الشرعبي وابـن حـدي الشـرعبي المولـــود في 31 مارس 1970 بتونس والقاطن بالزهروني العقبة .

17 ) خليفة بن الظاوي بن خليفة بن جسن وابـن فافـة الزيـادي المولـــود في 25 أوت 1986 بمنزل بوزلفة والقاطن بحي علي باش حانبة منزل بوزلفة .

18 ) الهاشمي بن سالم بن عمر رزيـق وابـن شلبية بنـت علـي المولـــود في 26 أفريل 1973 بالعجانقة والقاطن بالعجانقة جبنيانة صفاقس .

19 ) الأزهر بن محمد بن العابد التلبي وابـن السـيدة بنـت صـالح المولـــود في 26 مارس 1969 بفريانة والقاطن بحي البلدية فريانة القصرين .

20 ) معز بن عبد القادر بن أحمد الفزاني وابـن فاطمـة الشـيخاوي المولـــود في 23 مارس 1969 بتونس والقاطن بنهج أم درمان عدد 2 الزهروني تونس .

21 ) جابر بن علي بن البشير الطرابلسي وابـن مبروكـة اليـازيدي المولـــود في 11 سبتمبر 1972 بمنزل تميم والقاطن بشارع ليبيا عدد 09 منزل تميم نابل .

22 ) شهاب بن محمد بن مختـار العيـاري وابـن فاطمـة التومـي المولـــود في 19 ديسمبر 1965 والقاطن بنهج الخير باردو .

23 ) عادل بن الأزهر بن يوسف بن سلطان وابـن حـدة بنـت علـي المولـــود في 14 جويلية 1970 بتونس والقاطن بحي الخضراء تونس .

24 ) نجيب بن بلقاسم بن محمد الشهيدي وابـن آمنـة بنـت قاسـم المولـــود في 02 فيفري 1961 بتونس والقاطن بتونس .

25 ) المهدي بن محمد بن محمد كمون وابن راضية بنـت محمـد المولـــود في 03 أفريل 1968 بتونس والقاطن بباب الجديد تونس .

26 ) محمد بن عيـاد بـن محمـد كـردوس وابـن عائشـة قنونة المولـــود في 04 فيفري 1962 بمطماطة والقاطن بحي العنتيت عدد 77 الزهروني .

27 ) عبد الله بن صالح بـن أحمـد الرزقـي وابـن ربـح القبيـل المولـــود في 12 فيفري 1958 بالسرس والقاطن بيئر الزندالة نعسان بن عروس .

28 ) فريد بن الصادق بن بلقاسم الحمدي وابـن منوبية الـزواوي المولـــود في 17 أفريل 1970 بمنزل بورقيبة والقاطن بنهج الإمام سحنون عدد 23 مـنزل بورقيبة .

29 ) عفيف بن عمر بـن علـي المـاجري وابـن شـاذلية الدوني المولـــود



٠٢

30 ) عز الدين بن إدريس بن حمدة سلام وابن منوبية الهذيلي المولود
في 14 جوان 1967 بالمهدية والقاطن بشارع الطاهر صفر هيبون المهدية .

31 ) فيصل بن الشاذلي بن البشير بن سعيد وابن بية فتح الله المولود
في 08 نوفمبر 1964 بعوسجة والقاطن بشارع الحبيب ثامر عوسجة بنزرت .

32 ) الحبيب بن أحمد بن الطيب اللوبيري وابن فطيمة الجلاصي المولود
في 17 نوفمبر 1961 بمنزل تميم والقاطن بالداموس منزل تميم نابل .

33 ) محمد بن محمد بن صالح الغرسلاوي المولود ببئر الحلو الشراردة
في 12 أوت 1965 والقاطن ببئر الحلو الشراردة القيروان .

34 ) عادل بن مبروك بن حميدة بن مبروك وابن حبيبة حسن المولود
في 15 سبتمبر 1970 والقاطن 17 نهج 4339 الزهروني تونس .

الواقع إحضار الثلاثة الأول ومحاولة ذلك بالنسبة للبقية بطلب من النيابة العسكرية بتونس يوم التاريخ بمقتضى بطاقات إخراج وبطاقات جلب من كتابت هذه المحكمة مؤرخة في تواريخها لاتهامهم بالإنضمام إلى منظمة إرهابية تعمل بالخارج زمن السلم والتحريض على ذلك بقصد النيل من الأشخاص والممتلكات والعمل على التحريض على الكراهية والتعصب الديني طبق الفصلين 123 من مجلة المرافعات والعقوبات العسكرية و 52 مكرر من القانون الجنائي .

## من جهة أخرى

### الأعمال بالجلسة

وبجلسة يوم الإربعاء 19 ديسمبر 2001 أحضر المتهمون الثلاثة الأول بحالة إيقاف : البشير زايد ومنير غيث وعبد الباسط الدالي وحضر عن الأول الأستاذان رؤوف العيادي وسمير بن عمر وعن الثاني الأستاذ خليفة حفصة والأستاذ سمير ابن عمر وعن الثالث الأساتذة العجمي بالحاج حمودة وسمير بن عمر أنور القصوري وبعد التثبت من هوية المتهمين ومقارنتها بما جاء بقرار دائرة الإتهام تبين تطابقها لذلك وتلى هذا القرار علنا والفصول القانوينة الواردة به والعقوبات المستوجبة لذلك ، وبزيادة التحرير على المتهمين ذكر المتهم بشير أنه سافر من ايطاليا إلى الجزائر بنية الزواج لا غير واعترف بتسلمه الأموال من قبل المنظمة ولاحظ أن المسمى المختار بوشوشة هو من أمر بالسفر إلى الجزائر والإتصال بشخص هناك وتمسك ببقية تصريحاته المسجلة عليه بمحضر البحث وباعترافه لدى السيد حاكم التحقيق موضحا أنه سافر إلى القطر الجزائري بدون أي قصد وأن منذ إيقافه من طرف السلط الإيطالية أصبح يخشى الدخول إلى التراب التونسي وقد وقع تسليمه إلى السلطات التونسية من قبل السلطات الجزائرية بعد أن أوقف هناك لمدة ثلاثة أشهر للتحقيق معه حول هدفه من الدخول إلى البلاد الجزائرية وأنه لا نية له في القيام بأي عمل تخريبي بالبلاد التونسية .

وبواسطة هيئة المحكمة ألقى الأستاذ سمير بن عمر سؤالا حول وجود تنظيم بأوروبا يدعى أهل السنة والجماعة فأجاب أنه لا يوجد أي تنظيم بهذا الإسم وغاية ما في الأمر أن مجموعة من المسلمين ينظمون إلى الجامع لأداء الصلاة وفي خصوص المحجوز أجاب المتهم البشير أن بعض الأموال تسلمها من بوشوشة وهي ما يقارب الخمسمائة دينارا تونسية والباقي هي أمواله الخاضة وأكد أنه تعرض للتعذيب من قبل السلطات الجزائرية . وبالتحرير

تسجيل عليه لدى الباحث الإبتدائي ولدى قلم التحقيق ملاحظا أن تصريحاته إنتزعت منه قصرا نافيا صدورها عنه وقد تم تهديده بمواصلة البحث معه لـدى قلم التحقيق لدى الداخلية وأنه لم ينتم البتة لدى تنظيم يدعى أهل السنة والجماعة ولم يفكر بالإطاحة بالنظام ولا بالتخويف والترويع وأنه طلب تكليف محام فمنـع من ذلك في مرحلة إستنطاقه لدى قلم التحقيق ونفى المتهم منير أن تكون له علاقة متينة بالمتهمين البشير  وعبد الباسط فالأول كانت معرفته به سطحية في لقاء أو لقائين بمناسبة صلاة الجمعة واختلافهما في مقر السكنى وبالنسبة للمتهم عبد الباسط فإنه لم يشاهده إطلاقا إلا بمناسبة هذه القضية بالسـجن المدنـي وسـاند المتهمين البشير وعبد الباسط ذلك . وبالتحرير على المتهم عبد الباسط أنكر مـا نسب إليه مترجعا في جميع تصريحاته المسجلة عليه لـدى التحقيـق والبـاحـث الإبتدائي ولاحظ أنها إنتزعت منه مضافيا أنه سافر إلى إيطاليا في فيفـري 1990 وتعرف على إمرأة إيطالية هناك أين أصبح يقيم وكانت حياته طبيعية جـدا ولـم ينظم إلى أي جهة من الجهات أي كانت  . وهو فعلا قائمـا بفريضـة الصـلاة بمختلف المساجد الموجودة بميلانو وبسؤاله من قبل الأستاذ العربي بالحاج حمودة أكد انه قرر أداء فريضة الصلاة إثر مشاهدته لبرنامج تونسي وهو بحالة توعبـك صحي شديد إنتابه إثر تناوله المخدرات والكحول دون أن يقع إستقطابه مـن أي طرف كان وأكد إثر سؤال الأستاذ سمير بن عمر أنه لم يقع إعلامه بمثوله أمـام قاضي التحقيق الذي إختصر سؤاله حول هويته والأموال التي بحوزتـه وبمبلـغ أجرته وقيمتها بالعملة التونسية وصرح له أن التحقيق ما زال متواصلا ولم يعلـم بانتهاء التحقيق معه إلا من طرف محاميه ، مؤكدا أنه لم يقع إعلامـه بإمكانيـة حضور محام معه أثناء إجراء التحقيق، ولاحظ أنه لم يقم بتوجيه التهم عليه مـن طرف حاكم التحقيق كما أنه لم يقع إيقافه أو بحثه من طرف السلطات الإيطاليـة في أي موضوع كان وأكد المتهمون جميعا أنهم لم تشملهم الإيقافات في الحملـة التي قامت بها السلطات الإيطالية الأمنية خلال دورة كأس العالم 1998 .

وطلب الأستاذ خليفة حفصة الإفراج مؤقتا عن منوبه عبد الباسط وطلب بقية الأساتذة الإفراج مؤقتا عن منوبيهم وفوضت النيابة النظر في التأخير والإطـلاع والدفاع وطلبت تسخير محام للدفاع عن المتهمين المحالين بحالة فرار . ٥٥

قررت المحكمة حجز القضية لآخر الجلسة للنظر في مطالب الإفراج وتأخير القضية لجلسة يوم 30 جانفي 2002 إستجابة لطلب الدفاع وتسخير الأستاذ عبد الرزاق بوعتور للدفاع عن المتهمين المحالين بحالة فرار .

وبآخر الجلسة وبعد المفاوضة القانونية وحصول الأغلبية المنصوص عليـها بالفصل 162 من مجلة الإجراءات الجزائية قـررت المحكمـة رفـض مطـالب الإفراج .

