IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMER MOHAMMON, *et al.* | ) | |
|   Petitioners, | ) | |
|  | ) | Civil Action No.:  05-cv-2386 (RBW) |
| *v.* | ) | |
|  | ) | |
| GATES, ROBERT M., *et al.*, | ) | |
|   Respondents. | ) | |

**PETITIONER'S REPLY TO REPONDENTS' MOTION OPPOSING AN ORDER
REQUIRING 30 DAYS' ADVANCE NOTICE OF TRANSFER**

Now comes Adil Bin Mabrouk ("Mabrouk"), by and through undersigned counsel, and files this reply in support of his emergency motion for an order Requiring Respondents To Provide Counsel For Petitioner And The Court With 30-Days' Advance Notice Of Any Intended Removal Of Petitioner From Guantánamo.

Mabrouk is the detainee listed as Adil LNU in the above-captioned petition for habeas relief, and he has properly invoked the jurisdiction of this Court.  Respondents maintain that, under *Boumediene v. Bush*, 476 F.3d 981, 375 U.S. App. D.C. 48 (D.C. Cir. 2007), *cert. granted,* 127 S. Ct. 3078 (U.S. June 29, 2007) (No. 06-1195), the Military Commissions Act of 2006 ("MCA") divested this Court of jurisdiction over this case, and further that "at least while *Boumediene* remains pending before the Supreme Court, the law of this Circuit [concerning the jurisdiction of federal district courts to hear Guantánamo detainee cases] remains settled."  (Opp. at 8).  In light of the decision of the D.C. Circuit Court following the Supreme Court's grant of *certiorari* in *Boumediene* to recall its order to dismiss the detainees' habeas petitions on jurisdictional grounds,

Respondents' assertions are a blatant misstatement of the current state of D.C. Circuit law. *Boumediene v. Bush,* No. 05-5062 consolidated with 05-5063, 2007 U.S. App. LEXIS 18077 (D.C. Cir. Jul. 26, 2007).

While Respondents' appreciation of the fact that it is not in the United States interest to "[serve] indefinitely as the world's jailer" is commendable, Respondents' should recognize equally the United States' responsibility to ensure its detainees will not be forcibly transferred to foreign territories for torture or indefinite imprisonment without due process of law. Contrary to Respondents' assertion, Mabrouk's claim that he will face such mistreatment upon his return to Tunisia is not merely speculative. It is based on a report by the U.S. Department of State outlining the poor human rights record of Tunisia as well as on the grim experiences of two Tunisian detainees recently repatriated to Tunisia.

In light of the facts that the U.S. State Department itself has reported torture and inhumane treatment by Tunisian authorities, Respondents' allegation that a grant of this order would interfere with Executive authority is unfounded. Foreign relations or war powers are not implicated given that Respondents have not alleged that Tunisia has expressed any specific interest in the extradition of Mabrouk or any other Tunisian detainee, and considering that reports of released detainees returning to the battlefield are conclusory and not supported by factual evidence.

Finally, while Mabrouk must show a substantial likelihood that he could successfully challenge his transfer in order to obtain the requested relief, the merits of any future decision to transfer Mabrouk are not immediately at issue in this motion. Mabrouk seeks only 30-days' advance notice of a transfer from Guantánamo Bay in order to notify his family, possibly hire counsel in the country to which he will be transferred,

and possibly seek injunctive relief if it is warranted. Accordingly, this Court should grant the requested relief.

### A. This Court has Jurisdiction to Order Respondents to Provide Advance Notice

Mabrouk properly invoked this Court's jurisdiction when he filed his habeas petition. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). Contrary to Respondents' assertion, the law of the D.C. Circuit is not settled to the effect that this Court lacks jurisdiction to hear habeas cases brought by Guantánamo detainees under *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted,* 127 S. Ct. 3078 (U.S. June 29, 2007) (No. 06-1195). Following the Supreme Court's grant of *certiorari* in the *Boumediene* case, the D.C. Circuit Court recalled its mandate ordering the dismissal of Guantánamo detainees' habeas petitions and stayed the proceedings pending the outcome of the Supreme Court's constitutionality review of the jurisdiction divesting provisions of the MCA.[1] The effect of the recall of the mandate was to divest this Court of the authority to dismiss those cases, and to preserve in those cases the protective order and counsel access rules that govern Guantánamo habeas cases, as well as related orders, such as orders requiring the government to provide counsel with advance notice of any intended transfer of a prisoner from Guantánamo. Accordingly, Mabrouk requests this Court to merely preserve, rather than expand, its jurisdiction through the issuance of the order requested.

