CLEARED FOR PUBLIC FILING BY THE COURT
SECURITY OFFICE ON MARCH 7, 2008.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, ISN 939,<br>Detainee, Guantánamo Bay Naval Station,<br>Guantánamo Bay, Cuba, *et al.*,<br><br>and<br><br>UMAR HAMZAYAVICH ABDULAYEV,<br>a/k/a Abdullah Bo Omer Hamza Yoyej,<br>a/k/a Omar LNU, ISN 257,<br><br>  *Petitioners*,<br><br>v.<br><br>GEORGE W. BUSH, *et al.*,<br><br>  *Respondents*. | Civil Action No. 05-2386 (RBW) |

**MOTION FOR ORDER BARRING RESPONDENTS FROM REPATRIATING
PETITIONER TO TAJIKISTAN AND TO PROVIDE COUNSEL FOR PETITIONER
THIRTY-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF
<u>PETITIONER FROM GUANTÁNAMO TO ANY OTHER COUNTRY</u>**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, and the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture"), Petitioner Umar Hamzayavich Abdulayev, a/k/a Abdullah Bo Omer Hamza Yoyej, a/k/a Omar LNU, ISN 257 respectfully moves for an order requiring Respondents to bar Petitioner's repatriation to Tajikistan and to provide counsel for Petitioner and the Court with advance notice of any other intended removal of Petitioner from Guantánamo Bay Naval Station in Cuba. On information and belief, Respondents have contemplated or are contemplating the removal of Mr. Abdulayev from Guantánamo to Tajikistan, where he is likely to be subject to torture and imprisonment without

due process of law.  Petitioner requests this bar to repatriation and requirement of advance notice to enable his counsel to prevent any removal from Guantánamo to a country where he is likely to be tortured and to preserve the jurisdiction of the Court in this matter.  Further, the transfer of Mr. Abdulayev would strip this Court of its habeas jurisdiction.  Petitioner's counsel has conferred by telephone with counsel for Respondents regarding this motion, and counsel for Respondents will oppose this motion.

## FACTUAL BACKGROUND

Mr. Abdulayev is a citizen of Tajikistan who has been detained as an "enemy combatant" without charge or trial at Guantánamo Bay Naval Station in Cuba.  As detailed in the habeas petition he has filed, his detention is in violation of the Constitution, treaties and laws of the United States.  Petitioner has reason to fear he will be transferred to a country where he will be tortured and/or imprisoned without due process of law.

**A.**    **Petitioner's Background and Capture**

Petitioner Umar Hamzayevich Abdulayev was born on October 11, 1978 and is the oldest of five children.  (Decl. of M. O'Hara ¶ 5a, attached as Ex. A.)  Mr. Abdulayev's family fled Tajikistan in 1992, when a civil war erupted in that country after the collapse of the Soviet Union.  (*Id.* ¶ 5b.)  At that time, Mr. Abdulayev was thirteen years old and had only a sixth grade education.  (*Id.*)  Mr. Abdulayev's father Hamza was not a member of any political party in Tajikistan and did not fight in the civil war.  (*Id.*)  In 1992, Mr. Abdulayev's family sought refuge from the Tajik civil war in Afghanistan, where he and his family lived with other Tajik refugees in the vicinity of Mazar-e-Sharif.  (*Id.*)

In 1994, pleas were broadcast over the radio in Afghanistan from the Tajik government urging Tajik refuges to return home.  (*Id.* ¶ 5c.)  Hearing these pleas, Mr. Abdulayev's father traveled with other Tajik refugees to investigate the situation in Tajikistan.  (*Id.*)  Hamza never

returned, and Mr. Abdulayev and his family later learned that Mr. Abdulayev's father had been shot and killed while crossing the Tajik-Afghan border. (*Id.*) The Abdulayev family remained in Afghanistan after Hamza's death, relying upon aid from international refugee organizations. (*Id.*)

