IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABD AL ZAHER (ISN #89),<br>    Petitioner,<br><br>v.<br><br>GATES, ROBERT M., *et al.*,<br>    Respondents, | )<br>)<br>)<br>)   Civil Action No.: 05-cv-2386 (RBW)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION TO ORDER ACCESS TO COUNSEL

Petitioner is listed among the individual claimants under the name Abd Al Zaher (ISN #89) in the "Mohammon Omnibus" litigation, now pending before this Court. (Pet. for a Writ of Habeas Corpus at 29, *Mohammon v. Bush*, No. 05-2386(RBW), 2006 U.S. Dist. LEXIS 60186 (D.D.C. Dec. 12, 2005). This memorandum will clarify the identity of the Petitioner, as offered by this Court in its Order of June 27, 2006. *Order, Mohammon*, 2006 U.S. Dist. LEXIS 60186 (D.D.C. June 27, 2006). Petitioner's counsel ("Counsel") will show that the evidence irrefutably demonstrates that the Petitioner's identity cannot be called into question, and that Petitioner is therefore entitled to access to counsel, by mail and in person, under the terms of this Court's Protective Order, issued in conjunction with the Court's Order above. In support of this contention, Petitioner has attached documentary proof of his identity, which, taken together, presents irrefutable evidence that the Petitioner's identity cannot be called into question. Therefore, pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioner respectfully moves this Court for an order requiring Respondents to

provide the Petitioner with access to counsel, in person and through correspondence screened by the Privilege Team as set out in this Court's protective order of June 27, 2006. Since his detention in early 2002, Petitioner has not communicated with any counsel by confidential mail or visit. Petitioner requests that this honorable Court order access to counsel, personally and through mail, so that Petitioner may exercise his due process rights as guaranteed by the Fifth Amendment to the United States Constitution.

## ARGUMENT

I.   **Petitioner Has Sufficiently Established His Identity, As Offered By This Court In Its Order Of June 27, 2006**

There are five sources for determining the identity of this Petitioner. One is his name, a second is his ISN number, the third is his nationality, the fourth is his date of birth, and the fifth the languages he speaks. Petitioner will establish that his multiple and related names, taken together with a single ISN number, nationality, date of birth, and common languages spoken, prove his identity sufficiently to meet the invitation of this Court in its order of June 27, 2006. *Order, Mohammon*, 2006 U.S. Dist. LEXIS 60186 (D.D.C. June 27, 2006).

Petitioner is a detainee at the Guantánamo Bay Naval Base in Guantánamo Bay, Cuba, identified under the name Abd Al Zaher, a citizen of Azerbaijan, in the Petition for a Writ of Habeas Corpus in *Mohammon*. (Pet. for a Writ of Habeas Corpus at 29, *Mohammon*, 2006 U.S. Dist. LEXIS 60186 (No. 05-2386).) He has also been identified under another name, "Poolad T. Tsiradzho," ISN #89, of Baku, Azerbaijan, date of birth May 6, 1975, by the United States Government in a document released on May 15, 2006, under the Freedom of Information Act (*see* **Exhibit 1**), as well as by an unclassified document released by the Department of Defense, Office for the Administrative Review of the Detention of Enemy Combatants at US Naval Base Guantánamo Bay, Cuba, on March 7, 2005, entitled "Unclassified Summary of Evidence for

2

Administrative Review Board in the Case of Tsiradzho, Poolad T.," which describes Petitioner as having originated in Azerbaijan. (*See* **Exhibit 2**.) Petitioner is further identified by the International Committee of the Red Cross on their stationary as "Polad Siradzho," of Baku, Azerbaijan, born in the year 1975. The document, which is stamped "Cleared by U.S. Forces", also indicates the number "89" on the top right-of-center of the document, which appears clearly to refer to Petitioner's ISN number, the same used by the government in its various documents. (*See* **Exhibit 5**.)

