# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMER MOHAMMON, *et al.,* )<br>  Petitioners, )<br> )<br> *v.* )<br> )<br> GEORGE W. BUSH, *et al.,* )<br>  Respondents. )<br> ) | Civil Action No.: 05-cv-2386 (RBW) |

**PETITIONER'S REPLY TO RESPONDENTS' RESPONSE TO NOTICE AS TO REPRESENTATION BY COUNSEL AND FEAR OF RETURN TO TUNISIA <u>REGARDING ADIL BIN MABROUK, ISN 148</u>**

On Friday, March 21, 2008, Respondents filed their "response" to Petitioner's recent notice as to representation and fear, claiming that the Court's request for Petitioner's notice asked Petitioner "to provide the Court with information showing that in fact he is a petitioner." Response (dkt. no. 422), at 1. Respondents further interpreted the Court's request as relating to an "amendment" and asserted that "the amendment to the petition in this case to add Mr. Mabrouk as a petitioner should be denied." Respondents asserted that Petitioner's motion, which was argued and ruled upon at the hearing held on March 19, 2008, should be denied, and that the Court's ruling on Petitioner's motion should be vacated. *Id.*, at 3-4.

At the hearing on March 19, 2008, the Court heard arguments on Respondents' claims as to Petitioner's identity. The Court expressed uncertainty as to Petitioner's

identity, but nevertheless ruled in Petitioner's favor, subject only to the requested confirmation that Petitioner provided later that day.

The Court ruled within its jurisdiction in this matter. In *Belbacha v. Bush,* ___ F.3d ___, 2008 WL 680637 (D.C. Cir. March 14, 2008), the Court of Appeals for the D.C. Circuit specifically addressed preliminary injunctive relief and concluded that courts facing the same jurisdictional issues as those raised in *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted*, 127 S. Ct. 3078 (June 29, 2007) could consider such relief so long as moving parties satisfied the four-factor criteria for issuing preliminary injunctions. The Court weighed the factors for preliminary injunctions, as it had previously done in *Almurbati v. Bush*, 366 F. Supp. 2d 72 (D.D.C. 2005), and concluded that in this case Petitioner was likely to suffer irreparable harm if relief was not awarded.[1]

The possibility that Respondents might one day litigate their challenge to Petitioner's identity undoubtedly affected the Court's consideration whether Petitioner had a substantial likelihood of success on the merits. But the overriding factor influencing the Court, and distinguishing this case from the circumstances presented in *Alburmati*, was the fact that Petitioner faced irreparable harm in the form of incarceration, mistreatment, and torture if returned to Tunisia. On this factor, *Belbacha*, at 11, and *Alburmati*, at 76, rely on language of the same case, *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995): "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." In Petitioner's case, irreparable harm outweighed other considerations,

---

[1] The four factors considered by the Court were: (1) whether Petitioner has a substantial likelihood of success on the merits; (2) whether Petitioner faces irreparable harm absent the preliminary injunction; (3) whether the injunction would substantially injure the opposing party; and (4) whether the injunction furthers the public interest. *See Belbacha*, at 10, citing *Ellipso, Inc. v. Mann*, 480 F.3d 1153, 1157 (D.C. Cir. 2007).

including the possibility that Respondents might one day challenge Petitioner's status as a petitioner.

The Court did not find that Petitioner was not a party to the petition. Petitioner did not seek to amend the petition. Nor did the Court threaten to deny Petitioner's motion absent a showing of further evidence that Petitioner was a party. Rather, the Court ruled in Petitioner's favor notwithstanding uncertainty as to his status.

Despite counsel's hesitation to answer questions that the Court has not asked, and to rekindle issues that the Court has already considered and decided, Petitioner is compelled by Respondent's "response" to answer Respondent's allegations as to Petitioner's identity.

