IN THE UNTED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMER MOHAMMON, SAYF BIN ABDALLAH *also known as* SAIF ULLAH et al. *Petitioners,* v. GEORGE W. BUSH, et al. *Respondents* | ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 05-cv-02386 (RBW) |

**PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT RESPONDENTS FROM REMOVING PETITIONER FROM GUANTÁNAMO BAY UNTIL PETITIONER'S EMERGENCY MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONER AND THE COURT WITH THIRTY-DAYS ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONER FROM GUANTÁNAMO IS DECIDED**

Pursuant to Federal Rules of Civil Procedure 64 and 65, Sayf Bin Abdallah a/k/a Saif Ullah ("Abdallah") hereby applies for an a temporary restraining order prohibiting Respondents from transferring Abdallah from Guantánamo Bay until the outstanding "Motion for Order Requiring Respondents to Provide Counsel for Petitioner and the Court with Thirty-Days Advance Notice of Any Intended Removal of Petitioner from Guantánamo" (Abdallah's "30-Day Motion," Doc. Nos. 347 and 348) is decided.[1]

A temporary restraining order is urgently needed to maintain the *status quo* of the instant litigation. Respondents have stated in writing their intention to transfer Abdallah, potentially at any moment and without further notice. If Respondents are allowed to

---

[1] This Court has jurisdiction and may decide this motion in light of the decision of the United States Court of the Appeals for the District of Columbia Circuit in <u>Belbacha v.</u>

transfer Petitioner from Guantanamo, there is a high likelihood that Respondents will attempt to return Abdallah to his native Tunisia, where he faces a severe and documented risk of torture and mistreatment at the hands of Tunisian authorities.

Without a temporary restraining order, Respondents could transfer Abdallah from Guantánamo Bay to Tunisia or elsewhere without allowing him the opportunity to contest the legality of such a transfer or to prepare for his arrival in the receiving state. Such a transfer would not only subject Abdallah to the possibility of torture or indefinite detention in the receiving state, but would also strip this Court of its habeas jurisdiction.

Abdallah is compelled to move for a temporary restraining order after receiving an e-mail from Respondents on February 7, 2008 confirming that Abdallah "has been approved to leave Guantánamo, subject to the process for making appropriate diplomatic arrangements for his departure." (*See* e-mail from Bree Ermentrout to Joseph S. Berman dated February 7, 2008 ("Bree Ermentrout Email"), attached hereto as Exhibit A.) Respondents' e-mail suggests that arrangements for Abdallah's removal from Guantánamo Bay are accelerating and possibly complete, and that his departure may only be imminent.

### STATEMENT OF FACTS

The relief Abdallah seeks in his 30-Day Motion itself is very limited. In that motion, Abdallah seeks an order requiring respondents to give advance notice to the Court and counsel before they remove Abdallah from Guantánamo to Tunisia where, Abdallah fears, he will be tortured or detained indefinitely without any legal process. In making that motion, Abdallah asks for nothing more than an opportunity to contest the legality of any transfer before it becomes a *fait accompli* or, alternatively, for the

---

Bush, No. 07-5528 (March 14, 2008).

L:\10000\212\Pld

opportunity to prepare for his arrival in Tunisia by obtaining local counsel and informing his family of his return.  The instant motion for a temporary restraining order seeks even less: maintenance of the status quo only for the time while Abdallah's 30-Day Motion is pending.

Abdallah's concerns about his imminent transfer from Guantánamo to Tunisia are serious and justified.  Respondents recently confirmed that Abdallah has been approved for a transfer subject only to the completion of certain undisclosed processes and arrangements in preparation for his departure. (*See* Exh. A.)  While such notice may be welcome news for some Guantánamo detainees, it is the cause of grave concern for Abdallah.

