Exhibit D



Yale Law School
Allard K. Lowenstein
International Human Rights Clinic
National Litigation Project

LINCOLN SQUARE LEGAL SERVICES, INC.
International Justice Clinic
Fordham University School of Law

April 30, 2008

Andrew I. Warden, Esq.
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Room 6120
Washington, D.C. 20530

**RE: Law Student Intern Applications for Security Clearance**

Dear Mr. Warden:

Law students from the National Litigation Project of the Allard K. Lowenstein International Human Rights Clinic at Yale Law School and the International Justice Clinic at Fordham Law School have requested applications for security clearance in order to be able to review and work with classified materials at the secure facility and to have access to the clinics' clients, men detained indefinitely at the U.S. military facility at Guantanamo Bay, Cuba. In response, the Department of Justice ("DOJ") has invoked a blanket policy of excluding all law student interns from the security clearance application process. A copy of this e-mail correspondence is included with this letter.

Law student interns are integral members of the legal teams chosen by the clinics' clients. These students participate in every facet of client representation and constitute an indispensable resource for supervising attorneys operating on a volunteer basis with limited resources in their litigation against the U.S. Government. There is no valid basis for DOJ's refusal to provide security clearance applications for law student interns. In so doing, DOJ improperly mobilizes its neutral gatekeeper authority over the clearance application process to adversarial advantage in pending litigation. This letter is to invite DOJ to reconsider its position. Should DOJ persist in its refusal, the undersigned clinical legal teams will have no choice but to file motions to compel compliance with the Protective Order governing counsel access to clients in these cases.

DOJ claimed that *Department of the Navy v. Egan,* 484 U.S. 518 (1988), stood for the principle that the Executive branch had unfettered discretion in controlling all aspects of the security clearance process. It also relied on a number of secondary justifications, including the gravity of Guantanamo cases, the burdens of processing security clearances, and the assumption that students' purportedly brief period of participation in these cases renders undertaking the security clearance process wasteful and unnecessary.

DOJ misconstrues the Supreme Court's decision in *Egan*, and the Department's secondary justifications for refusing to provide the applications are utterly unpersuasive, both individually and collectively. *Egan* recognizes the Executive's authority to withhold security clearances from individuals who have applied and failed the screening process. It does not permit arbitrarily withholding *applications* from an entire class of counsel. Moreover, DOJ's policy violates the express terms of the Protective Order governing cases filed in the context of *habeas* litigation. Indeed, DOJ's policy is at odds with its own and the Department of Defense's practice of clearing paralegals as well as students for access to classified materials and travel to Guantanamo.[1]

The *habeas* Protective Order, which governs the handling of classified information and the detainee-client relationship, defines "Counsel" as "an attorney who is employed or retained by or on behalf of a petitioner for purposes of representing the detainee in the United States District Court for the District of Columbia . . . ." The Protective Order defines "counsel" to include *"co-counsel, interpreters, translators, paralegals, investigators and all other personnel or support staff employed or engaged to assist in the litigation."*[2]

This broad definition of counsel unambiguously includes student interns. From a functional perspective, students perform tasks that larger law firms assign to junior associates and paralegals. As a textual matter, the broad category of "all other personnel or support staff" is inclusive of law student interns. Given that law students are considered "counsel" under the Protective Order, they should be treated the same as attorneys, paralegals, interpreters and other "counsel" with respect to access to security clearance applications. The Protective Order does not provide DOJ with any latitude to unilaterally reshape to its liking as party counsel the definition of "counsel" set by the Court. Nor can DOJ arbitrarily rule which members of detainees' "counsel" receive security clearance applications, under the plain terms of that order.

None of DOJ's justifications for their blanket exclusion of law student interns withstands scrutiny. DOJ misunderstands *Egan,* which only held that the Executive Branch has discretion in determining whether to withhold security clearance to an individual who has applied for it but does not merit it. *Egan* does not stand for the proposition that the Executive may categorically deny a whole class the ability to *apply*

---

[1] Indeed, DOJ has allowed paralegals assisting detainees' habeas counsel to apply for security clearance and they enjoy full access to classified materials at the Secure Facility and to their clients at Guantanamo. Moreover, two students at Yale Law School who were participating in the Lowenstein clinic received security clearance and traveled to Guantanamo as assistants to defense counsel for Salim Ahmed Hamdan in his military commissions proceedings. That the Department of Defense so readily processed those students casts deep doubt on the validity of DOJ's objections in the present context.

