*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

―――――――――――――――――― x
                                    :
AMER MOHAMMON, *et al.*,            :    **ORAL ARGUMENT REQUESTED**
                                    :
          Petitioners,              :
                                    :
     v.                             :    Civil Action No. 05 CV 2386 (RBW)
                                    :
GEORGE W. BUSH, *et al.*,           :
                                    :
          Respondents.              :
                                    :
―――――――――――――――――― x


**RENEWED MOTION OF PETITIONERS ABDUL GHAFFAR AND ADEL
NOORI FOR AN ORDER REQUIRING RESPONDENTS TO PROVIDE
COUNSEL AND THE COURT WITH THIRTY-DAYS' ADVANCE NOTICE OF
ANY INTENDED REMOVAL OF PETITIONERS FROM GUANTÁNAMO AND
TO SPECIFY THE COUNTRY OR COUNTRIES TO WHICH THEY SEEK TO
<u>TRANSFER PETITIONERS</u>**

KL3 2663587.1

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners Abdul Rahman a/k/a Abdul Ghaffar (ISN 281) and Adel LNU a/k/a Adel Noori (ISN 584) (together, "Petitioners") respectfully move for an order requiring Respondents to provide counsel and the Court with thirty-days' advance notice of any intended removal of Petitioners from the U.S. Naval Station at Guantánamo Bay, Cuba ("Guantánamo") and to specify the country or countries to which they seek to transfer Petitioners.

## PRELIMINARY STATEMENT

Petitioners are ethnic Uighurs. Uighurs are a Turkic Muslim ethnic minority from far-western China. Their homeland, which the Uighurs refer to as "East Turkistan," was overrun by communist China in 1949 and has been under its brutal domination ever since. Petitioners – like all the Uighurs in Guantánamo – were cleared for release as early as 2003 but remain imprisoned virtually *incommunicado*, without charge, and without any fair process by which they might challenge their indefinite imprisonment. As detailed in the habeas corpus petition that Petitioners filed with this Court on December 21, 2005, Petitioners are not "enemy combatants" and are being held in violation of the Constitution, treaties and laws of the United States.

Petitioners, in particular, have reason to fear that they will be transferred to their native China, a country whose government continues systemically and indiscriminately to imprison, torture and execute members of the Uighur community. Respondents have failed to provide counsel with any assurance or confirmation that they will not return Petitioners to China or a country subject to Chinese control or influence. Furthermore, counsel seek to prevent Respondents from acting unilaterally to disrupt or preempt the Court's adjudication of the issues raised by Petitioners' habeas petition.

KL3 2663587.1

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

This Court has recently granted the relief requested herein with respect to other petitioners in this case. (*See* Order dated March 19, 2008 (granting motion and requiring Respondents to specify in its notice to counsel the country to which the government seeks to transfer petitioner), *appeal docketed*, No. 08-0000 (D.C. Cir. May 21, 2008); Order dated March 25, 2008 (same), *appeal docketed*, No. 08-0000 (D.C. Cir. May 21, 2008)). Several other judges in this district have also granted motions requesting thirty-days' notice of any intended removal from Guantánamo. *See, e.g., Al-Shareef v. Bush*, No. 05-CV-2458, 2006 WL 3544736 (RWR) (D.D.C. Dec. 8, 2006); *Hamoud v. Bush*, No. 05-CV-1894 (RWR), 2006 WL 1876947 (D.D.C. July 5, 2006), *appeal docketed*, No. 06-5265 (D.C. Cir. Sept. 6, 2006); *Al-Joudi v. Bush*, No. 05-CV-301, 2005 WL 774847 (GK) (D.D.C. Apr. 4, 2005), *appeal docketed*, No. 05-CV-5231 (D.C. Cir. June 16, 2005) (held in abeyance pending *Boumediene*); *Al-Shiry v. Bush*, No. 05-CV-0490 (PLF), 2005 WL 1384680 (D.D.C. Apr. 1, 2005), *appeal dismissed in part, motion to vacate denied without prejudice*, No. 05-CV-5226, 2007 WL 4952433 (D.C. Cir. Aug. 9, 2007). Indeed, courts have granted such motions in cases involving Uighur prisoners similarly situated to Petitioners, *see Mamet v. Bush*, No. 05-CV-1602, slip op. (ESH) (D.D.C. Sept. 30, 2005), *appeal docketed*, No. 05-5488 (D.C. Cir. Dec. 20, 2005); *Kiyemba v. Bush*, No. 05-CV-1509, slip op. (RMU) (D.D.C. Sept. 13, 2005), *appeal docketed*, No. 05-5487 (D.C. Cir. Dec. 30, 2005); *Razakah v. Bush*, No. 05-CV-2370, slip op. (EGS) (D.D.C. Aug. 17, 2006), *appeal dismissed*, No. 06-5330 (D.C. Cir. June 7, 2007).

