IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: ) | |
| ) | |
| GUANTANAMO BAY ) | Misc. No. 08-442 (TFH) |
| DETAINEE LITIGATION ) | |
| ) | |
| AMER MOHAMMON , *et al.,* ) | |
| ) | |
| *Petitioners*, ) | |
| ) | |
| *v.* ) | Civil Action No. 05-2386 (RBW) |
| ) | |
| GEORGE W. BUSH, *et al.,* ) | |
| ) | |
| Respondents. ) | |

## STATUS REPORT FOR MAHER EL FALESTENY

Factual Background

Maher El Falesteny (aka Maher Refaat Al Khawary, ISN 519) is Palestinian by birth although he has never received aid or assistance from any United Nations authority.  El Falesteny left Palestine in early teenage years, when he moved with his parents from Gaza to Ein Radak in southern Lebanon.  When he was about 18 or 19 and on his own, he moved to Sayda, Lebanon, where he remained for a little over one year before going to Zaraqaa, Jordan, where he was married.  With his wife, he returned to Sayda and stayed there for several years, before relocating to Zaraqaa permanently, when he was in his young twenties.  He remained in Zaraqaa until 2001.  In the summer 2001, El Falesteny determined to

travel to Pakistan to obtain papers from United Nations to enable him immigrate to a European country where he could resettle with his family. He did not take his wife and children on this journey as he felt it would be difficult for them. In the course of this trip, while making arrangements to enter Pakistan, El Falesteny stayed in Jalalabad, Afghanistan. During this period, he worked as a sheep trader. Once the United States and coalition forces attacked Afghanistan and as Northern Alliance approached Jalalabad, El Falesteny fled to avoid the fighting and for his own safety. For a short time he was impressed into service of a clerical nature by Taliban forces. During this flight, he was captured by villagers and sold to Northern Alliance for a bounty.

      El Falesteny never fought and never had weapons in Afghanistan and does not know how to use weapons. None of the information provided to date by the United States government suggests otherwise. El Falesteny has been imprisoned for almost five years, being subject to torture during his captivity. First, he was about 40 days a prisoner of the Northern Alliance where he was interrogated and beaten with a chain that was wrapped in hose. Although the interrogator asked many questions, he did not write anything down. After the beatings were finished, the interrogator presented a document written in Farsi to El Falesteny. El Falesteny does not read, write or speak Farsi, but was required to sign the document without knowing what it said. Afterward, he was turned over to American troops. He was taken to

Bagram Air Force Base and then to Kandahar. After about six months, he was sent to Guantanamo Bay, Cuba, military prison. El Falesteny was interrogated multiple times and beaten almost to point of death. At Guantanamo, for one-and-a half months, guards moved him from one cell to another every couple of hours so he could not sleep. He was chained to the floor with no chair in a squatting position and made to stay there for hours. Guards poured cold water over him and blasted cold air conditioning into his cell. He has ongoing medical problems from this mistreatment. Finally, the United States as part of its annual review procedure declared him to be eligible for transfer and announced this decision to petitioner's counsel in a pleading on February 8, 2007.

      El Falesteny has never been associated with Al Qaeda, the Taliban, or any other in any way with Al Qaeda, the Taliban, or any other terrorist group or group that advocates violence against the United States or any other country. He is neither a member nor a supporter of any such organization. He has never advocated violence against the United States or its coalition partners. His CSRT does not suggest that he engaged in combat, and he was not captured by American forces, but rather was captured by villagers and turned over to the Northern Alliance for a bounty.

      During his interrogations at Guantánamo Bay, El Falesteny was threatened with being sent to Israel or Jordan, where, the interrogator said, he would be imprisoned and tortured. He is not sure if the threats regarding Israeli

were made by Israeli or U.S. officials. He does know that the United States government facilitated access by Jordanian intelligence officials to him for interrogation. These officials interrogated him and told him that they would "know how to make him talk" if he were returned to Jordan. He took this as a direct threat of torture if he was forcibly returned there. El Falesteny is well aware of the common use of torture by the Jordanian authorities. These threats are consistent with public information regarding both Israel and Jordan. For example, the United States Department of State has concluded that despite "laws, judicial decisions, and administrative regulations [in Israel that] prohibit torture and abuse . . . reputable nongovernmental organizations filed numerous credible complaints with the government alleging that security forces tortured and abused Palestinian detainees." U.S. Dept. of State Bureau of Democracy, Human Rights, and Labor, [Israel and the occupied territories] – Country Reports on Human Rights Practices, 2006 (Mar. 6, 2007) available at http://www.state.gov/g/drl/rls/hrrpt/2006/78854.htm. The State Department further found that "there were some problem areas, including serious abuses by some members of the security forces against Palestinian detainees."

