# EXHIBIT 2
# TO PETITIONERS' JOINT MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

# DECLARATION OF ELIZABETH P. GILSON

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | : Misc. No. 08-442 (TFH) |
| | : |
| GUANTANAMO BAY | : Civil Action No. 05-1509 (RMU) |
| DETAINEE LITIGATION | : Civil Action No. 05-1602 (RMU) |
| | : Civil Action No. 05-1704 (RMU) |
| | : Civil Action No. 05-2386 (RMU) |

## DECLARATION OF ELIZABETH P. GILSON

Pursuant to 28 U.S.C. 1746, I declare that the following is true and correct to the best of my knowledge, information and belief:

1. I am a lawyer licensed to practice in the State of Connecticut. I serve as *pro bono counsel to* Bahtiyar Mahnut (ISN 277) and Arkin Mahmud (ISN 103), two men imprisoned since 2002 at Guantanamo Bay Naval Station, Cuba ("Guantanamo"). Mr. Mahnut and Mr. Mahmud are petitioners in the petition for *habeas corpus* styled as *Kabir v. Bush,* Civil Action No. 05-1704 (RMU).

2. I make this Declaration in support of a Joint Motion for Temporary Restraining Order and Preliminary Injunction filed by my clients and four other Guantanamo prisoners whose *habeas* petitions are captioned above. I make this Declaration based on my personal observations and on information that was provided to me by my clients in the course of our visits. There is no classified material in this Declaration.

3. Petitioners are seeking to enjoin and restrain the Respondents from detaining them in any but the least restrictive camp within the JTF-GTMO, without limitation, and precluding further imprisonment in the solitary confinement cells of Camps 5 and 6.

4. In my capacity as counsel to Petitioners Mahnut and Mahmud, I have made numerous visits to Guantanamo. On my visit on August 2, 2007 I met with one of my clients, Mr. Mahmud, in an interrogation room in Camp 6, where he was housed. Previously, the Uighur prisoners had been housed together in Camp 4, a communal facility where they could talk, recreate and mingle together freely.

5. Mr. Mahmud told me that he and the other Uighurs were all moved to Camp 6 because one or two of the men had engaged in disruptive behavior after one of the guards allegedly mishandled a Koran. He said that all 17 Uighurs were punished by the move to Camp 6, even though only one or two had been involved in the incident.

6. While the interrogation room where we met was not fitted out as a prison cell with bunk, privy, and sink, it is of the same dimensions as a Camp 6 cell: approximately 12 feet long by 6 feet 8 inches wide, by 8 feet high. A photograph of a typical cell is attached hereto as Exhibit A. I downloaded the photograph on July 24, 2008 from the website: http://cryptome.org/gitmo-121606/gitmo-121606.htm.

5. The interrogation cell is so small as to engender claustrophobia after short time. Mr. Mahmud reports that at times his cell is painfully cold.

6. During my visit on August 2 my client exhibited extreme behavior, talking in voices and shouting at me and at my translator. On previous visits, when he was in Camp 4, Mr. Mahmud typically engaged me in amazingly cordial, hopeful, and polite conversation. He was open and interested in discussing his case with me, and followed the legal developments with great interest. On those previous occasions, he did experience a few, brief, episodes where he appeared to be speaking in the voice of another, but he always recovered immediately. But on August 2 he had only a relatively few moments of calm, when I was discussing the details of his case.

7.    I have discussed Mr. Mahmud's deteriorating condition with a psychiatrist (who has not examined him). I feared that Mr. Mahmud may have been suffering from schizophrenia. The psychiatrist advised me that individuals who exhibit the symptoms that I described are not psychotic, but are manifesting the signs of post-traumatic stress syndrome ("PST"). The treatment for PST is not drugs, but a change in the situation that induces the stress.

8.    In June of 2008, Human Rights Watch issued a report entitled "Locked up Alone, Detention Conditions and Mental Health in Guantanamo," http://hrw.org/reports/2008/us0608/. The Report states, among other things, that such "extreme and prolonged isolation violates international legal obligations, and can aggravate desperate behavior," ultimately complicating ongoing efforts to resettle these men.

I declare this 25th day of July, 2008, under penalty of perjury, that the foregoing is true and correct.

_____
Elizabeth P. Gilson