IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| GUANTANAMO BAY | ) | Misc. No. 08-442 (TFH) |
| DETAINEE LITIGATION | ) | |
| _____ | ) | |
| AMER MOHAMMON, *et al.*, | ) | |
| | ) | |
|     *Petitioners*, | ) | |
| | ) | |
|     v. | ) | Civil No. 05-2386 (RBW) |
| | ) | |
| GEORGE W. BUSH, *et al.*, | ) | |
| | ) | |
|     Respondents. | ) | |
| _____ | ) | |

**REPLY IN SUPPORT OF MOTION TO RECONSIDER**

In opposing petitioner Maher El Falesteny's motion for reconsideration, the government offers little other than boilerplate concerning the Court's inherent discretion to schedule matters before it. Indeed, courts have considerable discretion in scheduling cases. This discretion is not unbounded, however. Congress can provide, and in some circumstances has provided limits on that discretion. In 28 U.S.C. section 2243, for example, Congress provided an express limit on how much time a court may give the government to submit a return in a habeas case. In 28 U.S.C. section 1657(a), Congress directed that particular actions get priority, including cases for temporary or preliminary

injunctive relief, a preference that is inherent in Congress' decision to make the denial of such relief immediately appealable. Even if these provisions to not direct the disposition of this motion, their import is clear.

In this case, Mr. Falesteny has a strong claim for immediate relief. Every day that he is held in violation of the Geneva Conventions is a new injury. (Counsel visited Mr. Falesteny on August 19 and 20, 2008. There has been no material change in the facts set forth in his opening papers). That Mr. Falesteny is likely to prevail is readily apparent: that the Geneva Conventions apply has been established by the Supreme Court (in *Hamdan v. Rumsfeld*), and that the purported suspension of Mr. Falesteny's right to petition that he is "in custody in violation of . . .treaties of the United States (28 U.S.C. section 2241(c)(3)) has been rejected by the Supreme Court (in *Boumediene v. Bush*). Further the Supreme Court has squarely held that treaty provisions may be enforced in habeas. *Mali v. Keeper of the Common Jail,* 120 U.S. 1 (1887) The fact that the manner in which Mr. Falesteny is currently held does not comply with the requirements of the Geneva Conventions is, as a matter of fact, indisputable. The inadequacy of the Combat Status Review Tribunals, both in general and as a means of complying with article V, thereby shifting Mr. Falesteny out of his presumptive prisoner-of-war status under the Geneva Conventions, has been well established, and thus the government has no good basis to contend that it is not obligated to treat Mr. Falesteny as the

Geneva Conventions require. The government will most likely incant its general belief, that Guantanamo is beyond the law, and that Respondents are not accountable to this Court or anyone else for violations of the Geneva Conventions as to Mr. Falesteny. Although Respondents' general theories of Executive immunity have been repeatedly rejected, the precise issue raised by Mr. Falesteny has not been adjudicated, with respect to Guantanamo. This can be briefed, though, and decided quickly.

As to the balance of harms, there is no contest. On the one hand, a man is being held in conditions that violate central international norms of civilized conduct, which norms are also part and parcel of the law of war. On the other, the government apparently finds it inconvenient to either moot the motion by bringing its conduct into compliance with the law,[1] or even to explain why it prefers not to do so. There is no public interest in the stance taken by the government here: indeed, the public interest is far better served by vindicating the rule of law, and bringing the detention of Mr. Falesteny -- a man who is not accused of any involvement with terrorism, has never been a combatant of any kind, and is in fact cleared for release -- into compliance with the applicable provisions. This far outweighs any public interest in vindicating Executive immunity from

---

[1] To the extent Respondents identify a logistical challenge to according Mr. Falesteny his full rights under the applicable law, this should not excuse their total non-compliance. The government should be required to mitigate its violations to the extent that it can immediately, while it implements a full compliance.

accountability, but even as to any such claims the government might make, the interest of the public is better served by prompt adjudication, rather than allowing Mr. Falesteny to languish in legal limbo.

It is true that the habeas cases brought by prisoners in Guantanamo present a logistical challenge to the Court.  Mr. Falesteny appreciates this.  This is not his fault, nor the fault of his fellow prisoners, though.  It is entirely the doing of Respondents, who have determined to operate an unlawful, and for many years, unaccountable, prison.[2]  The days of unaccountability have come to an end, however, and Respondents have a choice: comply with the law, or face the consequences.  They should not be allowed a third option: hiding behind the Court's docket to avoid even presenting the legal basis, if any, it relies upon to subject Mr. Falesteny to the confinement he endures.

Mr. Falesteny has asked for injunctive relief to avert a harm that he has suffered anew every day since the motion was filed.  Holding his motion in abeyance is tantamount to denying it, as to the harm he will suffer each day between now and the eventual grant of his motion.  The Court's decision to hold

---

[2] This gambit is an old one. In 1667, the Earl of Clarendon, the former Lord Chancellor, was impeached. Article IV of the charges alleged "That he hath advised and procured divers of his Majesty's subjects to be imprisoned, against law, in remote islands, garrisons, and other places, thereby to prevent them from the benefits of the law, and to introduce precedents for Imprisoning any other of his Majesty's subjects in like manner."  Clarendon fled England never to return.  To curtail further abuses of this type, Parliament passed the Habeas Corpus Act of 1679.  31 Car. 2, ch. 2.  That Act, formally entitled *An Act for the better secureing the Liberty of the Subject and for Prevention of Imprisonments beyond the Seas*, "would be described by Blackstone as the "stable bulwark of our liberties," 1 W. Blackstone, Commentaries, established procedures for issuing the writ; and it was the model upon which the habeas statutes of the 13 American Colonies were based." *Boumediene v. Bush*, 553 U.S __ (2008).

this motion in abeyance is therefore an appealable order. In the interest of time and efficiency, and prompt rectification of the government's continuing violation of law, Mr. Falesteny asks that this Court revise its recent order, direct the government to respond to the motion, and adjudicate this matter. Given the priority that Congress has directed be accorded habeas cases and claims for injunctive relief, and the admonition from the Supreme Court concerning the delays already suffered by Guantanamo detainees, doing so is the best use of the Court's discretion to manage its schedule.

Respectfully submitted,

/s/ Charles H. Carpenter

| | |
|---|---|
| Shayana Kadidal (DC # 454248) | Charles H. Carpenter (DC #432004) |
| CENTER FOR CONSTITUTIONAL RIGHTS | William Bethune (DC # 66696) |
| | PEPPER HAMILTON LLP |
| 666 Broadway, 7th Floor | 600 Fourteenth Street, N.W. |
| New York, New York 10012 | Suite 500, Hamilton Square |
| Tel: (212) 614-6439 | Washington, DC 20005-2004 |
| Fax: (212) 614-6499 | Tel: (202) 220-1507 |
| | Fax: (202) 220-1665 |

Of Counsel for Petitioner

Stephen M. Truitt (DC # 13235 )
600 Fourteenth Street, N.W.
Suite 500, Hamilton Square
Washington, DC 20005-2004
Tel: (202) 220-1452
Fax: 202 220 1665

*Counsel for Petitioners*

Dated: August 22, 2008