IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE: | Misc. No. 08-442 |
| GUANTANAMO BAY DETAINEE LITIGATION | Civ. Action Nos.<br><br>05-CV-2386 (RBW)<br>05-CV-0634 (RWR) |

**PETITIONERS' OPPOSITION TO RESPONDENTS' MOTION FOR
PARTIAL AND TEMPORARY RELIEF FROM
THE COURT'S JULY 11, 2008 SCHEDULING ORDER**

Petitioners Al Daini (ISN # 549), Al Noofayaee (ISN #687), Al Khateeb (ISN #689) and Mabrouk (ISN # 148) ("Petitioners") hereby oppose Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order ("Motion").  In the July 11 Order, the Court ordered Respondents to file the first 50 factual returns and motions to amend by August 29, 2008, with the remaining factual returns and motions to amend to follow on a "rolling basis" at a minimum rate of 50 per month.  In their Motion, Respondents request that the Court modify its July 11 Order to allow an additional 30 days to file the first 50 returns or motions to amend.  Motion at 13. Because the timelines for production of returns or motions to amend are all pegged to the due date for the first 50 cases, Respondents' motion effectively requests an enlargement of time for the production of returns in all consolidated cases.

Petitioners in this case have been waiting in prison cells at Guantánamo Bay Naval Station since 2002.  Petitioner Al Daini filed his petition for writ of habeas corpus on March 28, 2005.  On July 6, 2005, Respondents filed a factual return in his case. Petitioners Al Noofayaee, Al Khateeb and Mabrouk filed their Petition on December 21,

2005. Respondents have never filed a factual return for Petitioners Al Noofayaee, Al Khateeb or Mabrouk. Petitioners' cases are not among the first 50 cases for which returns or motions to amend were ordered by August 29, 2008.

Since the filing of Petitioners' cases in 2005, they have been mired in the jurisdictional dispute that was finally resolved by the United States Supreme Court in *Boumediene v. Bush*, 128 S. Ct. 2229 (2008). Yet now, almost three months after the Supreme Court's decision and despite the Supreme Court's admonition that "the costs of delay can no longer be borne by those who are held in custody," *id.* at 2275, Respondents have defied this Court's Scheduling Order and have instead moved for at least another month of delay in all of the coordinated habeas cases.

This Court should deny Respondents' Motion for relief from a schedule that Respondents themselves requested, and for which Respondents have utterly failed to show good cause. The Court should further rule that, unless Respondents file factual returns or motions to amend in Petitioners' cases in accordance with the timeline established by the July 11 Scheduling Order, Respondents will waive their opportunity to do so. In that event, Petitioners' cases should proceed expeditiously on the 2005 petition and the factual return that was previously filed in Petitioner Al Daini's case.

I. **THIS COURT ORDERED RESPONDENTS TO PRODUCE 50 FACTUAL RETURNS PER MONTH, WITH NO EXCEPTIONS ABSENT GOOD CAUSE.**

On July 2, 2008, the judges of this Court, including Judges Walton and Roberts, ordered most of the habeas petitions filed by Guantánamo detainees to be transferred to Judge Thomas F. Hogan for purposes of coordination and management, "so that these cases can be addressed as expeditiously as possible per the Supreme Court's decision in

*Boumediene v. Bush.*" *In re Guantánamo Bay Detainee Litigation*, Misc. No. 08-442, Dkt. no. 1. This Court held a status conference on July 8, 2008, at which the parties expressed their views on how these cases should be managed and scheduled. At that hearing, counsel for Petitioners expressed concern that Respondents might use the Court's efforts to coordinate these cases as a further opportunity for delay.

At the status conference on July 8, 2008, and in letters and pleadings filed before and after the conference, Respondents requested that they be allowed until the end of August 2008 to file factual returns and motions for leave to amend returns in the 50 first-filed habeas cases, and that they be allowed to continue filing returns and motions for leave to amend returns at a rate of 50 per month after that. Dkt. no. 39. Petitioners opposed the request, but Respondents assured this Court that they were "dedicating substantial resources to facilitate the expeditious handling of these cases" (*id.* at Ex. A), and that their request for a "short lead time" would best facilitate expeditious adjudication of the cases. *Id.*

At the July 8, 2008 hearing, Judge Hogan explicitly directed Respondents to alert other agencies that proceedings in these cases must be a top priority:

> I think the government has to understand, they're going to set aside every other case that's pending before them in their division, and address these cases first. Put them on notice that I expect the corresponding agencies to do the same; that they're now in a court process, the Supreme Court has spoken, has asked strongly that these be handled promptly . . . .