وبجلسة يوم 30 جانفي 2002 أحضر المتهمون البشير ومنير وعبد الباسـط بحالة إيقاف ولم يحضر من عداهم وكانوا بحالة فرار وحضر الأستاذ محمد عبـو وأعلن نيابته عن عبد الباسط كما حضر عن الأستاذ عبد الوهاب المعطـي عـن بشير ومنير وحضرت الأستاذة لطيفة الحباشي وقدمت إعلام نيابتها عن



04

... رسب المتهمون بما سجل لديهم بمحضر الجلسة السابقة ولاحظت النيابة أن ما نسب إلى المتهمين من جرائم هي أفعال خطيرة على أمــن الدولــة والأشخاص والمنشآت الحيوية وذلك بغاية زعزعة أمن الدولة وبث الرعــب والبلبلة في صفوف المواطنين إضافة إلى تنظيم هذه الجماعة وأعمالهم المشبوهة من جمع تبرعات وتجارة المخدرات وتزييف الأسلحة وتزييف العمـــلات لغايــة جمــع الأموال واستعمالها في تقويض النظام التونسي وهذه التهم ثابتة في حق المتهمين جميعا وطلبت على هذا الأساس المحاكمة طبق القانون والتشديد في العقاب مـــع المراقبة الإدارية . ورافع الأستاذ عبد الرؤوف العيادي عن منوبيه بما رآه صالحا لهما ذاكرا أن هذه القضية أخذت صدى كبيرا من الناحية الإعلامية خاصة فــي الصحف وبالتالي تهويل ما هو منسوب إليهما وفي خصوص أصل القضية فــإن كل ما هو موجود بأوراق الملف هي إشارات مجردة وكل القضية مبنيــة علــى تقرير إرشادي من الفرقة الخاصة بأمن الدولة ولاحظ أن إستطاقه لــدى أمــن الدولة وتصريحاته هي نفسها حرفيا لدى قلم التحقيق وهو ما لا يمكن أن يكــون إطلاقا وهو ما يستشف منه أن إستطاقه وقع مكتبيا وإعادة لما سبق الإستطاق به حرفيا وبالتالي فإن الأمور فرضت سواء لدى فرقة أمن الدولة  ولــدى التحقيــق وبالتالي فإنه يعتبر ذلك عملية تدليس ثابتة ولاحظ أن ما نسب إلى منوبه من جهاد فإن جميع الطرق المذهبية تأمر بالجهاد وهو فرض إضافة إلـــى أنـــها قناعـــات شخصية غير أن القانون لا يعاقب على ميولات بل على أعمال مادية وطلب على هذا الأساس الحكم بعدم سماع الدعوى . ورافعت الأستاذة لطيفة الحباشــي عــن منوبيه بشير زيد بما رأته صالحا له ذاكرة أن محاضر البحث تفتقـد إلــى الضمانات القانونية وأهمها توكيل محام للدفاع عن منوبها سواء كانت لدى فرقة أمن الدولة أو لدى السيد حاكم التحقق إضافة أن ما وقع تدوينه لدى حاكم التحقيق هي نسخ لما وقع تدوينه لدى الباحث الإبتدائي ولاحظت أن مـا وقـع حجزه لا يمكن أن يكون قرينة ثابتة لإدانة منوبها وفوضت على هذا الأســـاس أمرهـا للمحكمة . وحضر الأستاذ سمير بن عمار ورافع عن منوبيه بما رآه صالحا لــهم ذاكرا انه وقع خرق كبير للقانون في خصوص إستطاق المتــهمين ملاحظـا أن جميع منوبيه تعرضوا للتعنيف والتعذيب إضافة إلى وقـوع تدليس بالمحاضر وأولها طريقة إيقاف منوبه البشير زايد والتي تفيد بالمحاضر أنه وقع التفطن إليه في تونس وألقي عليه القبض في حين أن الحقيقة هو وقع تســليمه مــن طـرف السلطات الجزائرية والحكومة نشرت بلاغ في جميع الصحف والمجـلات بذلـك ملاحظا انه رافع في عدة قضايا في نفس الموضوع بهذه المحكمــة ولاحــظ أن السيد حاكم التحقيق هو نفسه في جميع القضايا السابقة ملاحظا أن جميــع المتهمين يعترفون بما هو منسوب إليهم أمام نفس السيد حاكم التحقيق كذلك جميع المتهمين وقع سماعهم سواء في هذه القضية أو في القضايا السابقة بدون حضــور خام يتولى للدفاع عنهم وبالتالي فإن ما وقع إدراجه بالمحاضر يعتبر تدليسا كما أن أحد منوبيه وهو بشير زايد طلب عرض نفسه على الطبيب وسجل طلبه فــي محضر الإيقاف غير أنه لم يقع ذلك وبالتالي يعتبر ذلك تجاوزا وخرقـا للقانون وفي خصوص وقائع قضية الحال وخلافا لما اتجهت إليه النيابة العمومية فإنـه لا يوجد بملف القضية ما يؤكد وجود هذا التنظيم أصلا سوى ما جاء بتقريــر أمــن الدولة كما أنه لا يوجد أي شــيء فعليــا مــن شـأنه أن يدين أحـد منوبيه

رية بيـ سرحمـ ن الانشطـه المذكورة بالملف هي منسوبة للمتـهمين المحالين بحالة فرار وبالتالي فانه لا يوجد أي فعل مادي منسوب إلى منوبيه وهو يستغرب من إحالة منوبيه منير غيث وعبد الباسط الدالي على هذه المحكمة مـن أجل ما هو منسوب إليهما مضيفا أنّ منوبه منير غيث كان سبب رجوعـه إلـى أرض الوطن هو حاجته لبطاقة عدد 3 خاصة وأنه إتصل بالقنصليـة التونسيـة بإيطاليا وأكدوا عليه هناك بأن تستخرج من مصالح الداخلية بتونس فقط كمـا أن الأمن الإيطالي قام بتفتيش منازل منوبيه بإيطاليا ولم يقع حجز ما يمكن أن يؤكد ما هو منسوب إليهم ملاحظا أن جميع ما نسب إلى منوبيه من أقوال أنتزع منـهم تحت التعذيب وأضاف نسخة معربة من قرار التوقيف وطلب على هذا الأسـاس الحكم بعدم سماع الدعوى . ورافع الأستاذ محمد عبو عن منوبه بما رأه صالحـا له ذاكرا ان إتجاه هذه القضية هو إتجاه سياسي وهو واقع خاصـة أنـه يوجـد أشخاص يريدون أن يمحو المراكز السياسية الكبرى عن طريـق هـذه القضايـا المفتعلة كما أنه على فرض أن هذا التنظيم موجود فعلا فإنه ليس عـدوا للنظـام التونسي وهدفه ليس النظام التونسي إطلاقا إضافـة أن إمضاء منوبيـه علـى محاضر البحث لدى السيد الباحث الإبتدائي كان تفاديا لمزيد التعذيب وبالتالي فإنه توجد عملية تزوير لمحاضر البحث خاصة وأنها نفس التصريحات لـدى بـاحث البداية هي نفسها لدى حاكم التحقيق ، كما أنهم لم يتمتعوا بالضمانـات القانونيـة لديه إذ حرموا من تكليف محامين للدفاع عنهم ملاحظـا انـه يوجـد أشـخاص يصرون على وجود أشخاص إرهابيون وأن تونس أحاطت بـهم خاصـة بعـد أحداث 11 سبتمبر وذلك خدمة لمصالحهم وطلب على هذا الأساس الحكم بعـدم سماع الدعوى . ورافع الأستاذ أنور القصوري عن منوبه بما رأه صالحـا لـه ذاكرا أن منوبه وقع إستدعاءه من طرف أمن الدولة كشاهد وعرضت عليه عـدة صور شمسية لأشخاص يعيشون في إيطاليا وأجاب بالحقيقة أي أن كل من يعرف أدلى به وبإسمه الحركي وتم إيقافه لمدة ثلاثة أيام بعدها تقـرر إيقافـه وتحريـر محضر بحث ضده أكره على الإمضاء عليه كما أنه لم يقع تلاوة ما سجل عليـه ملاحظا أن ما هو موجود بالبحث سواء لدى الباحث الإبتدائي ولدى التحقيق لـم يعلم به إلا بالسجن بواسطة محاميه وهذا خرق كبير للقانون وبادرة خطيرة ، كمـا أن التحقيق في قضية إرهابية لا يمكن أن تقل عن عدة أشهر وهذه القضية الحالية تنتهي جميع الأعمال بها في ظرف شهر واحد كما أن السيد قاضي التحقيق قـام بخرق الفصل 69 من مجلة الإجراءات الجزائية كما أنه كان على السيد قـاضي التحقيق التحول إلى إيطاليا بموجب الإتفاقات القضائية وذلك للتحقق مـن وجـود هذا التنظيم فعلا وسماع بعض المتهمين الموقوفين بالسجون الإيطالية والمحالين على هذه المحكمة بحالة فرار ومنهم شلبي الصيد كما كان عليـه جلـب وثـائق وأشرطة فيديو تؤكد التهم المنسوبة إلى منوبه ، كما أن التقرير الإرشادي ليـس عملا قضائيا ولا يمكن الإعتماد عليه إطلاقا ومن حيث الوقائع فإن منوبـه كـان معترفا لدى باحث البداية ثم ينكر لدى الجلس وهو دليل علـى عـدم مصداقيـة ما وقع تدوينه من سابق الذي أنتزع منه بالإكراه وطلب على هذا الأساس القضاء ببطلان الإجراءات وبصفة إحتياطية الحكم بعدم سماع الدعوى وتقـدم بتقريـر صحيح إستدعاء أضيف بالملف . ورافع الأستاذ العجمي بالحاج حمودة عن منوبـه بما رأه صالحا له ذاكرا أن منوبه يتمتع بميزة خاصة وهي أنه لم يحجز عنـه أي



شيء كما أنه لم يقع الإشارة عليه من قبل بقية المتهمين كما أن السلط الإيطالية لم تدنه ولم تنسب إليه أي عمل إجرامي وإقامته كانت قانونية ملاحظــا أن جميع المتهمين لم يتعرضوا لمبدأ المواجهة وهو يتساءل هل أن هذه المحكمـــة مؤهلــة للنظر في هذه القضية ومن ناحية أخرى فإنه بالرغم من إعتراف المتهمين فإنه لا بد من وجود دليل آخر مادي يؤيد التهمة المنسوبة للمتهمين ومن ضمنها منوبـــه ملاحظا أن إعترافهم لدى المجلس هو أمرأ القضية وذلك لسبب واحد وهو أنه لـم يسلط عليهم أي ضغط لا مادي ولا نفساني وما صرحوا به بالجلسة السابقة هــو عين الحقيقة وبالتالي فإن ما سجل عليهم لدى الباحث الإبتدائي كان منتزعا تحــت الضغط والتعذيب ملاحظا انه كان بالإمكان تطبيــق الفصــل 305 مـن مجلـة الإجراءات الجزائية وهو يتساءل هل أن القانون الإيطالي يجرم ما هو منسـوب إلى منوبه وبالتالي لا بد من وجود وثيقة ديبلوماسية بالملف وطلـب علـى هـذا الأساس الحكم بعدم سماع الدعوى في خصوص تهمة الفصل 52 ، وبالتثبت فـي أوراق القضية فإن منوبه منسوب إليه وضع نفسه تحت منظمة إرهابيــة تعمـل بالخارج وفي واقع الأمر لا توجد هذه المنظمة إطلاقا ولا توجد أعمالا تحضيريـة لذلك و لا يوجد محجوز من شأنه أن يُثبــت التهمــة وفـي خصـوص منوبـه عبد الباسط فإنه دخل التراب الإيطالي بالطريقة القانونية وتحصل علــى وثـائق الإقامة القانوينة بل وكما أنه تحصل على شغل قار ويدر عليـــه أمـوالا طائلـة وبالتالي هل أن منوبه وقع إستقطابه للإنظمام إلى هذه المنظمة وكل ما في الأمر أنه تعرض لحادثة كادت تؤدي بحياته وهي تعاطيه الخمر والمخدرات ولما أفــاق قرر التوجه للتوبة وفعلا كان ذلك مضيفا أن منوبه لم يقع حجز ما يمكن أن يدينه من أموال وأسلحة وقائمات إسمية وحتى إن حضر إجتماع بالجامع بإيطاليا فإنـه لا يمكن إدانته بذلك وطلب على هذا الأساس الحكم بعدم مســاع الدعـوى فـي خصوص التهمتين المنسوبتين لمنوبه وأحضر الأستاذ خليفة حفصة ورافــع عـن منوبه بما رآه صالحا له ذاكرا أن أصعب عنصر من عناصر القضية هو عنصـر التحقيق إذ وقع تجاوز القانون فيه من ناحية أخرى وفي خصوص ماديات القضية فإن منوبه سافر وهو صغير السن ونقيّ السوابق وليس له أية ميولات سياسية كما انه مسؤول عن عائلة وأبناء وكذلك مسؤول عن شركة وكل ما في الأمر أنه يقوم بواجباته الدينية وخاصة منها الصلاة ويؤديها أحيانا بالجامع ، ولو كانت لمنوبــه فكرة الدخول لمنظمة إرهابية فإنه عليه كان ألا يتزوج ولا يكون شـركة تشـغل خمسون عاملا كما أن منوبه لم يقع ذكره في أية مرحلة مــن مراحـل البحـث واعترافه الأول كان تحت الإكراه والتعذيب وهو إعتراف مجرد وطلب على هـذا الأساس إما القيام بأعمال تحضيرية لزيادة البحث أو الحكم بعدم سماع الدعـوى وأدلى بتقرير صحبة مؤيدات أضيفت بالملف وحضر الأستاذ بوعتـور وطلـب تسجيل حضوره في حق جميع المتهمين بحالة فرار .