The cases cited by Respondents do not support their position that this Court lacks

---

[1] *See also, e.g., Kiyemba v. Bush,* No. 05-5487 et al., 2007 U.S. App. LEXIS 21742 (D.C. Cir. Sept. 7, 2007) (recalling its mandate ordering the dismissal of Guantánamo detainees' habeas petitions on jurisdictional grounds); *Paracha v. Bush*, No. 05-5194 Consolidated with 05-5333, 2007 U.S. App. LEXIS 21741 (D.C. Cir. Sept. 7, 2007) (staying its mandate ordering the dismissal of Guantánamo detainees' habeas petitions on jurisdictional grounds); *Abdah v. Bush,* No. 05-5224 et al., 2007 U.S. App. LEXIS 19078 (D.C. Cir. Aug. 9, 2007) (deferring consideration of government's motion to dismiss Guantánamo detainees' habeas petitions <u>and denying government's motion to vacate 30-day notice order</u>).

jurisdiction to grant Mabrouk's motion for an advance notice order.  It is true that in *Zalita v. Bush*, No. 07-5129 (Apr. 25, 2007), the D.C. Circuit Court reversed on jurisdictional grounds an order by this court enjoining the transfer of a detainee back to Libya.  However, following the Supreme Court's grant of *certiorari* in *Boumediene*, the Circuit Court recalled its mandate ordering the dismissal of the habeas petition in *Zalita* and of the emergency motion for a stay of transfer.  *Zalita v. Bush,* No. 07-5129, 2007 U.S. App. LEXIS 24327 (Oct. 11, 2007).  Similarly, according to Respondents, *Belbacha v. Bush*, No. 07-5258, was scheduled for rehearing on December 6, 2007 and the Court may very well decide, in accordance with prior decisions by the D.C. Circuit Court, to recall or stay any mandate issued in this case.  (Opp. at 10, fn 6).

    *Hicks v. Bush,* No. 02-CV-0299, 2007 U.S. Dist. LEXIS 20774 (D.D.C. March 23, 2007), concerns a petition to enjoin petitioner's trial by military commission and does not seek relief in connection with an intended transfer of the petitioner outside the jurisdiction of this Court.  Furthermore, Judge Kollar-Kotelly's statements regarding the effect of the MCA on the jurisdiction of this Court generally are not in accordance with the current state of the D.C. Circuit law and are, consequently, incorrect.  *Hamlily v. Gates,* No. 07-1127 (D.C. Cir. July 16, 2007), does not inform the decision in this case because, in *Hamlily*, petitioner invoked the Circuit's Court's jurisdiction under the Detainee Treatment Act ("DTA") and not the court's jurisdiction to grant relief incidental to petitioners' habeas claim.

    Orders requiring Respondents to give detainees advance notice of any transfer from U.S. custody have been granted in other cases by this Court.  For example, in *Abdah v. Bush*, this Court granted the motion of Yemeni petitioners for 30-days' notice of an intended transfer of petitioners from Guantánamo. No. 04-1254, 2005 U.S. Dist. LEXIS

4942 (D.D.C. Mar. 29, 2005). Similarly, in *Rohullah v. Gates*, this Court ordered the government to give Rohullah's counsel 30-days' notice before they transfer him from Bagram Air Force Base to Afghan custody. No. 06-1707 (D.D.C. Nov. 3, 2007).

In light of the foregoing, Judge Kessler's order in *Alhami v. Bush*, 05-359 (GK) (D.D.C. Oct. 2, 2007), granting a stay of transfer of another Tunisian detainee back to his home country, is in accordance with the D.C. Circuit's law and should guide this Court's decision. Accordingly, this court has the authority to grant petitioner's motion.