In early 2001, Mr. Abdulayev, his mother, and his siblings all moved from Afghanistan to Pakistan. (*Id.* ¶ 5d.) In Pakistan, they lived in a government-sponsored camp principally for Afghan refugees named Camp Babu, in the vicinity of the city of Peshawar, and rented a house. (*Id.*) While living in Camp Babu, on or about November 25, 2001, Mr. Abdulayev was arrested by Pakistani police while he was at a market in the camp. (*Id.* ¶ 5e.) When Mr. Abdulayev was asked to identify himself, he told the police that he was a refugee, and showed them his refugee identification card. (*Id.*) Nonetheless, the police turned him over to what Mr. Abdulayev believed to be Pakistani intelligence officials. (*Id.*) Notably, this was around the precise time the U.S. military was blanketing Afghanistan and Pakistan with leaflets offering handsome bounties for the capture of individuals associated with Al-Qaeda. *See, e.g.,* Mark Denbeaux & Joshua Denbeaux, REPORT ON GUANTANAMO DETAINEES: A Profile of 517 Detainees through Analysis of Department of Defense Data, available at http://law.shu.edu/news_guantanamo_report_final_2_08_06.pdf, at 14-15; Joseph Margulies, GUANTÁNAMO AND THE ABUSE OF PRESIDENTIAL POWER, at 69 (Simon & Schuster 2006).

While in the custody of the Pakistani intelligence service, Mr. Abdulayev was tortured and coerced into copying in his own hand notes about weapons and explosives from books that the intelligence officials marked and gave to him. (Decl. of M. O'Hara ¶¶ 5f-g.) The Pakistani intelligence service promised Mr. Abdulayev that it would return him to his mother if he did as directed. (*Id.* ¶ 5g.) After spending nearly a month copying all of the materials into the

notebooks he was given, the men holding Mr. Abdulayev in custody told him they were going to return him home, blindfolded him, and drove him away from the location where he had been held. (*Id.* ¶¶ 5g-h.) When he arrived at his destination, Mr. Abdulayev learned he had not been taken back to his family, but instead had been taken to a prison in Kohat, Pakistan. (*Id.* ¶ 5h.)

Mr. Abdulayev was later turned over to the custody of the United States military. (*Id.* ¶ 5i.) From there, the United States sent him to Guantánamo, where he has been held since that time without charge. (*Id.*) He has not seen or heard from his mother or his brothers or sisters since he was abducted from the market in Camp Babu in November 2001. (*Id.*)

B.  **Mr. Abdulayev Has a Well-Founded Fear of Persecution Should He Be Returned To Tajikistan.**

Agents of the Tajik government have visited Guantánamo on several occasions to meet with Mr. Abdulayev and other Tajik nationals. (*Id.* ¶¶ 5j, k, m-n.) More than once, the Tajik agents threatened Mr. Abdulayev with imprisonment, torture, and death upon his return from Guantánamo to Tajikistan. (*Id.* ¶ 5j.) Moreover, two other Tajik prisoners told Mr. Abdulayev that the Tajik agents had made similar threats to them. (*Id.* ¶ 5l.) Those men were Rukniddin Sharipov and Sobit Valikhonovich, also known as Mukit Vokhodov, both of whom were repatriated from Guantánamo to Tajikistan by the United States. According to press reports, the threats made by Tajik agents to Mr. Sharipov and Mr. Valikhonovich appear to have been carried out at least in part, as both were sentenced to 17-year prison terms in Tajikistan in August 2007. Roman Kozhevnikov, *Tajikistan Convicts Two Ex-Guantanamo Detainees*, Reuters.com, Aug 18, 2007, at http://www.reuters.com/article/asiaCrisis/idUSL18685554.

In addition to the particular threats made by the Tajik government against him, Mr. Abdulayev has reason to fear torture and/or indefinite detainment at the hands of the Tajik government based on their history of human rights abuse. The United States State Department's

*Country Reports on Human Rights Practices-2006* for Tajikistan, dated March 6, 2007, documents conduct by the Tajik state consistent with the threats made to Mr. Abdulayev.  *See* Tajikistan, Country Reports on Human Rights Practices -- 2006, available at http://www.state.gov/g/drl/rls/hrrpt/2006/78843.htm (dated Mar. 6, 2007).  The State Department's report notes that torture and abuse were carried out during 2006 by security officials, particularly from the Ministry of the Interior, including "systematic beatings, sexual abuse, and electric shock to extort confessions during interrogations."  *Id.*  Further, according to the same report, "prison conditions remained harsh and life threatening."  *Id.*  The State Department further characterized arbitrary arrest and lengthy pretrial detention in Tajikistan as a "serious problem," as is impunity for "officers who committed abuse [who] were rarely prosecuted."  *See id.*  The most recent country report on Tajikistan from Amnesty International observes that "[w]idespread and routine torture or other ill-treatment by law enforcement officers continue[s] to be reported."  Amnesty International -- Tajikistan Country Report, available at http://www.amnesty.org/en/region/europe-and-central-asia/eurasia/Tajikistan.  Human Rights Watch observed that the "[h]uman rights conditions continued to worsen in Tajikistan in 2006[,]"and noted politically motivated arrests and a crackdown on independent media organization.  Human Rights Watch World Report 2007 -- Tajikistan, http://hrw.org/englishwr2k7/docs/2007/01/11/tajiki14827.htm.