Further corroboration of the Petitioner's identity is provided by two Next of Friend Authorizations submitted by another detainee, Sami al Hajj (ISN # 345), in which Mr. al Hajj states: "I believe that Abd al Zaher is also known by the authorities here at the prison by the name Poolad T. Tsiradzho . . . . To my knowledge, Abd al Zaher is the only Azerbaijani being held on this base, and it cannot be hard for the authorities to identify him." (*See* **Exhibit 3** and **Exhibit 4**.) This is consistent with a news article that reported the detention of one man from Azerbaijan around the time and location that Petitioner was taken into custody. *See* Steven Lee Myers & Carlotta Gall, *A Nation Challenged: The Prisoners; Marines Accepting More Prisoners as Afghans Speed Up Turnover*, NY Times, Dec. 27, 2001, *available at http://query.nytimes.com/gst/fullpage.html?res=9A03EFDC1031F934A15751C1A9679C8B63& scp=8&sq=azerbaijan+guantanamo&st=nyt* ("Until recently the prisoners included 40 Arabs, 11 Uzbeks, one man from Azerbaijan and several from the Muslim republics of Russia and from the former Soviet Central Asian states of Tajikistan and Kazakhstan."). Petitioner is further identified as being the only detainee of Azerbaijani citizenship by the government in **Exhibit 1**,[1]

---

[1] **Exhibit 1** includes only the first page and page with Petitioner's name listed. The full document is available at

and by Sami al Hajj in the Next of Friend Authorization submitted on behalf of Petitioner in **Exhibit 4**.

The link between the name Poolad T. Tsiradzho (and its various spellings) and the name Abd Al Zaher/Abdul Kahhar is further explained by the Petitioner to his family in **Exhibit 8**, in which he states "I took a new name. Now I am called Abdulkahhar." Petitioner in another letter to his family further states, in reference to the name "Abdul Kahhar," which is signed at the end of this letter, "Inshallah you have learned my name." (*See* **Exhibit 9** (including explanation of the term *Inshallah*).)

Furthermore, Petitioner's family in Azerbaijan has provided Counsel with several letters from Petitioner transmitted through the International Committee of the Red Cross, as well as through the detainee mail system at Guantánamo Bay in which Petitioner signs his name as both "Polad" (*see* **Exhibit 6**) and "Abdul Kahhar" (*see* **Exhibit 7**).[2] The evidence presented thus far demonstrates that these two seemingly unrelated names refer to the same individual, for not only has Petitioner utilized both names himself, but others have attributed both names to him as well. Furthermore, it is common for individuals of the Islamic faith from outside of the Middle East, particularly former Communist countries, to adopt Arabic nicknames, as is the name Abd Al Zaher, as a reaffirmation of their faith. This concept is similar to the Christian concept of "born-again" evangelicals, and those who are "born-again" in the Islamic sense often adopt these Arabic nicknames as part of the "renewal" process. Thus for the Petitioner to have an Arabic nickname in addition to his Azeri/Russian name is not uncommon, and further explanation of

---

http://www.dod.mil/pubs/foi/detainees/detaineesFOIArelease15May2006.pdf (18 pages total), and petitioner is the only detainee of Azerbaijani citizenship listed in this document.

[2] Petitioner's alternating use of both Azeri and Russian languages is consistent with Petitioner's family's indication that Petitioner is fluent in Azeri, Russian and Turkish in their e-mail to counsel. (*See* **Exhibit 11**.)

4

this practice can be found in the attached Affidavit of Salah Husseini. (Husseini Aff. **Exhibit 13** at 3.)

Further evidence concerning the Petitioner's identity is provided by university transcripts Counsel obtained from the Petitioner's family, from Petitioner's time at the University of Ankara, in Ankara, Turkey. (*See* **Exhibit 10**.) In this document, the student is identified as "Polad Siracov,"[3] of Baku, Azerbaijan,[4] with the date of birth listed as "6-5-1975."[5] Petitioner's attendance of Turkish universities is consistent with information obtained by Counsel from Petitioner's family, who informed Counsel that Petitioner was studying English in Turkey from 1992 to 1993, and his family hired an English tutor for him when Petitioner began to struggle with his classes. (*See* **Exhibit 11**.)