Respondents claimed in their opposition to Petitioner's original motion (dkt. no. 399) at 1, 3, and in their recent "response" (dkt. no. 422) at 3, that the petitioner described as "Adil LNU"[2] at paragraph 150 of the petition for habeas corpus (dkt. no. 1) at 68, was in fact a different person, whose Internment Serial Number (ISN) was 502, and that Petitioner was therefore not a party to this case. The detainee claimed by Respondents to be the real Adil LNU, is a man named Abdul bin Mohammed bin Abess Ourgy. *See* Declaration of Karen L Hecker (dkt. no. 399-2) at 10, 30. No explanation was given for this claim.[3]

Respondents assert that they filed a "detailed status report" with the Court identifying "'Adil LNU' as having ISN 502" in response to an order of this Court, and

---

[2] From his experience with Petitioner, other clients, and Arabic/English translators, the undersigned counsel for Petitioner has learned that "Adil" and "Adel" are variant spellings of the English language translation of the same Arabic name. "LNU" is an acronym for "last name unknown."

[3] "Adil" and "Adel" are conspicuously absent from Mr. Abdul bin Mohammed bin Abess Ourgy's name, as it has been presented to this Court in connection with Petitioner's motion for relief in the Hecker Declaration. Mr. Ourgy is stated to have the first name "Adel" in another case before this Court (*see Wirghi v. Bush, et al.*, No. 05-CV-1497 (RCL)).

that as the result of the filing of their report, "pursuant to the Court's order, the burden shifted to Petitioner to challenge this identification." Dkt. no. 422, at 3. The order referred to by Respondents (dkt. no. 66) made no mention whatsoever of burden shifting. In fact, the order in question applied protective orders and ordered Respondents (1) to identify detainees named in the petition as to whom the protective orders should not be applied because they previously filed habeas corpus petitions in other cases, and (2) to notify the Court of named petitioners whom they could not identify. *Id.,* at 5, 6. Indeed, the Court admonished Respondents for their continuing efforts to deny access by petitioners to their attorneys (*id.,* at 3, 4), which is consistent with Petitioner's argument at the hearing on March 19 that any problem of identifying Petitioner is one of Respondents' own making. Under the circumstances, the burden of proving that Petitioner should be denied access to justice as a party to these proceedings must fall squarely on Respondents. *See id.,* at 4, n.5 ("The respondents also assert that potentially "dozens" of the petitioners named in this case are represented by individuals who do not satisfy the requirements of next friend status . . .. [T]he Court sees no reason why the alleged deficiencies in the petitioners' representatives' next friend status requires it to deny them access to counsel.").[4]

Never once, in written and oral arguments before the Court in this matter or in telephone conversations between undersigned counsel and counsel for Respondents, have Respondents offered any reason, argument, or evidence for their allegation that Adil LNU is really Mr. Ourgy and not Petitioner.

---

[4] Respondents continue to refuse to allow counsel to visit Petitioner under the terms of this Court's protective order. *See* Email Message from A. Warden to J. Fee, July 16, 2007 (attached as Exhibit 1).

Mr. Ourgy, ISN 502, is a petitioner in another *habeas corpus* case, *Wirghi v. Bush, et al.*, No. 05-CV-1497 (RCL), where his name appears with the variant spellings "Ourgy," "Wirghi," and "Ouerghi." Indeed, his first name appears as "Adel" in those proceedings. *See Wirghi* Emergency Mot. for TRO (*Wirghi* dkt. no. 39). Mr. Ourgy's petition for habeas corpus was filed on July 29, 2005. At that time, Mr. Ourgy relied on the affidavit of a next friend, Mr. Moazzan Begg (ISN 558) to engage counsel to represent him. *See Wirghi* Pet. for Habeas Corpus (*Wirghi* dkt. no. 1).

Petitioner relied, at the time of filing of the petition in this case, on the next friend affidavit of Mr. Jamal Kiyemba (ISN 701). Kiyemba Aff't. (dkt. no. 1-2) at 17. In a list of 34 detainees referred to in Mr. Kiyemba's affidavit, Petitioner appears as the 21st named detainee, "Adil." The affidavit shows Tunisia as Petitioner's home country, and "Italian?" as a language spoken by Petitioner.[5] The affidavit states, further, that "Adil" was incarcerated in Camp IV.