Abdallah has or may have legitimate fears that he will be tortured or detained indefinitely without any process of law upon his return to Tunisia.  These concerns are well founded.  A Tunisian Military Court has already sentenced Abdallah *in absentia* to 11 years in prison.  According to a news report, Abdallah, also known as Salah Ben Hedi Jilani Sassi, was convicted *in absentia* by a Tunisian court on charges of "having links" to a terrorist group. (*See* Exh. B)  Furthermore, the experiences of Abdullah al-Hajji Ben Amor and Lotfi Lagha, two Tunisian Guantánamo detainees who were returned to their home country on June 17, 2007, immediately taken into custody by Tunisian authorities, and severely mistreated, confirm Abdallah's concerns as to the treatment he could expect were he forcibly returned to Tunisia.  *See* Human Rights Watch, *Ill-Fated Homecomings: A Tunisian Case Study of Guantánamo Repatriations*, vol. 19, no. 4(E), September 2007, http://hrw.org/reports/2007/tunisia0907/, at 23.  Indeed, this Court has already stayed the transfer of another Tunisian detainee from Guantánamo to Tunisia based in substantial

part on credible allegations of "inhumane living conditions" in Tunisian prisons and of "torture and police brutality." *Alhami v. Bush,* No. 05-359 (D.D.C. Oct. 2, 2007).

As stated above and in detail in Abdallah's 30-Day Motion, despite Respondents' acute awareness of Tunisia's extremely poor human rights record, other Tunisian detainees have been repatriated to Tunisia and have suffered severe mistreatment at the hands of Tunisian authorities, contrary to the assurances of the Tunisian government. *See* Human Rights Watch*, Ill-Fated Homecomings: A Tunisian Case Study of Guantánamo Repatriations,* at 23.

Respondents' expressed intention to transfer Abdallah likewise raises serious questions about the implementation of the U.S. policy concerning the repatriation of detainees in light of serious concerns regarding the detainees' health and safety. A report by the U.S. State Department describes in detail the torture and inhumane treatment employed by Tunisian authorities. *See* U.S. State Department, Bureau of Democracy, Human Rights, and Labor, *Country Reports on Human Rights Practices 2007: Tunisia*, March 11, 2008 at http://www.state.gov/g/drl/rls/hrrpt/2007/100607.htm at 1. Certainly, Abdallah's conviction *in absentia* and sentence should suggest to Respondents that Abdallah's treatment upon his arrival in Tunisia can be expected to be in accordance with the conditions reported by the State Department.

In sum, Abdallah's concerns about his transfer from Guantánamo are serious, imminent and concrete. The requested relief is necessary to prevent irreparable harm to Abdallah and to preserve the jurisdiction of this court, not only with respect to the 30-Day Motion but also with respect to Abdallah's pending habeas petition.

## ARGUMENT AND CITATION OF AUTHORITIES

**A.    This Court has Jurisdiction to Grant the Requested Temporary Restraining Order.**

As set forth in more detail in his 30-Day Motion, Abdallah has properly invoked this Court's jurisdiction. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004); *Bismullah v. Gates*, Nos. 06-1197, 06-1397, 2007 WL 2067938 (D.C. Cir. July 20, 2007). Transfer outside this Court's jurisdiction would "eliminate any opportunity for [Petitioner] to ever obtain a fair adjudication of [his] 'fundamental right to test the legitimacy of [his] detention.'" *Abdah v. Bush*, No. 04-1254 (HHK), 2005 WL 711814, at *4 (D.D.C. Mar. 29, 2005). Indeed, the "federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal Courts for the protection of the rights in those tribunals." *Id*. (quoting *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28, 54 (D.D.C. 2004)).

Recent developments in *Boumediene*, the leading case on the issue of federal courts' jurisdiction over Guantánamo detainee cases, support this conclusion. *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *cert. granted,* 127 S. Ct. 3078 (June 29, 2007) (No. 06-1195). Following the Supreme Court's grant of *certiorari* in *Boumediene*, the D.C. Circuit recalled its mandate ordering the dismissal of Guantánamo detainees' habeas petitions and stayed the proceedings pending the outcome of the Supreme Court's review of the jurisdiction-stripping provisions of the MCA.[2] The effect