[2] Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, Exhibit A ("Revised Procedures For Counsel Access To Detainees At The U.S. Naval Base in Guantanamo Bay, Cuba") Civil Action Nos. 02-CV-0299 (CKK), 02-CV-0828 (CKK), 02-CV-1130 (CKK), 04-CV-1135 (ESH), 04-CV-1136 (JDB), 04-CV-1137 (RMC), 04-CV-1142 (RJL), 04-CV-1164 (RBW), 04-CV-1166 (RJL), 04-CV-1194 (HHK), 04-CV-1227 (RBW), 04-CV-1254 (HHK), 04-CV-1519 (JR) (2004) (emphasis added).

simply because they are students. A closer look at the facts in *Egan* confirms this analysis. Thomas E. Egan applied for a civil-service job working on nuclear submarines that required a security clearance. After a thorough background check, which revealed Mr. Egan's criminal record and history of alcohol abuse, he was informed that his application would be denied and given specific justifications for the denial. A number of administrative and judicial appeals followed, which eventually led the Supreme Court to affirm the right of the Executive to make the final determination. As such, *Egan* speaks to the power of the Executive to make *individual* determinations within the security clearance process itself; it does not permit sweeping and unprincipled exclusions from even accessing the process.

Nor are DOJ's secondary justifications adequate. The assertion that Guantanamo cases involve information too sensitive to permit student access is baseless. There is no factual basis for the claim that students are *per se* untrustworthy.[3] Government agencies routinely give student interns security clearance.[4] Indeed, the entire purpose of the security clearance process is to ascertain whether an applicant can be entrusted with classified information and DOJ cannot make that determination *a priori* with respect to an entire class of individuals.

DOJ's claim that permitting student applicants would overburden the system is similarly faulty. As a practical matter, only a limited number of law school clinics represent Guantanamo detainees, and only a subset of the students working on those cases would apply for security clearance. At present, only one attorney at the Lowenstein Clinic and two at the International Justice Clinic are security cleared and they work on discrete and independent sets of cases at each institution. It is wholly improper for DOJ to restrict which resources its adversaries can deploy in litigation.

DOJ further claims that students' purportedly limited time on clinical teams makes the government expenditure involved in processing their applications wasteful and unnecessary. This amounts to an imposition of a minimum time requirement to even apply for security clearance and lacks grounding in fact and law. Nothing in the Protective Order requires that counsel for detainees commit to representing their clients for a specific period of time. Moreover, DOJ does not impose any *a priori* minimum time commitment on private law firm associates and paralegals or its own attorneys and support staff despite a high turnover rate within these groups. As an aside, Yale students

---

[3] Indeed, two law student interns currently participating in the Lowenstein Clinic's National Litigation Project received security clearances as part of previous employment for government agencies at levels higher than that required for work on most Guantanamo litigation. One student is cleared at "Top Secret" and the other at "Top Secret-SCI-Q." Certainly, the Department would not maintain that these individuals became a security risk once they decided to seek a formal legal education.

[4] A large number of federal government internships require security clearance. *See*, e.g.:
    State Department interns: http://careers.state.gov/students/programs.html#SIP
    FBI student interns: http://www.fbijobs.gov/231.asp
    NSA internships: http://www.nsa.gov/careers/students_1.cfm
    USAID: http://www.usaid.gov/careers/lpaintern.html
    National GeoSpatial Intelligence Agency: http://orise.orau.gov/sep/needs/files/NGA-2007-02.pdf
    Civilian Engineers and Scientists Career Program: http://www.dacp16.net/ELEcrest.html
    China Embassy: http://www.usembassy-china.org.cn/beijing/jobs/082505faq.html

often participate in the Lowenstein clinic for 2 ½ years—exceeding the typical employment commitment of a paralegal—and many continue their work on clinical cases upon graduation. Therefore, DOJ's claim is no basis for excluding students as a class.

Finally, DOJ is impermissibly exploiting its position as gatekeeper to the security clearance process to further capitalize on an already vast deficit of volunteer counsel resources. The Department's simultaneous role as administrat of security clearances and counsel for the Department of Defense—and thus opposing counsel to Guantanamo detainees—creates a risk of conflict of interest, which materializes in this instance. While these two functions are theoretically distinct, the arbitrary policy of excluding law students from applying in violation of the Protective Order improperly eliminates the boundary.

In light of these facts we respectfully request that DOJ reconsider its position and agree to provide law student interns with applications for security clearance. Should the Department decline this request, we will be forced to file motions to compel DOJ to adhere to the clear mandate of the Protective Order and will do so by May 16.

We look forward to hearing from you regarding this matter.