## BACKGROUND

The Chinese Government's violent and continuing repression of Uighurs in East Turkistan is well-documented. In March 2008, the U.S. State Department released its 2007 Country Reports on Human Rights Practices. *See* U.S. Department of State, *Country Reports on*

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

*Human Rights Practices—2007 (China Report)*, *available at* http://www.state.gov/g/drl/rls/hrrpt/2007/100518.htm (excerpt attached hereto as Ex. A). In describing China's human rights record, the State Department notes that the Chinese government continues to severely repress and persecute Uighur Muslims for their political and religious beliefs, sometimes using counterterrorism as a pretext for violent oppression of the Uighurs and for cracking down harshly on Uighurs expressing peaceful political dissent. *Id.* Uighurs expressing such political dissent have received harsh criminal sentences, and have been tortured and executed, on charges of "separatism." *Id.* In February 2007, authorities executed an ethnic Uighur for charges that included "attempting to split the motherland."[1] *Id.* Indeed, Respondents have acknowledged the brutal treatment that awaits Petitioners if returned to China.[2]

The Chinese government has itself indicated that it intends to prosecute Petitioners, along with the other Uighur prisoners in Guantánamo, if they are returned to China.

---

[1] *See also* U.S. Department of State, *China's Human Rights Record and Falun Gong: Testimony Before the House Committee on International Relations, Subcommittee on Africa, Global Human Rights and International Operations* (July 21, 2005), *available at* http://www.state.gov/g/drl/rls/rm/2005/50110.htm (stating that the Chinese government has used the global war on terror as a pretext for cracking down on Uighur Muslims who peacefully express political dissent or seek to practice their faith); Human Rights Watch, *Devastating Blows: Religious Repression of Uighurs in Xinjiang* (2005), *available at* http://hrw.org/reports/2005/china0405 (describing China's persecution of Uighurs); Human Rights Watch, *China: Human Rights Concerns in Xinjiang* (Oct. 2001), *available at* http://www.hrw.org/backgrounder/asia/china-bck1017.pdf (same); Amnesty International, *People's Republic of China: Uighurs fleeing persecution as China wages its "war on terror"* (July 7, 2004), *available at* http://www.amnesty.org/en/library/asset/ASA17/021/2004/en/dom-ASA170212004en.pdf (same).

[2] *See, e.g., Powell Says Detained Uighurs Will Not Be Returned to China*, AGENCE FRANCE-PRESSE (Aug. 13, 2004) ("The Uighurs are not going back to China, but finding places for them is not a simple matter."); Demitri Sevastopulo, *Uighurs face return from Guantanamo*, FINANCIAL TIMES (Mar. 16, 2005) ("The Pentagon determined last year that half of the two dozen Uighur Chinese captured in the war on terrorism have no intelligence value and should be released. The U.S. has so far resisted Beijing's demands for repatriation out of concern that they may be tortured once back in China."). These prior statements, however, provide no assurance or confirmation that the Uighurs will not be returned to China.