       The information regarding the occupied territories and the Palestinian Authority is no different. "Although Palestinian Authority Basic Law prohibits torture or force against detainees . . . torture was a significant problem, and its use was not restricted to persons detained on security charges." Similarly, Jordan has

been accused of torturing prisoners. The Department of State has found that "the following human rights problems were reported: . . . torture; arbitrary arrest and prolonged detention; . . . discrimination against workers of Palestinian origin; restrictions on labor rights; and abuse of foreign workers." U.S. Dept. of State Bureau of Democracy, Human Rights, and Labor, *Jordan—Country Reports on Human Rights Practices, 2006* (Mar. 6, 2007) ("03/06/07 DoS Report on Jordan"), *available at* http://www.state.gov/g/drl/rls/hrrpt/2006/78855.htm. The Special Reporter of the U.N. Commission on Human Rights on Torture and Other Cruel, Inhuman or Degrading Punishment, concluded that "torture is systematically practiced at both [Jordan's] [General Intelligence Directorate ('GID')] and [Criminal Investigation Department ('CID')]," characterized by routine beatings and corporal punishment, for which there is "general impunity." U.N. High Commissioner on Human Rights, *Special Reporter Ends Mission to Jordan* (June 29, 2006). Finally, Amnesty International concluded that "torture and other ill-treatment of political detainees has been a longstanding problem in Jordan . . . that remains as persistent today as when Amnesty International began regularly documenting the problem over 20 years ago." Amnesty International, *Jordan – "Your Confessions Are Ready For You to Sign" – Detention and Torture of Political Suspects* (July 24, 2006), http://www.amnestyusa.org/countries/jordan/document.do? id=ENGMDE160052006.

Procedural Background

On December 21, 2005 El Falesteny filed a petition for habeas corpus as a part of the *Mohammon* case, 05-2386. Respondents have filed no return to that petition. The court entered the protective order of Judge Green and thereafter counsel has conferred with El Falesteny. Petitioner has filed a DTA petition which has not been scheduled for briefing and argument. Respondent in that proceeding has asked the court to stay all such proceedings. El Falesteny has asked that such a stay be conditioned on Respondent's filing in this court, the classified CSRT proceeding including all government information required by regulations as interpreted by *Bismullah*. In addition to the DTA petition, petitioner had also appealed from an order entered by Judge Walton denying all pending motions, including his then pending motion for a 30 day notice order. In this appeal the circuit reversed Judge Walton's order on the strength of *Balbecha* and petitioner has thereafter filed a notice availing himself of this court's July 10, 2008 order regarding notice.

Petitioner has also moved for a preliminary injunction to prevent his continued incarceration in violation of the Third Geneva Convention, namely his being held in solitary confinement. The government refused to answer the merits of this motion citing the circuit decision in *Boumediene*, despite the obvious fact that the Supreme Court would overrule the circuit's opinion, as it did. This motion should be taken up by the court at its early convenience.

        Respectfully submitted,

|  |  |
|---|---|
|  | _____/s/ Charles H. Carpenter____ |
| Shayana Kadidal (DC #454248) | Charles H. Carpenter (DC #432004) |
| CENTER FOR CONSTITUTIONAL RIGHTS | PEPPER HAMILTON LLP |
| 666 Broadway, 7th Floor | 600 Fourteenth Street, N.W. |
| New York, New York 10012 | Suite 500, Hamilton Square |
| Tel: (212) 614-6439 | Washington, DC  20005-2004 |
| Fax: (212) 614-6499 | Tel: (202) 220-1507 |
|  | Fax: (202) 220-1665 |
| *Of Counsel for Petitioners* |  |
|  | Stephen M. Truitt (DC # 13235 ) |
|  | 600 Fourteenth Street, N.W. |
|  | Suite 500, Hamilton Square |
|  | Washington, DC  20005-2004 |
|  | Tel: (202) 220-1452 |
|  | Fax: 202 220 1665 |
| Dated:  July 18, 2008 | *Counsel for Petitioners* |