July 8, 2008 Hearing Transcript, at 90. Judge Hogan also warned that delays would be granted only "rarely" and only upon a showing of good cause:

> [I]'m concerned about time and extensions. And whatever I decide, I would anticipate the parties will follow and that motion[s] for extension will be rarely granted. And that any type of extension would have to be approved by the court. It makes no sense to set a schedule to make continuances.

3

*Id.* at 60. Over Petitioners' objections, the Court gave Respondents precisely the Scheduling Order they asked for, allowing them until August 29, 2008 to prepare returns and motions to file amended returns in the first 50 pending cases, and allowing Respondents to file returns and motions to amend at a rate of 50 cases per month thereafter. Dkt. no. 53, Scheduling Order.

As Judge Hogan stated at the July 8 hearing, the Scheduling Order allows Respondents to request exceptions only to *sequencing* of factual returns:

> if the government believes that an individual factual return is significantly more complicated than others or a particular detainee's circumstances present unique issues that require more time to complete the return such that processing the return would delay the overall processing . . . . As with amendments, the Court will only allow exceptions where the government establishes cause.

*Id.* at ¶ 4. The plain intent of the Scheduling Order is to allow exceptions only on a case-by-case basis, based on good cause, and solely to avoid delays in the processing of other cases. The Scheduling Order does not anticipate that a delay would be requested, much less granted, for the filing of virtually all amended returns without a particularized showing of good cause. As Judge Hogan stated at the July 8 hearing: "delays . . . would reflect badly and would cause the Court to become perhaps not only concerned, but suspicious of the necessity for further delay, which could — to the detriment of the government in how we proceed with these cases and take them to trial." Transcript at 91.

II. **RESPONDENTS' MOTION FAILS TO ESTABLISH GOOD CAUSE, AIMS TO PERPETUATE DELAY, AND SHOULD BE DENIED BY THIS COURT.**

At midnight on the Court's deadline for the filing of the first 50 returns, Respondents requested an extension of the very schedule they had requested. Instead of filing 50 returns in these coordinated cases, Respondents filed 10 in the coordinated cases

4

and 12 in the handful of other cases pending before Judges Leon and Sullivan. See "Amended and Other Factual Returns Filed – August 2008," Ex. A to Motion. Respondents requested this extension after the deadline had passed, without any effort to meet and confer with Petitioners' counsel, and without any showing of good cause.

In their Motion, Respondents announce that they have been "unable to complete" the filing of the first 50 factual returns, request an additional 30 days to file these returns, and express "hope" to produce 50 factual returns per month thereafter. Motion at 1, 4, 11-13. Nowhere in Respondents' Motion is there any indication—much less assurance—that Respondents will comply with their "hoped for" schedule. Instead, Respondents promise only to "strive" to do so. *Id.* at 12. Respondents' equivocal language strongly suggests that they are laying the groundwork now for more missed deadlines and requests for extensions of time in the future.

The reasons offered by Respondents do not come close to showing good cause for granting their Motion.[1] First, Respondents contend that they "could take only limited steps to prepare for the defense of claims by the Guantanamo detainees" until the Supreme Court issued the *Boumediene* decision. *Id.* at 5. Petitioners filed their habeas petitions in 2005, after the Supreme Court had already ruled that this Court had jurisdiction under the habeas statute to hear the habeas claims of Guantánamo prisoners. *Rasul v. Bush*, 542 U.S. 466, 484 (2004). Respondents doggedly opposed this Court's jurisdiction in the federal courts and in Congress, but that should not have prevented

---

[1] Petitioners, of course, are unable to address any support which may be contained in the classified declaration of Director Hayden as it was filed *in camera* and *ex parte*. Therefore, Petitioners respectfully submit that Director Hayden's classified declaration be stricken as Respondents have demonstrated no justification for such an extraordinary *ex parte* filing. See D.C. Rule of Professional Responsibility 3.5.