ولاحظت النيابة ردا على بعض ملاحظات السادة المحامين أن جريمة الفصل 123 من م م ع ع تختص بها هذه المحكمة بالرجوع إلى أحكام الفقرة الأولى مـن الفصل 5 من نفس المجلة وأن مكتوب الإعلام بالتتبع هو من الإجراءات الأساسية طبق أحكام الفصل 21 من نفس المجلة كما لاحظ أن جميع المتهمين والمحـامين وما ذهبوا إليه من قدح في إجراءات البحث الإبتدائي أو لدى التحقيــق لا شـيء بالملف يثبته وكان على كافة الأطراف الإلتجاء إلى الوسائل القانوينة . وتمسك



جميع الاساتذة بمرافعاتهم وأضاف الأستاذ بالحاج حمّودة أنـــه لا ينـــاقش فـي إختصاص هذه المحكمة لكنه يناقش في خصوص بعـض الوثـائق . وبـاعذار المتهمين طلب المتهم بشير زيد الإفراج وطلب المتهم منير غيث الحكـم بعـدم سماع الدعوى وطلب المتهم عبد الباسط الحكم بعدم سماع الدعوى .

قررت المحكمة حجز القضية لأخر الجلسة للمفاوضة والتصريح بالحكم وبها وبعد المفاوضة القانونية وحصول الأغلبية المنصوص عليها بـالفصل 162 مـن مجلة الإجراءات الجزائية صرح عموما وعلنا بالحكم الآتي نصه :

## من حيث الإحالة والوقائع

حيث أحالت دائرة الإتهام العسكرية لدى محكمة الإستئناف بتونس بقرارهـا عدد 60811 الصادر في 06 نوفمبر 2001 المتهمين المبينة هوياتهم بالطالع علـى هذه المحكمة لمقاضاتهم من أجل الإنضمام إلى منظمة إرهابية تعمـل بالخـارج زمن السلم والتحريض على ذلك بقصد النيل من الأشخاص والممتلكات والعمـل على التحريض على الكراهية والتعصب الديني طبق الفصلين 123 مـن مجلـة المرافعات والعقوبات العسكرية و 52 مُكرّر من القانون الجنـائي ودون مضـي الأمد المسقط لحق التتبع .

وحيث أنتجت الأبحاث المجراة في القضية أنه وفي الفترة الممتدة بين سنتي 1996 و 2001 سافر المتهمون المبينة هوياتهم بالطالع هذا إلى إيطاليا للإستقرار والعيـش هناك إلا أنهم وفي فترات مختلفة إنظموا إلى مجموعة تسمة بـ " أهـــل السـنة والجماعة " وهو تنظيم سلفي يتكون من أفراد مختلفي الجنسيات يقوم على تكفير الأنظمة العربية من ضمنها النظام القائم بتونس كما يدعو للإطاحة بها عن طريق العمل الثوري المسلح قصد إقامة أنظمة دينية أصولية مكانها وقـد كـان المتـهم سيف الله بن حسين يدير شؤون المجموعة التونسية من أفغانستان في ما تـــداول على تسييرها بالشمال الإيطالي كل من المتهمين يوسف العبداوي وسامي الصيـد وفيصل بن سعيد وقد ربط هؤلاء علاقات وثيقة مع تنظيمات أصولية مثل حركـة طالبان بأفغانستان وجماعات جزائرية مبلطة منها الجماعـة السـلفية " للدعـوة والقتال " وتنظيم " الباقون على العهد " كما كانوا على إتصـال بالمتـهم فتحـي المسعودي شهر " أبو الفضل " وشخص أردني يدعى " أبو قتادة " المقيمين بلنـدن لاستفادتهما في مسائل تهم طرق تسيير شؤون المجموعة ودأب المتــهمون علـى حضور إجتماعات سرية تعقد أساسا بمدينة ميلانو تهدف في مرحلة أولـى إلـى تكوينهم فقهيا وعقائديا ثم يتم في مرحلة لاحقة تلقينهم مبادئ التنظيم وأهدافه التـي تتمحور حول ضرورة إسقاط النظام القائم بالبلاد التونسية عـن طريـق الجـهاد والعمل الثوري المسلح بعد ارباكه بواسطة أعمال تخريبية من إعتـداءات علـى الممتلكات والمؤسسات الحيوية ومقرات السيادة وزهق الأرواح وزعزعة الأمـن وزرع الرعب بين المواطنين وتقويض أسس الدولة بغاية إقامة نظام ديني أصولـي مكانه وتستند تلك الدروس إلى بعض المراجع التي صاغها مؤلفون سلفيون علـى غرار كتاب " شرح العمدة في إعداد العدة " لمؤلفه السعودي " عبد القادر بن عبـد العزيز " بالإضافة إلى عدة أشرطة سمعية تعبوية تعمق مفاهيم الفكـر الجـهادي وأخرى بصرية تعرض مشاهد من المعارك التـي دارت بأفغانسـتان والبوسـنة

ومم ................. ين ................... يسهون المدخرون
ومم أفراد المجموعة التونسية يحملون أسماء حركية تسـاعدهم علـى التخفـي
والتعرف على بعضهم البعض كما كانوا يسعون لاستقطاب عناصر جديـدة مـن
بين الشبان العاملين بإيطاليا ذوي الوضعيات الأمنية السليمة ويدفعون مسـاهمات
مالية شهرية تختلف من شخص لآخر كما يجمعون التبرعات التي تساعد علـى
تغطية نفقات التنظيم فيما يتولى البعض منهم المتاجرة في المخدرات مثل المتهم
الحبيب الوذاني شهر " سكساكة " أو في العملة المزورة والسيارات المسروقة مثـل
المتهم الحبيب قناوة لتمويل نشاطهم تطبيقا لفتوى أصدرها الأردني " أبو قتـادة "
تتيح إستغلال العائدات المتأتية من السرقة وتجارة المخدرات والعملـة المـزورة
لتحقيق أهداف التنظيم وسعيا وراء الغاية المنشورة تم إرسال العديد مـن أفـراد
المجموعة التونسية إلى أفغانستان باستعمال جوازات سفر مزورة حتـى يتلقـوا
تدريبات عسكرية لإتقان فنون القتال وحرب العصابات وإجادة إستعمال مختلـف
الأسلحة والمتفجرات تحضيرا لتسريبهم إلى الداخل لاقـتـراف أعمـال تخريبيـة
بأرض الوطن من بينهم المتهمين سامي الصيد والمختار بوشوشة ورضا الـيزيدي
والمهدي كمون وعبد الوهاب حميد وعز الدين سـلام وعـادل مـبروك شـهر
" البوغانمي " ومعز الفزاني وخليفة بن حسن والهاشمي رزيق وشهاب العيـاري
وجابر الطرابلسي ونجيب الشهيدي والأزهر التليلي وعـادل سـلطان وزيـاد
الريابي وشقيقه زهير الريابي الذين إستقبلهم المتهم سيف الله بن حسـين وسـهـل
إيواءهم بمعسكرات التدريب الأفغانية كما تم إرسال بعض المتهمين إلى الجزائر
لنفس الغرض إثر تنسيق حصل بين المتهمين يوسف العبداوي والمختار بوشوشـة
من جهة ومسؤولين عن التنظيم المسلح الباقون على العـهد " المدعوين عبـد
الرحمان أبو جميل وسعيد يتولى بمقتضاه التنظيم المذكور إحتضان عنـاصـر
تونسية لتدريبها عسكريا وتشريكها في المعارك الدائرة مع قوات الأمن الجزائرية
في إنتظار توفر العدد الكافي من المتدربين الذين يمكنهم مباشرة أعمال مسـلحة
بالبلاد التونسية إنطلاقا من التراب الجزائري ومن بين هؤلاء المتـهمين الأسـعد
ساسي وعبد الوهاب حميد وزياد الريابي وزهير الريابي وشخص يدعى سـفيان
يسمى حركيا " محمود " وفي أوائل سنة 2001 تم اكتشاف حقيقة نشاط المتـهمين
من قبل السلط الأمنية الإيطالية فأخضع البعض منهم للمراقبة الإدارية فيمـا تـم
إيقاف كل من سامي الصيد والمختار بوشوشة وعادل سلطان والمـهدي كمـون
وطارق الشرعبي كما تلقى المتهم الميثير أيد إستدعاء مـن المصالح الأمنيـة
الإيطالية وبإعلام مشرفيه أشاروا عليه بتحويل نشاطه إلى التراب الجزائري على
غرار بقية نظرائه ضمن تنظيم " الباقون على العهد " وسلموه مبلغا ماليـا مـن
العملة الأجنبية تتجاوز قيمته الألفي دينار من العملة التونسية فتحول إلى إسـبانيا
عبر فرنسا أين تم إيواؤه بمدينة " فالنبيا " من طرف شخص جزائـري يدعـى
" بن عودة " وفي يوم 15 أفريل 2001 تحول من ميناء الباكنتي الإسـباني إلـى
ميناء وهران الجزائري إلا انه بمجرد وصوله تم الإشتباه في أمره من طـرف
مصالح الأمن الجزائرية وبعد إيقافه مدة ثلاثة أشهر أخلي سبيله وخير العودة إلى
أرض الوطن في إنتظار تعليمات مشرفيه وخلال شهر أوت من سنة 2001 عـاد
المتهمان منير غيث وعبد الباسط الدالي إلى تونس بتكليـف مـن مشـرفيهما
لاستطلاع الوضع العام بالبلاد وإعداد تقارير في الغرض إلا أن المصالح الأمنيـة

التونسية القت عليهم القبض بعد أن إكتشفت أمرهم ومن ثمة إنطلقت الأبحاث في قضية الحال .