B. **Mabrouk's Petition for a 30-Days' Advance Notice Order Satisfies the Requirements Governing Preliminary Injunctions**

Mabrouk's petition satisfies the requirements for a preliminary injunction. In granting petitioner's motion for a 30-day notice order, this Court has held that the four requirements for injunctive relief "interrelate on a sliding scale and must be considered in relation to one another, for if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Abdah v. Bush*, No. 04-1254, 2005 U.S. Dist. LEXIS 4942 (D.D.C. Mar. 29, 2005) (quoting *Serono Lab. v. Shalala,* 332 U.S. App. D.C. 407, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998)). Given that Mabrouk satisfies each of the requirements for the relief sought, the existence of concrete evidence supporting Mabrouk's claim that he will suffer the most severe and irreparable harm coupled with the virtually non-existent burden to Respondents in providing advance notice militate in favor of a grant of the order requiring Respondents to give Mabrouk 30-days' notice of any intended transfer from Guantánamo.

1. **Mabrouk's petition has a substantial likelihood of success on the merits.**

Injunctive relief may be denied only for failure to show a likelihood of success on the merits "if there are no circumstances under which Petitioners could obtain an order preventing a contemplated transfer." *Id.* at *15. (emphasis added). The following

sufficiently demonstrates that this is certainly not the case here.

Mabrouk has properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). For the United States Government to remove Mabrouk to any country that would afford no due process of law would deprive him of all Due Process protections and defeat the Court's jurisdiction. Given the subsequent proceedings in *Boumediene* outlined above, D.C. Circuit law is not at all settled to the effect that Guantánamo detainees have no access to this Court or are deprived of all rights under the U.S. Constitution and under international law.

Furthermore, this Court has held that "transfer of Petitioners without notice and leave of court is forbidden by Fed. R. App. P. 23(a)*,* which requires that pending review of a decision in a habeas corpus proceeding . . . the person having custody of the prisoner must not transfer custody to another unless transfer is directed in accordance with this rule." *Abdah,* No. 04-1254, at 15-16. The purpose of this rule is to "prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Id.* at 16.

A finding by this Court that the transfer of Mabrouk to Tunisia would raise unacceptable concerns about his health and safety would be in keeping with the State Department's findings of Tunisian human rights abuses and would, therefore, not interfere with Executive authority. The State Department report, which outlines the torture practices employed by Tunisian authorities with much detail,[2] in and of itself is

---

[2] The Tunisian torture practices reported by the U.S. State Department include "sleep deprivation; electric shock; submersion of the head in water; beatings with hands, sticks, and police batons, suspensions, sometimes manacled, from cell doors and rods resulting in loss of consciousness, and cigarette burns." U.S. State Department Bureau of Democracy, Human Rights, and Labor, *Country Reports on Human Rights Practices—*

- 6 -

sufficient to support a finding by this Court that preliminary relief is warranted.

Furthermore, Respondents' concerns about the possibility of this Court interfering with foreign affairs are unfounded given that Respondents have not alleged that Tunisia has expressed any particular interest in the extradition of Mabrouk or any other Tunisian detainee.  Transfer of detainees to countries "ready and willing to take responsibility," (Opp. at 2), appear to be motivated by nothing more than the desire to dispose of detainees upon a finding that "detention by the United States is no longer a military necessity or appropriate."  Foreign relations consequently are not implicated in this decision.

Similarly, Respondent's claim that a review of a decision to transfer Mabrouk would interfere with Executive war powers is without merit.  Presumably, Respondents are referring to reports concerning former Guantanamo detainees returning to the battlefield after their release.  However, these reports have not been confirmed.  A recent study analyzing the government's representations regarding "battlefield" capture and "recidivism" of released Guantanamo detainees concluded that "the Department of Defense has failed to provide information that any more than five (5) former Guantanamo detainees have been re-captured or killed."  As to all but one of these individuals questions remain about whether they were indeed former Guantanamo detainees, or whether they were killed on the "battlefield."  *Mark Denbeaux et al., The Meaning of "Battlefield:" An Analysis of the Government's Representations of "Battlefield" Capture and "Recidivism" of the Guantanamo Detainees,* at 18 (2007), *available at* http://law.shu.edu/news/meaning_of_battlefield_final_121007.pdf.