     Based on the specific threats made against Mr. Abdulayev by Tajik officials and the well-documented practices of the Tajik government consistent with those threats, Mr. Abdulayev has a well-founded fear of persecution should he return to Tajikistan.  (*See* Decl. of M. O'Hara ¶ 5o.)

# ARGUMENT

"Among the rights universally proclaimed by all nations . . . is the right to be free of physical torture." *Filartiga v. Pena-Irala*, 630 F.2d 876, 890 (2d Cir. 1980). Indeed it is well-settled that the ban on torture is *jus cogens*, in other words, "a norm accepted and recognized by the international community of states as a whole as a norm from which no derogation is permitted." *de Black v. Republic of Argentina*, 965 F.2d 699, 714 (9th Cir. 1992). This core and basic norm of international law "may well restrain our government in the same way the Constitution restrains it." *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, 859 F.2d 929, 941 (D.C. Cir. 1988).

Pursuant to the Article 3 of the Convention Against Torture, a convention to which the United States is a signatory, the Senate has ratified, and which has been implemented in the United States:

1. No State shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant consideration including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

Convention Against Torture, Art. 3, opened for signature Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.

"Congress implemented this obligation of non-refoulement through [Foreign Affairs Reform and Restructuring Act ("FARRA")], which provides that it is 'the policy of the United States not to expel, extradite or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.'"

*See Khouzam v. Hogan*, 3:CV-07-0992, Memorandum, slip op. at 14 (M.D. Pa. Jan. 10, 2008) (Dkt. Ent. #72) (attached as Ex. B) (quoting FARRA, Pub. L. No. 105-277, Div. G. Title XXII, § 2242(a), 112 Stat. 2681, 2681-822 (codified as note to 8 U.S.C. § 1231)). Further, under the All Writs Act, 28 U.S.C. § 1651(a), the Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Such an injunction can "preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Here, each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction: (1) Mr. Abdulayev will suffer irreparable harm if the injunction is denied; (2) little to no harm will be suffered by Respondents if the injunction is granted; (3) Mr. Abdulayev is likely to succeed on the merits of his claims; and (4) there is a clear public interest in preventing the U.S. Government from violating clear international and domestic laws prohibiting re-foulement. *See Al Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs, Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Mr. Abdulayev stands to suffer immeasurable and irreparable bodily harm -- from imprisonment without due process of law, to torture, to possible death -- at the hands of the Tajik government if he is repatriated by the U.S. Government. The Tajik government has expressly threatened Mr. Abdulayev, and where the Tajik government made similar threats to Guantánamo detainees, it made good on those threats. Moreover, the history of arbitrary arrest, abuse, and torture by the Tajik government is well documented. Further, transfer to another country, even if "only" for continued imprisonment, also circumvents Petitioner's right to adjudicate the legality

of his detention in this Court.  By contrast, Respondents, who have already held Petitioner for almost six years, are asked only to follow this nation's obligations under the Convention Against Torture and provide counsel and the Court with adequate notice of any intended removal of Petitioner from Guantánamo to a country other than Tajikistan.

Petitioner is likely to succeed on the merits of his underlying habeas petition.  He has properly invoked the jurisdiction of this Court.  *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004).  Further, recent developments in the Supreme Court support this conclusion.  The Court granted certiorari and heard argument in December 2007 in *Boumediene v. Bush*, 06-1195, after initially denying certiorari.  127 S. Ct. 3078.  In addition, because the Supreme Court may rule in favor of the detainees, this Court has the right to protect its jurisdiction by barring Respondents from transferring Mr. Abdulayev to the custody of another country.[1]  In any event, any such transfer would also violate basic international legal norms embodied in the Convention Against Torture.

Finally, public policy favors barring Respondents from transferring Mr. Abdulayev to Tajikistan is consonant with the United States' obligation under our own law and our obligations under international law.  In addition, there is a clear interest in allowing a federal litigant to be provided with a meaningful opportunity to prevent his transfer to the custody of those who would torture him and/or detain him indefinitely.