The distinction between the name Abdul Kahhar and Abd Al Zaher may simply be a matter of transliteration. Abdul Kahhar is the English transliteration of the name the Petitioner uses as a signatory name in **Exhibit 7, Exhibit 8,** and **Exhibit 9**, which are written in Russian and Azeri. The Russian and Azeri spellings of that name are in turn transliterations of the original Arabic name, which when transliterated into English (or Russian or Azeri for that matter) can be spelled Abd Al Zaher, Abdul Zahar, or even Abdul Kahhar. Therefore, it is highly likely that the names Abd Al Zaher and Abdul Kahhar refer to the Petitioner. (*See* Husseini Aff. **Exhibit 13** at 2.)

---

[3] In the Turkish language, the English sound "j" is represented by the letter "c", but pronounced similarly to the English "j". Therefore, the Turkish spelling of Polad Sirajov would be "Polad Siracov." *See, e.g.*, Turkish Pronunciation Guide, http://www.turkeytravelplanner.com/details/LanguageGuide/Pronunciation.html (last visited Mar. 3, 2008).

[4] "Bakü, Azerbaycan" in Turkish.

[5] International date formats are generally Date-Month-Year, whereas the American date format is Month-Date-Year. Therefore, this birthday would be consistent with that listed in **Exhibit 1**, May 6, 1975.

Similarly, the distinction between the various spellings of the name Poolad T. Tsiradzho is also likely to be simply an issue of transliteration. The various spellings of that name, which include "Poolad T. Tsiradzho", "Polad Siradzho", and "Polad Sirajov" appear to be transliterations of the same name due to the similarity and proximity of these names.

The various government documents that identify the Petitioner either as "Poolad T. Tsiradzho" or "Abd Al Zaher" do not make clear that these names refer to the same individual, something the Petitioner attempted to do in filing the Notice of Appearance, which was rejected by Respondents. But based on the evidence presented here, it is clear that these two names refer to the same individual, and for that reason, the Petitioner requests that this Court find that the Petitioner has irrefutably established his identity, as the court invited him to do, and further, that this Court grant this Motion for access of the Petitioner to counsel.

## II. By Identifying Himself, Petitioner Is Complying With The Terms Of This Court's Order In *Mohammon v. Bush*

In the *Mohammon* Order, this Court stated that "[a]ny petitioner whom the respondents indicate they are unable to identify shall have the opportunity to challenge the respondents' assertion that he cannot be identified." *Order* at 6, n.7, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. On September 24, 2007, Counsel attempted to contact Petitioner by mail, offering to represent him.[6] Counsel also contacted Petitioner's family in Azerbaijan to inform them of Counsel's interest in representing Petitioner, and Petitioner's family subsequently sent Counsel several of the documents attached to this Motion as exhibits in order to assist Counsel. Counsel

---

[6] Professor Wilson has a "Secret" level security clearance, has appeared in other proceedings involving detainees at Guantanamo Bay, both before this District Court and in Military Commission proceedings at Guantánamo, has traveled to the base and detention facility on numerous occasions, and has complied with the terms of Judge Green's Protective Order, adopted by this Court, without incident, including both confidential mail and use of the secure facility.

sent Petitioner a letter via the "Lynx" mail system. This letter was immediately returned to Counsel by a member of the Privilege Team, who stated that the Petitioner's name did not appear on any of the lists of detainees "cleared" to receive attorney-client correspondence under the terms of any court order by a judge of this court. Thus Counsel could not communicate with Petitioner through quicker and more secure attorney-client channels. While Counsel subsequently mailed a letter to the Petitioner through the US Postal Service on October 24, 2007, that system is known by all parties to this litigation to be notoriously slow, particularly where translation is required (here, Azeri and Russian), and often taking months for mailing and return of a single exchange between a detainee and lawyers. In fact, no reply has been received from Petitioner to date. Of course, counsel has no way to know if or when that letter reached the Petitioner, or in what condition.