Respondents have evidently disregarded Mr. Kiyemba's affidavit entirely. In their "detailed status report" (dkt. no. 109) exh. B, Respondents claim that petitioners Adil LNU and Adel Al Tunisia are the same man, ISN 502, who is the detainee covered by the *Wrighi* case. Since the petitioner in that case, Mr. Ourgy, is supported by the next friend affidavit of Mr. Begg, Respondent's would have the Court believe that Mr. Kiyembi's affidavit covers no one, or alternatively that it is redundant, covering the same man covered by Mr. Begg's affidavit. The far more sensible conclusion is that Mr.

---

[5] Two other next friend affidavits naming "Adel" or "Adil" appear of record in this case. One is signed by Mr. Usama Hasan Abu Kabir (ISN 651) naming "Adel," covering a man from Turkistan (Dkt. No. 1-2 at 14) and the other is signed by Mr. Sami Muhyedin al Hajj (ISN 345) naming "Adel al Tunisi" (Adel of Tunisia) who speaks French (Dkt. No. 1-2, at 10). As indicated elsewhere in this reply, at n.6, Petitioners believe Mr. Hajj's affidavit may also cover Petitioner.

Kiyembi's affidavit covers a different man named Adil, who speaks Italian, and who was
held in Camp IV.

Respondents argue in their "response" that Petitioner has not established that he is
the person on whose behalf Mr. Kiyemba made his affidavit, because Petitioner "is
unable to confirm that he ever told Mr. Kiyemba that he wanted a lawyer or even knew
Mr. Kiyemba." Dkt. no. 422, at 2. This statement callously disregards the fact that
hundreds of men of different nationalities, cultures, and languages were thrown together
in Guantánamo against their will. A small group of men took it upon themselves to speak
for detainees as next friends under these extreme circumstances, where detainees had
little opportunity to interact or become closely acquainted. Mr. Kiyemba, a native of
Uganda (*see* dkt. no. 399-2, at 28), sought out, spoke to, and acted as next friend for 34
other men who relied on him to find lawyers "for a legal challenge to the illegality of
their detention by the United States of America." Dkt. no. 1-2, at 17. Not surprisingly, in
the heavily secure prison environment of Guantánamo, he could only identify 24 of the
34 men on his list by first name. Dozens more men have been thus identified solely by
first name in this and other Guantánamo cases. It is not relevant whether either Mr.
Kiyemba or Petitioner could remember each other's first or last names years later. What
matters is that Mr. Kiyemba recorded his statement that an Italian-speaking man from
Tunisia named Adil, incarcerated in Camp IV, told him that he wanted a lawyer.

There is no question Petitioner is from Tunisia, as stated in Mr. Kiyemba's
affidavit and as acknowledged by Petitioners. *See* dkt. no. 399-2, at 6, 24. Regarding
Mr. Kiyembi's further observations that Petitioner spoke Italian and was incarcerated in
Camp IV, Petitioner's counsel confirms that Petitioner speaks Italian and was at one time

held in Camp IV.  Decl. of Jonathan M. Fee (attached as Exhibit 2).[6]  The "Adil" named

on Mr. Kiyemba's affidavit and the Petitioner are indeed one and the same man.

This Court should disregard Respondents' "response" and issue its written order

consistent with its ruling on March 19, 2008, ordering Respondents to give Petitioner and

the Court 30 days' notice of any intended removal of Petitioner from Guantanamo.

Respectfully submitted,


/s/ Jonathan M. Fee_____
Jonathan M. Fee
ALSTON & BIRD LLP
950 F Street, NW
Washington, DC 20004
(202) 756-3387
jon.fee@alston.com
DC Bar No. 479579

*Attorney for Petitioner*

Dated:  March 23, 2008

---

[6] As noted by counsel (Fee Decl.), Petitioner also speaks French, raising the possibility that he is also the subject of the Hajj affidavit.  *See* n.5.

ADMIN/20204351v1

## <u>CERTIFICATE OF SERVICE</u>

I, Jonathan M. Fee, herby certify that I today caused a true and accurate copy of the foregoing to be served electronically via the Court's Electronic Case Filing system.


/s/ Jonathan M. Fee_____

Dated:  March 23, 2008

ADMIN/20204351v1