---

[2] *See also, e.g., Kiyemba v. Bush,* No. 05-5487 et al., 2007 U.S. App. LEXIS 21742 (D.C. Cir. Sept. 7, 2007) (recalling D.C. Circuit's mandate ordering the dismissal of Guantánamo detainees' habeas petitions on jurisdictional grounds); *Paracha v. Bush*, No. 05-5194, consolidated with 05-5333, 2007 U.S. App. LEXIS 21741 (D.C. Cir. Sept. 7, 2007) (staying mandate ordering the dismissal of Guantánamo detainees' habeas petitions on jurisdictional grounds); *Abdah v. Bush,* No. 05-5224 et al., 2007 U.S. App. LEXIS 19078 (D.C. Cir. Aug. 9, 2007) (deferring consideration of government's motion to

of recalling the mandate was to divest this Court of the authority to dismiss those cases, and to preserve in those cases the relevant protective order and counsel access rules, as well as related orders, such as those requiring the government to provide counsel with advance notice of any intended transfers from Guantánamo.

Both this Court and the D.C. Circuit have already issued orders requiring Respondents to give detainees and their counsel advance notice of any transfer from U.S. custody and staying such transfers in other cases. For example, in *Abdah v. Bush*, this Court granted the motion of Yemeni petitioners for 30 days' notice of an intended transfer of petitioners from Guantánamo. No. 04-1254, 2005 U.S. Dist. LEXIS 4942 (D.D.C. Mar. 29, 2005). Similarly, in *Rohullah v. Gates*, this Court ordered the government to give Rohullah's counsel 30 days' notice before they transfer him from Bagram Air Force Base to Afghan custody. No. 06-1707 (D.D.C. Nov. 3, 2007). In *Alhami v. Bush*, 05-359 (GK) (D.D.C. Oct. 2, 2007), this Court stayed the transfer of another Tunisian detainee back to his home country. In addition the United States Court of Appeals for the District of Columbia Circuit stayed the transfer of Ahmed Belbacha to Algeria in order to preserve its jurisdiction over the case while it considered Belbacha's appeal, which was ultimately allowed. *Belbacha v. Bush*, No. 07-5258 (D.C. Cir. Dec. 31, 2007).

This precedent confirms the jurisdiction of this Court to provide the requested relief and to preserve its jurisdiction over Abdallah's 30-Day Motion and his habeas corpus petition.

Indeed, in a very similar case, this Court <u>granted</u> the motions of Petitioners Adil

---

dismiss Guantánamo detainees' habeas petitions and denying government's motion to vacate 30-day notice order).

Bin Mabrouk, ISN 148, and another Petitioner, Abdulayeu for an Order Requiring Respondents to Provide Counsel for Petitioner and for the Court with Thirty Days Advance Notice of Any Intended Removal of Petitioner from Guantanamo (Document No. 425).  There is no material distinction between Mabrouk's and Abdulayeu's cases and this one.

### B.   Abdallah's Petition Satisfies the Requirements Governing Temporary Restraining Orders.

Federal Rule of Civil Procedure 65(b) provides that a temporary restraining order "may be granted without written or oral notice to the adverse party or that party's attorney only if it clearly appears from specific facts shown by the affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." The purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing can be held.  *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

In considering a request for a preliminary injunction or temporary restraining order, a court must examine whether: "(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction."  *Davenport v. Int'l Brotherhood of Teamsters, AFL-CIO*, 166 F.3d, 356, 360 (D.C. Cir. 1999).  These factors interrelate on a sliding scale and must be balanced against each other.  *Id.* at 361.

Where the balance of hardship tips decidedly toward the movant, it will "ordinarily be enough that the [movant] has raised questions going to the merits so

L:\10000\212\Pld

- 7 -

serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (quoting *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir. 1953)). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury to the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Washington Metro.,* 559 F.2d at 844.

> **1.     Abdallah Will Suffer Irreparable Injury If He Is Transferred to Tunisia Without Advance Notice.**

As set forth in detail above and in his 30-Day Motion, Abdallah stands to suffer immeasurable and irreparable harm – from torture to possible death – if he is transferred into the hands of Tunisian authorities. Transfer to Tunisia, even if "only" for continued imprisonment, also circumvents Abdallah's right to adjudicate the legality of his detention in this Court.