Kind Regards,


Ramzi Kassem
*Supervising Attorney*

Brian K. Mahanna &
Joseph A. Pace
*Law Student Interns*

Allard K. Lowenstein
International Human Rights Clinic
National Litigation Project
Yale Law School
127 Wall Street
New Haven, CT 06511
(203) 432-0138

Martha Rayner
*Supervising Attorney*

Laura Alvarez &
Elizabeth Hume
*Law Student Interns*

Lincoln Square Legal Services, Inc.
International Justice Clinic
Fordham Law School
33 West 60th Street, 3rd Floor
New York, NY 10023
(212) 636-6941

4

## Kassem, Ramzi

**From:** Warden, Andrew (CIV) [Andrew.Warden@usdoj.gov]
**Sent:** Friday, August 10, 2007 2:33 PM
**To:** Kassem, Ramzi
**Cc:** Campbell, Jennifer; michael.wishnie@yale.edu
**Subject:** RE: security clearance applications

Ramzi,

Given the issues and information involved in the Guantanamo cases, as well as the burdens associated with processing clearances, the government is not providing security clearances to law students, legal interns, summer associates, and the like, people whose involvement in the cases is likely to be short-term. Similarly, the current posture of the DTA and habeas cases does not warrant providing security clearances to experts or consultants (beyond translators). As you know, the Executive's authority to control access to classified information is well settled. See Dep't of the Navy v. Egan, 484 U.S. 518, 527 (1988).

Best regards,

Andrew

-----Original Message-----
From: Kassem, Ramzi [mailto:Ramzi.Kassem@yale.edu]
Sent: Friday, August 10, 2007 1:30 PM
To: Warden, Andrew (CIV)
Cc: Campbell, Jennifer; michael.wishnie@yale.edu
Subject: RE: security clearance applications

Hello Andrew,

I received the security clearance application packet this week. Many thanks. Mike will enter an appearance and send in his application soon.

Also, on what authority are law students or outside consultants not "permitted to receive security applications"? I would like to know if you are relying on regulations or memorialized policy or, if this is a matter of discretionary practice, what the rationale is for withholding such applications from this class.

Best,

Ramzi

-----Original Message-----
From: Warden, Andrew (CIV) [mailto:Andrew.Warden@usdoj.gov]
Sent: Thursday, July 26, 2007 2:28 PM
To: Kassem, Ramzi
Cc: Campbell, Jennifer; mrayner@law.fordham.edu
Subject: RE: security clearance applications

Ramzi,

Thanks. Please send me the names of the attorneys at Yale who will be submitting the three applications, their contact information, and indicate their positions (no law students or

1

outside consultants are permitted to receive security applications).  Once those attorneys
have entered their appearances in your DTA cases, we'll send you the applications.

Best,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

-----Original Message-----
From: Kassem, Ramzi [mailto:Ramzi.Kassem@yale.edu]
Sent: Thursday, July 26, 2007 12:55 PM
To: Warden, Andrew (CIV)
Cc: Campbell, Jennifer; mrayner@law.fordham.edu
Subject: RE: security clearance applications

Andrew,

Thanks for your response. Gemma Solimene, Ian Weinstein, and Greer Ellis-Clarke of Fordham
have not submitted applications for security clearances nor do they intend to apply for such
clearances in the context of this litigation.

Kindly forward me the three applications as per your offer. I have conferred with Martha and
she is CC'ed to this email.

The packets can be sent by regular mail to:

Ramzi Kassem
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

Or, if using an express mail carrier, to:

Ramzi Kassem
Yale Law School
127 Wall Street
New Haven, CT 06511

Regards,

Ramzi

127 Wall Street
New Haven, CT 06511

Regards,

Ramzi

-----Original Message-----
From: Warden, Andrew (CIV) [mailto:Andrew.Warden@usdoj.gov]
Sent: Thursday, July 26, 2007 11:32 AM
To: Kassem, Ramzi
Cc: Campbell, Jennifer
Subject: RE: security clearance applications

Ramzi,

We are not penalizing you for changing jobs. Throughout the GTMO
litigation we have provided a reasonable number of security clearances
to private counsel in order to litigate their cases. While we
understand that many lawyers would like to have scores of co-counsel and
support staff with security clearance, those requests must be balanced
against the Executive's responsibility to control access to classified
information and the significant resources that must be devoted to
conduct background investigations and adjudicate such clearances.

That said, according my records, three lawyers with Fordham who were
previously authorized for security clearances never returned their
applications for processing (Ellis-Clake, Solimeine, Weinstein).
Because those applications have been outstanding for nearly two years,
barring an objection from you or Martha Rayner, we can cancel their
applications and send you three applications for attorneys at Yale.
Please confer with Martha and let me know how you'd like to proceed.

Best,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

-----Original Message-----
From: Kassem, Ramzi [mailto:Ramzi.Kassem@yale.edu]
Sent: Wednesday, July 25, 2007 7:27 PM
To: Warden, Andrew (CIV)
Cc: Campbell, Jennifer
Subject: RE: security clearance applications

Andrew,

One of the filed DTA's will be migrating with me to Yale. The other will remain at Fordham. Yale will also be taking on an additional client.