KL3 2663587.1

In September 2002, Chinese government agents arrived in Guantánamo and interrogated Petitioner and other Uighur prisoners. Amnesty International, *People's Republic of China: Uighurs Fleeing Persecution as China Wages its "War on Terror"* (July 7, 2004) (hereinafter "*Uighurs Fleeing Persecution*"); *see* FOIA CSRT 00174 (unclassified return from Sabir Osman) (stating that the Chinese delegation threatened him with return to China).[3] Amnesty International later reported, "It is alleged that during (the [Chinese] delegation's visit), the detainees were subjected to intimidation and threats and to 'stress and duress' techniques such as environmental manipulation, forced sitting for many hours and sleep deprivation." *Uighurs Fleeing Persecution, supra.* Some of the interrogation techniques "allegedly occurred on the instruction of the Chinese delegation." *Id.*

Several Uighurs and other prisoners later recounted these incidents before the CSRT panels. Two of the Uighurs, Sad'r (a/k/a Bahtiyar Mahnut) and Thabid (a/k/a Dawut Abdurehim), were interrogated, abused and threatened by Chinese representatives. Thabid was told that he would be killed or imprisoned by the Chinese. (FOIA CSRT 1621). Another Uighur, named Abdusemet, described how he was forcibly interrogated, threatened and deprived of sleep and food by the Chinese delegation in Guantánamo. (FOIA CSRT 2916). He stated that an American who identified himself as "representing the President's house" specifically threatened to send Abdusemet to China if he did not cooperate with Chinese interrogators. *Id.* Huzaifa Parhat told his CSRT panel how the Chinese threatened to jail him for "three or four

---

[3] The citation "FOIA CSRT" refers to the summaries of Combatant Status Review Tribunal proceedings that were publicly released by the government following the issuance of a court order enforcing compliance with a Freedom of Information Act request by the Associated Press. All such summaries are available at http://www.dod.mil/pubs/foi/detainees/csrt/.

years." *Id.* at 1515. The Chinese also threatened another Uighur, Sabir Osman, with years of jail time. *Id.* at 174. As Osman explained to his CSRT panel, the Chinese made it clear that the Uighurs "had better answer whatever the interrogators ask. It was their last chance. . . . They had me believe the allegations that the U.S. would send us back to China." *Id.* at 175. A Chinese interrogator told Adel Abdul Hakim (a Uighur later determined not to be an enemy combatant and released), that he was "lucky" to be in Guantánamo; if they took him back to a Chinese jail, he would be "finished." The Chinese threatened the Uighurs and their families, for example warning them that "[w]hen we get you back we will take you to Urumchi or Beijing where we have ways of making you talk." Chinese officials who interrogated Ahmad Tourson, one of undersigned counsel's other Uighur clients, told him that the DoD had produced to them all the information Tourson had previously provided to his U.S. interrogators about himself, his family and his reasons for going to Afghanistan. DoD had turned over this information to the Chinese notwithstanding prior representations by U.S. interrogators that they would keep the information confidential and not provide it to the Chinese. When Tourson later confronted his U.S. interrogators with this betrayal, they apologized and explained that they were commanded by high-level officials in Washington to disclose his file because the U.S. was at the time negotiating with the Chinese over the war in Iraq.[4]

That Respondents may intend to unilaterally remove Petitioners to another jurisdiction without notice to or consultation with counsel is further evidenced by Respondents' previous removal from Guantánamo – without prior notice to counsel – of five other Uighur

---

[4] The source of this information is counsel's notes from client interviews, which have been declassified pursuant to the procedures established by the protective order governing habeas corpus cases in the district court.

prisoners, three of whom are also represented by undersigned counsel. In May 2006, while their habeas petitions were still pending, these Uighurs were released from Guantánamo, without notice to counsel or the Court, to a refugee camp in Albania. At the time, three of the Uighurs had habeas corpus petitions pending in the district court, and two had appeals pending before the Court of Appeals. In fact, two of these Uighurs were removed from Guantánamo one business day before the Court of Appeals was scheduled to hear argument in their appeal, *Qassim v. Bush, et al.*, No. 05-5477 (D.C. Cir. 2006).