5

Respondents from preparing their defense of Petitioners' habeas claims. In any event, this litigation history was well known to the parties and the Court when the July 11 Scheduling Order was put in place. The fact that those claims now rest on constitutional grounds does not alter the fundamental issue in this case: Respondents must justify their detention of Petitioners. That was the issue in 2005, and it remains the issue today.

Second, Respondents claim that DOD needs more time to gather information to justify Petitioners' detention. Motion at 4. However, Deputy Secretary of Defense Paul Wolfowitz claimed more than four years ago that every Guantánamo prisoner had already "been determined to be an enemy combatant through multiple levels of review by officers of the Department of Defense." Order Establishing Combatant Status Review Tribunal, July 7, 2004, at 1. Apparently, Respondents believe that their earlier "multiple levels of review" relied on inadequate justifications for detaining Petitioners that must now be supplemented. According to DOD, its 30-lawyer team has reviewed fewer than 1,900 documents within the past 30 days — an average of fewer than three documents per lawyer per business day. Declaration of Daniel J. Dell'orto, Ex. B to Motion, ¶¶ 5, 7. Respondents also request additional time so that DOJ may draft a "narrative that summarizes the case for detaining the petitioner as an enemy combatant." Declaration of Gregory G. Katsas, Ex. C to Motion, ¶ 9. That is exactly what Respondents claimed to have included in the CSRT record. Order Establishing Combatant Status Review Tribunal ¶¶ g(3), h. Respondents' desire to bolster their purported justifications, or to "develop the Government's best possible case" (Motion, Ex. C ¶ 8) cannot override the Supreme Court's clear mandate: Petitioners "are entitled to a prompt habeas corpus hearing." *Boumediene,* 128 S. Ct. at 2275.

Third, Respondents claim that the CIA needs 30 days to review and approve each factual return before it can be submitted to the Court, Petitioners' counsel, or the public. Motion at 3, Ex. D at ¶¶ 8-9. Although Petitioners have not seen (and therefore object to) the classified portions of the declaration submitted by CIA Director Michael V. Hayden, Director Hayden's unclassified declaration shows that Respondents have no excuse for missing this Court's deadline. Director Hayden reports that DOJ and DOD (with, according to Respondents, between 50 and 80 full-time attorneys) produced their first factual return for CIA review on August 12, 2008 – more than a month after the Scheduling Order. *Id.* at ¶ 19. This belies Respondents' claims that they are working diligently to expedite the factual returns.

### III. FILING A CLASSIFIED FACTUAL RETURN UNDER SEAL DOES NOT RISK PUBLIC DISCLOSURE OF CLASSIFIED INFORMATION.

Petitioners' counsel have already been granted "secret" level security clearances from the government and are authorized to access and review "secret" level classified documents. Indeed, DOJ informed Petitioners' counsel that they received a more extensive background check so that counsel's clearance level could be upgraded quickly to "top secret" if necessary. It is unclear to Petitioners' counsel why they or the Court should be prohibited from reviewing the newly drafted factual returns until the documents are cleared by the CIA, and Respondents have cited no DOJ or DOD authority, policy, or procedure requiring such a process.

Although Respondents profess to encounter difficulties in obtaining timely interagency clearance of newly drafted factual returns, these alleged difficulties are entirely within Respondents' control to resolve. Respondents decided to rely

"extensively" on information that they designated as classified, they delayed in compiling and reviewing the information among themselves, and they decided to include DOJ narratives. Motion at 3, 6. The Court should not permit such self-engineered hurdles to justify Respondents' delay. Respondents' last-minute filing is based not on good cause, but on tactical considerations or, at best, a failure of leadership in the departments involved. *See id.*, Ex. B at ¶ 7, Ex. C at ¶ 13, Ex. D at ¶ 19.