وحيث إعترف المتهم البشير زايد بما نسب إليه لدى الباحث الإبتدائي ولدى التحقيق وصرح أنه إنظم عن طواعية للمجموعة التونسية التي تنشط بشمال إيطاليا ضمن ما يعرف باسم " أهل السنة والجماعة " التي تداول على تسييرها المتهمون يوسف العبداوي وسامي الصيد والمختار بوشوشة بإشراف المتهم سيف الله بن حسين المتواجد بأفغانستان وهي مجموعة دينية سلفية أصولية تؤمن بالعمل الثوري المسلح قصد إسقاط النظام القائم بتونس الذي يعتبره كافرا وإقامة نظام أصولي مكانه كما تعتمد على العمل السري ويحمل أفرادها أسماء حركية تساعدهم على التخفي والتعرف على بعضهم البعض عند الإقتضاء ومن ذلك أنه تم إسناده هو " أي المتهم بشير " إسما حركيا هو " الطاهر " ويخضع اتباع المجموعة لتكوين نظري عقائدي ضمن إجتماعات علنية بالمساجد أو سرية تعقد بالمنازل بدءا بالمسائل الدينية وصولا إلى تعميق الفكر الجهادي كما يتم إرسالهم باستعمال جوازات سفر مزورة إلى أفغانستان أو الجزائر لتلقي تدريبات عسكرية لإجادة فنون القتال وحرب العصابات وإتقان إستعمال مختلف الأسلحة والمتفجرات تحضيرا لاقتراف عمليات تخريبية بأرض الوطن من إغتيالات وتفجيرات لمؤسسات ومنشآت حيوية واعتداءات على مقرات السيادة لغاية بث الرعب والبلبلة بين المواطنين وزعزعة الأمن حتى يتم تقويض أمن الدولة وإسقاط النظام القائم بها والذي يعتبره كافرا وإقامة نظام ديني أصولي مكانه وأضاف أنه تعرف على البعض من نظرائه بالتنظيم وهم المتهمون رضا اليزيدي ويوسف العبداوي وسامي الصيد والحبيب قناوة والمختار بوشوشة وعبد الوهاب حميد وعبد الله الرزقي ومحمد كردوس ونجيب الشهيدي والمهدي كمون وسيف الله بن حسين والأسعد ساسي وعادل بن سلطان وطارق الشرعبي وخليفة ابن حسن والهاشمي رزيق والأزهر التليلي وزياد الريابي ومعز الفزاني والحبيب الوذاني وجابر الطرابلسي وشهاب العياري وزهير الريابي وفتحي المسعودي مضيفا أن أفراد التنظيم يدفعون مساهمات مالية شهرية تختلف من شخص إلى آخر كما يتم تمويل نشاط التنظيم من التبرعات التي يجمعونها ومن عائدات تجارة المخدرات والسرقة وتجارة العملة المزيفة التي إختص البعض منهم تطبيقا لفتوى أصدرها " أبو قتادة " المقيم بلندن والتي تبيح مثل تلك الأعمال لتحقيق أهداف التنظيم . وقد تحولت بعض العناصر إلى أفغانستان لتلقي تدريبات ميدانية عسكرية فيما سافر آخرون إلى الجزائر لنفس الغرض خاصة ويربط مشرفوا التنظيم علاقات وطيدة مع حركة طالبان بأفغانستان ومع التنظيم الجزائري المسلح المسمى " الباقون على العهد " وفي ذلك الإطار حصل من مشرفه خلال أوائل سنة 1999 على جواز سفر هولندي مزور يحمل صورته وهوية مغايرة قصد التحول بواسطته إلى أفغانستان عبر سويسرا وباكستان غير أنه منع من دخول التراب السويسري بعد التفطن لعدم شرعية ذلك الجواز فأشار عليه مشرفوه بتحويل نشاطه إلى التراب الجزائري خاصة بعد أن تم إكتشاف حقيقة أمر العديد من أفراد التنظيم من قبل السلط الأمنية الإيطالية وإلقاء القبض على البعض منهم لذلك تسلم من مشرفه المتهم المختار بوشوشة مبلغا من العملة التونسية وتحول في أوائل سنة 2001 إلى الجزائر مرورا بفرنسا وإسبانيا لكن وبمجرد وصوله

شخص تم اخلي سبيله فخير العودة إلى أرض الوطن في إنتظار تلقيه تعليمات مشرفيه غير أنه تم إيقافه من قبل مصالح الأمن التونسية وأكد أنه وفي أواخر سنة 1999 وبمناسبة زيارته لمنزل نظيره بالتنظيم المتهم الحبيب الوذاني شهر "سكساكة" بمدينة ميلانو أطلعه هذا الأخير على كمية من الأسلحة تتمثل في عدد إثنين مسدس رشاش وعدد إثنين رمانات حربية وعدد ثلاثة بندقية رشاش نوع "كلاشنكوف" كلها صالحة للإستعمال إقتناها من شخص يوغسلافي الجنسية بتعليمات من مشرفيه وكلف بإخفائها حتى يقع تسريبها لاحقا إلى البلاد التونسية لارتكاب إعتداءات وأعمال تخريبية بها . وبالجلسة ذكر المتهم البشير زايد أنـــه سافر من إيطاليا إلى الجزائر بنية الزواج لا غير واعترف بتسلمه الأمـوال مـن قبل المنظمة ولاحظ أن المسمى المختار بوشوشة هو مـن أمـره بالسـفر إلـى الجزائر والإتصال بشخص هناك وتمسك ببقية تصريحاته المسجلة عليه بمحضـر البحث وباعترافه لدى التحقيق موطنها أنه سافر إلى القطر الجزائري بــدون أي قصد وأن منذ إيقافه من طرف السلط الإيطالية أصبح يخشى الدخول إلى الـتراب التونسي وقد وقع تسليمه إلى السلطات التونسية من قبل السلطات الجزائرية بعـد أن أوقف هناك لمدة ثلاثة أشهر للتحقيق معه حول هدفه من الدخول إلـى البـلاد الجزائرية وأنه لا نية له في القيام بأي عمل تخريبــي بــالبلاد التونسـية وفـي خصوص تنظيم " أهل السنة والجماعة " بأوروبا ذكر أنه لا يوجد أي تنظيم بهـذا الإسم وغاية ما في الأمر أن مجموعة من المسلمين ينظمون إلـى الجـامع لأداء الصلاة وفي خصوص المحجوز ذكر أن البعض من الأموال المحجوزة تسـلمها من بوشوشة وهي ما يقارب الخمسمائة دينار تونسية والبقية هي أمواله الخاصـة وأكد أنه تعرض للتعذيب من قبل السلطات الجزائرية .

وحيث إعترف المتهم منير غيث بما نسب إليه لدى الباحث الإبتدائي ولـدى التحقيق مؤكدا أنه إنظم عن طواعية للتنظيم المذكور بتأثير من المتــهم يوسـف العبداوي الذي أقنعه بمبادئه وأهدافه وقد أسند له إسما حركيا على غـرار بقيـة نظرائه وهو " أبو نفيسة " ليساعده على التخفي والتعرف على أمثالــه سـيما أن نشاط التنظيم يعتمد على السرية القصوى كما أضحى يدفع مساهمات مالية شهرية ويجمع التبرعات لتمويل نشاط التنظيم وبذلك تعرف على بعض أفراد المجموعـة التونسية بشمال إيطاليا من ضمنهم المتهمين البشير زايد ورضا اليزيدي وسـامي الصيد وعبد الله الرزقي ومحمد كردوس وفيصل بن سعيد والحبيـب اللويـري ومحمد العكرمي الغرسلاوي وعفيف الماجري والحبيب قناوة الذين ولكب بمعيتهم عدة إجتماعات بالمسجد أو بمنازل تنظيمية عقـدت بإشـراف المتـهم يوسـف العبداوي الذي لقنهم مبادئ التنظيم وأهدافه وطرق عمله المعتمدة أساسـا علـى الجهاد والعمل الثوري المسلح بغاية إسقاط النظام القائم بتونس المعتـبر نظامـا كافرا وذلك بعد القيام بأعمال تخريبية وإغتيالات وتفجيرات بأرض الوطن تبـث الرعب بين المواطنين وتربك المسؤولين وهو ما يتطلب إرسال العديد من أتبـاع التنظيم إلى معسكرات بأفغانستان لإكسابهم خبرات في مجال إسـتعمال وصنـع المتفجرات وإتقان حرب العصابات وإستعمال مختلف الأسلحة وفي ذلك الإطـار تحصل هو خلال سنة 1998 من المتهم يوسف العبداوي على جواز سفر إسـباني مزور يحمل صورته وهوية مغايرة لكنه لم يتمكن من السفر إلى أفغانستان بسبب

الإيطالي حقيقة نشاط بعض قياديي التنظيم خلال أوائل سنة 2001 عندما رغـــب
مجددا في التحول إلى أفغانستان وأضاف أنه تم تكليفه من طرف مشرفه المتـــهم
فيصل بن سعيد بالعودة إلى أرض الوطن خــلال شــهر أوت 2001 لاستطلاع
الوضع العام بالبلاد والتأكد من مدى وجود رقابة ويقظة أمنية طالما وأنـــه غيـر
معروف من طرف مصالح الأمن التونسية مع محاولة انتداب أنصار جدد للتنظيم
بالداخل إلا أن عملية إيقافه حالت دون ذلك . وبالجلسة أنكر كليا ما نسب إليــه
وذكر أن تصريحاته لدى الباحث والتحقيق أنتزعت منه قسرا نافيا صدورها عنه
وقد تم تهديده بمواصلة البحث معه لدى قلم التحقيق بالداخلية وأنه لم ينتم البتــة
لتنظيم يدعى " أهل السنة والجماعة " ولم يفكر بالإطاحة بالنظـــام ولا بـــالتخويف
والترويع وأنه طلب تكليف محام قطع من ذلك في مرحلة اســتنطاقه لـدى قلم
التحقيق ونفى أن تكون له علاقة متينة بالمتهمين البشير وعبد الباسط فالأول كانت
معرفته به سطحية في لقاء أو لقائين بمناسبة صلاة الجمعة ولم يقطنا مع بعضهما
بمسكن واحد وبالنسبة للمتهم عبد الباسط فإنه لم يشاهده إطلاقا إلا بمناسبة هــذه
القضية بالسجن المدني .

وحيث إعترف المتهم عبد الباسط الدالي بما نسب إليـه لـدى البـاحث
الإبتدائي ولدى التحقيق وصرح أنه إنظم عن طواعية للتنظيم المذكــور بعـد أن
تعرف على المتهم سامي الصيد بأحد مساجد مدينة ميلانو وتوطدت علاقتـه بـه
وكشف له هذا الأخير مبادئ التنظيم وأهدافه وعرض عليه الإنضواء صلبه تحت
إشرافه فوافقه مبديا حماسه والتزامه بالتفاني والإخــلاص وبمناسبـة حضـوره
الإجتماعات التنظيمية التي يتم خلالها تدارس مواضيع تتعلــق بمسائل فقهيـة
وعقائدية إلى جانب تعميق الفكر الجهادي بالإعتماد على أشرطة سمعية تعبويــة
وبصرية تتضمن مشاهد من معارك دارت بأفغانستان والبوسنة شارك فيها بعـض
التونسيين العاملين بشمال إيطاليا فقد تعرف على بعض أفراد المجموعة التونسـية
والمرتبطة بتنظيم "أهل السنة والجماعة "من ضمنهم المتهمين المختار بوشوشـة
وعادل سلطان والمهدي كمون والحبيب الوذاني والبشير والبشير زايد وطارق الشــرعبي
وفريد الحمدي وعز الدين سلام وعادل بن مبروك شهر " البوغانمي " وأضـــاف
أن مشرفي التنظيم كانوا حريصين على تسفير عناصره إلى أفغانستان حتى يتلقوا
تدريبات عسكرية تكسبهم خبرات قتالية في ميدان حرب العصابات والتفجيــرات
واستعمال مختلف الأسلحة في إطار التحضير لتنفيذ أهداف التنظيم المتمثلة فــي
عمليات تخريبية تستهدف المواطنين والمنشــآت والمؤسســات الحيويــة بـالبلاد
التونسية لبث الرعب والبلبلة والإخلال بالأمن بنية الإستيلاء على السلطة وإقامــة
نظام أصولي ديني يها ومن بين هؤلاء المتهمين عز الدين سلام والمهدي كمــون
وعادل بن مبروك شهر "البوغانمي" وفي أوائل سنة 2001 طلـب ( هـو ) مـن
المتهم سامي الصيد تمكينه من السفر إلى أفغانستان فوعده بتلبية رغبته في أقـرب
فرصة إلا أن عملية إيقافه من قبل مصالح الأمن الإيطالي إلى جانب كـــل مـن
مختار بوشوشة وعادل سلطان وطارق الشرعبي والمهدي كمون حالت دون ذلك
خاصة وقد تم إكتشاف حقيقة نشاطهم مؤكدا انه ونظرا لوضعيته الأمنية السـليمة
بتونس فقد كلفه مشرفه الجديد المعروف باسم " محمد بولونيا " بالعودة إلـى أرض
الوطن خلال شهر أوت 2001 وهي فترة العودة المكثفة للمواطنيــن المـهاجرين