Finally, the likelihood of success of Mabrouk's claim on the merits is most clearly

---

*2006: Tunisia*, March 6, 2007, at http://www.state.gov/g/drl/rls/hrrpt/2006/78864.htm, at 1

evidenced by the grant of such petition in a case involving a Tunisian national. In *Alhami v. Bush,* this Court held that a stay of the intended transfer of the petitioner back to Tunisia was warranted in light of credible allegations of "inhumane living conditions" in Tunisian prisons and of "torture and police brutality." No. 05-359 (D.D.C. Oct. 2, 2007).

**2. <u>Mabrouk will suffer irreparable injury if he is transferred to Tunisia without advance notice.</u>**

Contrary to Respondents' allegations, Mabrouk's claim that he will face severe abuse and mistreatment upon his return to Tunisia is not merely speculative. A Tunis Military Court has already sentenced Mabrouk *in absentia* to 10 years in prison and five years of post-sentence administrative controls. Furthermore, the experiences of Abdullah al-Hajji Ben Amor and Lotfi Lagha, two Tunisian Guantánamo detainees who were returned to their home country on June 17, 2007, immediately taken into custody by Tunisian authorities and severely mistreated, raise immediate and concrete concerns as to the kinds of torture and abuse Mabrouk would expect were he to be forcibly returned to Tunisia. (Motion at 3-4). Finally, Judge Kessler's decision to stay the transfer of Petitioner Rahman back to Tunisia based on credible allegations of "inhumane living conditions" in Tunisian prisons and of "torture and police brutality" further support Mabrouk's claim. *Alhami v. Bush,* No. 05-359 (D.D.C. Oct. 2, 2007).

Respondents maintain that it is the policy of the United States not to repatriate or transfer a detainee to a country when there is reason to believe that "it is more likely than not that the individual will be tortured there." (Opp. at 16). However, the decision to transfer two other Tunisian detainees, Abdullah al-Hajji Ben Amor and Lofti Lagha, to Tunisia raises serious questions about the implementation of this policy. The U.S. State Department itself found Tunisia's human rights record to be lacking. Despite the U.S. State Department's awareness of the torture and cruel and inhumane treatment employed

- 8 -

by Tunisian authorities, two other Tunisian detainees were repatriated and, as a result, suffered severe mistreatment. Considering Mabrouk's *in absentia* sentence, it can be expected that Mabrouk's treatment upon his arrival in Tunisia will be in accordance with the conditions reported by the U.S. State Department.

Finally, the merits of Mabrouk's transfer to Tunisia are not immediately at issue in this motion. Even if Mabrouk decided not to challenge a transfer to Tunisia, irreparable harm is almost certain to result from his inability to prepare for his return to his home country. Without appropriate notice, he will be unable to arrange for representation in a potential host country or to notify his family of his release. He would be left helpless and completely at the mercy of local authorities without any support from his family or local counsel.

3. **Respondents will suffer virtually no harm if Mabrouk's motion is granted.**

Mabrouk notes that he has not yet asked for injunctive relief, and may never do so. Whether he will need to do so will of course depend on the particulars of a contemplated transfer. Mabrouk seeks only 30-days' advance notice of a transfer from Guantánamo Bay in order to notify his family, possibly hire counsel in the country to which he will be transferred, and possibly seek injunctive relief if it is warranted. Petitioner thus seeks only an interim measure that leaves open the opportunity to protect his rights if threatened by complete and extinguishing prejudice. We fail to see how granting Mabrouk's request for 30-days' notice of an intended transfer in and of itself would undermine Executive authority in any way as claimed by Respondents.

4. **A balancing of interest militates in favor of granting Mabrouk's notice motion.**

While a transfer of Mabrouk without prior notice raises serious and concrete concerns about his health and safety, the burden on Respondents in providing such notice

- 9 -

are minimal at the most. Beyond that, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioners from the Court's jurisdiction. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant—properly before the Court and represented by counsel—be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

## CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated: December 17, 2007

Respectfully submitted,

   /s/ Jonathan M. Fee
Jonathan M. Fee
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
jon.fee@alston.com
DC Bar No. 479579

Michael E. Ward
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
michael.ward@alston.com
DC Bar No. 434624

*Attorneys for Petitioner*

## CERTIFICATE OF SERVICE

I, Jonathan M. Fee, hereby certify that I today caused a true and accurate copy of the foregoing to be served electronically via the Court's Electronic Case Filing system.

    /s/ Jonathan M. Fee