---

[1] Both this Court and the D.C. Circuit have already issued orders requiring Respondents to give Guantánamo prisoners and their counsel advance notice of any transfer from U.S. custody and staying such transfers in other cases. For example, in *Abdah v. Bush*, this Court granted the motion of Yemeni petitioners for 30 days' notice of an intended transfer of petitioners from Guantánamo. No. 04-1254, 2005 U.S. Dist. LEXIS 4942 (D.D.C. Mar. 29, 2005). Similarly, in *Rohullah v. Gates*, this Court ordered the government to give Rohullah's counsel 30 days' notice before they transfer him from Bagram Air Force Base to Afghan custody. No. 06-1707 (D.D.C. Nov. 3, 2007). In *Alhami v. Bush*, 05-359 (GK) (D.D.C. Oct. 2, 2007), this Court stayed the transfer of another Tunisian prisoner back to his home country. Finally and most recently, the D.C. Circuit stayed the transfer of Ahmed Belbacha to Algeria in order to preserve its jurisdiction over the case while it considers Belbacha's appeal. *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Dec. 31, 2007).

**CONCLUSION**

WHEREFORE, for all of the foregoing reasons, this Court should grant Petitioner's motion to bar Respondents from repatriating Petitioner to Tajikistan and to give Petitioner's counsel thirty-days' advance notice of any intended removal of Petitioner from Guantánamo to any other country, and grant Petitioner any such other relief the Court deems appropriate.

Dated: March 6, 2008

        Respectfully submitted,

        Counsel for Petitioner:

        */s/ Brian C. Lewis*
        Lowell E. Sachnoff  (Illinois Bar No. 02438062)
        Matthew J. O'Hara  (Illinois Bar No. 6237795)
        Adam R. Chiss  (Illinois Bar No. 6272056)
        *Each Pursuant to LCvR 83.2(g))* and
        Brian C. Lewis (D.C. Bar No. 476851)
        **REED SMITH LLP**
        10 South Wacker Drive, 40th Floor
        Chicago, Illinois  60606
        (312) 207-1000
        bclewis@reedsmith.com

        Gitanjali S. Gutierrez (Pursuant to LCvR 83.2(g))
        J. Wells Dixon (Pursuant to LCvR 83.2 (g))
        **CENTER FOR CONSTITUTIONAL RIGHTS**
        666 Broadway, 7th Floor
        New York, NY 10012

        2162441.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, ISN 939, ) <br> Detainee, Guantánamo Bay Naval Station, ) <br> Guantánamo Bay, Cuba, *et al.*, ) <br>    ) <br> and ) <br>    ) <br> UMAR HAMZAYAVICH ABDULAYEV, ) <br> a/k/a Abdullah Bo Omer Hamza Yoyej, ) <br> a/k/a Omar LNU, ISN 257, ) <br>    ) <br>    *Petitioners*, ) <br>    ) <br> v. ) <br>    ) <br> GEORGE W. BUSH, *et al.*, ) <br>    ) <br>    *Respondents*. ) | Civil Action No. 05-2386 (RBW) |

**ORDER**

It is hereby

ORDERED that Respondents are barred from transferring Mr. Abdulayev to the custody of Tajikistan. It is further

ORDERED that Respondents shall provide at least 30-days advance notice to Mr. Abdulayev's counsel and this Court of any intended removal of Mr. Abdulayev to any other country.

_____
Reggie B. Walton, United States District Judge

_____
Date

**CERTIFICATE OF SERVICE**

       The undersigned states that on March 7, 2008, I filed the foregoing **Motion for Order Barring Respondents from Repatriating Petitioner to Tajikistan and To Provide Counsel For Petitioner Thirty-Days' Advance Notice of Any Intended Removal of Petitioner from Guantánamo to Any Other Country** on behalf of Petitioner Umar Hamzayavich Abdulayev a/k/a Abdullah Bo Omer Hamza Yoyej, a/k/a Omar LNU, ISN 257 using the Court's ECF system which will serve counsel of record in this case.

                                   */s/ Brian C. Lewis*
                                    Brian C. Lewis (D.C. Bar No. 476851)
                                    REED SMITH LLP
                                    10 South Wacker Drive, 40th Floor
                                    Chicago, Illinois  60606
                                    (312) 207-1000
                                    bclewis@reedsmith.com