As a result of this denial by the Privilege Team, on October 3, 2007, Counsel filed a formal Notice of Appearance on behalf of Petitioner through the Court's Pacer system, challenging Respondents' assertion that Petitioner could not be identified, as ordered by this Court on June 27, 2006, in which Judge Walton invited those that the Respondents claimed they could not identify to challenge that assertion. *Order* at 6, n.7, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. In challenging that assertion, Petitioner provided several exhibits to corroborate his identity. (*See* **Exhibit 1**, **Exhibit 3**, and **Exhibit 4** (included in original Notice of Appearance).) The notice was duly filed with this Court on that date, as noted on Pacer (document 386).

Pursuant to this formal Notice of Appearance, Counsel again attempted to contact Petitioner by mail. Counsel sent a second letter to Petitioner via the "Lynx" system on October 24, 2007. Counsel's attempt to communicate with Petitioner was again rejected by the Privilege

Team, which again reported that the detainee's name did not appear on a "cleared" list. When Counsel made inquiry with counsel from the Department of Justice, who are also Respondents in this litigation, via email, regarding this denial, he was informed that the Department did not accept the evidence of identity. The correspondence further asserted that despite Petitioner's Notice of Appearance, Petitioner remains an unidentified detainee with whom communication cannot be approved, and implicitly, who cannot be included within the identified detainees in the *Mohammon* habeas petition. (*See* **Exhibit 12**.) By its actions, the Department of Justice, acting as opposing counsel, changed the simple ministerial act of the entry of appearance by counsel into a contested issue upon which their judgment, as counsel for Respondents, unilaterally prevailed as to whether the Petitioner was adequately identified or not.

As a result of these two denials of Counsel's attempts to communicate quickly and securely with the Petitioner, Counsel has attempted to collect additional corroborative evidence in order to further identify the Petitioner. This long and difficult task has included several letters and e-mails with the family of the Petitioner in Baku, Azerbaijan, several exchanges of documentation, all of which have required extensive translation and review, and further investigation into government documents concerning the identity of the Petitioner. The exchanges with the family, over months, have yielded several of the documents attached to this Memorandum, and most importantly, demonstrate that Petitioner began using the name "Abdul Kahhar" after leaving Azerbaijan, and was previously known to his family as Poolad T. Tsiradzho, alternatively spelled Polad Sirajov. Furthermore, Counsel has attempted to gather some information to support submission of a petition under the Detainee Treatment Act ("DTA") as suggested by Respondents' counsel in his email to counsel. (*See* **Exhibit 12**.) As this Court is likely aware, filing a competent DTA petition is nearly impossible without regular and unfettered

access by counsel to the Petitioner, and for that reason, this avenue has temporarily been abandoned. *See infra* Part VII.

With this newly acquired information concerning his identity, Petitioner submits this Motion and Memorandum in order to once again challenge the Respondents' assertion that he cannot be identified, and to argue that he is therefore entitled to access to counsel, by mail and in person, under the terms of the Protective Order of *Mohammon*. By submitting the attached documents, Petitioner seeks to assert that the individual identified as "Abd Al Zaher" in the Petition for a Writ of Habeas Corpus in *Mohammon* is the same individual identified as "Poolad T. Tsiradzho" by the Respondents in the various government documents attached.

### III.    Respondents Have Misapplied The Terms Of The *Mohammon* Order

In response to Petitioner's filing of a Notice of Appearance on October 3, 2007, Respondents replied in an off-line e-mail to Counsel, stating, among other things, that "[n]ow, some 16 months since Judge Walton entered this order, you claim, without any convincing explanation, that the petitioner named 'Abd Al Zaher' is really named 'Poolad T. Tsiradzho (ISN 89),' a man whose identity you apparently only learned after reviewing DoD's May 15, 2006 FOIA list." **(Exhibit 12.)** Respondents' apparent implication that it is Petitioner's duty to contest the Government's inability to identify him within a certain period of time is clearly a misinterpretation or misapplication of the terms of this court's order in *Mohammon*. The Order places the burden squarely on the Respondents to notify the Court of any named petitioners they cannot identify by the very date that Respondents now attempt to apply to Petitioner. *See Order* at 6, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. Petitioner is not bound by any time constraints, and can challenge Respondents' inability to identify him at any time. If the passage of 16 months is one of the reasons Respondents denied Petitioner's Notice of Appearance,

9

Respondents have clearly misapplied the terms of the *Mohammon* Order, and should for that reason alone be ordered to grant access by Petitioner to Counsel under the terms set out in that order.