The torture practices that Tunisian security forces engage in are well-documented in the U.S. State Department's report on Tunisian human rights practices. These practices include "sleep deprivation; electric shock; submersion of the head in water; beatings with hands, sticks, and police batons, suspensions, sometimes manacled, from cell doors and rods resulting in loss of consciousness, and cigarette burns." U.S. State Department, Bureau of Democracy, Human Rights, and Labor, *Country Reports on Human Rights Practices 2007: Tunisia*, March 11, 2008 at http://www.state.gov/g/drl/rls/hrrpt/2007/100607.htm at 1. The report also states that

"'Political prisoners, Islamists, and persons detained on terrorism-related charges allegedly received harsher treatment than other prisoners and detainees." (Id. at 1). The experiences of Abdullah al-Hajji Ben Amor and Lotfi Lagha — two Tunisian Guantánamo detainees who were returned to their home country on June 17, 2007 — confirm the State Department's findings. Human Rights Watch followed up on the fate of these Tunisian detainees and reported the following:

> Despite the assurance of humane treatment, al-Hajji reports being immediately taken to an interrogation center, where he says he was prohibited from sleeping, slapped, threatened with the rape of his wife and daughters, and coerced into signing something he could not read. He says that he was held for six weeks in solitary confinement, even though the Tunisian government had explicitly pledged to Human Rights Watch to end the use of prolonged solitary confinement in prisons.
>
> Similar concerns exist regarding the treatment of Lagha, whom Tunisian authorities also detained in solitary confinement. He was held for six weeks in pretrial detention without access to an attorney or any other outside monitor who could publicly report on his treatment or condition.

Human Rights Watch, *Ill-Fated Homecomings: A Tunisian Case Study of Guantánamo Repatriations*, vol. 19, no. 4(E), September 2007, http://hrw.org/reports/2007/tunisia0907/, at 23. These reports raise grave concerns as to the serious torture and abuse Abdallah would expect upon his release and return to Tunisia.

Similarly, the case of Abduallah Bin Omar Al Hajji provides important information about the dangers of repatriating Petitioner Abdallah to Tunisia. As set forth in the Declaration of Zachary Katznelson, Al Hajji's lawyer (Exhibit "C" hereto), Tunisia has held that petitioner incommunicado and subjected him to threats and beatings. Al Hajji's "trial" ignored basic tenets of due process and human rights. Al Hajji was "convicted" based on incredible hearsay testimony. Previous to his return to Tunisia, Al

L:\10000\212\Pld

- 9 -

Hajji was convicted by a Tunisian Military Court *in absentia* and sentenced to 10 years in prison, virtually the identical sentence which was recently handed down to Petitioner Abdallah. Accordingly, a sufficient factual basis exists to conclude that transfer of Petitioner Abdallah to Tunisia will directly jeopardize his civil and human rights.

Even if it is not certain that Abdallah would challenge his transfer to Tunisia, irreparable harm is almost certain to result from his inability to prepare for his return to his home country. Without appropriate notice, he will be unable to arrange for representation in Tunisia or to notify his family of his return. He would be left at the mercy of local authorities without any support from his family or local counsel.

### 2. Abdallah Has a Substantial Likelihood of Success on the Merits.

Injunctive relief may be denied for failure to show a likelihood of success on the merits only "if there are no circumstances under which Petitioners could obtain an order preventing a contemplated transfer." *Abdah v. Bush*, No. 04-1254, 2005 U.S. Dist. LEXIS 4942, at *15 (D.D.C. Mar. 29, 2005) (emphasis added). The following sufficiently demonstrates that this certainly is not the case here.

As stated in more detail above and in his 30-Day Motion, Abdallah has properly invoked the jurisdiction of this Court. *See Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). For the United States Government to remove Abdallah to any country that practices torture would deprive him of his Due Process protections and would rob this Court of its jurisdiction. As stated in more detail above, recent developments in the *Boumedine* and *Belbacha* cases and subsequent orders by this Court affirm this Court's jurisdiction to preserve its jurisdiction over the instant case.