Again, there is no overlap between our work on our two clients at Yale and the work Fordham will do for its clients. We aren't asking for "subsititute lawyers" to work on the same matters; these are entirely separate matters and Fordham and Yale are, obviously, wholly independent entities so Yale and its clients do not benefit from the clearances already granted Fordham. As things stand, I am the only cleared attorney at Yale and I will need the assistance of cleared colleagues here to properly do my job.

For clarification, what is your basis for penalizing one firm for the clearances granted another? Also, on what grounds do you cap the total number of clearances granted to these two separate firms at 6?

Regards,

Ramzi

-----Original Message-----
From: Warden, Andrew (CIV) [mailto:Andrew.Warden@usdoj.gov]
Sent: Wednesday, July 25, 2007 5:41 PM
To: Kassem, Ramzi
Cc: Campbell, Jennifer
Subject: RE: security clearance applications

Ramzi,

While I understand you have changed employers, we have already provided you and your former colleagues at Fordham with a sufficient number of clearances to litigate the two pending DTA cases that you've filed. If there are lawyers at Fordham who are no longer handling GTMO cases or who wish to withdraw their clearances in order to make room for substitute lawyers at Yale, I think we'd be amenable to providing such substitute clearances, provided the total number does not exceed six. But we cannot agree to provide 11 total security clearances (6 for Fordham lawyers and 5 for Yale lawyers) for work on two DTA cases.

Best,

Andrew

-----Original Message-----
From: Kassem, Ramzi [mailto:Ramzi.Kassem@yale.edu]
Sent: Wednesday, July 25, 2007 4:40 PM
To: Warden, Andrew (CIV)
Cc: Campbell, Jennifer
Subject: RE: security clearance applications

Andrew,

I should have been more explicit. I am transitioning from Fordham to Yale and will be handling two detainee representations with my new colleagues at Yale. These new colleagues are entirely separate from the Fordham set and our work at Yale will be independent from Fordham's casework.

Accordingly, I reiterate my request for five (5) security clearance application packets for those new colleagues who will be working with me on behalf of clients at Guantanamo. Again, the necessarily fact-intensive nature of the work entailed by the litigation phase ahead gives them a clear need to know. Their clearance bears directly on our ability to effectively represent our clients.

The packets can be sent by regular mail to:

Ramzi Kassem
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

Or, if using an express mail carrier, to:

Ramzi Kassem
Yale Law School
127 Wall Street
New Haven, CT 06511

Many thanks in advance for your assistance in this matter,

Ramzi Kassem


-----Original Message-----
From: Warden, Andrew (CIV) [mailto:Andrew.Warden@usdoj.gov]
Sent: Wednesday, July 25, 2007 4:07 PM
To: Ramzi Kassem
Cc: Campbell, Jennifer
Subject: RE: security clearance applications

Ramzi,

Can you please explain why need additional clearances? According to my records we have already authorized and provided security clearance applications to 6 attorneys with Fordham (yourself, Martha Rayner, James Cohen, Gemma Solimene, Ian Weinstein, and Greer Ellis-Clarke). If there are attorneys at your office who are no longer handling GTMO cases and their clearances can be withdrawn to make room for additional lawyers, please advise.

In light of the lack of district court jurisdiction and the government's pending motion to dismiss, we are not in a position to authorize any additional applications to pursue habeas litigation. I understand you have filed DTA petitions on behalf of two clients, but in our view six clearances should be sufficient for you and your staff to litigate on behalf of only two clients, particularly given the resources required to

process additional clearances and fact that not every attorney/staff member needs a clearance in order to work on the cases.

Best regards,

Andrew

Andrew I. Warden
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW, Room 6120
Washington, DC 20530
Tel: 202.616.5084
Fax: 202.616.8470

-----Original Message-----
From: Ramzi Kassem [mailto:rkassem@law.fordham.edu]
Sent: Wednesday, July 25, 2007 9:51 AM
To: Warden, Andrew (CIV)
Cc: Campbell, Jennifer
Subject: security clearance applications

Dear Andrew,

I write to request five (5) security clearance application packets for new colleagues who will be working with me on behalf of clients at Guantanamo. The necessarily fact-intensive nature of the work entailed by the litigation phase ahead gives them a clear need to know. Their clearance bears directly on our ability to effectively represent our clients.

The packets can be mailed by regular mail to:

Ramzi Kassem
Yale Law School
P.O. Box 209090
New Haven, CT 06520-9090

Or, if using an express mail carrier, to:

Ramzi Kassem
Yale Law School
127 Wall Street
New Haven, CT 06511

Many thanks in advance for your assistance in this matter,

Ramzi Kassem