Moreover, Petitioners are likely to face extradition to China if removed to a country subject to Chinese influence and control. For example, in May 2006, a Canadian Uighur named Husein Celil was visiting his children in Uzbekistan. Uzbek authorities turned Celil over to the custody of the Chinese government. *See Canada Angry at Uighur Sentence*, BBC NEWS, April 20, 2007 *available at* http://news.bbc.co.uk/1/hi/world/asia-pacific/6574517.stm. Celil was sentenced by the Chinese government to life in prison for, among other charges, "splitting the motherland." *Id.; see also* Press Release, *Uzbekistan Deports a Canadian Uyghur to a Deeply Uncertain Fate in China*, Uyghur-American Association, June 26, 2006 (attached hereto as Ex. B). Indeed, Central Asian countries have often extradited Uighurs to China, reflecting the growing pressure placed on neighboring governments to forcibly return Uighurs to China for harsh treatment. *See* Amnesty International, *Amnesty International Report 2007: China*, *available at* http://thereport.amnesty.org/eng/Regions/Asia-Pacific/China (noting that an increasing number of Uighurs were extradited to China from Central Asian countries) (attached hereto as Ex. C).[5]

---

[5]   The Chinese have in fact sought to pressure the Albanian government to deport to China the five Uighurs who were released from Guantánamo to Albania in 2006. *See* Bruce Konviser, (continued...)

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

## PROCEDURAL HISTORY

On July 17, 2006, Petitioners filed a motion requesting thirty-days' advance notice of any intended removal of Petitioners from Guantánamo. (*See* Petitioners' Motion dated July 17, 2006). On January 31, 2007, after Petitioners' motion was fully briefed, this Court administratively closed the above-captioned case and denied all pending motions, including Petitioners' motion, without prejudice until the D.C. Circuit resolved jurisdictional questions. (*See* Order dated Jan. 31, 2007).

One year later, the D.C. Circuit reversed a district court decision which declined to bar the transfer of Ahmed Belbacha, an Algerian national imprisoned in Guantánamo, to Algeria on the grounds that it lacked jurisdiction to do so. *See Belbacha v. Bush*, No. 07-5258, 2008 WL 680637 (D.C. Cir. Mar. 14, 2008), *cert. denied*, 128 S. Ct. 614 (2007). The D.C. Circuit held that pursuant to the All Writs Act, the district court had jurisdiction to consider Belbacha's claim for a preliminary injunction enjoining his transfer to Algeria, a country where Belbacha argued he was likely to be tortured. *See id.* at *3.

On the same day, this Court, citing the *Belbacha* decision, administratively reopened the above-captioned case. On March 19, 2008, this Court, relying on the D.C. Circuit's ruling in *Belbacha*, granted a motion by a Tajik national requesting thirty-days' notice of any intended removal from Guantánamo. (*See* Order dated March 19, 2008) (dkt. no. 421). Similarly, on March 25, 2008, this Court granted a motion by a Tunisian national requesting

---

*A Strange Kind of Freedom*, TORONTO STAR, June 13, 2006 (attached as Ex. D). A Chinese delegation has traveled to Albania and demanded that the Albanians afford them access to the Uighurs. Fortunately, their efforts have thus far been unsuccessful.

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

thirty-days' notice of any intended removal from Guantánamo. (*See* Order dated March 25, 2008 (dkt. no. 425)).

On June 12, 2008, the U.S. Supreme Court ruled that prisoners at Guantánamo are entitled to the Constitutional privilege of habeas corpus. *Boumediene v. Bush*, 533 U.S. ___, 2008 WL 2369628 (June 12, 2008). The Supreme Court reversed the decision of the D.C. Circuit, which had held that properly Congress stripped federal courts of jurisdiction to consider habeas petitions filed on behalf of prisoners in Guantánamo.

Accordingly, Petitioners renew their motion for an order requiring Respondents to provide counsel and the Court with thirty-days' advance notice of any intended removal of Petitioners from Guantánamo. Furthermore, Petitioners request an order requiring Respondents to specify in its thirty-days' notice to counsel the country or countries to which they seek to transfer Petitioners.