Petitioners have been detained since 2002, and their habeas cases have been pending since 2005. Respondents have sought to delay Petitioners' cases at every opportunity. The purpose of having a single judge to coordinate the habeas cases for management purposes will be frustrated if Respondents are permitted to disregard the management orders with impunity. In order to preserve the intent of the coordination of habeas cases to address the cases as expeditiously as possible, this Court should enforce its Scheduling Order strictly, particularly where – as here – there is no good cause shown for an exception. It is long past time to test Respondents' basis for holding Petitioners in a fair hearing before an independent judge.

### IV. THE COURT SHOULD DENY RESPONDENTS' MOTION AS GRANT OF THE MOTION WOULD REWARD RESPONDENTS' SELF-HELP.

Respondents must have known well before the August 29, 2008 deadline that they would have difficulty meeting the deadline. They could have alerted Petitioners' counsel and the Court that they intended to seek relief from the deadline, leaving enough time for consideration of their motion before the deadline.[2] Instead, Respondents waited until

---

[2] In fact LCvR 7.1(m) *requires* that moving counsel confer with opposing counsel before filing non-dispositive motions. Rule 7.1(m) serves important institutional

8

literally the last minute to file their motion for relief. By filing their motion so late, Respondents secured for themselves in substantial measure the very relief their motion seeks, without having to justify their request to the Court. This practice should not be tolerated. As Justice Rehnquist, sitting as a Circuit Justice, stated in an analogous context:

> To use the technique of a last-minute filing as a sort of insurance to get at least a temporary stay when an adequate application might have been presented earlier, is, in my opinion, a tactic unworthy of our profession.

*Evans v. Bennett*, 440 U.S. 1301, 1307 (1979) (Rehnquist, Circuit Justice). Indeed, the Seventh Circuit has rebuked the Department of Justice for filing a motion for an extension of time to file a brief on the day the brief was due, thereby securing the relief the government sought without a ruling on its motion. *Ramos v. Ashcroft*, 371 F.3d 948, 949-50 (7th Cir. 2004) ("Filing motions in lieu of briefs, a form of self-help extension, has become increasingly common but is not authorized by any rule, either national or local.").

The Court should strike Respondents' motion and sanction them to deny them any benefit from their last-minute self-help filing and to deter them from repeating this behavior.

---

purposes, and historically, this Court does not treat violations of the rule lightly. *See Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 102 (D.D.C. 2006); *Niedermeier v. Office of Max S. Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (Hogan, C.J.); *Alexander v. FBI*, 186 F.R.D. 185, 187 (D.D.C. 1999) (Lamberth, J.); *Nwachukwu v. Karl*, 223 F. Supp. 2d 60, 71 n.7 (D.D.C. 2002) (Hogan, C.J.). Failure to comply with LCvR 7.1(m) alone provides sufficient grounds to deny Respondent's motion.

9

## V. CONCLUSION

Respondents' last-minute filing makes clear that Respondents are still attempting to impose the "costs of delay" upon those held in prison. This Court should enforce the Supreme Court's ruling that "the detainees in these cases are entitled to a prompt habeas corpus hearing," *Boumediene*, 128 S. Ct. at 2275, deny Respondents' Motion, and rule that Respondents will waive their opportunity to file factual returns or motions for leave to amend returns if they do not comply with the Court's Order of July 11, 2008.

          Respectfully submitted,

          /s/Jonathan M. Fee
          Jonathan M. Fee, DC Bar No. 479579
          Michael E. Ward, DC Bar No. 434624
          Jill M. Williamson, DC Bar No. 478469
          ALSTON & BIRD LLP
          950 F Street, NW
          Washington, DC 20004
          Tel: (202) 756-3300
          Fax: (202) 756-3333

          *Counsel for Petitioners*

          C. Rufus Pennington, III
          MARGOL & PENNINGTON, PA
          320 North First Street, Suite 600
          Jacksonville Beach, FL 32250
          (904) 355-7508

          *Counsel for Petitioner Al Daini*

Dated: September 8, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2008, I filed and served the foregoing Petitioners' Opposition to Respondents' Motion for Partial and Temporary Relief from the Court's July 11, 2008 Scheduling Order to be delivered to the counsel listed below in the above-captioned matter through the CM/ECF system:

Andrew I. Warden
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530

Terry Marcus Henry
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, D.C. 20530

/s/Jonathan M. Fee
Jonathan M. Fee

Dated: September 8, 2008