رب ... مستشرح الأوضاع بالداخل وإعداد تقارير مفصلة يمكن إستغلالها في
إعداد البرامج المستقبلية للتنظيم غير أنه وبمجرد عودته تم التفطن لأمره وألقي
عليه القبض . وبالجلسة أنكر ما نُسب إليه وذكر أن أقواله المسجلة عليه من
طرف الباحث الإبتدائي والتحقيق انتزعت منه مضيفا أنه سافر إلى إيطاليا في
فيفري 1990 وتعرف على إمرأة إيطالية هناك أين أصبح يقيم وكانت حياته
طبيعية جدا ولم ينظم إلى أية جهة من الجهات أيا كانت وهو فعلا يقوم بفريضة
الصلاة بمختلف المساجد الموجودة بميلانو وكان قرار إقامته الصلاة إثر
مشاهدته لبرنامج تونسي وهو في حالة توعك صحي شديد إنتابه إثر تناوله
المخدرات والكحول دون أن يقع إستقطابه من أي طرف كان . وأكد أنه لم يقع
إعلامه بمثوله أمام قاضي التحقيق الذي إختصر سؤاله حول هويته والأموال التي
بحوزته وبمبلغ أجرته وقيمتها بالعملة التونسية وأعلمه قاضي التحقيق بأن التحقيق
ما زال متواصلا فلم يعلم بانتهائه معه إلا من طرف محاميه وأضاف أنه لم يقع
إعلامه بإمكانية إحضار محاميه لدى التحقيق كما لم تقع توجيه التهمة عليه من
طرف قاضي التحقيق وذكر أنه لم يقع إيقافه أو بحثه من طرف السلطات
الإيطالية في أي موضوع كان .

وحيث تعذر إستنطاق بقية المتهمين لتحصنهم بالفرار ورغم صدور
بطاقات جلب ضدهم إلا أنها أرجعت بدون إنجاز لعدم العثور عليهم .

وحيث تضمن التقرير الإرشادي الصادر عن إدارة أمن الدولة تحت
عدد 2/08 بتاريخ 11 أوت 2001 أنه على إمتداد السنوات الأخيرة تكونت بالشمال
الإيطالي وخاصة بمدن بولونيا وميلانو وفاريزي مجموعة من التونسيين وقع
إنتدابهم من قبل بعض الأجانب السلفيين المنتمين لما يسمى
" بأهل السنة والجماعة " الذي هو تنظيم يتكون من حركات ومجموعات مختلفة
الجنسيات تتبنى الفكر السلفي وتجمع على تكفير الأنظمة العربية بما فيها النظام
القائم بتونس وتدعو إلى الجهاد المسلح كفرض بهدف الإطاحة بها ويدير
المجموعة التونسية المتهم سيف الله بن حسين المتواجد بأفغانستان فيما تولى
تسييرها بشمال إيطاليا المتهم يوسف العيداوي الذي خلفه بعد إيقافه من قبل الأمن
الإيطالي سنة 1998 المتهم سامي الصيد وهذا الأخير تم إلقاء القبض عليه خلال
شهر أفريل 2001 وأحيل على القضاء الإيطالي بمعية المتهمين المختار بوشوشة
وطارق الشرعبي والمهدي كمون وعادل بن سلطان بتهمة تكوين عصابة إرهابية
وترتبط المجموعة بعلاقات وثيقة مع المتهم فتحي المسعودي شهر " أبو الفضل "
المقيم بلندن ومع الأردني " أبو قتادة " الذي يتم إستفتاءه في أمور عقائدية
وشرعية . وسعت المجموعة السلفية التي تكفر النظام التونسي وتبيح الجهاد
المسلح ضده منذ سنوات إلى إستقطاب الأفراد وتكوينهم عقائديا وعسكريا إذ يتم
تسفيرهم بواسطة جوازات سفر مزورة إلى أفغانستان عبر سويسرة ليتلقوا
تدريبات عسكرية كما ربطت علاقات وثيقة مع جماعات أصولية جزائرية مسلحة
مثل الجماعة السلفية " للدعوى والقتال " و جماعة " الباقون على العهد " وتم
توجيه بعض العناصر إلى التراب الجزائري للإنخراط في تلك الجماعات ريثما
يتكاثر عددهم وتتوفر الظروف والإمكانيات المادية لمباشرة أعمال تخريبية
مسلحة بأرض الوطن .

وحيث تم حجز عدد ثلاثة أوراق نقدية من فئة الخمسمائة ألف ليرة إيطالية



The Permanent Military Court in Tunisia
No. 12101

Copy of the Judgment

Criminal Judgment

With the blessings of God:

The Permanent Military Court in Tunisia has issued the following verdict during its regular session that was held on Wednesday Jan. 30, 2002 under the criminal code of the law.

With the Chairmanship (Presidency) of Mr. Al-Bashir Zarkuna
And the membership of:

- Major Al-Manji Baram
- Captain Mohammad Al-Turaiki
- Captain Hinda Al-Habubi

And with the participation of a representative from the Public counselor: Captain Dhafir Al-Shitaiwi

And with the assistance of the court clerk: First Sergeant Fathi Al-Mardasi

The following verdict was issued for public interest:

The accused from the other side are:

1- Al-Bashir Bin Hasan Bin Bashir Zayid, and the son of [Mother's name] Zahra Bint Ahmad Al-Dhib, and was born on June 6th, 1967 at Al-Nafitha and who resides at the province of Susa.

2- Munir Bin Mohammad Uthman Ghaith, and the son of [Mother's name] Nafisa Naqra, and was born on 01 January 1971 at Al-Qairawan and a resident of Nahaj Ali Al-Zawawi, Number 4, Al-Qairawan, married and has children.

3- Abdul Basit Bin Abdul Aziz Bin Ali Al-Dali, and the son of [Mother's name] Sharifa Al-Damni, and was born on 04 January 1969, and a resident of Al-Maraj valley at Shatir, Banzarat Road, he is single.

4- Saif Allah Bin Umar Bin Mohammad Bin Husain, and the son of [Mother's name] Safiya Bint Husain, and was born on 04 November 1965, and a resident of 06 near Libya, Hamam Al-Anaf Bin 'Arus.

5- Sami Bin Khamis Bin Saleh Al-Said, and the son of [Mother's name] Biyat Al-S'adani, and was born on 10 February 1968, and a resident of the military neighborhood, Al-'Awainah, number 260, Tunisia.

6- Al-'Asad bin Mohammad Al-Farjani Sasi, and the son of [Mother's name] Shalbiyah Sasi, and was born on 10 December 1969 in Tunisia, and a resident of Asad Ibn Al-Furat, number 17 Al-Yasminiyat Qartaj.

7- Abdul Wahab Bin Jalul Bin Mustafa Humaid, and the son of [Mother's name] Hawat Bint Mohammad, and was born on 14 December 1964, and a resident of Basuja, Ghar Al-Milh Banzarat.

8- Ziyad Bin Abdullah Bin Umar Al-Riyabi, and the son of [Mother's name] Huriyah Al-Tabi'ee, and was born on 09 April 1970, and a resident of Balfi Street, number 24, Al-Wardiya, Tunisia.

9- Zuhair Bin Abdullah Bin Umar Al-Riyabi, and the son of [Mother's name] Huriyah Al-Tabi'ee, and was born on 26 September 1971, and a resident of Al-Tabri, number 12, Sulaiman Nabil area.

10- Al-Mukhtar Bin Mohammad Bin Mukhtar Bushusha, and the son of [Mother's name] Hadiya Banur, and was born on 13 October 1969 in Tunisia, and a resident of Al-Zayteen neighborhood, number 06, Al-Umran, Tunisia.

11- Yusif Bin Abdul Baqi Bin Yusif Al-'Abdawi, and the son of [Mother's name] Fatima Al-'Abdawi, and was born on 04 September 1966 at Al-Rihan mountain, Al-Qairawan, and a resident of Al-Rihan mountain, Al-Qairawan.

12- Fathi Bin Al-Bashir Bin Al-Huwaimal Al-Masudi, and the son of [Mother's name] Al-Zaziyah Ammar, and was born on 16 February 1968, and a resident of number 22 area 1117, Al-Tadhaman Aryana neighborhood.

13- Al-Habib Bin Ali Bin Saeed Al-Wadhani, and the son of [Mother's name] Al-Aisha Bint Mohammad, and was born on 01 June 1970, and a resident of area 3033, number 09, Hilal neighborhood, Tunisia.

14- Al-Habib Bin Mohammad Mahmud Qanawat, and the son of [Mother's name] Salamah Al-Mathluthi, and was born on 26 December 1960, and a resident with the children of Abdullah Al-Nafitha.

15- Ridha Bin Salih Bin Mabruk Al-Yazidi, and the son of [Mother's name] Fatima Bint Mohammad, and was born on 24 January 1965, and a resident of Al-Tahrir neighborhood, Al-Nafitha, Susa.

16- Tariq Bin Al-Bashir Bin Amara Al-Sharabi, and the son of [Mother's name] Hadi Al-Sharabi, and was born on 31 March 1970, and a resident of Al-Zahruni, Al-Aqaba.

17- Khalifa Bin Al-Dhawi bin Khalifa Bin Hasan, and the son of [Mother's name] Fafa Al-Ziyadi, and was born on 25 August 1986, and a resident of Ali Pasha neighborhood, home of Buzalfa.

18- Al-Hashmi Bin Salim Bin Umar Razeeq, and the son of [Mother's name] Shalbiya Bint Ali, and was born on 26 April 1973, and a resident of Al-Ajanaqa.

19- Al-Azhar Bin Mohammad Bin Al-'Abid Al-Talifi, and the son of [Mother's name] Al-Sayyada Bint Saleh, and was born on 26 March 1969, and a resident of Al-Bandiya neighborhood.

20- Ma'az Bin Abdul Qadir Bin Ahmad Al-Fazani, and the son of [Mother's name] Fatima Al-Shaikhawi, and was born on 23 March 1969, and a resident of Umm Darman neighborhood, number 2, Al-Zahruni, Tunisia.

21- Jabir Bin Ali Bin Al-Bashir Al-Tarabulsi, and the son of [Mother's name] Mabruka Al-Yazidi, and was born on 11 September 1972, and a resident of Libya Street, number 09, home of Tamim Nabil.

22- Shihab Bin Mohammad Bin Mukhtar Al-'Iyari, and the son of [Mother's name] Fatima Al-Tumi, and was born on 19 December 1965, and a resident of Al-Khabar Bardu.

23- Adil Bin Al-Azhar Bin Yusif Bin Sultan, and the son of [Mother's name] Hidat Bint Ali, and was born on 14 July 1970, and a resident of Al-Khadra neighborhood, Tunisia.

24- Najib Bin Bal Qasim Bin Mohammad Al-Shahidi, and the son of [Mother's name] Amina Bint Qasim, and was born on 02 February 1961, and a resident of Tunisia.

25- Al-Mahdi Bin Mohammad Bin Mohammad Kammun, and the son of [Mother's name] Radhiya Bint Mohammad, and was born on 03 April 1968, and a resident of Bab Al-Jadeed, Tunisia.

26- Mohammad Bin 'Ayad Bin Mohammad Kardus, and the son of [Mother's name] Aisha Qanuna, and was born on 04 February 1962, and a resident of Al-Anteet neighborhood, number 77 Al-Zahruni.