IV. **Despite Respondents' Claims, The Protective Order Issued By This Court In *Mohammon* Applies To The Petitioner**

The Protective Order in *Mohammon* serves as an invitation to detainees such as Petitioner, whom the Respondents claim that they are unable to identify, to challenge that claim so as to be able to invoke the protections of the Order and be recognized as a named habeas petitioner. *Order* at 6, n.7, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. As described above, the Petitioner has demonstrated that he is the Abd Al Zaher named in the Petition for a Writ of Habeas Corpus in *Mohammon*. (Pet. for a Writ of Habeas Corpus at 29, *Mohammon*, 2006 U.S. Dist. LEXIS 60186 (No. 05-2386).) Therefore the Petitioner, being a named party, is entitled to the rights commensurate with such status, rights that have been denied to him by the Respondents to date. Primary among these rights is the right to access to counsel, as indicated in the Order itself. This Court refused to entertain arguments by the Respondents that "construing the protective orders to ensure the petitioners access to counsel implicates 'grave jurisdictional issues.'" *Order* at 2, *Mohammon*, 2006 U.S. Dist. LEXIS 60186 (quoting Resps.' Opp. At 9-10). The Court further pointed out that detainees' access to counsel was not in and of itself objectionable, as "the respondents have in the past expressed their willingness to allow the detainees access to counsel." *Id.* at 3, n. 4. This Court, in issuing its Order, noted that "[d]enying access to counsel to prisoners in this situation could therefore undermine the efficacy of the Great Writ of habeas corpus." *Id.* at 3 (citing *Rasul v. Bush*, 542 U.S. 466, 483-83 (2004); *Al Odah v. United States*, 346 F. Supp. 2d 1, 11 n. 12 (D.D.C. 2004)). It further found that,

"[a]bsent contrary direction by the District of Columbia Circuit, this Court is unwilling to take action that might conceivably dilute the Great Writ itself or impair its exercise." *Id.* at 4. Denial of a petitioner's access to counsel both threatens the efficacy of the Great Writ of Habeas Corpus, as the Court clearly reasoned, and impedes the exercise of the Great Writ by depriving a petitioner of the incalculable benefit of legal representation to navigate the complex American court system and overcome language, procedural, and logistical barriers. *Id.* at 3. Therefore, this Court should compel Respondents to allow Petitioner's access to counsel under the terms of the Protective Order set out in its previous decision.

## V.     The Right To Access To Counsel Is Implicit In The Writ Of Habeas Corpus

The access of a detainee to counsel is a fundamental right that must be enforced in order to protect the due process rights of individuals detained by the state. The importance of legal representation, particularly in the circumstances that detention in Guantánamo present, cannot be underestimated. *See, e.g., Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (holding, *inter alia*, that the detainee petitioner "unquestionably has the right to access to counsel in connection with the proceedings on remand."). By denying Petitioner the opportunity to communicate with Counsel under the attorney-client privilege, Respondents have denied Petitioner the fundamental right of representation.

This Court has addressed the right to representation by counsel in the past, with findings that support traditional notions of due process rights. In *Al Odah*, Judge Kollar-Kotelly stated that the "Court finds that Petitioners are entitled to be represented by counsel pursuant to the federal habeas statute, 28 U.S.C. § 2241, the Criminal Justice Act, 18 U.S.C. § 3006A, and the All Writs Act, 28 U.S.C. § 1651. In light of this finding, the Court determines that the Government is not entitled to unilaterally impose procedures that abrogate the attorney-client