Furthermore, this Court has held that "transfer of Petitioners without notice and

leave of court is forbidden by *FED. R. APP. P. 23(a),* which requires that pending review of a decision in a habeas corpus proceeding . . . the person having custody of the prisoner must not transfer custody to another unless transfer is directed in accordance with this rule." *Abdah v. Bush,* No. 04-1254, 2005 U.S. Dist. LEXIS 4942, at *15-16 (D.D.C. Mar. 29, 2005). The purpose of this rule is to "prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Id.* at 16.

An order by this Court enjoining the transfer of Abdallah to Tunisia would not interfere with Executive authority, given that a finding by this Court that such transfer would raise unacceptable concerns about Abdallah's health and safety would be in keeping with the U.S. State Department's findings concerning Tunisia's poor human rights record, and would also accord with the United States' express policy to refrain from repatriation to countries where a detainee would be at risk of torture.

Furthermore, a stay of Abdallah's transfer may be required by the United States Constitution. In its recent decision in *Khouzam v. Hogan*, No. 3:CV-07-0992 (M.D. Pa. Jan. 10, 2008), the United States District Court for the Middle District of Pennsylvania held that subjecting even an alien to the risk of torture violated the petitioner's rights under the Fifth Amendment: "Freedom from torture is a 'fundamental right,' surely protected by the Fifth Amendment regardless of a person's immigration status." *Id.* at 38. The Court also held that the government's unilateral reliance on diplomatic assurances, and its attempt to use those assurances as a shield against judicial review, violated the Due Process Clause. *Id.* at 46. This decision bears immediately on the

instant case. Only if this Court grants Abdallah's petition will he be provided with an opportunity to challenge his transfer to Tunisia on the grounds that he will face torture and mistreatment upon his return.

The likelihood of success of Abdallah's claim on the merits is most clearly evidenced by the grant of such petition in a case involving a Tunisian national. In *Alhami v. Bush,* this Court held that a stay of the intended transfer of the petitioner back to Tunisia was warranted in light of credible allegations of "inhumane living conditions" in Tunisian prisons and of "torture and police brutality." No. 05-359 (D.D.C. Oct. 2, 2007).

### 3. Respondents Will Suffer No Harm If Abdallah's Motion Is Granted.

In stark contrast to the actual bodily harm and loss of opportunity for legal redress that Abdallah faces, Respondents can articulate no actual harm that they will suffer by being restrained from transferring Abdallah out of Guantánamo between now and the disposition of his 30-Day Motion. Granting Abdallah's request for a stay of transfer until the 30-Day Motion is decided cannot undermine Executive authority in any material way.

### 4. An Injunction Will Further the Public Interest.

Public policy favors requiring Respondents for a short period of time from removing petitioners from Guantánamo — where he has been incarcerated for years — to a country outside of the jurisdiction of this Court. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant, properly before the Court and represented by counsel, be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

- 13 -

## CONCLUSION

For the reasons stated, Petitioner respectfully requests that his motion be granted.

Dated: April 11, 2008

                              Respectfully Submitted,
                              Counsel for Petitioner


                              _____/s/ Joseph S. Berman_____
                              Joseph S. Berman, BBO NO. 566006
                              (admitted pursuant to Local Rule 83.2(g))
                              LOONEY & GROSSMAN, LLP
                              101 Arch Street, 9th Floor
                              Boston, MA 02110
                              Tel: (617) 951-2800
                              Fax: (617) 951-2819

                              *Of Counsel:*

                              Reprieve
                              Zachary Katznelson, Bar No. 209489(CA)
                              P.O. Box 52742
                              London EC4P 4WS
                              United Kingdom
                              +44 (0) 207 353 4640 (tel)

                              Center for Constitutional Rights
                              Shayana Kadidal, Bar No. 454248
                              666 Broadway, 7th Floor
                              New York, NY 10012
                              212-614-6438 (tel)

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of April, 2008, the original and two copies of this Motion and Proposed Order were sent via FedEx to the Court Security Officer. Per established procedures in Guantánamo Bay habeas litigation, the Court Security Officer will serve the Motion and Proposed Order on counsel for Respondents: Terry Marcus Henry, Andrew Warden and Judry Laeb Subar, all of the U.S. Department of Justice.

                                                                                         /s/ Joseph S. Berman