**ARGUMENT**

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Commc'n, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Environmental Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). This Court can also grant Petitioners preliminary injunctive relief under Fed. R. Civ. P. 65, in order "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Fed. Practice 3d, § 65.20 (2004). Accordingly, courts in this district, including this Court, have held that similarly situated Guantánamo prisoners are entitled to the injunctive relief sought by Petitioners in this motion. *See, e.g.,* Order dated March 19, 2008, *appeal docketed*, No. 08-0000 (D.C. Cir. May 21, 2008); Order dated March 15, 2008, *appeal docketed*, No. 08-0000 (D.C. Cir. May 21, 2008); *Al-Shareef v. Bush,* No. 05-CV-2458, 2006

- 8 -

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

WL 3544736 (RWR) (D.D.C. Dec. 8, 2006); *Hamoud v. Bush*, No. 05-1894 (RWR), 2006 WL 1876947 (D.D.C. July 5, 2006), *appeal docketed*, No. 06-5265 (D.C. Cir. Sept. 6, 2001); *Mamet v. Bush*, No. 05-1602, slip op. (ESH) (D.D.C. Sept. 30, 2005), *appeal docketed*, No. 05-5488 (D.C. Cir. Dec. 20, 2005); *Kiyemba v. Bush*, No. 05-CV-1509, slip op. (RMU) (D.D.C. Sept. 13, 2005), *appeal docketed*, No. 05-5487 (D.C. Cir. Dec. 30, 2005); *Al Daini v. Bush*, No. 05-634 (RWR), slip op. (D.D.C. June 6, 2005), *appeal docketed*, No. 05-5229 (D.C. Cir. June 16, 2005) (held in abeyance pending *Boumediene*); *Al-Joudi v. Bush*, No. 05-301, 2005 WL 774847 (GK) (D.D.C. Apr. 4, 2005), *appeal docketed*, No. 05-CV-5231 (D.C. Cir. June 16, 2005) (held in abeyance pending *Boumediene*); *Al-Shiry v. Bush*, No. 05-CV-0490 (PLF), 2005 WL 1384680 (D.D.C. Apr. 1, 2005), *appeal dismissed in part, motion to vacate denied without prejudice*, No. 05-5226, 2007 WL 4952433 (D.C. Cir. Aug. 9, 2007); *Al-Oshan v. Bush*, No. 05-0520 (RMU), slip op. (D.D.C. Mar. 31, 2005), *appeal docketed*, No. 05-5237 (D.C. Cir. June 16, 2005) (held in abeyance pending *Boumediene*).

The Court must consider four factors in determining whether to issue a preliminary injunction: (1) whether Petitioners will suffer irreparable harm if the injunction is denied; (2) whether an injunction will substantially injure other interested parties; (3) whether Petitioners are substantially likely to succeed on the merits of their claims; and (4) whether issuing the injunction will further the public interest. *See Al-Fayed v. CIA*, 254 F.3d 300, 303, n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998). These four factors "interrelate on a sliding scale," and "if the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak." *Serona Labs*, 158 F.3d at 1318.

KL3 2663587.1

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

Petitioners stand to suffer irreparable harm in at least two respects. First, if removed to China, or to a country subject to Chinese control or influence, Petitioners will face indefinite detention, torture and likely execution. In their habeas petition, Petitioners seek, *inter alia*, declaratory and injunctive relief that would prevent the U.S. Government from effecting a transfer "that creates a foreseeable and direct risk that [Petitioners] will be subjected to torture." (Petition for a Writ of Habeas Corpus, dated Dec. 21, 2005, at 144-45). While Petitioners, of course, do not wish to hinder any effort to free them from an indefinite imprisonment, they are concerned that they will be removed to a country where they may be tortured or persecuted. In this motion, Petitioners simply seek an opportunity to challenge, if necessary, a proposed transfer on the grounds described in their petition, before such transfer has been accomplished.

Second, insofar as removal from Guantánamo without the requested notice would potentially deprive Petitioners of the ability to challenge the legality of their indefinite imprisonment in this or any other court, Petitioners face loss of their "right to 'test the legitimacy of [their] executive detention.'" *Al-Joudi*, 2005 WL 774847, at *4 (quoting *Lee v. Reno*, 15 F. Supp. 2d 26, 32 (D.D.C. 1998)). Thus, Petitioners face irreparable injury even if the jurisdiction to which they are removed does not engage in torture, but merely seeks to detain Petitioners without affording them fair process.[6]

---

[6] This latter category of harm includes deprivation of the opportunity to mitigate collateral consequences that may follow from the U.S. Government's determination that Petitioners have been and are being legitimately detained: If Petitioners are removed before they are able to vindicate their rights in this Court, it is substantially more likely that they will be imprisoned, persecuted, or mistreated wherever they are transferred. *See Al-Joudi*, 2005 WL 774847, at *3 n.7 ("Furthermore, a determination by a United States court that Petitioners are not enemy combatants might carry significant weight in their home country, thereby facilitating release from custody if they were transferred for continued detention.")