27- Abdullah Bin Saleh Bin Ahmad Al-Razuqi, and the son of [Mother's name] Rabah Al-Qabeel, and was born on 12 February 1958, and a resident of Al-Zandalah Nasaan Bin Aroos.

28- Farid Bin Al-Sadiq Bin Bal Qasim Al-Hamdi, and the son of [Mother's name] Manufiyah Al-Zawawi, and was born on 17 April 1970, and a resident of Al-Imam Sahnun area, number 23, home of Burqiba.

29- Afif Bin Umar Bin Ali Al-Majri, and the son of [Mother's name] Shadhaliyah Al-'Awni, [remaining line at the top of page 3 is illegible]

30- Izzedin Bin Idris Bin Hamda Salam, and the son of [Mother's name] Manubiyah Al-Hadhaili, and was born on 14 June 1967, and a resident of Al-Tahir Street.

31- Faisal Bin Al-Shadhali Bin Al-Bashir Bin Saeed, and the son of [Mother's name] Biyah Fateh Allah, and was born on 08 November 1964, and a resident of Al-Habib Street.

32- Al-Habib Bin Ahmad Bin Al-Teeb Al-Lubairi, and the son of [Mother's name] Fataimah Al-Jalasi, and was born on 17 November 1961, and a resident of Al-Damoos, home of Tamim Nabil.

33- Mohammad Bin Mohammad Bin Saleh Al-Gharsalawi, and was born on 12 August 1965, and a resident of Bir Al-Halu, Al-Sharada, Al-Qairawan.

34- **Adil Bin Mabrouk Bin Hamida Bin Mabrouk** and the son of [Mother's name] Habiba Hasan, and was born on September 15th 1970 and a resident of 17 Nahaj 4339 Al-Zahruni, Tunisia: Al-Bashir Zayid, Munir Ghaith and Abdul Basir Al-Dali.

The first three were present in the court and a request was made to the military representative in Tunisia to make an attempt to bring the others on this date on the basis of presenting identity cards from the clerk of this court dated on the date of their accusation for being members of a terrorist organization that works abroad and instigating with the objective of taking revenge from specific individuals and on properties and to work on instigating hate and religious fanaticism as per the two clauses; 123 from the military punishment journal and clause 52 that is part of the criminal law

Activities of the Session

In a session on Wednesday December 19th, 2001, the first three accused were brought in a state of detention: Al-Bashir Zayid, Munir Ghaith and Abdul Basit Al-Dali.

The first was represented by professors [lawyers] Rauf Al-Aiyadi and Samir Bin Umar. The second was represented by the professor Khalifa Hafsa and professor Samir Ibn Umar. The third was represented by professors Al-Ajami Bil-Haj Hamuda and Samir Bin Umar Anwar Al-Qasuri.

After confirming the identity of the accused and comparing them with what appeared in the decision of the directorate of accusations, it was found that they were identical and therefore this decision was made under the legal clauses that appear and the punishment that is required by the clauses.

After writing down the statements of the accused, the accused Bashir stated that he traveled to Algeria from Italy with the intention of getting married and nothing else. He confessed that he received money from an organization.

It was noticed that the so called Al-Mukhtar Bushusha is the one who ordered the travel to Algeria and make contact with a person there and he repeated his other statements that are recorded in the journal and his confession to the investigator explaining that he traveled to Algeria without any reason and that since his detention by the Italian authorities, he was afraid and reluctant to enter Tunisia. He was handed over to the Tunisian authorities by the Algerian authorities after he was detained in Algeria for three months for interrogation concerning his motives in entering Algeria and that he had no intention of carrying out any subversive activities in Tunisia.

Through a committee of the court, professor Samir Bin Umar was asked a question concerning the existence of an organization in Europe which is called "Ahal Al-Sunna Wal-Jama'a", he replied that no such organization exists with this name, the fact of the matter is that a group of Muslims belong to a mosque to pray and this has nothing to do with the detainee.

The accused Bashir stated that some of the money that he received was given to him by Bushusha which was equivalent to five hundred Tunisian Dinars and the rest of the money was his own private funds. He stated that he was subjected to torture by the Algerian authorities.

In a statement, that is recorded with the initial investigation report and with interrogation department, it was noted that his statements were taken by force which he denied making. He was continuously threatened by the interrogators who work under the ministry of interior. He was never a member of Ahal Al-Sunna Wal-Jama'a organization, he never thought of overthrowing the government or to terrorize and spread rumors.

He was offered a lawyer and he declined it during the time that he was being interrogated.

The accused Munir denied that he ever had strong relationships with the accused Al-Bashir and Abdul Basit. The former was known to him only on a casual manner through one or two meetings during Friday prayers and during their disagreement at a residence. Regarding the accused Abdul Basit, he had never met him until he saw him in the civil prison. Both the accused Al-Bashir and Abdul Basit supported this statement.

In a written statement on the accused Abdul Basit, he denied what has been labeled on him, retreating on all the statements that are recorded as being his with the interrogators

and the initial investigation, he noted that those statements were taken from him by force. He added that he traveled to Italy during February of 1990 and met an Italian woman at the place where he was residing. His life was very normal and he did not belong to any organization whatsoever. He added that he performs prayers at different mosques in Milan.

After being asked by Professor BelHaj Hammuda, he confirmed to become religious and committed after watching a Tunisian program when he was in a very depressed condition after taking drugs and alcohol, he did not fall under the influence of anybody. After being questioned by Professor Samir Bin Umar, he stated that he was not informed about being brought to investigative judge, who limited his questioning concerning his identity and the funds that were in his possession and its equivalent in Tunisian currency. He stated he thought that the interrogation is still going on and he did not know that the interrogation has ended only after being informed by his lawyer. He confirmed that he was not informed about the possibility of his lawyer being present at the time of interrogation.

It was noted that charges were made against him by the interrogation judge [maybe the prosecutor], he was also not detained or sought by the Italian authorities for any reason whatsoever. All the accused confirmed that they were not those who were detained by the Italian authorities for security reason during the 1998 Soccer World Cup championships.

Professor Khalifa Hafsa demanded that his client Abdul Basit be temporarily released, the other professors asked the release of their clients, the general counsel was tasked to look into the delay and find out the defense and lawyers for the accused who are not present and have escaped and are fugitives.

The court decided to postpone the decision to another session to look into the demand of release and postpone the case to January 30 2002, this was done as a result of the demand by the defense and assigning professor Abdul Razzaq Ba'tur to defend the individuals who have escaped.

At the last session and after consulting and taking legal advice and getting the majority as per clause 162 from the criminal procedures journal, the court decided not to accept the release demands.

During a session on 30 January 2002, the accused Al-Bashir, Munir and Abdul Basit were brought in a state of detention; the others who had escaped were not present. Professor Mohammad 'Abbu attended and announced that he is representing Abdul Basit, Professor Abdul Wahab Al-Mu'ti was representing Bashir and Munir, and Professor [female] Lutfiya Al-Habashi, presented herself to represent [the three words of the next page are illegible] who were recorded with them in the previous session.

The general counsel stated that the serious criminal acts that were planned on the state, against specific personalities and vital establishments that have been attributed to the accused with the purpose of destabilizing state through terrorism and confusion in the ranks of citizens. In addition to that, this organization and their doubtful activities of

collection of financial donations and the smuggling of drugs and weapons and money laundering to collect funds and use them to destabilize the Tunisian government.

These charges are labeled against all who have been listed herein and on this basis, is asking the court to apply the law and issue a verdict with hard punishment with due administrative review.

Professor Abdul Al-'Aiyadi stated on behalf of his client which he thought was appropriate mentioning that this case has received a lot of publicity in the media and in particular the newspaper and therefore a lot has been attributed to it contrary to the original case. All documents that are available in the files are nothing but pointers, the entire case is built on a guided report by a special team that is part of the state security. He noted that his conclusion as derived from what is available with the state security is literally same as what is available with the interrogation team which is not possible. It is clear from that what has been concluded was done internally and has been repeated what was taken earlier.

Therefore, the issues have been taken for granted whether with the state security or with the interrogation and as a result it is not considered to be an exercise to find facts. He noted that concerning the things that have been attributed to his client as regards to Jihad, all religious sects urge to do Jihad and it is a duty which has internal convictions, however the law is not punishing on beliefs or leanings rather on actual activities. On this basis, he demanded that the court does not hear the case.

The female Professor Lutfiya Al-Habashi raised the argument on behalf of her client Bashir Zayed which she thought as appropriate mentioning that the research folders are missing the legal protections, the most important of those is appointing the defense counsel for her client whether it was from the state security team or the investigating counsel general, adding that what has been written with the investigating counsel is a copy of what was written with the initial primary report. She noted that what has been presented has nothing to do to charge her client and requested the court on this basis not to listen to the case.

Professor Samir Umar and defended his client which he saw as appropriate, stating that there was a major breakdown [violation] of the law concerning the interrogation of the accused, noting that all his clients were subject to hardship and torture. He added that fraud has taken place in the files and reports, the first of those was the method his client Al-Bashir Zayed was detained.

The reports indicate that action against him started in Tunisia, however he was arrested by the Algerian authorities and the government published a report in all the newspapers and magazines of this fact, noting that this has been raised in many cases in this court.

He also noted that he has appeared in many cases on the same subject in this court and noticed that the same investigating judge appeared himself in all the previous cases and that all the accused confess to whatever charges are made against them whether it was in

7

this case or the previous cases without the appearance of [illegible] to take the responsibility to defend them. Therefore they have been listed in the report, and this is considered to be fraud.

Besides this, one of those that he is representing Al-Bashir Zayed, demanded that he be examined by a physician and recorded his demand in the journal of detainees, however he did not receive that and therefore this is considered as a violation and breach of law and in particular for the current case in contrary to what the general prosecutor has labeled against him as there is no mention in the case file that confirms the existence of the organization whether it was mentioned in the report of the state security and there is also no existence of anything that condemns one of his clients.

[page 6 starts with four illegible words] the mentioned activities in the file are related to the accused at large and therefore there is nothing material that is attributed to his client and he is astonished for bringing his clients Munir Ghaith and Abdul Basit Al-Dali to this court for what is being allegedly being attributed to them, adding that the reason his client Munir Ghaith returned back to the homeland [Tunisia] to obtain 3 special [ID] cards and that his client had contacted the Tunisian consulate in Italy and they confirmed to him there that those cards can be issued only from the local offices in Tunisia itself.

Beside that the Italian security searched the homes of his clients in Italy and nothing was confiscated that could be considered to be as an evidence to the charges that are being attributed to him. He noted that all that is being attributed to his client are statements that were taken through torture, he presented a translated copy of the detention order and asked the court to throw the case out.

Professor Mohammad Abu stated on behalf of his client which he thought was appropriate, stating that this case has taken a political flavor and the fact of the matter is that there are some special interests who want to remove some high political positions through these highly publicized cases.

Even if we assume that this organization does exist, it is not anti Tunisian government and its target is not the Tunisian system at all. Adding that his client's signature on the investigative report with the initial research investigator was to avoid even more torture and as a result of this there is forgery in the investigative report. These are the same statements that are with the initial investigator. They also did not comply with all the legal guarantees as they denied him access to a defense counsel to defend him.

He noted that there are personalities that insist that there are terrorists and that Tunisia is doing something special concerning those after the September 11 incidents and that to serve their special interests and he demanded on this basis that the court throws the case out.

Professor Anwar Al-Qasuri stated on behalf of his client which he thought was appropriate. He said that his client was called by the state security as a witness and he was shown several photographs of individuals who lived in Italy and he answered them

truthfully, he stated whoever he knew and with his organizational name and his client was detained for three days and after that it was decided to detain him permanently and prepare a research report against him, he hated signing it [signed under pressure] and the report was not read to him for him to know on what he was signing. He stated that whatever is present in the initial report or the interrogation his client did not know about it until he was in prison and by his lawyer, this is a major violation of the law and a dangerous precedent.