11

relationship and its concomitant attorney-client privilege covering communications between them." 346 F. Supp. 2d. at 5. In the same case, Judge Kollar-Kotelly relied on the Eighth Circuit's decision in *Battle v. Armontrout*, which devised a test to determine whether a habeas petitioner was entitled to be represented by counsel. 902 F.2d 701 (8th Cir. 1990), *cited in Al Odah*, 346 F. Supp. 2d. at 8. That court looked to whether the petitioner's claim was "nonfrivolous" and "whether the nature of the litigation will make the appointment of counsel of benefit to the litigant and the court." *Battle*, 902 F.2d at 702, *cited in Al Odah*, 346 F. Supp. 2d. at 8. Factors taken into account for such considerations include the ability of the Petitioner to investigate facts and present claims on their own, and complexity of litigation. *Id.* In applying the *Battle* test to the claims in *Al Odah*, Judge Kollar-Kotelly found that Guantánamo detainees were incapable of investigating the circumstances surrounding their detention, were faced with extremely complex legal issues that required American legal counsel, and concluded "Petitioners cannot be expected to exercise this right [to bring their claims before the Court] without the assistance of counsel," *Al Odah*, 346 F. Supp. 2d. at 8, and for that reason, "Petitioners are entitled to be represented by counsel[,]" *id.*

The logic of Judge Kollar-Kotelly's conclusion is further supported by the Respondents' own admission in *Nasrullah v. Bush*, Civ. No. 05-891, Respondents' Motion to Stay Proceedings Pending Related Appeals and for Coordination at 5-6 (June 3, 2005), in which the Respondents acknowledge that Guantánamo Bay detainees "are likely unfamiliar with United States law and the American legal system, typically do not speak or write English, and have access to the Court only through mail and not the Court's electronic filing system." *Quoted in Order* at 3, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. In applying the standard elaborated by the Eighth Circuit and applied by this Court, it is clear that the Petitioner satisfies the requirements. Not

only does his detention prevent him from investigating the facts and circumstances surrounding his detention due to the fact that he does not have access to any documents, but investigating and attempting to file a habeas petition requires extensive legal training and understanding, something the Court cannot expect the Petitioner to possess due to his circumstances, lack of English proficiency, and lack of proficiency in the American legal system. Therefore, based on the test applied by this Court, the Petitioner is entitled to access to counsel, and requests that the Court compel the Respondents to grant such access.

## VI. This Court Has Jurisdiction To Grant This Motion

As noted above, the right to access to counsel is imperative, particularly for detainees unfamiliar with the language, laws, and procedures of American courts, and should not be cast aside lightly. While questions of this Court's jurisdiction may be pending in the Supreme Court of the United States, this Court should not turn a blind eye to the importance of access to counsel, which it has so adamantly enforced previously. *Order* at 4, n.5, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. Access to counsel is a gateway right—it is necessary before a petitioner can have any chance of asserting other rights, including rights under the DTA, which claims will survive even a totally adverse decision against the detainees in *Boumediene*. As Judge Walton explained in the Protective Order, "the petitioners are no less in need of counsel to challenge the respondents' allegation that the petitioners' representatives lack next of friend status than they are to pursue their underlying habeas actions." *Id.* In essence, it would be unfair to deny detainees, including the Petitioner, their rights relating to the Great Writ of Habeas Corpus when they have been denied access to effective counsel to advocate on their behalf for those rights.

Furthermore, for such a fundamental right as access to counsel, the Court need not be as concerned as the Respondents might urge with jurisdictional matters; in the same Protective

Order, this Court indicated that it "is not persuaded that entering the protective orders in cases where petitions are brought by representatives who do not satisfy all the criteria of next friend status would require the Court to overstep its jurisdictional bounds where the protective orders are entered simply to enable the petitioners to have access to counsel." *Id.* Again, this illustrates the principle that access to counsel precedes jurisdictional concerns—the Petitioner needs access to counsel to advocate jurisdiction and other issues on his behalf.

The Respondents will likely argue that this Court does not have jurisdiction to grant this motion nor issue any orders until the Supreme Court of the United States issues its decision in *Boumediene*, for which the Supreme Court granted *certiorari* on June 29, 2007. The Respondents have made this argument several times in attempting to oppose motions for injunctive relief for detainees, and have relied on these doctrines in their motions. (*See generally Mohammon*, Resp'ts' Opp'n to Emergency Mot. For Order Requiring Resp'ts to Provide Counsel for Pet'r and the Ct. with Thirty Day's Advance Notice of Any Intended Removal of Pet'r from Guantánamo, 05-CV-2386 (RBW), Dec. 6, 2007.) In these motions and others, the Respondents have argued that this Court's jurisdiction over hearing Guantánamo-related habeas claims is lacking[7] because, under "law of the case" doctrine, the decision by the Court of Appeals of the District of Columbia in *Boumediene* precludes this Court from hearing any similar cases until the Supreme Court issues its decision in those cases.