KL3 2663587.1

*PREVIOUSLY FILED WITH THE CSO
AND CLEARED FOR PUBLIC FILING*

Respondents, on the other hand, will suffer no injury if the Court grants the requested relief. Petitioners at this stage ask only that Respondents be required to provide advance notice of the U.S. government's intention to remove Petitioners from Guantánamo. *See Al-Joudi*, 2005 WL 774847, at *5 ("Beyond 'vague premonitions' that such relief would harm the executive's ability to conduct foreign policy, there is no concrete evidence that such notice actually will intrude upon executive authority."); *Abdah v. Bush*, No. 04-1254 (HHK), slip op. at 10-11 (D.D.C. Mar. 29, 2005), *appeal docketed*, No. 05-5224 (D.C. Cir. June 16, 2005) ("[T]he court does not have any indication that notifying Petitioners' counsel 30 days ahead of planned transfers of their client will intrude upon executive authority.").

The third factor – substantial likelihood of success on the merits – also weighs in favor of issuing an injunction. It is not necessary that Petitioners demonstrate that their "right to a final decision, after a trial, be absolutely certain, wholly without doubt." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.* 559 F.2d 841, 844 (D.C. Cir. 1977) (internal quotation marks omitted). Rather, a preliminary injunction seeking to preserve the status quo is warranted "when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant." *Id.* In this case, Petitioners have properly invoked the jurisdiction of this Court, *see Boumediene v. Bush*, 533 U.S. \_\_\_, 2008 WL 2369628 (June 12, 2008); Judge Green, moreover, has ruled that prisoners in similar circumstances to Petitioners have stated actionable claims under the Due Process Clause and the Geneva Conventions. *See In Re Guantánamo Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005), *rev'd*, *Boumediene v. Bush*, 476 F.3d 981 (D.C. Cir. 2007), *rev'd*, 533 U.S. \_\_\_, 2008 WL 2369628 (June 12, 2008); *see also Hamdan v. Rumsfeld*, 548 U.S. 557, 126 S. Ct. 2749, 2794-96 (2006) (Common Article 3 of Geneva Conventions applicable to person captured

*PREVIOUSLY FILED WITH THE CSO AND CLEARED FOR PUBLIC FILING*

incident to the war with Al Qaeda). There is thus no question that the Petitioners have raised a substantial legal question entitling them to the requested relief, especially in light of the irreparable injury they would sustain in the absence of an injunction.

Finally, the public interest favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of Petitioners from the Court's jurisdiction. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture or detain him indefinitely. *See Al-Joudi*, 2005 WL 774847, at *6 ("[T]he public interest [is] undeniably served by ensuring that Petitioners' constitutional rights can be adjudicated in an appropriate manner.")

*PREVIOUSLY FILED WITH THE CSO*
*AND CLEARED FOR PUBLIC FILING*

## CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court grant their motion for an order requiring Respondents to provide counsel and the Court with thirty-days' advance notice before removing Petitioners from Guantánamo, and to specify the country or countries to which they seek to transfer Petitioners.

Dated: New York, New York
June 17, 2008

Respectfully submitted,

Kramer Levin Naftalis & Frankel LLP

/s/ Darren LaVerne
Michael J. Sternhell (Pursuant to LCvR83.2(g))
Darren LaVerne (Pursuant to LCvR 83.2(g))
Seema Saifee (Pursuant to LCvR 83.2(g))
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100

Of Counsel:

Center for Constitutional Rights
J. Wells Dixon
(Pursuant to LCvR 83.2(g))
666 Broadway, 7th Floor
New York, New York 10012
Telephone: (212) 614-6464