Beside that, investigation in a terrorist case cannot be less than several months and this current case has completed all its work within one month. Beside that, the investigative judge violated clause 69 from the criminal code. It was also necessary for the investigative judge to travel to Italy under the bilateral jurisprudence agreements between the two countries in order to investigate if this organization existed or not and to listen to some of the accused detainees in the Italian prisons and charged under this court in absentia, among them is Sami Al-Said. It was also necessary for the investigating judge to bring documents and video cassettes that confirm the charges on his client.

Beside that the guiding report is not a legal work and it is not possible to depend on it at all as far as facts are concerned as his client was confessing to the initial investigator and then denied to the committee. This is an evidence on the untruthfulness of what has been written down previously which was taken from him by force. On this basis he demanded that the procedures be stopped as a precautionary measure and issue an order on not listening to the case. He presented a report that was added to the file.

Professor Al-Ajami BilHaj stated on behalf of his client which he thought to be appropriate stating that his client has a special characteristic and that is he is not being denied from anything and also that he is not being pointed by any of the other charged and that the Italian authorities did not charge him and no criminal activity was labeled against him. His presence there was legal. He added that all that the accused did was not get involved in any confrontation and he questioned if this court is qualified to look into this case. There was another point, in spite that some of the accused have confessed, there has to be some material evidence that supports the charges that attributed to the accused and that among them is his client.

He added that their confession to the committee is the legal mirror and that for one reason which is that there was no pressure put on them whether material or psychological pressure. What they stated in the previous session is a matter of fact and therefore whatever is recorded in the reports by the initial investigator was taken from them through pressure and torture. He added that it was possible to apply clause 305 from the legal code. He questioned if the Italian law criminalizes what is attributed to his client. Therefore there has to exist a diplomatic document in the file and on this basis asked the court not to listen to the case regarding the charge on clause 52.

The charge documents state that his client is attributed to belong to a terrorist organization that operates abroad and in fact such an organization does not exist at all and there are no evidence to prove this and there is no detainee that can prove the charge

concerning his client Abdul Basit as he entered the Italian territory in a legal way and obtained legal residence permit and documents. Over and above that he started a business on which large amount of money has been spent and therefore is it logical for his client to be able to belong to this organization.  The fact of the matter is that his client was involved in a car accident which could have taken his life as he was involved in drinking alcohol and taking drugs. When he regained consciousness, he decided to ask for repentance.

All this proves that he did not come under detention that charges for money, weapons and lists of names. Even if he attended a meeting in a mosque in Italy, it is not possible to charge him for this. He asked the judge on this basis not to hear the case concerning the two charges that attributed to his client.

Professor Khalifa Hafsa came forward and stated on behalf of his client which he thought was appropriate, saying that the most difficult element of the case on hand is the element of interrogation and investigation, as there was a legal violation and on the other hand is concerning the substance of the case. As his client traveled while he was young in age and has clean background and does not hold any political affiliations. He also has the responsibility to support his family and children as well as being in charge of a company. All that is taking place is that he is performing his religious duties, like performing daily prayers and sometimes he performs them in a mosque.

If his client had any intentions of joining a terrorist organization then he would not have married and would not have had a company employing fifty employees. Besides that his client was never mentioned anytime during the investigation stages. His first confession was taken under coercion and torture, and it is nothing but a confession. He demanded on this basis that either to perform the proper procedure in collecting investigation and gather information or issue an order not to listen to the case.

He presented a report accompanied with supporting documents in the file. Professor Ba'tur appeared and demanded that his presence to be recorded as being present representing all the accused in absentia.

The prosecutor in replying to the lawyers noted that the crime under clause 123 from MM AA is a specialized work of this court to return to paragraph one of chapter 5 from the same journal and that has been published in the media are the basic procedures as per the rules of chapter 21 of the same journal. He also stated that all the accused and the lawyers hardly approach him concerning the initial investigation procedures or to the interrogation. There is nothing in the file, it was necessary for all concerned to use the legal methods.

All the professors held to their opinions, professor Bil Haj Hamuda added that he is not arguing regarding the specialization of this court, rather he is arguing concerning some documents.  The accused Bashir Zayed demanded from the court to get released, the accused Munir Ghaith demanded from the court not to hear the case, the accused Abdul Basit demanded from the court not to hear the case.

The court decided to postpone the hearing to another session for consultation and issue an order, and after the legal consultation and obtaining the majority as stated in chapter 162 of the criminal code journal, we reached the following verdict, with the following text:

Concerning reference and facts

With reference to the department of military charges at the appeals courts in Tunisia concerning verdict number 60811 issued on 06 November 2001 regarding the accused who are identified in the list of this court for their involvement of belonging to a terrorist organization that operates abroad with the intention of inciting disturbances and avenging from individuals and properties and to work in inciting hate and religious fanaticism as per clause 123 from the military punishment and clause 52 from the criminal law.

As the research and investigation has shown in the case that during the duration between the years 1996 and 2001, the accused whose identities are shown here, traveled to Italy to settle and live there. However at different times they belonged to a group called "Ahal Al-Sunna Wal Jama'a", which has Salafi beliefs [TN: Religious ideology, the root of Wahabi sect that is predominant in Saudi Arabia] and its members are from different nationalities that declares Arab governments as being infidel including the current system in Tunisia. It also calls for overthrowing the government through armed revolutionary work with the objective of establishing fundamental religious government in its place.

The accused Saif Allah bin Husain used to administer the social affairs of the Tunisian group from Afghanistan on what was going on in northern Italy. Besides that the accused Yusif Al-Abdawi, Sami Al-Said and Faisal Bin Saeed, established strong relationshipswith fundamental organizations for example the Taliban movement in Afghanistan and armed Algerian groups including the Salafi group "Al-Dawa Wal Qital" [Preaching and Fighting] and the organization "Al-Baqoon 'Ala Al-'Ahad" [Steadfast to the Promise].

They were also in contact with the accused Fathi Al-Masudi known as "Abu Al-Fadhal" and a Jordanian individual known as "Abu Qatada", both of these were living in London to get their consultation and advice on facilitating the affairs of the group. The accused were devoted in attending secret meetings that were held in the city of Milan with the objective of the first stage of establishing themselves religiously and in believes.

The next stage will be to teach them the principles of the organization and its objectives that is based on the necessity of overthrowing the established system in Tunisia through Jihad and armed revolutionary action after confusing it by carrying out sabotage and disturbances by attacking vital properties and establishments, and the sovereign offices, taking of life and destabilizing the security and creating terror in the hearts of the citizens and weakening the principles of the state with the objective of establishing a fundamentalist religious system in its place.

These teachings are based on some references that were formatted by Salafi authors based on the book "Sharh Al-'Umdah Fi 'Idad Al-'Idah" by the Saudi author "Abdul Qadir Bin Abdul Aziz".  In addition to this, several morale boosting audio recordings that go deep in the concepts of the ideology of Jihad. As well as video recordings that were show scenes from battles that took place in Afghanistan and Bosnia [TN: First few words of page 9 are illegible], the mentioned are members of a Tunisian group who hold movement names that help them to hide and to know and identify each other.

They were also trying to attract new elements from the youth that worked in Italy with clean security background and who were giving monthly financial donations which was different from person to person. They used to also collect donations that helped cover the expenses of the organization.

Some of them dealt in trading drugs, for example the accused Al-Habib Al-Wadhani known as "Saksaka". Or in the trading of forged currencies and stolen cars for example the accused Al-Habib Qanawat to finance their activities implementing the Fatwa [Religious decree] issued by the Jordanian "Abu Qatadah" which gave permission to exploit the income received from theft and trading of drugs and forged currencies to in putting the effort to achieve the objectives of the organization.

The purpose was to send several individuals from the Tunisian group to Afghanistan by using forged passports so that they can receive military training to learn the art of fighting and guerrilla warfare and learn the use of different weapons and explosives in preparation to infiltrate inside the country to carry out destructive acts on the homeland.

Among them are the accused Sami Al-Said, Mukhtar Bashusha, Ridha Al-Yazidi, Mahdi Kammun, Abdul Wahhab Hamid, Izzedin Salam, **Adil Mabrouk known as "Al-Bughanmi"**, Ma'az Al-Fazani, Khalifa Bin Hasan, Al-Hashmi Razeeq, Shihab Al-'Aiyari, Jabir Al-Tarabalsi, Najib Al-Shahidi, Al-Azhar Al-Talili, Adil Sultan, Ziyad Al-Riyabi and his brother Zuhair Al-Riyabi, who were received by the accused Said Allah Bin Husain and facilitated their accommodation at the Afghan military training camps.

Some of the accused were sent to Algeria for the same purpose as a result of coordination that took place between Yusif Al-'Abdawi and Al-Mukhtar Bushusha from one side and the officials of the armed movement "Steadfast to the Promise" from the other side represented by Abdul Rahman Abu Jamil and Saeed Yatawala as the persons in charge of the organization by receiving the Tunisian elements and providing them military training and making them participate in battles with the Algerian forces, waiting to get enough numbers of trained individuals who could be used directly in armed operation in Tunisia using Algerian territory as a safe heaven.

Among these accused are As'ad Sasi, Abdul Wahab Humaid, Ziyad Al-Riyabi, Zuhair Al-Riyabi and a peson called Sufyan known as "Mahmud.  During the early 2001, the real motives of the accused activities was found by the Italian security forces as some of them were under administrative surveillance.

Sami Al-Said, Al-Mukhtar Bashusha, Adil Sultan, Al-Mahdi Kammun and Tariq Al-Shar'abi were detained. The accused Al-Bashir Zayed was called by the Italian security and along with supervised media, they indicated that they are moving their activities to Algerian territory similar to his other colleagues within the "Steadfast to the Promise" movement and gave him funds in a foreign currency with a value of more than two thousand Dinars of the Tunisian currency.

Then he moved to Spain through France where he was approached in the city of Valencia by an Algerian person called "Bin 'Awdah". On 15 April 2001, he moved from Spanish seaport Bakanti to the Algerian seaport of Wahran. However as soon as he reached there he was under surveillance by the Algerian security authorities. He was released after being detained for three moths, and he chose to return back to the homeland awaiting instructions from his supervisors.

During the month of August 2001, the two accused Munir Ghaith and Abdul Basit Al-Dali returned to Tunisia with instructions from their supervisors to survey the situation in the country and prepare reports for the purpose, however the Tunisian security authorities were able to detain them after finding out their motives and as a result of that an immediate investigation started on the case.

The accused Al-Bashir Zayid confessed to what has been labeled on him by the initial report and after investigation; he stated that he voluntarily joined a Tunisian awareness group which is active in northern Italy and is known as "Ahal Al-Sunna Wal Jama'a", which is supervised by the accused Yusif Al-'Abdawi, Sami Al-Said and Al-Mukhtar Bashusha with the supervision of Said Allah Bin Husain who lives in Afghanistan.

It is a fundamentalist Salafi religious group believes in the armed revolutionary action with the aim of brining down the established system in Tunisia which is considered to be infidel and establish in its place a fundamental government system. It also depends on secret activity, its elements hold movement names that help them to hide and stay anonymous and to know each other if necessary for example the accused Al-Bashir was confirmed to have a movement name of "Al-Tahir".

The followers of the group fall under the influence to carry out ideology by holding open meetings in mosques or secret meetings that are held in homes, starting with religious issues and reaching all the way to the Jihadi ideology.

The members are sent using forged passports to Afghanistan and Algeria to receive military training to obtain fighting skills and guerrilla warfare and the use of different types of weapons and explosives in preparation to carry out sabotage activities on the homeland in way of assassinations and explosions to vital establishments and infrastructure and attacks on sovereign buildings with the objective of creating terror and instability in the hearts of the citizens and shaking the foundations of security until the security of the state is lost and bring down the established government which is considered to be infidel and establish a fundamental government in its place.