As Respondents have characterized them, the doctrines of law of the case and law of the circuit are rigid doctrines that apply any time a court decides an issue, even, apparently, if that decision is called into question by a higher court and remains unresolved. In reality, these

---

[7] The Respondents state that, "because the MCA deprives the Court of jurisdiction as explained in *Boumediene*, the All Writs Act provides no basis for issuing writs in aid of any exercise of jurisdiction by the District Court. Judge Kessler's order in *Alhami* to the contrary cited by petitioner, (*citation removed*), is, with respect, incorrect." (*Mohammon*, Resp'ts' Opp. at 11.)

14

doctrines are much more flexible than Respondents argue. "Law-of-the-case doctrine is a matter of practice and discretion, not a limit on power." 18.B Charles Alan Wright, Miller et al., Federal Practice and Procedure § 4478 at 691 (2d ed. 2002) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)). Law of the case doctrine is a principle of comity, not a mandatory principle to be applied rigidly. *Id.* at 637. For these reasons, this Court may continue to exercise jurisdiction over this issue in order to preserve justice and prevent harm, even if the law of the case doctrine applies. And since access to counsel is *not* at issue in *Boumediene*, this Court should have no qualms in exercising jurisdiction and granting this Order.

While some judges maintain that the Court of Appeals' ruling in *Boumediene* remains controlling until it is addressed by the Supreme Court, *Al Maqaleh v. Gates*, No. 06-1669(JDB), 2007 WL 2059128 at *2 (D.D.C. July 18, 2007), Judge Bates has held that "it [the Court] retains the authority to determine its own jurisdiction and the related power 'to make orders to preserve the existing conditions and the subject of the petition' until the jurisdictional issues raised by the Military Commissions Act are finally determined by the Supreme Court." *Order* at 3, n.2, *O.K. v. Bush*, *Order*, No. 04-1136 (JDB) (D.D.C. Nov. 7, 2007) (citing *Al Maqaleh*, 2007 WL 2059128, at *2).

Other judges of this Court have adopted an even more relaxed approach to the law of the case and law of the circuit doctrines. In her Order in *Alhami*, Judge Kessler, in response to the Respondents' law of the case arguments, reasoned that:

> [T]he Court of Appeals' decision, on July 27, 2007, to affirmatively withdraw the mandate in *Boumediene* suggests, at a minimum, the Court of Appeals' inclination to await the Supreme Court's final ruling. In addition, it is well-settled that an appellate decision is not final until the mandate is issued. Absent a mandate, whether because it has not yet issued or because it has been withdrawn, the court of appeals retains jurisdiction and the decision may be modified or rescinded.

15

*Memorandum Order* at 5, *Alhami v. Bush*, No. 05-359(GK), 2005 U.S. Dist. LEXIS 45558 (D.D.C. Oct. 2, 2007) (internal citations omitted). In reaching this decision, Judge Kessler reasoned that in light of uncertainty surrounding the jurisdictional ruling in light of the Supreme Court's grant of *certiorari*, "it is imperative that the Court protect its jurisdiction until the Supreme Court issues a definitive ruling in *Boumediene*", *id.* at 6, due to what Judge Kessler terms the "dire irreparable harm" the detainee could face if the Court gives up its jurisdiction, *id.*