He added that he met some others with similar views in the organization and they are the accused Ridha Al-Yazidi, Yusif Al-'Abdawi, Sami Al-Said, Al-Habib Qanawat, Al-Mukhtar Bashusha, Abdul Wahab Humaid, Abdullah Al-Razuqi, Mohammad Kardus, Najib Al-Shahidi, Al-Mahdi Kammun, Saif Allah Bin Husain, Al-As'ad Sasi, Adil Bin Sultan, Tariq Al-Shar'abi, Khalifa Ibn Hasan, Al-Hashami Razeeq, Al-Azhar Al-Talili, Ziyad Al-Riyabi, Mu'az Al-Fazzani, Al-Habib Al-Wadhani, Jabir Al-Tarabulsi, Shihab Al-'Iyari, Zuhair Al-Riyabi and Fathi Al-Masudi.

Adding that the members of organization pay monthly payments which varies from person to person. The activities of the organization is financed through donations that they collect and from the income of trading in drugs, theft and trading in forged currencies in which some of them have become specialized in implementation of the Fatwa [religious decree] that was issued by "Abu Qatadah" who lives in London and allows such kinds of activities to achieve the objectives of the organization.

Some elements have moved to Afghanistan to receive military field training, while others traveled to Algeria for the same purpose. The supervisors have strong relationships with the Taliban movement in Afghanistan and with the armed Algerian organization called "Steadfast to the Promise".

At the beginning of 1999, he received from his supervisor a forged Dutch passport that had his photograph and a forged identity with the aim of using it to move to Afghanistan through Pakistan and Switzerland. However he was denied entry into Switzerland, after getting exposed that the passport was not legitimate. Therefore his supervisors advised him to move his activities to Algeria, and in particular after the exposure of several elements of the organization by the Italian security authorities and the arrest of some of them.

Therefore he received funds from his accused supervisor Al-Mukhtar Bashusha, in Tunisian currency and at the beginning of 2001 moved to Algeria passing through France and Spain. However as soon as he reached [a few words at the top of page 11 are illegible] Algerian security authorities and he was arrested and then released. He chose to return back to the homeland, waiting to receive instructions from his supervisors. However he was detained by the Tunisian security authorities.

He confirmed that during late 1999 and on the occasion of a visit to a home of his friend in the organization the accused Al-Habib Al-Wadhani known as "Saksaka" in the city of Milan. The later showed him a quantity of weapons comprising of two pistols, a machine gun, two grenades, three guns of type "Kalashnikov", all good for use. He purchased these from a Yugoslavian person after receiving instructions from his supervisors. He was asked to hide them until a method was found to smuggle them later to Tunisia to carry out attacks and sabotage work.

During the session, the accused Al-Bashir Zayed stated that he traveled from Italy to Algeria with the sole intention of getting married only. He confessed receiving funds

from the organization and noted that the so called Al-Mukhtar Bashusha is the one who instructed him to travel to Algeria and contact a person there.

He stuck to the statements that he made and that are written in the investigative report and his confessions during interrogation explaining that he traveled to Algeria without any reason and that since his detention by the Italian authorities, he has been concerned from entering into Tunisia. He was handed over to the Tunisian authorities by the Algerian authorities after he was detained there for three months for interrogation for his objective of entering into Algeria. He has no intention of committing any sabotage work in Tunisia.

Concerning the "Ahal Al-Sunna Wal Jama'a" organization in Europe, he mentioned that no such organization exists with this name. The fact of the matter is that a group of Muslims get together in a mosque to pray. Concerning the confiscated money, he mentioned that he received the confiscated money from Bashusha, with a total amount of five hundred Tunisian Dinars and the rest of money and confirmed that he faced torture by the Algerian authorities.

The accused Munir Ghaith confessed to what has been labeled against him by the initial report and with the interrogation confirming that he joined the above mentioned organization voluntarily after getting influenced by the accused Yusif Al-'Abdawi. The later convinced him with the principles and objectives and was given a movement name similar to his other colleag'es and it was "Abu Nafisa" to help him hide and be known to his likes as the activities of the organization depends on extreme secrecy.

He also explained that he contributed monthly donations. The funds were collected to finance the activities of the organization. As a result of this, he was able to get to know some members of the Tunisian group in northern Italy among them are the accused Al-Bashir Zayed, Ridha Al-Yazidi, Sami Al-Said, Abdullah Al-Razqi, Mohammad Kardus, Faisal Bin Saeed, Al-Habib Al-Lubairi, Mohammad Al-'Akrami Al-Gharshalawi, Afif Al-Majari and Al-Habib Qanawatah, who attend several meetings with him in the mosque and the homes of the members of the organization.

These meetings were held under the supervision of the accused Yusif Al-'Abdawi who taught them the principles of the organization and its objectives and the method of operation that depends mainly on Jihad and armed revolutionary work with the sole objective of bringing down the existing government in Tunisia as it is considered to be infidel. This was to be done after carrying out sabotage activities, assassinations and explosions on the homeland that will bring terror in the hearts of the citizens and confuse the authorities.

This required sending several followers of the organization to the camps in Afghanistan to obtain expertise in the use and manufacture of explosives and obtain guerilla warfare techniques and the use of different types of weapons.

For this purpose, during 1998, he received from the accused Yusif Al-'Abdawi a forged Spanish passport which had his photograph and a fictitious identity. However he was unable to travel to Afghanistan because of [the first line of page 12 is illegible], the Italian security of his activities, some of the leaders of the organization during the early 2001, when he again wanted to travel to Afghanistan.

He added that he was tasked by his supervisor the accused Faisal Bin Saeed, to return back to the homeland during the month of August of 2001 to survey the general situation in the country and confirm the extend of government and security vigilance as long as he does not get noticed by the Tunisian security authorities. In addition to that to attract new followers to the organization locally, however his detention prevented him from doing all that.

During the hearing, he denied totally what has been labeled against him and stated that his statement with the investigators and interrogators were taken from him by force denying that they were made by him voluntarily. He was threatened by the investigators and the interrogators with the Ministry of Interior and he never ever belonged to the organization called "Ahal Al-Sunna Wal Jama'a" and he never thought of over throwing the government and neither terrorizing and scaring. He asked for a lawyer to be assigned and that was denied during interrogation. He denied having strong relationship with the accused Al-Bashir and Abdul Basit, as he knew the former only at a surface level through one or two meetings during Friday prayers and did not live in the same house. As far as the later Abdul Basir is concerned, he never saw him except during the civil prison case.

Abdul Basir Al-Dali confessed to what he was charged with the initial investigator and after investigation. He stated that he joined the above mentioned organization after he met with the accused Sami Al-Said in one of the mosques in the city of Milan and his relationship strengthened.

This person informed him the basics of the organization and its objectives and offered him to join under his supervision. He agreed showing his enthusiasm and his commitment and faithfulness and attendance of meetings through which he would study religious matters beside deepening of Jihadi ideology listening to and watching audio and video tapes that included scenes from battles in Afghanistan and Bosnia in which some Tunisians had participated who lived in northern Italy.

He met members of Ahal Al-Sunna Wal Jama'a, among them was Al-Mukkhtar Bashusha, Adel Sultan, Mahdi Kamun, Al-Habib Al-Wadhani, Al-Badhir Zayid, Tariq Al-Shar'abi, Farid Al-Hamdi, Izzedin Salam, **Adil Mabrouk known as Al-Bughanmi.**

He added that the supervisors of the organizations were very vigilant on sending its members to Afghanistan to get military training to get knowledge of guerrilla warfare and explosives and the use of various weapons in preparation of carrying out the objectives of the organization with destructive operations targeting the citizens and the vital infrastructure of Tunisia and bringing terror and confusion in the security situation in the hope of taking over the power and establishing a fundamentalist religious system. Among

those accused were Izzedin Salam, Mahdi Kammun, **Adil Mabrouk**, **known as Al-Bughanmi**. At the beginning of 2001, he [Abdul Basit] asked the accused Sami Al-Said to help him to travel to Afghanistan, he promised him to fulfill his request as soon as possible.

However his detention by the Italian security authorities beside that of Mukhtar Bashusha, Adil Sultan, Tariq Al-Shar'abi and Mahdi Kammun stopped that from happening and in particular after their truth of their activities getting exposed. He confirmed that because of his special clean security situation in Tunisia, his new supervisor known as "Mohammad Bolonia" tasked him to return back to the homeland during the month of August 2001.

This was the time period when a heavy load of immigrant citizens returned [two words at the top of page 13 are illegeible] the conditions locally and prepare detail reports which can be exploited to prepare future programs of the organizations. However, soon after his return, he was exposed and detained.

During the session he denied what has been attributed to his concerning the statements that are registered as being his by the initial investigator and interrogator which were taken forcefully from him. He added that he traveled to Italy during February 1990 and met an Italian woman there where he was living and his life was very normal and he did not join any organization whatsoever.

He stated that in fact he used to perform prayers at different mosques in Milan. The reason he became committed to praying was after he watched a Tunisian program while he was in an extreme bad health condition which resulted after taking drugs and alcohol, he was not approached or influenced by anybody. He confirmed that he was not informed being brought in front of an investigation judge who limited his questioning concerning his identity and the funds that are in his possession and its value in the Tunisian currency.

He was informed by the investigating judge that investigation is still going on, he was not informed that it has ended except by his lawyer. He added that he was also not informed that he has a right to have a lawyer at the interrogation; also that no charges have been levied against him by the investigating judge. He stated that he was not detained or search by the Italian authorities for any matter whatsoever.

As it was not possible to bring the other accused because of them being at large and fugitives and in spite of orders being issued to bring them the court is continuing without them being present.

As the guiding report that has been issued by the state administrative security under number 2/08 dated 11 August 2001, that during the last few years a group of Tunisians in northern Italy and in particular in the cities of Bologna, Milan and Firenze, were recruited by some foreign Salafi individuals who belonged to a group what is called as "Ahal Al-Sunna Wal Jama'a", which is an organization that is made up of movements and groups from different nationalities that believes in the Salafi ideology and insists on labeling the

17

Arab governments as being infidels including among them the system that exists in Tunisia and calls for armed Jihad [struggle] as a duty to bring it down.

The Tunisian group is managed by the accused Saif Allah Bin Husain who is currently in Afghanistan, its management in northern Italy is being carried out by the accused Yusif Al-'Abdawi and after his detention by the Italian authorities during 1998, was taken over by the accused Sami Al-Said, the later was arrested during the month of April 2001 and was presented to the Italian legal system along with the accused Al-Mukhtar Bushusha, Tariq Al-Shar'abi, Al-Mahdi Kammun and Adil bin Sultan with the charge of creating a terrorist gang.

The group has strong relationship links with the accused Fathi Al-Masudi known as "Abu Al-Fadhal" who lives in London and with the Jordanian "Abu Qatadah" who is consulted to give religious decrees [Fatwas] concerning religious beliefs. The Salafi group has declared the Tunisian government as being infidel and allowed armed Jihad against it for many years. They attract individuals and mobilize them ideologically and militarily and are asked to travel using forged passport to Afghanistan via Switzerland to receive military training.

They also have strong relationships with armed fundamental Algerian groups for example the Salafi group "Lil Da'wa Wal Qital" [For Preaching and Fighting] and the group "Al-Baqoon 'Ala Al-'Ahad" [Steadfast to the Promise]. Some elements have been sent to Algeria to join these groups so that their number would increase and the appropriate circumstances and financial capabilities are reached and then initiate armed activities in the homeland.

Three bank notes each of Five hundred thousand Italian Liras were confiscated

[End of page 13 and the document. There is no indication for the total number of pages in the document.]