Judge Kessler's handling of the law of the case and law of the circuit issues demonstrates a flexibility that aims at maintaining the Court's discretion and jurisdiction in order to maintain justice. Judge Kessler applies a balancing test in weighing whether the Court should act on behalf of a detainee or wait for a decision in *Boumediene* to be issued, and that balancing test keeps in mind harm that could arise to a detainee due to this Court's inactivity. The harm this Petitioner will suffer if he is not granted immediate access to counsel has been addressed above, and need be elaborated upon, since it has been addressed by this Court as well as the Supreme Court on many occasions. *See e.g. Hamdi v. Rumsfeld*, 542 U.S. 507, 539 (2004) (plurality opinion of Justice O'Connor); *see id.* at 553-54 (concurring opinion of Justice Souter); *Al Odah v. United States* 346 F. Supp. 2d at 5. And since access to counsel is not the main issue in dispute in *Boumediene*, this Court would not be stepping outside its jurisdiction in granting this Order, particularly due to the harm that would result if this Court allowed the Respondents to continue to deny the Petitioner access to counsel. Moreover, even if *Boumediene* results in denying access to the detainees under habeas, the Petitioner is unquestionably entitled to access to counsel under the terms of the DTA.[8]

---

[8] Although the DTA process may involve use of a different protective order, this court can both decide the question of access to counsel and impose whatever protective order conditions that it feels appropriate on counsel in this matter.

## VII. Petitioner Is Entitled To Access To Counsel For Addressing Suggested DTA Procedure

Respondents have indicated that "if you [Petitioner's counsel] wish to seek access to ISN 89 [Petitioner], the proper way to do so is to file to file [sic] a Detainee Treatment Act ("DTA") petition on his behalf in the Court of Appeals . . . ." (*See* **EXHIBIT 12**.) While it was generous of Respondents to provide such advice, it must be taken with two grains of salt: first, by the very nature of the adversarial litigation, Respondents have demonstrated that they are not acting in Petitioner's best interest, and second, even if they were, Respondents' analysis is questionable, as Respondents have misinterpreted a court order in the paragraph directly preceding this DTA suggestion.[9] *Id.*; *see also* discussion *supra* Part III.

As demonstrated throughout this memorandum, Petitioner is entitled to access to counsel. In light of Respondents' suggestion that Petitioner go through the DTA process instead, Petitioner still has a right to access counsel to independently analyze the viability of this course of action, advocate on Petitioner's behalf should Respondents maintain their current position, and to prepare the appropriate documents to transfer Petitioner's case to the DTA arena if Petitioner and his counsel determine that it would be the more suitable course of action. This Court has already enunciated the importance of access to counsel for peripheral issues: "the Petitioners are no less in need of counsel to challenge respondents' allegation that the petitioners' representatives lack next of friend status than they are to pursue their underlying habeas actions."

---

[9] "In Judge Walton's June 27, 2006 Order, the Court set forth the procedure by which disputes over the identity of petitioners would be resolved. Mohammon, Order at 5-6. Respondents were given until July 26, 2006, to notify the Court 'of all petitioners named in this case whom [the respondents] are unable to identify.' *Id.* at 6. The Court further ordered that '[a]ny petitioner whom the respondents indicate they are unable to identify shall have the opportunity to challenge the respondents' assertion that he cannot be identified.' Now, some 16 months since Judge Walton entered this order, you claim, without any convincing explanation, that the petitioner named 'Abd Al Zaher' is really named 'Poolad T. Tsiradzho (ISN 89),' a man whose identity you apparently only learned after reviewing DoD's May 15, 2006 FOIA list." (**EXHIBIT 12**.)

17

*Order* at 4, n.5, *Mohammon*, 2006 U.S. Dist. LEXIS 60186. Respondents' assertion that Petitioner must go through the DTA process is a challenge to Petitioner's access to this court under the *Mohammon* petition, just like the Respondent's previous allegation of lack *of next of friend* status, and such a challenge highlights the importance of Petitioner's access to counsel to adequately and effectively challenge this latest assertion. For this and all the other reasons stated above, this Court should order that Petitioner have access to his counsel.

## CONCLUSION

For the reasons stated above, Petitioner's motion to order access to counsel should be granted. A proposed Order is attached to this motion.

DATED: March 7, 2008

Professor Richard Wilson, Esq.
Bar I.D. # 425026
International Human Rights Law Clinic
American University
Washington College of Law
4801 Massachusetts Ave., N.W.
Washington, DC 20016-8184
tel. (202) 274-4147
fax (202) 274-0659
email: rwilson@wcl.american.edu

Attorney for Plaintiff/Petitioner
